**No. 25-7199**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PEDRO RIOS, JR., ET AL.,

*Plaintiffs-Appellees*,

v.

HRB DIGITAL, LLC, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court for the
Northern District of California, Case No. 3:25-cv-03530-EMC
Hon. Edward M. Chen, United States District Judge

**APPELLANTS' EXCERPTS OF RECORD
VOLUME 2 of 2**

Stacey Gilman
BERKOWITZ OLIVER LLP
2600 Grand Boulevard
Suite 1200
Kansas City, MO 64108
Telephone: (816) 561-7007
sgilman@berkowitzoliver.com

Archis A. Parasharami
Daniel E. Jones
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7160
archis.parasharami@skadden.com
daniel.jones@skadden.com

*Counsel for Defendants-Appellants HRB Digital, LLC and HRB Tax Group, Inc.*

**ORAL ARGUMENT REQUESTED**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | |
|---|---|
| **Pedro Rios, Jr., et al.,** | ) |
| | ) No. 3:25-cv-03530-EMC |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) San Francisco, California |
| **HRB Digital LLC, et al.,** | ) August 28, 2025 |
| | ) 2:31 p.m. |
| Defendants. | ) |
| _____ | ) |

BEFORE:   THE HONORABLE EDWARD M. CHEN, JUDGE

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**INITIAL CASE MANAGEMENT CONFERENCE**

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC (Reported Remotely)**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

ER-26

**A P P E A R A N C E S**

For the Plaintiffs:
     ZIMMERMAN REED
     By:  **Ryan Ellersick, Esq.**
     6420 Wilshire Boulevard, Suite 1080
     Los Angeles, California  90048


For the Defendants:
     MAYER BROWN, LLP
     By:  **Archis Ashok Parasharami, Esq.**
     575 Market Street, Suite 2500
     San Francisco, California  94105

     MAYER BROWN, LLP
     By:  **Daniel Edward Jones, Esq.**
     1999 K Street NW
     Washington, D.C.  20006

     BERKOWITZ OLIVER
     By:  **Stacey R. Gilman, Esq.**
     2600 Grand Boulevard
     Suite 1200
     Kansas City, Missouri  64108

UNITED  STATES  DISTRICT  COURT

ER-27

## P R O C E E D I N G S

(Proceedings commence at 2:31 p.m.)

THE COURTROOM DEPUTY:  The next case that we'll be hearing is Rios, et al., vs. HRB Digital, LLC, et al., Case Number 25-3530.

Counsel, please state your appearance for the record beginning with the plaintiff.

MR. ELLERSICK:  Good afternoon, Your Honor.  Ryan Ellersick for the plaintiffs.

THE COURT:  Why don't you come up to the mic, because our court reporter's distanced, so...

MR. ELLERSICK:  Good afternoon, Your Honor.  Ryan Ellersick for the plaintiffs, Mr. Rios and Mr. Marquez.

THE COURT:  All right.  Thank you.

MR. PARASHARAMI:  Good afternoon, Your Honor.  Archis Parasharami of Mayer Brown for the defendants.

And I'll have my colleagues introduce themselves --

THE COURT:  All right.

MR. PARASHARAMI:  -- as well.

MR. JONES:  Good afternoon, Your Honor.  Dan Jones, also of Mayer Brown, on behalf of the defendants.

THE COURT:  All right.  Thank you, Mr. Jones.

MS. GILMAN:  Good afternoon, Your Honor.  Stacey Gilman of Berkowitz Oliver, also on behalf of the defendants.

THE COURT:  All right.  Thank you, Ms. Gilman.

ER-28

So you all have seen the Ninth Circuit's memorandum disposition in the *Pandolfi* case?

MR. PARASHARAMI:  I did, Your Honor.

MR. ELLERSICK:  I have not, Your Honor.

THE COURT:  Oh.  Well, Ninth Circuit affirmed my decision and found that there's a basis to find that the -- among other things, the arbitration agreement that was the subject of that matter, which included this sort of stacking bellwether thing, was substantively unconscionable.  And so although it was not a published decision and, therefore, not precedential, that's certainly the view of three members of the Ninth Circuit.

So if I were to adhere to *Pandolfi*, and now I have reason to adhere to my *Pandolfi* analysis, how is this different?

MR. PARASHARAMI:  So --

THE COURT:  How can I distinguish this case?

MR. PARASHARAMI:  Oh, good.  Thank you, Your Honor.  So -- so I'll start, obviously --

THE COURT:  Yeah.

MR. PARASHARAMI:  -- and try to persuade you.

I -- I think you said some things.  And I do want to underscore *Pandolfi* is an unpublished memorandum disposition.  It -- you know, I -- I don't want to be overly critical.  We obviously disagree with aspects of it.  It's not a very

UNITED STATES DISTRICT COURT

ER-29

detailed reasoning, I would say. Five pages, one and a half of which are, I think, boilerplate. But it's -- more important, I think it's distinguishable. And you know I'd like to focus on controlling precedent.

I do think there is a straightforward way to distinguish *Pandolfi* and to decide this motion, and that is to follow *Mohamed v. Uber*, which I know Your Honor is familiar with, and three recent decisions that have upheld materially identical versions of this -- of this very same H&R Block arbitration agreement.

So, as Your Honor knows, in *Mohamed* the opt out provision made the arbitration makes -- under *Mohamed,* the -- the arbitration provision in -- in that case was deemed to be not procedurally unconscionable because of the presence of an opt-out provision. We have an equivalent opt-out provision here, and that's why applying *Mohamed*, Judge Pitts held in the *Hunt* case, applying California law, that this exact same arbitration agreement was not procedurally unconscionable and, therefore, was fully enforceable. Two other federal courts have looked at this same provision and held the same thing under New York and Pennsylvania law.

And then more recently, back in this Court, Judge Tigar in a case called *Bonhomme* -- and I'll just spell it -- B-O-N-H-O-M-M-E -- *vs. Uber* came to the same conclusion, applying *Mohamed* and holding that when an arbitration clause

UNITED STATES DISTRICT COURT

has an opt-out provision, that that opt-out provision renders the clause not procedurally unconscionable.

It's established, as Your Honor knows, that in our -- that a contract provision to be unconscionable must be both substantively and procedurally unconscionable, and in the absence of procedural unconscionability, the arbitration agreement must be enforced. Just like those cases, the opt out should be the beginning and the end of the story.

And I -- I want to talk about -- I'm going to turn to *Pandolfi*, Your Honor.

THE COURT: Are you saying there could be no degree of unconscionability? When you have an opt-out, there's no procedural unconscionability, period?

MR. PARASHARAMI: I think there -- there may be circumstances in which something additional could exist, but I -- but I want to actually frame this in terms of *Mohamed*. And -- and I want to talk about *Pandolfi*, too.

But in *Mohamed*, you know, in the -- I know Your Honor is deeply familiar with the case, and I know Your Honor has cited it since -- since its decision. But Your Honor may recall that when you initially decided not to enforce the clauses at issue in -- in that case, the *Uber* clauses at issue, you had held both that there were aspects of surprise in the arbitration provision because the arbitration provision and aspects of it were part of a prolix form agreement, and you had

held that they were adhesive.  And the Ninth Circuit reversed.  The Ninth Circuit said that the opt out made it not adhesive and the opt out alone was enough to discount -- and again, with respect, Your Honor, but the -- the -- the conclusion of surprise.  And that's -- that's also what Judge Tigar said in the last few months in the -- in the *Bonhomme* case.

So, you know, I want to talk about *Pandolfi*, because, you know, I think Your Honor also recognized in *Pandolfi* that the opt out made the *Pandolfi* -- the *AviaGames*, I should say, arbitration --

THE COURT:  I'm sorry.  Say that again.

MR. PARASHARAMI:  Oh, I'm sorry.  I -- in *Pandolfi*, Your Honor recognized that the *AviaGames* arbitration clause at issue was not adhesive because of the opt out.  You -- you did cite *Mohamed*.  You went on to say that there were aspects of -- of the -- of the *AviaGames* provision that Your Honor found to be surprising, mainly that -- that the clauses -- that there was a delegation clause, which is not present here, and that the clause in the opt out were in barely readable light gray text with no emphasis, like bolding or underlining, and that the delegation clause didn't even have a separate heading or title.  There were lots of problems Your Honor found.  None of those are present here.

I want to talk about *Pandolfi*.  *Pandolfi* didn't -- what was fascinating, actually -- and, again, this goes to the

point that it was an unpublished memorandum disposition written for the parties, maybe not for broader precedence.  It -- you know, it is a little bit surprising, but maybe understandable given the nature of that decision, the short five-page opinion, that it didn't mention the *Mohamed* case at all, and it didn't mention the opt out provision at all.  And, you know, we -- unlike *Pandolfi*, nonprecedential, *Mohamed* is a controlling decision of the Ninth Circuit.  So I -- I want to emphasize that.

But the one thing that *Pandolfi* pointed to -- well, I should -- let me -- let me split up *Pandolfi*.

As Your Honor knows, there was a delegation clause -- and I know in the last argument there was discussion of delegation, too, so this is familiar territory.  But in the -- in the *AviaGames* provision, there was a delegation clause.  And so like Your Honor, the Ninth Circuit first looked at is the delegation itself unconscionable and had some reasons that the delegation was unconscionable.  Of course, there's no delegation clause here, so that's not relevant --

THE COURT:  No.  What the --

MR. PARASHARAMI:  -- to this.

THE COURT:  What the Ninth Circuit said, besides the delegation clause, there's a modest degree of procedural unconscionability because it incorporates AAA rules that are subject to change citing *Heckman*.

UNITED STATES DISTRICT COURT

MR. PARASHARAMI:  Yes.  Let's talk about that, because I think that that is the -- the crux of the issue.

Now, one -- one pretty important point to make about -- about that is that the plaintiffs here didn't argue that.  Didn't argue that at all, so that argument is waived.  And I think that's fairly important, and I think that alone disposes of the -- of this -- of this argument.  But let's say it hadn't been waived.  The problem in -- in *Pandolfi* citing the *Heckman* case and citing the *Harper* case was that there was something substantively unfair about the incorporated arbitration rules.

The -- so *Heckman* involved -- and I know Your Honor is familiar with *Heckman* -- this novel arbitration organization called New Era.  And New Era, you know, the Ninth Circuit hastened to say in *Heckman*, was totally different from the American Arbitration Association or JAMS.  And there were many unfair provisions that were unexpected that were in the New Era rules, including a precedential bellwether that had preclusive effect.

In -- in *Harper*, one of the problems was that these Better Business Bureau roles that were at issue were not ordinary rules of procedure.  They were not like AAA rules.  They had substantive restrictions on tort claims, and they barred punitive damages.  That's not something you would expect to see in a rule of arbitral procedure.  That was what made

10

them, you know, troubling with respect to procedural unconscionability.

And the same is true in *Pandolfi*, that --

THE COURT:  So -- so the panel was wrong here by citing *Heckman* solely for the proposition that the -- the incorporation of AAA rules that are subject to change introduce a, quote, modest degree of procedural unconscionability wholly apart from this New -- New Era stuff?

MR. PARASHARAMI:  Yeah, I think -- I think in making that statement it has to be understood in context.  And this is where I think, you know, the -- and I -- I'm not saying this to be critical of the -- of the panel, but, you know, one can take too much out of an unpublished memorandum dis- -- disposition where this is a brief phrase in a sentence.  And it -- and I guess what I'd say is can't be -- that can't be squared with precedent.  There is a -- do you have a copy of it?

There is a California Supreme Court case cited in our briefs called *Baltazar vs. Forever 21*.  I'll spell Baltazar. B-A-L-T-A-Z-A-R.  And the citation to that is 367 P.3d 6, California Supreme Court, 2016, cited in our briefs for -- for a related but distinct point.  And here is what -- and I think it's worth just discussing this, because, you know, *Baltazar's* also not cited in the memorandum disposition.

*Baltazar* argues that a somewhat greater degree -- you know, do we have a copy of it?

If it's okay, I might hand it up with highlighting just so, you know --

THE COURT:  What's the proposition you're trying to establish?

MR. PARASHARAMI:  Sure.  Okay.  That -- that the long and short of it is that -- that *Baltazar* says that the *Harper vs. Ultimo* line of cases -- *Harper* is the case cited in *Heckman* -- is limited to the situation where there was something substantively unfair about the incorporated arbitration rules.  And this is at pages -- this is 367 P.3d at 11 to 12.  This case -- you know, 11 -- I should say, actually -- I'm sorry.  It's -- it's a -- I'm looking at 11 to 13, if I'm reading the -- the star pages right.

And I just want to hit what -- what the Court said. The Court -- the California Supreme Court said that, true, quote, numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability.

But then the Court rejects this argument in the context of the American Arbitration Association's rules for employment disputes.  And what the Court says is, but in the case -- in those cases, quote, the plaintiff's unconscionability claim depended in some manner on the arbitration rules in question.  These cases, thus, stand for the proposition the courts will more closely scrutinize the

substantive unconscionability of terms that were, quote, artfully hidden by the simple expedient of incorporating them by reference rather than including them or attaching them in -- in the -- to the arbitration agreement. *Baltazar's* argument, accordingly, might have forced if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules. Her challenge concerns only matters that were contrarily delineated in the agreement she signed.

And so I think what -- what I -- I'd like to -- I mean, there is a way to harmonize the -- you know, again, this relatively brief opinion with Baltazar. And I think the way in which I would do it is to explain that -- you know, as Your Honor knows, in *Pandolfi* one of the arguments that was made, and it was also made in the Court of Appeals, was that there were these mass arbitration rules that according to -- to *AviaGames* changed the dynamics of how a delegation would work. You know -- and, you know, this may be -- I know this was a while ago, but -- but, you know, I also know this is a case that Your Honor is deeply familiar with. I -- when -- and I recently read your -- your opinions in it again.

You -- you talked about -- Your Honor talked about and -- and the Ninth Circuit talked briefly about the -- the

argument that *AviaGames* made that the subsequent introduction of the mass arbitration rules transformed the way in which the delegation would work so that now the question of enforceability of the arbitration agreement would go to a process arbitrator rather than to many, many different arbitrators.

Ultimately, the Ninth Circuit rejected that on the substance. But to the point on procedural unconscionability, it was the fact of this change that was relevant. And that's the only way to harmonize the brief statements made in the memorandum disposition by the Ninth Circuit yesterday with -- with what the -- the binding on state law California Supreme Court decision in *Baltazar* says.

Also, I think it's probably worth saying --

THE COURT: Yeah, but the question here is, is there a modicum, a modicum of procedural unconstitution [sic]? That much is clear. You don't have to have a whole lot because of the sliding scale.

In my view, this thing is a whole, whole, whole lot of substantive unconscionability. So, in my view, whether I'm right or wrong, you just need a modicum --

MR. PARASHARAMI: So --

THE COURT: So hold on.

MR. PARASHARAMI: I'm sorry, Your Honor.

THE COURT: And there's no delegation clause here;

right?

MR. PARASHARAMI:  Yeah.

THE COURT:  So we don't have to worry about whether the delegation clause is procedurally unconscionable.  We have to find some modicum of something unconscionable here.

I'm going to turn to your opponent and ask you:  In view of the opt-out clause, what argument do you have of procedural unconscionability?

There's no delegation clause, no screening surprise by delegation.  There's a pretty clear opt-out clause.  I don't think you would say this is not conspicuous.  The opt out clause is in a box in bold.

So what are we left with?  Where -- where does -- where do you find some degree, a modicum, of procedural unconscionability?

MR. ELLERSICK:  Right.  So, Your Honor, we -- as the Court's aware, you can get to procedural unconscionability in two ways; through showing oppression and surprise.

My understanding and my reading of *Mohamed* is it goes to the oppression element, and this ability to opt out goes to oppression.  We don't think that -- I don't -- I don't read *Mohamed* as restrictively, that if there's an opt-out, that's the end of the story.  I think *Mohamed* is, you know, applying California law.  Under California law, there has to be a meaningful opportunity to opt out.  And we just don't think

15

that there was a meaningful opportunity here for a couple of reasons:

One, looking at the *Gentry* case, which I know the Court's familiar with, that -- that case says that where -- even when there is an opt-out, if the -- there's not an adequate explanation about the detrimental aspects of proceeding -- proceeding in arbitration and combined with some element of pressure, that even when there's an opt-out, there's still going to be an element of oppression or procedural unconscionability.

And we think that that's -- that's the case here, because, yes, there's a description of -- of -- of the process, but we think that a -- you know, a reasonable consumer who's reading this wouldn't be able to piece together that by entering into this arbitration agreement, what they're signing up for is basically no arbitration at all.  Because under the -- under the terms of the arbitration, virtually everybody just goes to the sidelines and waits for these small batches to proceed through the process.

So we don't think there's an adequate explanation that, hey, what you're really signing up for is to sit on the sidelines while small groups of people proceed through arbitrations that will take much longer than the 120 days that we suggest in the arbitration agreement.

So that's -- that's one piece.

16

And then we think just the context of doing your taxes online. These are folks that are doing their own taxes. They don't have some accountant who's doing it for them. There's an element of pressure there. You're -- you're logging in to -- you know, to do your taxes. You just want to get your taxes done so you don't have to face government penalties. And so you're more inclined to just click the box and move through it rather than delay things. And so --

THE COURT: You think there's some inherent pressure in this -- in this particular situation?

MR. ELLERSICK: We think --

THE COURT: It's not like --

MR. ELLERSICK: -- there is.

THE COURT: -- buying --

MR. ELLERSICK: It's not buying a pair of shoes or -- right? And so we think that puts it into the -- the context of the framework of *Gentry*.

But the other reason we think, Your Honor, that there's still oppression here, despite the opt out, is that even if you opt out, you are still bound by any prior arbitration agreement.

And so in this case, for example, if Mr. Rios or Mr. Marquez had agreed to the 2021 arbitration agreement and then they go to file their taxes in 2022 and they say, you know what, I'm going to opt-out this year, what they're really doing

is just defaulting to the prior arbitration agreement.

And so I -- I don't know -- I don't really understand what -- what they're opting out of in that instance.  It seems to me it's an illusory -- an illusory promise.  Yes, you're opting out of 2022, but now you're bound by 2021, which is this same arbitration agreement.

THE COURT:  Does that have --

MR. ELLERSICK:  So --

THE COURT:  Does 2021 have the stacking?

MR. ELLERSICK:  Yes.  But even if it didn't, they're still not going to court because they'd still be bound by arbitration.

So for those two reasons, Your Honor, we think that there's still oppression.

And on top of that, we --

THE COURT:  But you're saying that the -- the substance -- substantively objectionable provision, which is the arbitration of similar claims in 11.6, is -- is going to apply whether you opt-out or not if you -- if you signed in the '21 agreement?

Is that what you're saying?

MR. ELLERSICK:  My understanding is that they instituted that provision in 2021, the -- this mass arbitration provision.  And so in 20- -- if -- if they had opted out in 2022, which they didn't, if they did, my -- my reading is that

18

they would just be bound by the 2021 agreement.  And so they're -- they're not going to court.  The bottom line is opting out --

THE COURT:  They're --

MR. ELLERSICK:  -- of the --

THE COURT:  -- not going to court, but are they at least going to go to arbitration, not have to wait a decade?

MR. ELLERSICK:  In -- in 2022 -- my understanding is they -- they put that provision in in 2021, so they would default to that provision.  So they would still be bound by this mass arbitration protocol.

THE COURT:  And in 2021, the prior agreement, was there an opt-out provision?

MR. ELLERSICK:  I believe there was, yes.

THE COURT:  Okay.  So at all times there was a chance to opt out of this stacking thing?

MR. ELLERSICK:  Yes.  Yes, but it -- and, again, it's -- in 2022, they -- the opportunity to opt out is really -- it's not an opportunity to opt out of anything, so it's illusory.

THE COURT:  Well, right.  But they would argue:  Well, okay.  You go back to 2021, but you had a chance to opt out in 2021.

You -- you had at least one chance to get out of all this stuff?

MR. ELLERSICK:  You had -- you had a chance, but, again, what are they really opting out of in 20- -- why even offer the agreement in 2022, or the opportunity?

I guess what we're saying, Your Honor, is it's -- unless they opt out the first time and every time, they're -- there's no ability to go to court on these claims.  And we think that's an illusory promise and that that -- that maintains this element of oppression despite *Mohamed*.

THE COURT:  So if you subscribe to this service, would you have to opt out every year, assuming this provision stays in here?

Is this an annual -- you have to sign one of these every time you --

MR. ELLERSICK:  That's my understanding.  Yes.

So that's the oppression element, Your Honor.  We -- we also believe that there's significant surprise under this agreement.

THE COURT:  Under *Gentry* or under some other element of surprise?

MR. ELLERSICK:  Well, I think we -- we cited some of the cases in our -- in our response, but the -- and -- and several reasons, several factors of surprise.

I think the main ones are that, again, no -- no reasonable consumer who's entering into this contract at the time of formation would understand that what they're really

signing up for is to sit on the sidelines -- that a 99 percent chance they're going to be sitting on the sidelines while some small batch of consumers arbitrate claims for much longer than the 120 days that's suggested in the agreement.

And so we just think you might read the arbitration agreement and say:  Oh, 120 days?  That doesn't sound so bad.

And so they agree to it.  And then when it comes time to actually arbitrate, it's:  Sorry, Mr. Rios.  You're not in the first batch, so you're going to have to hang out on the sidelines for we don't know how long.  And if you're not in the second batch, it's go going to be probably several years.

And so we think that that's a -- a significant element of surprise that's present.

THE COURT:  Okay.

MR. PARASHARAMI:  I'm -- Your Honor, I'm sure you can tell I'm dying to respond to these points and -- and that I hope you'll indulge me.  The -- there -- there are so many things to say.

I think to the extent that you heard about *Gentry*, *Mohamed* makes clear that reference to *Gentry* is -- is a mistake given Circuit precedent.  That is actually what happened in *Mohamed*, was that the Court -- and, again, with respect -- had looked at *Gentry*, had a reading of *Gentry*, and the Ninth Circuit said:  No.  Don't read it that way.  Our -- our precedent controls.

21

So -- so that's -- that's at a high level --

THE COURT:  What --

MR. PARASHARAMI:  -- response.

THE COURT:  -- about more specifically when you have a provision, a substantive provision that is contrary to what the normal expectations of consumers would be?

They say if they're -- if they're going to make an intelligent choice, say, yeah, an arbitration's not that bad, I'm not going to opt out, thinking, okay, an arbitration, it's quick.  The whole idea, that's the whole predicate of the FAA, fast, efficient, cheaper, quicker than court.

And then you find out, oh, I guess if I read a little further into this thing, I'd realize there's something about 120 days, but I'm not sure, you know, how it works.

But I -- I mean, this is different than just *Gentry*. This is --

MR. PARASHARAMI:  Oh --

THE COURT:  This is *Gentry* on steroids.

MR. PARASHARAMI:  Well, I -- I disagree with that, but --

THE COURT:  Well, I know you disagree with it, but --

MR. PARASHARAMI:  But --

THE COURT:  -- but humor me for a second.

MR. PARASHARAMI:  Yeah.

THE COURT:  What if I'm right?  Do you see -- do you

see a modicum -- do you see a modicum --

MR. PARASHARAMI:  No.

THE COURT:  -- or do you see absolutely zero?

MR. PARASHARAMI:  No --

THE COURT:  Zero?

MR. PARASHARAMI:  No procedural unconscionability --

THE COURT:  Okay.  Well --

MR. PARASHARAMI:  -- whatsoever --

THE COURT:  -- that's your view.

MR. PARASHARAMI:  -- because, A, of the opt out, and, B --

THE COURT:  But that begs the question -- I know there's an opt-out.  But if you don't intelligently know what you're opting out or in for, that's the point.

MR. PARASHARAMI:  So --

THE COURT:  And maybe *Gentry*'s not enough, but here you have something that says you may have to wait 12 years and sit on the sidelines before you get to -- get your arbitration chance.

MR. PARASHARAMI:  So it doesn't -- of course, two things:  One --

THE COURT:  What it's if 256 years or 156 years, as in -- as in some of the other cases I've had?  Do you think that's a modicum?  Would there be -- is there any point, any point that you could imagine where a modicum of procedural

23

unconscionability enters into the picture, or do you take the position no matter what, as long as you have an opt-out, I don't care if you have to wait a thousand years and you don't know it?

MR. PARASHARAMI:  Not if the contract clearly discloses it.  That -- that's what --

THE COURT:  "Clearly discloses."  Okay.  So then we have to look.  That's -- that's a qual- -- that's -- that's a factor.  Does it clearly disclose that?

MR. PARASHARAMI:  And -- and so I think -- I think Your Honor pointed out --

THE COURT:  How does it clearly disclose that here?

MR. PARASHARAMI:  It expressly says that -- that -- you know, that in this setting that there -- there may be delay.  And, of course, one can't --

THE COURT:  "May be delay."

MR. PARASHARAMI:  Yeah.  And I --

THE COURT:  "May."  That's -- that's a nice way of putting it.

MR. PARASHARAMI:  I --

THE COURT:  "May be delay."

MR. PARASHARAMI:  I appreciate Your Honor has a point of view about -- about this, and I'd like to talk about --

THE COURT:  I'm --

MR. PARASHARAMI:  -- some --

UNITED STATES DISTRICT COURT

ER-48

24

THE COURT:  -- just reading the contract.  Show me where it says "may be delayed."

MR. PARASHARAMI:  Yeah.  So, as Your Honor did observe, the opt out is in -- in a box in bold.  So Section 11.6 says:  You agree to this process even though it may delay the arbitration of your claim.

It -- it says that in black and white.  It's not hidden.  I -- I think --

THE COURT:  Yeah, but how long of a delay?

MR. PARASHARAMI:  It's hard to quantify it because one doesn't know how many claims will be brought.  And I think -- and, you know, I think ex ante, you know, one -- one can't say: Will there be 200 claims?  2,000 claims?

That's why it doesn't, you know, quantify it in terms of -- of -- of years.

I think it's also worth just stepping back, Your Honor, and saying that the norm of arbitration is not this mass arbitration approach that -- that, you know, my -- my colleague on the other side and other law firms bring.  That the norm of arbitration is individual dispute resolution.  And, you know, I don't think that it's fair to say --

THE COURT:  How many -- do you know?  Can you tell me how many individual arbitrations have taken place with your client over people who are unhappy with the product?

MR. PARASHARAMI:  No, I don't have a number.  But I

UNITED STATES DISTRICT COURT

25

can tell you --

THE COURT:  Do you have any idea?

MR. PARASHARAMI:  -- that that is the norm.

Maybe one thing worth talking about when it comes to the substance is to say that, you know, as -- as -- you know, we -- we did not introduce the existence of other mass arbitrations but --

THE COURT:  Well, but you just said the norm --

MR. PARASHARAMI:  I'm saying --

THE COURT:  You just did in your argument:  You said, "the norm is."

And I'm asking you:  What's the norm?  How often does this happen, individual non-aggregative people invoking arbitration against your client --

MR. PARASHARAMI:  I don't --

THE COURT:  -- on a product claim?

MR. PARASHARAMI:  Yeah.  I don't know the number.  I think it is common.

Recall, also, that we have a pre-arbitration dispute resolution process that is routinely used.  And it happens with frequency.  I -- you know, I could tell you that.  I -- I don't think that the norm of arbitration is this mass arbitration approach.  And I -- there -- and I do want to talk about some of the significant problems.

But before -- you know, before leaving procedural

UNITED STATES DISTRICT COURT

ER-50

unconscionability, can I hit a couple of things that were said that I think just, you know, need to be clarified.

One was this idea that -- that filing your taxes creates some sort of undue pressure. Factually, that's just not true with respect to these plaintiffs. There -- there was not some emergency deadline. They agreed to this online services agreement in January 2024, which is months before the April 15th tax deadline. And really more important than that, let's say they'd agreed on April 13th or 14th, they have 30 days to opt out. And as Your Honor noted, the opt out is clearly disclosed. So they were not under some time -- ticking time pressure to opt out.

The -- you know, my friend on the other side talked about how folks would have to opt out routinely. Well, this is a annual agreement. People file their taxes every year. Unsurprisingly, they're presented with a screen to accept the terms each year. And it has been held, you know, in -- I think Your Honor actually had reached a similar conclusion in the *Capriole vs. Uber* case where a driver who opted out of a 2020 version of the agreement was required to opt -- to arbitrate under an earlier 2015 version of the agreement.

But in another Uber case called *Singh vs. Uber*, the Third Circuit last year held, relying on *Mohamed*, that there's nothing illusory about asking folks to opt out as -- as new agreements emerge again.

UNITED STATES DISTRICT COURT

ER-51

27

Here it's -- it's typically once a year.  Both of these plaintiffs here could have opted out what Your Honor has referred to as the stacking, the -- the -- the staged bellwether process.  Each of them first became H&R Block customers in 2017.  And what -- you know, I think it would be one thing if they had ever tried to opt out and, you know, then we could have this -- maybe a more concrete discussion about illusoriness in that context.  But that's not what happened here.  They've never tried to opt out.  There's no evidence of that.

And -- and I do think that while I understand that there -- there is, you know, an eagerness to get to the substance, that is not how unconscionability doctrine works. And I do think that *Mohamed* makes clear -- and, again, just -- just this year in the case *Bonhomme vs. Uber*, Judge Tigar took a look at this.  You know, I sort of commend that case to the Court, because the Court looked at New York law and California law.  And what the Court said was that in New York, it is true that certain -- that -- that there could be so great substantive unconscionability that the absence of procedural unconscionability didn't matter.  But then the Court said:  But I've looked in -- Judge Tigar said:  I've looked and cannot find a case in California that says that.

And so, you know, I -- I think that that, you know, is -- is significant here.  And I -- and I do think that the

UNITED STATES DISTRICT COURT

ER-52

answer is that there may be other doctrines, none of which have been raised in this case. Maybe they'd be raised in another case. There are other doctrines of violations of public policy or illegality that might resolve a concern where there are extreme aspects of a contract. You know, it would have to be applied generally, but a contract law as whether it's generally applicable to -- to arbitration or other things. But -- but, in any event, a -- sort of a -- something that is so extreme that it would violate --

THE COURT: All right.

MR. PARASHARAMI: -- public policy.

THE COURT: Let me ask you to comment on these three cases; Judge Pitts, Judge Tigar, cases looking at New York, Pennsylvania law suggesting that there's no procedural unconscionability and, therefore, you don't even get to first base.

MR. ELLERSICK: Right. So if I could take the Judge Pitts' decision first, Your Honor. We obviously looked very closely at that, because we have a lot of respect for Judge Pitts. It's the same arbitration agreement.

It's interesting that -- the briefing in that case, Your Honor, is pretty bare bones, and it didn't -- it didn't look to me like they made a very substantial effort or really put forth -- put forth much in the record by way of the procedural unconscionability. Basically, all they said is

UNITED STATES DISTRICT COURT

said:  Hey, this is a contract of adhesion, therefore, procedural unconscionability.

And as I read Judge Pitts' decision, he kind of, you know -- maybe I'm reading into it, but he sort of laments: Hey, this is all they put forward, and that's just not enough to -- to get us through.

I think in this case, we've put a lot more forward. You know, I don't need to repeat it, but, again, we've really focused on both of these elements of oppression and surprise, which Judge Pitts' decision does not address.  He basically says:  Look, here's *Mohamed*.  You know, plaintiffs haven't put forward anything else, so, you know, I have to go with this.

Here we've put forward a lot -- a lot more.  And so --

THE COURT:  What about Judge Tigar's case?

MR. ELLERSICK:  Judge Tigar's case -- and, I'm sorry. Is that the -- which case is that?  I'm sorry.

MR. PARASHARAMI:  *Bonhomme*, B-O-N-H-O-M-M-E.

THE COURT:  *Bonhomme*.

MR. ELLERSICK:  Judge, all honesty, I don't know that I'm familiar with the -- the *Bonhomme* case.

THE COURT:  Okay.  Then tell me what's left after *Mohamed* of the *Gentry* argument, the fully informed.

MR. ELLERSICK:  Yeah, I -- I don't -- I don't read those cases as inconsistent with each other.  I -- I understand, you know, counsel's argument that, you know,

*Mohamed* is controlling because it's Ninth Circuit precedent. But as I understand it, again, *Mohamed* is applying, you know, California law. There have been -- there's been a lot of water under the bridge since *Mohamed* from the California courts. Again, looking at this issue of is an opt-out the end all be all, and they say that it's not.

And so I -- I don't think *Mohamed* -- you know, you could read it very, very narrowly and say that it -- it says opt-out, end of story. But I read *Mohamed* as just applying California law at that time, which says opt-out with a meaningful choice, and it -- you know, an authentic, informed choice to opt out. And that just was not present here for the reasons we've discussed.

THE COURT: What's your best post-*Mohamed* California case that you think --

MR. ELLERSICK: Well, the most recent one, and I think it's an unpublished Court of Appeal decision, but it's cited in our response, I think it's *Booker v.* -- yeah, *Booker v. Charter Communications*. It's at page 14 of our opposition. But that -- that basically collects a series of cases. I think it also cites *Mohamed* and says -- reiterates the point that an opt-out mechanism doesn't necessarily render an agreement nonadhesive, so...

THE COURT: All right.

MR. PARASHARAMI: Just on -- just on *Booker*, Your

Honor, I -- my recollection of *Booker* is that it relies on *Gentry*. A number of the cases that they cite rely on *Gentry*. And while -- while I understand the California state courts -- state intermediate appellate courts can -- can make their own judgments about California law, I -- as I understand it, this Court is bound by the Ninth Circuit's reading of California law absent some extremely clear change from the California Supreme Court. And my recollection was that this Court, and I believe in good faith, looked at *Gentry* prior to the Ninth Circuit's decision in *Mohamed*, read California law a certain way. And, again, I think the Ninth Circuit was quite clear in saying that that was not the appropriate approach.

And so -- so I guess I -- you know, I think that if -- if *Booker* is their best case, that just tells -- that -- you know, and I think we said this in the brief, but I think they're asking for a do-over of -- of *Mohamed*, and that's not appropriate.

I do want to say, you know, just to -- you know, I talked about how the contract does disclose delay. It also says how many claims can be heard at a time. That 20 can be heard in the first set of arbitrations, then the next set is 50. And people can, you know, analyze those numbers in thinking about if they wanted to join some massive claim.

I -- you know, I -- I do understand that -- that the Court -- the Court -- you know, the Court has its view in

*Pandolfi*.  You know, Your Honor has been pretty clear about what you think about the -- the -- sort of the substance of the agreement, which is, you know, why I am -- am, you know, working to persuade Your Honor that consistent with *Mohamed* and clearer case law -- and, again, but we -- we have so far won every case on this issue for a reason, because the opt out is so clear -- that Your Honor should not break with those cases.

But I -- but I do want to address substantive unconscionability and kind of what's going on in this case.

You know, I know that Your Honor said in Footnote 4 of your *Pandolfi* decision you emphasize that your analysis of the bellwether provision there should not be viewed as a general condemnation of case management strategies for mass arbitration.  And I guess I want to underscore there's a need for these strategies.  In analyzing substantive unconscionability, California courts have underscored the need to understand the, quote, commercial setting, unquote, of the challenge provisions, which is relevant to unconscionability. Commercial setting is in California Civil Code 1670.5.

And this setting is significant.  There -- there is documented evidence of the real-world abuse of mass arbitration that these provisions that are being challenged are designed to address.  And it turns out that the record in this case demonstrates those abuses in spades.  I just want to highlight a few of these problems.

Both of the named plaintiffs were represented by multiple lawyers.  Over 600 claimants that my friends at Zimmerman Reed purport to represent, that's 23 percent of their group, have other lawyers.  This is -- you know, this problem of multiple representation is a complication that I don't think, you know, is -- is sort of consistent with the way that the law usually works.  And we've -- we've had a bunch of, you know, cases come up today.  People didn't show up with three different sets of lawyers all independently retained.  That's pretty shocking.

Now, we understand that Rios and Marquez after the filing of this lawsuit say they fired their other lawyers after we raised the issue, but that -- that is not, to our knowledge, true of the remaining, you know, about 600 individuals with -- with the same problem.

Now, putting that aside, what we know is that -- and this is in -- you know, we've put this into the record.  Our study shows that more than one in five of these claims are facially frivolous.  And why?  Because either 4 percent of them have never been H&R Block clients at all, which I think is -- should be troubling.  I find it troubling.  You know, I -- I --

THE COURT:  I mean, this happens in MDL stuff.  We hear about this all the time; mass tort cases, shopping for claims, et cetera, et cetera.  So there are many case management tools to deal with that other than bellwether

34

stacking, seems to me.

MR. PARASHARAMI:  Yeah, but I do think, with respect Your Honor, that's exactly what the -- what the MDL courts do. They set up bellwether trials.  If there are 2800 claims in an MDL, they do not get to go to trial all at once.  Most of them use the phrase, my friend on the other side, that sit back and wait and see what happens.  And then the judge typically, you know, orders some sort of mediation or some effort to try and reach a resolution based on information from the bellwethers. No one is forced to settle.  We don't force people to settle in the contract.  The federal judges have enormous power, but they can't force people to settle either.  And sometimes it happens; sometimes it doesn't.

Take -- there's that massive MDL in Florida.

THE COURT:  But, you see, in an MDL, you're limited by the resources available to the court.  The court can only try so many cases at a time.  The whole idea of arbitration is to bypass all that and to afford a quick and expedient way of resolving cases.  And if you get a lot of them, I mean, that's the way it goes.

MR. PARASHARAMI:  Well, but I think, then, Your Honor, if that were true, the bellwether provision isn't what matters. What matters is that anytime a plaintiff can -- a plaintiff's firm can amass large numbers of claims that are facially -- even if they're facially frivolous, it doesn't matter, because

UNITED STATES DISTRICT COURT

ER-59

on that view an arbitration clause is unenforceable every time there are lots of claims just because -- just like in trial court -- just like in courts, it breaks down the system.

You know, arbitral organizations are -- are terrific and -- and they do a great job, and yet their resources are limited. They cannot, you know, proceed with 50,000 cases, for example, at one time, just like courts can't. They can do it better, actually, and faster.

So, for example, the Milberg firm, which our friends on the other side brought evidence in that they've heard they're pursuing a mass arbitration, they are through -- they are through -- essentially through their first tranche of 20. The final hearing in that group was held yesterday, and a mediation with respect to that firm and the group it represents is set for September.

This -- these cases don't go on forever. Arbitration is faster than the courts, but it just can't work at kind of the light speed of, you know, every case everywhere all at once. It's not a thing that works in any --

THE COURT: All right. Let me --

MR. PARASHARAMI: -- system --

THE COURT: -- ask you --

MR. PARASHARAMI: -- adjudication.

THE COURT: Let me ask. The comparison of MDL situation where you have, you know, sometimes tens of thousands

36

of cases, isn't it common for those to be in a queue where you can't try them all?

So how is this any more disadvantageous than that.

MR. ELLERSICK:  Well, I think -- I think the Court -- I think you -- you hit the nail on the head, which is, you know, arbitration is supposed to be an efficient, fast, informal alternative to traditional litigation.  These are low-dollar claims.  This isn't some, you know, personal injury mass tort claim that's, you know, tens or hundreds of thousands or millions of dollars.  These are -- these are low-dollar claims.

And, you know, counsel frames it as, well, it's -- it's the law firm's ability to amass these number of clients. Well, that's really a function of the mass harm that's inflicted by their client.  H&R Block, which disclosed the tax information of thousands or potentially millions of people, well, that's a mass harm situation.  They can't go to court because of the arbitration agreement.

And so what do you do?  You try to go to arbitration, but you end up in this gridlock essentially where 99 percent of the people just have to sit on the sidelines.  They can't even file their claims.  It's not like an MDL, where you can file your claims, participate in the process.  Here they're just prevented from filing their claims at all, and it could be potentially for many years or decades.

UNITED STATES DISTRICT COURT

ER-61

And so we -- we just don't think that, you know, comparing low-dollar claims that are supposed to be resolved efficiently is a good comparison to the MDL process.

THE COURT:  Well, there's also -- there's also the notion this is the medicine your clients chose.  Many times claims like this, if it's not a mass tort claim with personal injuries, it's amenable to class action.

MR. PARASHARAMI:  Well, I think with respect that's --

THE COURT:  That's --

MR. PARASHARAMI:  -- that's --

THE COURT:  -- the whole purpose of class action.

MR. PARASHARAMI:  It's not.

THE COURT:  It's not just the benefit of the plaintiffs.  Theoretically, it should be a benefit to the defendants, too.

MR. PARASHARAMI:  I think that is the move that, with respect, I don't think the Court can make consistent with controlling precedent.  The Supreme Court has said that there -- there are --

THE COURT:  I know --

MR. PARASHARAMI:  -- concepts --

THE COURT:  -- but if you're going to be the one crying about this terrible consequence of mass arbitration -- what are we going to do?  We've got 2500 claims here.  You can only try them all at once.

UNITED STATES DISTRICT COURT

Well, that's what's different.  MDL, there's no choice.  There's nowhere else to go.  We have one court system. Here your clients have created an alternative system, and now they decide they don't like it.

MR. PARASHARAMI:  Well --

THE COURT:  I'm sorry.

MR. PARASHARAMI:  -- to be clear, we -- what we don't like is the abuse of the process.  And I think the abuse is rampant.  And not just --

THE COURT:  That's why courts are pretty good.

MR. PARASHARAMI:  Well --

THE COURT:  We have census forms.  We have all sorts of stuff being taught to everybody who's handling MDL cases. They're -- my colleagues are just as concerned about fraudulent claims and -- and -- because it --

MR. PARASHARAMI:  I --

THE COURT:  -- takes a toll on the courts, too.  And that's why the courts are particularly well equipped --

MR. PARASHARAMI:  Well --

THE COURT:  -- to -- to -- to deal with that.  And a class mechanism's a pretty good way of dealing with it, too.

MR. PARASHARAMI:  Well, look, Your Honor, I appreciate that -- that, you know, there -- there is a -- perhaps a -- you know, almost a institutional preference that may exist for courts.  But that's not what the Federal Arbitration Act says;

right?  So the Federal Arbitration Act surely authorizes parties to enter into individualized arbitration --

THE COURT:  Maybe.

MR. PARASHARAMI:  -- agreements.

THE COURT:  But maybe you disagree with the -- Judge Van Dyke's recent concurrence when he talks about how this -- this kind of patching of -- a batching of cases and all sort of stuff is -- is getting so far afield that this is not what the trip -- the FAA was intended to -- to address.

MR. PARASHARAMI:  Just if I may nip that in the bud, the -- the Court -- subsequently the Ninth Circuit said in *Jones vs. Stars* that what -- what that -- you know, that discussion of the -- of when -- when arbitration is not -- pardon -- the FAA is tied to is when there is preclusive effect, binding precedent created by bellwethers.

Judge Breyer, I think down the hall, right, recently held in the case *Cordero vs. Coinbase* that that is -- that -- that is also -- and we cite it in our brief, that's also what -- what -- the *Heckman* -- *Heckman* alternative holding means.  There is no doubt that *Heckman's* alternative holding does not apply here, that -- that argument.  I --

THE COURT:  I'm not saying that it was.  I'm just saying you -- in any event, we're getting far afield.

MR. PARASHARAMI:  Well --

THE COURT:  The question in this case, seems to me, is

40

what we've been talking about for the last hour, and that is, is there procedural -- some degree of procedural unconscionability here that's cognizable that then allows an inquiry into the substantive unconscionability question. That's the pivotal question, it seems to me.  And you've given me case cites, and I'll take it under submission.

Thank you.

MR. PARASHARAMI:  Thank you.

MR. ELLERSICK:  Thank you, Your Honor.

(Proceedings conclude at 3:19 p.m.)

---oOo---

UNITED STATES DISTRICT COURT

ER-65

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED this 16th day of September, 2025.


/s/Cathy J. Taylor
Cathy J. Taylor, RMR, CRR, CRC


UNITED STATES DISTRICT COURT

ER-66

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:    (415) 874-4230

*Attorneys for Defendants HRB Digital, LLC*
*and HRB Tax Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | **Case No. 3:25-cv-03530-EMC**<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF STACEY GILMAN IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:        August 28, 2025<br>Time:        1:30 P.M.<br>Location:   Courtroom 5, 17th Floor |

I, Stacey R. Gilman, declare as follows:

1.    I am a partner at Berkowitz Oliver LLP ("Berkowitz Oliver") and am an active member in good standing of the California bar, licensed to practice before this court.

2.    Berkowitz Oliver represents HRB Digital, LLC and HRB Tax Group, Inc. (collectively "H&R Block") in connection with claims asserted by claimants represented by Zimmerman Reed LLP ("Zimmerman Reed"). I am one of the lead attorneys for my firm involved in representing H&R Block with respect to these claims.

3.    Berkowitz Oliver also represents H&R Block in Informal Settlement Conferences under the H&R Block Online Services Agreement in connection with claims raising similar issues asserted by

1

claimants represented by other law firms, including Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg") and Korein Tillery, LLC and Zigler Law Group ("Korein/Zigler"). I am one of the lead attorneys for my firm involved in representing H&R Block with respect to these claims, and I have personally conducted many of those Informal Settlement Conferences.

4.    I have reviewed the Declaration of Ryan Ellersick [Dkt. 26] ("Ellersick Declaration" or "Ellersick Decl.") filed in the above-captioned case. The Ellersick Declaration is incomplete and, in some instances, misleading or inaccurate. I have addressed some of the notable issues below.

**A.    The Ellersick Declaration Asserts a False Narrative that "Plaintiffs Provided Pre-Filing Notices of Dispute to H&R Block, but H&R Block refused to Accept the Notices for Several Months." Ellersick Decl. § B.**

**1.    Zimmerman Reed's "Pre-Filing Letters" were not Valid Notices of Dispute**

5.    The Ellersick Declaration correctly states, "On September 20, 2024, Zimmerman Reed sent H&R Block a Pre-Filing Notice of Dispute Letter ('Pre-Filing Letter') via first class certified mail to H&R Block's Legal Department at the address designated in H&R Block's Online Services Agreement ('OSA')." Ellersick Decl. ¶ 16. The suggestion that this Letter was sent in a manner designated by and in compliance with the OSA, however, is incorrect and misleading.

6.    To the contrary, Section 11.2 of the OSA (*see*, *e.g.*, Ex. 4 to the Declaration of Valerie Schuessler) expressly requires, among other things, that "a party who intends to seek arbitration must first mail a written Notice of Dispute to the other party. . . . [which] must be on an individual basis and include" individualized information about the claimant and their claim.

7.    Zimmerman's "Pre-Filing Letter" was not sent on an individual basis and purported to describe and assert claims in aggregate on behalf of 2,481 claimants.[1]

8.    Although the letter said that the claimants were "identified in Exhibit A" to that letter, the Exhibit A enclosed with the letter was not a set of mailed, individualized written notices with the individualized information required. In fact, Exhibit A did not contain any substantive (let alone individualized) identification of the claimants or their claims. Instead, it consisted solely of two lines of

---

[1] Although the first letter stated that Zimmerman Reed had 2,481 claimants, the actual number of claimants later identified were 2,478 claimants.

<div align="center">2</div>

text, directing the recipient to "click the following ShareFile Link," which was a typed out url on the hardcopy letter.

9. Zimmerman sent a "second Pre-Filing Notice of Dispute Letter . . . on behalf of an additional 166 claimants," as referenced in paragraph 14 of the Ellersick Declaration. This second letter similarly was not sent on an individual basis and purported to assert aggregate claims in the same, deficient manner as the first letter.

**2.    H&R Block Promptly Explained the Deficiencies in Zimmerman Reed's Letters, While Simultaneously Attempting to Move the Claims Forward Through the Parties' Agreed Informal Settlement Conference Process**

10. In response to the letters, H&R Block did not act to delay matters, as the Ellersick Declaration suggests. The letters between H&R Block and Zimmerman Reed dated between October 17, 2024 and December 6, 2024, are attached as Exhibits 8-13 to the Ellersick Declaration and speak for themselves.

11. In particular, the Ellersick Declaration claims there was never a timely request for Informal Settlement Conferences (Ellersick Decl. ¶ 26), but the correspondence refutes that contention. Both of Zimmerman Reed's Pre-filing Letters expressly acknowledged that Zimmerman Reed's claimants anticipated engaging in the Informal Settlement Conference process, requesting that H&R Block provide enumerated categories of documents and ESI "in anticipation of the Informal Settlement Conference." *See* Ellersick Decl. Exs. 3, 7. Zimmerman Reed also provided consent forms that purported to authorize H&R Block to share the claimants' tax information with Zimmerman Reed so that Zimmerman Reed could participate in the Informal Settlement Conferences. *See* Ellersick Decl. Ex. 5.

12. From the outset, H&R Block also anticipated that Informal Settlement Conferences would take place. *See* Ellersick Decl. Exs. 8, 10. But H&R Block repeatedly informed Zimmerman Reed that the consent forms Zimmerman Reed had provided did not satisfy the federally-imposed IRS requirements for such an authorization. *See* Ellersick Decl. Exs. 10, 12; *see also* 26 U.S.C. § 7216, 26 C.F.R. §§ 301-7216-1, and Internal Revenue Procedure 2013-2014, section 5.04 (cited in Ellersick Decl. Ex. 12).

13. To assist counsel, H&R Block enclosed with multiple letters a tax return information consent and authorization form that complies with the federally-imposed law. *See* Ellersick Decl. Exs. 8,

<div align="center">3</div>

10. H&R Block also offered that it could accept electronic signatures on the consents, if claimants preferred to sign them that way. *See id.* Ex. 10.

14.    Zimmerman Reed refused to move off of any of their prior positions concerning the Notices and consent forms and accused H&R Block of acting "in bad faith" by asking Zimmerman Reed to provide consent forms that met the requirements of federal law. While H&R Block disagreed with Zimmerman Reed's positions, in order to move things forward, H&R Block agreed to accept service of the Notices of Dispute for all of the 2,644 claimants despite their non-compliance. *See* Ellersick Ex. 12.

15.    In its correspondence, H&R Block told Zimmerman Reed that it would send responses to each claimant, including requests to schedule each claimant's Informal Settlement Conference. *See* Ellersick Ex. 12. H&R Block also noted that it had no objection to counsel's participation in the Conferences, and that it was not proposing to speak to any represented party without their counsel present. *Id.* H&R Block's correspondence also went on to once again explain that the form of authorization needed from each claimant was a product of 26 U.S.C. § 7216, 26 C.F.R. §§ 301-7216-1, and Internal Revenue Procedure 2013-2014, section 5.04—and not a matter of H&R Block preference. *Id.*

16.    Thereafter, H&R Block sent individual responses to each claimant, which confirmed H&R Block's request for an Informal Settlement Conference with them. Those responses set out an easy process for each claimant to engage in the Informal Settlement Conference process, including offering to hold their conference by telephone or videoconference and inviting the claimants to provide dates and times that would work for them so that the conferences could be scheduled at their convenience.

17.    Rather than responding and moving forward with the settlement conferences, however, Zimmerman Reed sent a letter to H&R Block informing it, contrary to all of its prior correspondence, that it had bypassed the step of the Informal Settlement Conferences altogether and instead submitted individual arbitration demands to the American Arbitration Association ("AAA") pursuant to the AAA's Mass Arbitration Supplementary Rules.

4

DECLARATION OF STACEY R. GILMAN
Case No. 3:25-cv-03530-EMC

**B.** **Despite Zimmerman Reed's Decision Not to Comply with the OSA's Notice and Pre-Arbitration Dispute Resolution Process, H&R Block Continued to Act in Good Faith**

    **1.** **H&R Block Put Zimmerman Reed on Notice of Issues with the Claimants for Whom it is Pursuing Claims, and Encouraged the Firm to Cooperate in the Parties' Efficient, Agreed-Upon Individualized Resolution Process**

18. Even after they had disregarded the OSA's requirements, my firm reached out to Zimmerman Reed on H&R Block's behalf and convened a call with them on December 19, 2024. During the call, Berkowitz Oliver explained the benefits and reasons for the OSA's dispute resolution process, the ease of that process and its speed (which claimants and their counsel generally control), and H&R Block's willingness to schedule and proceed with the conferences as quickly as claimants and their counsel could make themselves available to participate. As H&R Block's counsel, Berkowitz Oliver also addressed the attendant need for proper authorizations from the claimants to allow those discussions to be meaningful.

19. For example, Berkowitz Oliver shared that the pool of claimants Zimmerman Reed was representing (including some for whom they had already filed arbitration demands) included people who had not used H&R Block's online tax preparation service, and for that reason alone—and others—they could not truthfully assert the claims they were pursuing. Berkowitz Oliver also explained that the Informal Settlement Conference would be the appropriate forum for discussing such issues, and that the claimant's authorization is, thus, necessary to allow the discussion to occur with their counsel's participation.

20. Having shared that additional background, Berkowitz Oliver again asked that Zimmerman Reed agree to follow the process, but they declined.

21. On December 27, 2024, Zimmerman Reed sent a letter to my firm saying that they were going to proceed with the 25 arbitrations they had filed, even though by that point Zimmerman Reed was on notice that not all of their claimants could viably state the claims they were pursuing. Also, despite the prior position taken by Zimmerman Reed that the claimants would participate in the Informal Settlement Conference process, they continued to refuse H&R Block's requests to hold such conferences, instead proposing to conduct a global mediation of all of their claimants' claims.

<div align="center">5</div>

22. My firm responded to that letter on January 7, 2025. The January 7 letter reiterated, as had been shared by phone, that multiple of the claimants who had filed arbitrations could not truthfully state the claims they were asserting—in fact, the letter explained that 10 of the 25 claimants did not even use H&R Block's website to prepare their taxes in 2021 or 2022 as alleged in their arbitration demands. H&R Block's counsel also explained that such issues permeated the group of claimants Zimmerman Reed purported to represent, and expressed concerns that Zimmerman Reed had not conducted a reasonable investigation of its purported clients' claims.

23. The Ellersick Declaration omits to disclose its discussions and correspondence with my firm, which—together with H&R Block's earlier direct efforts to obtain valid consents and convene Informal Settlement Conferences—provides important context for the Ellersick Declaration's current complaints that H&R Block should have disclosed information to Zimmerman Reed sooner about the claimants it represents. *See, e.g.,* Ellersick Decl. §§ A and E.

24. As this record shows, Zimmerman Reed was expressly (and repeatedly) told that its claimant pool was deficient and also reminded that it had the duty to investigate the claims it was asserting. The record also shows that Zimmerman Reed prevented H&R Block from sharing individualized information, because counsel refused to provide the federally-required authorizations necessary to share such information and refused to participate in the Informal Settlement Conference process where such information could have been shared.

**2. Despite All of H&R Block's Efforts, Zimmerman Reed Persisted on Its Course.**

25. On January 7, the same day my firm emailed its letter, Zimmerman Reed filed five additional AAA arbitration demands. By ten days later, Zimmerman Reed still had not withdrawn any of the claims, had not placed them in abeyance, and showed no signs that it was investigating the serious issues H&R Block had raised concerning the claims its purported clients were asserting.

26. On January 17, 2025, my partner, Tony Durone, and I spoke with Ryan Ellersick and Hart Robinovitch of Zimmerman Reed. In response to their earlier mediation proposal (and given the continued refusal to participate in Informal Settlement Conferences), we told them that H&R Block would be open to using a mediator to facilitate settlement discussions. We invited them to propose a mediator, and again asked that they withdraw the 30 pending arbitrations filed in violation of the parties' agreement.

6

DECLARATION OF STACEY R. GILMAN
Case No. 3:25-cv-03530-EMC

ER-72

27. On January 28, 2025, the parties scheduled a mediation for March 11, 2025, through JAMS. The mediator, date, and format for the mediation all were selected by mutual agreement.

28. The parties conducted their mediation on March 11, 2025, as scheduled. The parties were unsuccessful in resolving their claims.

29. In the following days, the parties continued to discuss their respective positions, with Zimmerman Reed still refusing to participate in the Informal Settlement Conference process. Zimmerman Reed also sought to place the burden on H&R Block to identify which of Zimmerman Reed's claimants could not truthfully assert their claims, requesting (still without providing legally-compliant requests) that H&R Block give them confidential and sensitive information about their purported clients.

30. On April 17, 2025, Zimmerman Reed emailed Berkowitz Oliver notifying the firm of its intent to pursue arbitration claims and file a class action.

31. On April 22, 2025, Zimmerman Reed filed this case in the Northern District of California.

32. On or around May 12, 2025, Zimmerman Reed, which had dismissed its original 30 arbitration demands while the parties mediated, refiled 25 of those 30 prior arbitration demands.

**C.    Informal Settlement Conferences In Connection With Similar Claims Asserted By Claimants Represented By Other Law Firms.**

33. As noted in paragraph 3 above, Berkowitz Oliver represents H&R Block in Informal Settlement Conferences under the H&R Block Online Services Agreement in connection with claims raising similar issues asserted on behalf of claimants represented by other law firms, including the Milberg and Korein/Zigler law firms, and I have personally conducted many of these conferences.

34. H&R Block always schedules these Informal Settlement Conferences through claimants' counsel and at times that claimants' counsel has indicated will work for both them and their clients. In every single one of these conducted Informal Settlement Conferences, counsel for both H&R Block and the claimant have been present.

<div align="center">7</div>

DECLARATION OF STACEY R. GILMAN
Case No. 3:25-cv-03530-EMC

<div align="right">ER-73</div>

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 15, 2025

_____
Stacey R. Gilman

8

ER-74

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:     (415) 874-4230

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF GREGORY E. OSTFELD IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:        August 28, 2025<br>Time:        1:30 P.M.<br>Location:   Courtroom 5, 17th Floor |

I, Gregory E. Ostfeld, declare as follows:

1.      I am an attorney licensed to practice law in the State of Illinois.

2.      I am a shareholder in the law firm of Greenberg Traurig, LLP ("Greenberg").

3.      Greenberg represents HRB Digital, LLC and HRB Tax Group, Inc. (collectively, "H&R Block") in arbitrations commenced by claimants represented by: Zimmerman Reed LLP (the "Zimmerman Arbitrations"); Milberg Coleman Bryson Phillips Grossman, LLC (the "Milberg

OSTFELD DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION;
CASE NO. 3:25-CV-03530-EMC

ER-75

Arbitrations"); and Korein Tillery, LLC and Zigler Law Group (the "Korein/Zigler Arbitrations"). I am one of the lead attorneys for H&R Block in these arbitrations.

4.    I have reviewed: the Declaration of Ryan Ellersick [Dkt. 26] ("Ellersick Declaration" or "Ellersick Decl.") regarding the Zimmerman Arbitrations; the Declaration of Scott J. Falgoust [Dkt. 29] ("Falgoust Declaration" or "Falgoust Decl.") regarding the Milberg Arbitrations; and the Declaration of Stephen M. Tillery [Dkt. 30] ("Tillery Declaration" or "Tillery Decl.") regarding the Korein/Zigler Arbitrations.

5.    The Ellersick Declaration, Falgoust Declaration, and Tillery Declaration are incomplete and, in some instances inaccurate. I will address each Declaration and each set of arbitration proceedings in turn.

### The Zimmerman Arbitrations and the Ellersick Declaration

6.    Much of the Ellersick Declaration pertains to events occurring prior to the commencement of the Zimmerman Arbitrations, and will be addressed separately in the declaration of Stacey Gilman. I will address the portions of the Ellersick Declaration pertaining to the commencement of the Zimmerman Arbitrations (Ellersick Decl. ¶¶ 27-28) and to the arbitration proceedings Mr. Ellersick references in his declaration, but in which Zimmerman Reed ("Zimmerman") and Mr. Ellersick are not involved (*id*. ¶¶ 38-41).

7.    Mr. Ellersick states that, "To date, AAA has not appointed merits arbitrators to adjudicate the claims" filed by Zimmerman in April 2025. (*Id*. ¶ 27).

8.    The Ellersick Declaration omits that the parties participated in an Administrative Conference Call with the AAA on July 24, 2025, during which the parties agreed on the arbitrator selection process and the AAA case administrator confirmed the AAA would begin issuing arbitrator lists as provided by the OSA's arbitrator list selection process.

9.    Mr. Ellersick further states: "Evidence from other law firms litigating privacy disputes against H&R Block demonstrates that arbitrations are taking much longer than 120 days. For example, Korein Tillery filed 10 arbitration demands in October 2024, but not a single case has advanced to an arbitration hearing. [citing Tillery Decl. ¶¶ 3-4] Similarly, Milberg is still in the

process of litigating the initial batch of 20 arbitration demands filed in February 2024. [citing Falgoust Decl. ¶¶ 3-4]." (Ellersick Decl. ¶ 38).

10.    For the reasons set out in paragraphs 116-36 and 37-52 of this declaration, I disagree with Mr. Ellersick's characterization of the Falgoust Declaration and Tillery Declaration as "evidence" that arbitrations under the OSA take longer than the period of time encouraged by Section 11.6 of the OSA.

11.    Rather, the progression of the Milberg Arbitrations and the Korein/Zigler Arbitrations reflects the parties' and the arbitrators' efforts to address claimants' strategic views of their cases, the fact and expert discovery sought by claimants, the parties' good-faith efforts to engage in settlement discussions, and cooperation amongst the parties and arbitrators to reasonably accommodate the schedules of counsel, the witnesses, and the arbitrators. And, in the case of the Korein/Zigler Arbitrations, the Ellersick Declaration omits the fact that H&R Block expressly proposed to conduct hearings within 120 days of the appointment of each arbitrator, but claimants' counsel disagreed with that schedule and further sought to schedule hearings no earlier than late November 2025 due to the unavailability of claimants' lead trial counsel.

12.    Mr. Ellersick also references the case of *Caimano v. H&R Block*, 23-cv-03272-JHS, which was compelled to arbitration, and states that the plaintiffs compelled to arbitration in that case "had not completed their individual arbitrations as of June 10, 2025, despite filing their demands on August 1, 2024." (Ellersick Decl. ¶¶ 39-41). That is incomplete and inaccurate.

13.    Greenberg represents H&R Block in the arbitrations filed by the plaintiffs in the *Caimano* case. I am one of the lead attorneys for H&R Block in these arbitrations. Claimants' counsel in those cases filed arbitration demands on August 1, 2024, but then inquired as to H&R Block's willingness to engage in mediation prior to proceeding with arbitration.

14.    By agreement of the parties, both plaintiffs' arbitrations were placed in abeyance by the AAA and the parties proceeded to participate in the AAA's mediation pilot program. Initial mediations were held in each case and settlement discussions are continuing.

15.    As a result, both cases have been in abeyance since November 2024, arbitrators have not been appointed in either case, and the arbitrations have not proceeded.

3

**The Milberg Arbitrations and the Falgoust Declaration**

16.    Mr. Falgoust declares that in February 2024, "my firm filed Consumer Demands for Arbitration with the American Arbitration Association ('AAA') on behalf of 20 of our clients," and that "[a]s of the date of this declaration, my firm is still litigating that first stage of 20 claims filed with the AAA over 18 months ago, with an anticipated completion date of the first stage being no earlier than October 1, 2025." (Falgoust Decl. ¶¶ 3-4). These statements are inaccurate, misleading, or incomplete.

17.    Milberg Coleman Bryson Phillips Grossman, LLC ("Milberg") filed 10 claims with the AAA in February 2024 (the "First 10 Milberg Arbitrations"), not 20 claims as stated by Mr. Falgoust.

18.    Mr. Falgoust omits that H&R Block participated in a mediation with Milberg regarding the Milberg Arbitrations on December 11, 2023. Milberg waited approximately two months after that mediation was unsuccessful before filing the First 10 Milberg Arbitrations.

19.    Section 11.6 of the Online Services Agreement ("OSA") between each claimant and H&R Block states that, in a case like this where counsel represents 25 or more claimants seeking to file arbitrations with similar claims, the cases must be resolved in stages. In the first stage, each side selects 10 cases to be filed and resolved before additional cases are filed. Section 11.6 provides:

> 11.6 **Arbitration of similar claims**. If 25 or more claimants submit Notices or seek to file arbitrations raising similar claims and are represented by the same or coordinated counsel (regardless of whether the cases are submitted simultaneously), all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved during the Informal Resolution Period. You agree to this process even though it may delay the arbitration of your claim. ***In the first stage, each side shall select 10 cases (20 cases total) to be filed in arbitration*** and resolved individually by different arbitrators, with each case assigned to an arbitrator from the claimant's home state. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, assess or demand fees for, or administer arbitrations that are commenced in violation of this section. The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness. If the remaining cases are unable to be resolved after the conclusion of the first stage bellwether proceeding, each side shall select up to another 10 cases (20 cases total) to be filed in arbitration and resolved individually in accordance with this Arbitration Agreement. During this second stage, no other cases may be filed in arbitration. If any claims remain after the second stage, the process will be repeated until all claims are resolved through settlement or arbitration, with two alterations. First, a total of 50 cases may be filed each round (unless a higher number of cases is mutually agreed upon in writing). Second, arbitrators who were assigned cases in

4

previous rounds may be appointed to new cases. If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have authority to enforce this section 11.6, including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations.

OSA § 11.6 (emphasis added).

20. Promptly after receiving notice of claimants' demands in the First 10 Milberg Arbitrations, and in accordance with section 11.6 of the OSA, H&R Block notified Milberg by email correspondence of H&R Block's 10 selected claimants to proceed to arbitration from the pool of claimants represented by Milberg in which informal settlement conferences had already taken place.

21. Milberg responded by email on March 5, 2024, refusing to commence arbitration proceedings on behalf of the 10 claimants selected by H&R Block.

22. The AAA opened the First 10 Milberg Arbitrations beginning in February 2024, administered the arbitrator selection process in accordance with the terms of the OSA, and commenced each individual arbitration proceeding upon the selection of each arbitrator.

23. Milberg subsequently purported to file 25 additional claims with the AAA in June 2024 under the AAA's Mass Arbitration Supplementary Rules.

24. H&R Block timely objected to Milberg's purported commencement of 25 additional claims as inconsistent with Section 11.6 of the OSA, which provided for H&R Block to select the next 10 claimants to proceed to arbitration.

25. Nonetheless, H&R Block offered as a compromise to select its 10 claimants under Section 11.6 of the OSA from Milberg's 25 additional claimants, and for Milberg to withdraw the remaining 15 claimants' claims.

26. Claimants accepted H&R Block's compromise proposal and confirmed their agreement to the AAA in July 2024, resulting in AAA filing the next 10 claims in July 2024 (the "Second 10 Milberg Arbitrations").

27.    The AAA opened the Second 10 Milberg Arbitrations beginning in August 2024, administered the arbitrator selection process in accordance with the terms of the OSA, and commenced each individual arbitration proceeding upon the selection of each arbitrator.

28.    Counsel for Claimants and H&R Block have worked together and with the appointed arbitrators, cooperatively and professionally, to set hearings in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations with the goal of resolving the cases "within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness." OSA § 11.6.

29.    The final hearing dates in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have been scheduled by agreement of the parties and the arbitrators, and each continuance of a hearing date has been by agreement of the parties and the arbitrators. I cannot recall any instance where the parties and arbitrators were unable to reach agreement on a final hearing date or continuance during the course of either the First 10 Milberg Arbitrations or the Second 10 Milberg Arbitrations.

30.    Although the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have not been heard within 120 days of the appointment of arbitrators, they all have been heard "as swiftly as possible, consistent with principles of fundamental fairness," in light of the individual histories and proceedings in each case. These histories and proceedings are omitted from the Falgoust Declaration.

31.    For example, the Falgoust Declaration omits that claimants in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have made strategic choices with respect to their claims, fact discovery, and expert discovery that go beyond the ordinary process contemplated by the AAA's Consumer Arbitration Rules, and have argued that fundamental fairness required these departures from the ordinary course of a consumer arbitration proceeding. As a result of these strategic choices, claimants in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have sought, and in many instances received, extended discovery, re-opened discovery, prehearing motion practice, and the setting or extension of preliminary and final hearings more than 120 days after appointment of the arbitrator in each case.

32.     Among these strategic choices, claimants in some or all of the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations have: filed amended demands adding and/or amending allegations and claims; pursued written discovery and/or the production of document, data, and information outside of the ordinary exchange process contemplated by the AAA's Consumer Arbitration Rules; pursued expert discovery that necessitated preparation and disclosure of expert reports and rebuttal expert reports; sought additional discovery of electronically stored information; sought the issuance of third-party discovery subpoenas; sought the deposition of a corporate representative witness for H&R Block; sought the issuance of third-party hearing witness subpoenas; designated testifying expert witnesses that necessitated the designation of rebuttal expert witnesses; and sought to re-open discovery and third-party subpoenas in certain matters outside of the deadlines set by the arbitrator for the conclusion of all discovery.

33.     The Falgoust Declaration further omits that the First 10 Milberg Arbitrations were originally set for hearings starting in October 2024 and concluding by February 2025, but the parties mutually agreed to continue hearing dates based on the ongoing progression of the prehearing discovery and prehearing motion practice described above.

34.     The Falgoust Declaration also omits that, on multiple occasions, the parties mutually agreed to continue hearing dates in the First 10 Milberg Arbitrations and the Second 10 Milberg Arbitrations to accommodate the unanticipated unavailability of an arbitrator, counsel, or witness.

35.     The Falgoust Declaration additionally omits that, in February 2025, the parties mutually agreed to continue pending hearings to participate in voluntary mediation. This mutual agreement to pause scheduled arbitration hearings and to pursue settlement negotiations through mediation necessitated the rescheduling of several of the hearings.

36.     Through the date of this declaration, hearings or voluntary dismissals have concluded all but two of the First 10 Milberg Arbitrations and Second 10 Milberg Arbitrations. One of the two remaining matters has already been heard, and the other is scheduled for hearing on August 26-27, 2025. These two hearings were postponed due to witness availability issues in the first case and motion practice related to a request by claimant to re-open discovery in the second case.

**The Korein/Zigler Arbitrations and the Tillery Declaration**

37.     Mr. Tillery declares that in October 2024, "my firm filed Consumer Demands for Arbitration with the American Arbitration Association ('AAA') on behalf of 10 of our clients," and that "[a]s of the date of this declaration, with the exception of one claim that was voluntarily dismissed, all of these claims remain pending before the AAA, with four arbitration hearings scheduled for mid-to-late November 2025 to mid-January 2026 and the others anticipated to be scheduled for February 2026 or later." (Tillery Decl. ¶¶ 3-4).

38.     Mr. Tillery omits relevant information from the Tillery Declaration, including that claimants' counsel is primarily responsible for the timing of the hearing schedule described by Mr. Tillery. As detailed further below, H&R Block specifically proposed to hold hearings in all of the arbitrations referenced in the Tillery Declaration within 120 days of appointment of the arbitrator in each case, but claimants' counsel rejected H&R Block's proposal.  In doing so, claimants' counsel expressly took the position that the hearings could not be held within that time frame, insisted hearings not be set until late 2025 or early 2026, and then advised the arbitrators in each case that claimants' lead trial counsel was not available for final hearings during the entire month of October and the first half of November.

39.     Korein Tillery, LLC ("Korein") and Zigler Law Group ("Zigler") filed their 10 claims with the AAA in October 2024 (the "First 10 Korein/Zigler Arbitrations").

40.     The Tillery Declaration omits that, promptly after receiving notice of the First 10 Korein/Zigler Arbitrations, and in accordance with section 11.6 of the OSA, H&R Block notified Korein and Zigler by email correspondence in December 2024 of H&R Block's 10 selected claimants to proceed to arbitration from the pool of claimants represented by Korein and Zigler in which Informal Settlement Conferences had already taken place. Korein and Zigler did not file demands or commence arbitration proceedings on behalf of H&R Block's 10 selected claimants.

41.     In February 2025, H&R Block again sent its list of 10 selections to Korein and Zigler. Korein and Zigler again did not file demands or commence arbitration proceedings on behalf of H&R Block's 10 selected claimants.

8

OSTFELD DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION;
CASE NO. 3:25-CV-03530-EMC

ER-82

42.    The AAA opened the First 10 Korein/Zigler Arbitrations beginning in December 2024 and January 2025. The Tillery Declaration omits that there were multiple rounds of correspondence by claimants' counsel and H&R Block's counsel to the AAA in January and February 2025 pertaining to procedural issues, including the format of hearings and the arbitrator list selection process.

43.    The AAA began administering the arbitrator selection process in accordance with the terms of the OSA in March 2025, and commenced each individual arbitration proceeding upon the selection of each arbitrator. Nine of the ten arbitrators were selected by April 2025.

44.    The Tillery Declaration omits that in February 2025, counsel for H&R Block provided a detailed proposal to claimants' counsel regarding the exchange of documents and information in two of the First 10 Korein/Zigler Arbitrations, and proposed to conduct similar discussions in the other cases. Claimants' counsel waited nearly a month before responding to this proposal, and in response proposed extensive written discovery outside of the ordinary document and information exchange process contemplated by the AAA's Consumer Arbitration Rules.

45.    The appointed arbitrators began scheduling preliminary management hearings beginning in April 2025, while counsel for claimants and H&R Block were meeting and conferring regarding information and document exchanges. The Tillery Declaration omits that the parties jointly informed the arbitrators of their mutual agreement to postpone the preliminary management hearings by 30 days to allow the parties to continue conferring, by email correspondence in April 2025.

46.    The Tillery Declaration omits that, when preliminary management hearings began in May 2025, at claimants' request, entry of preliminary scheduling orders was postponed in most of the First 10 Korein/Zigler Arbitrations because claimants sought to brief which version of the AAA's Consumer Arbitration Rules applied to each proceeding.

47.    Importantly, the Tillery Declaration omits that, in each of the First 10 Korein/Zigler Arbitrations, H&R Block offered to schedule a final hearing during the summer or early fall of 2025, which would have been within 120 days of appointment of the arbitrator in each case.

9

Claimants' counsel opposed H&R Block's proposal, insisting that the hearings could not be held within that time frame and should not be set until late fall or winter.

48.    In the parties' meet-and-confer sessions and in prehearing conferences held in several of the First 10 Korein/Zigler Arbitrations, claimants' counsel have offered multiple reasons why hearings cannot commence within H&R Block's proposed early timeframe, most of which involve strategic choices by claimants' counsel. Among these, claimants' counsel have sought extensive written discovery and/or the production of document, data, and information outside of the ordinary exchange process contemplated by the AAA's Consumer Arbitration Rules; have indicated they intend to pursue expert discovery with disclosure of expert reports and rebuttal expert reports; have sought discovery of electronically stored information; and have indicated they intend to request issuance of subpoenas upon third parties and to bifurcate hearings into two parts and two locations to facilitate testimony from third-party witnesses. These issues have been and continue to be the subject of discussions between the parties and/or prehearing motion practice.

49.    Moreover, when the parties began setting hearing dates with the arbitrators in the First 10 Korein/Zigler Arbitrations, claimants' counsel advised the arbitrators that claimants' lead trial counsel is not available for final hearings during the entire month of October and the first half of November.

50.    H&R Block has accommodated the schedule of claimants' lead trial counsel and has offered hearing dates commencing in October and December 2025, and, at the request of one arbitrator, in January 2026. There has not yet been any discussion of hearing dates in "February 2026 or later," and I do not know the basis for that statement in the Tillery Declaration. (*See* Tillery Decl. ¶ 4).

51.    H&R Block intends to continue to work with claimants' counsel and with the appointed arbitrators, cooperatively and professionally, to set hearings in the First 10 Korein/Zigler Arbitrations. It will also work with claimants' counsel, the AAA, and the appointed arbitrators for any additional arbitrations commenced by Korein and Zigler in accordance with the terms of the OSA. In all instances, H&R Block has worked and will work with the goal of resolving the cases "within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental

10

ER-84

fairness." OSA § 11.6. To be clear, however, the timing of the hearings in the First 10 Korein/Zigler Arbitrations has been based on the circumstances described above and not any undue delay on the part of H&R Block, which proposed and was prepared to schedule earlier hearing dates.

52.    Notably, the Tillery Declaration also omits that Korein and Zigler represent one plaintiff, Justin Sexton, who has chosen to bring claims in small claims court in St. Clair County, Illinois, asserting claims arising out of similar factual allegations underlying claimants' claims in the Korein/Zigler Arbitrations. Section 11.1 of the OSA permits a customer of H&R Block to elect to file an individual claim to be decided in small claims court as an alternative to arbitration.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2025.

_____
Gregory E. Ostfeld

OSTFELD DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

ER-85

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:     (415) 874-4230

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**SUPPLEMENTAL DECLARATION OF DANIEL MURDOCK IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:       August 28, 2025<br>Time:       1:30 P.M.<br>Location:   Courtroom 5, 17th Floor |

SUPP. MURDOCK DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

ER-86

**SUPPLEMENTAL DECLARATION OF DANIEL MURDOCK IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

I, Daniel Murdock, declare as follows:

1.      I have personal knowledge of the facts and matters set forth below or I have determined that such facts and matters are true and correct on the basis of information from records kept in the ordinary course of business and/or information brought to my attention by individuals upon whom I regularly rely. If I were called as a witness in this matter, I could and would testify competently to each of the matters stated.

**My Role at H&R Block**

2.      I have worked at H&R Block since June of 2024. I am currently serving as Corporate Counsel. In that role, I am familiar with the Notices of Dispute that H&R Block has received from Zimmerman Reed, as well as Notices of Dispute that H&R Block has received from other law firms raising similar claims.

3.      I am familiar with how, in the regular and ordinary course of business, H&R Block maintains identifying information about customers who use H&R Block tax filing services.

4.      I am also familiar with the Informal Settlement Conferences that have taken place under the terms of the H&R Block Online Services Agreement.

5.      Further, I am familiar with the current version and prior versions of the H&R Block Online Services Agreement, including changes that have been made to the terms of the Online Services Agreement over time.

**The Zimmerman Reed Notices of Dispute**

6.      To date, H&R Block has received 2,644 Notices of Dispute on behalf of claimants purporting to be represented by Zimmerman Reed. These Notices purport to assert claims on behalf of claimants who used H&R Block's online tax filing services during the 2021 or 2022 tax seasons to file their taxes.

7.      Attached as Exhibit 1 is a true and correct copy of a Notice of Dispute that H&R Block received from Zimmerman Reed dated July 15, 2024. The Notice is on behalf of "John Doe"

1

ER-87

with the address "1519 Tester Way" in "Test, California"; the telephone number "(123) 123-1234"; an email address of "John.Doe@tester.com"; and a signature line signed as "No Agreement."

8. My prior declaration described the review performed by the company, at my direction, that compared the information provided by Zimmerman Reed in the Notices to information in H&R Block records to identify which claimants are H&R Block customers, and which claimants used H&R Block's online tax filing services during the 2021 or 2022 tax seasons to file their taxes.

9. In addition to the findings produced by that review described in my prior declaration, the review found that, based on the information provided by Zimmerman Reed, approximately 16% of the Notices are submitted on behalf of non-duplicate claimants with a California address.

10. In addition, and also at my direction, the company reviewed the information provided by Zimmerman Reed in the Notices and compared that to information in H&R Block's records, including information provided to H&R Block by other law firms, to identify which of Zimmerman Reed's alleged clients also submitted Notices through other law firms raising similar claims.

11. That review showed that 23% of the non-duplicate claimants identified in the Zimmerman Reed Notices also submitted Notices through other law firms raising similar claims.

**The Korein Tillery Notices of Dispute**

12. The Declaration of Stephen M. Tillery refers to the claims that putative clients of the Korein Tillery firm and its co-counsel have asserted against Defendants. I am familiar with the Notices of Dispute that H&R Block has received from those firms. The Notices are materially identical except for the identifying information specific to the claimants.

13. Attached as Exhibit 2 is a true and correct copy of a representative Notice, dated November 4, 2024, that H&R Block has received from the Korein Tillery firm and its co-counsel. In the Notice, the claimant asserts that "I hereby request an informal settlement conference as set forth in the Online Services Agreement in Section 11." The identity of the claimant has been redacted to protect the privacy of an individual not before the Court.

**Informal Settlement Conferences**

14.    H&R Block, claimants, and their respective counsel routinely participate in Informal Settlement Conferences under the terms of the H&R Block Online Services Agreement.

15.    In all instances where a claimant submits a Notice of Dispute through counsel or is otherwise known to be represented by counsel, the claimant's counsel is present during the Informal Settlement Conference. H&R Block's counsel has never conducted an Informal Settlement Conference with such a represented claimant without claimant's counsel present.

**The Bellwethering Procedures In The Online Services Agreement**

16.    Exhibit 4 to the Declaration of Valerie Schuessler attaches a true and correct copy of the version of the H&R Block Online Services Agreement that was in effect in January 2024. Section 11.6 of that version of the Online Services Agreement, which has the heading "**Arbitration of similar claims**," sets forth procedures for a staged bellwether process for claims that meet the criteria identified in the provision.

17.    A similar provision for bellwether procedures was first introduced in the Online Services Agreement in 2021. Prior to that time, the Online Services Agreement did not include any bellwether procedures.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of August, 2025.

_____
Daniel Murdock

3
SUPP. MURDOCK DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

# EXHIBIT 1

ER-90

Monday, July 15, 2024

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

Re: Pre-Arbitration Notice of Dispute

To Whom It May Concern:

This letter is submitted as a written notice describing a dispute I have with HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block"), Google, LLC ("Google"), and Meta Platforms, Inc. ("Meta"), as well as any of their affiliates, and the desired resolution prior to commencing  arbitration proceedings with the American Arbitration Association.

In 2021 and 2022, I used the H&R Block website (www.hrblock.com) to prepare and file my taxes online.  As part of the tax preparation process, I was required to provide certain sensitive and personal financial and other information to H&R Block through its website.

It is my understanding that without my knowledge or consent, H&R Block embedded certain tracking tools from Meta and Google and/or other third parties on its website, which resulted in the unauthorized interception and disclosure of my personal and tax information to Meta, Google and/or other third parties.  I allege that this conduct violates the Federal Wiretap Act (18 U.S.C. § 2510, et seq.), the California Invasion of Privacy Act (Cal Penal Code § 631, et seq.) ("CIPA"), and/or other state and federal laws.

The claims presented are based, in part, on the July 2023 report by the U.S. Senate finding that, "Through the Meta Pixel and Google's business tools, the tax prep companies investigated in this report," including H&R Block, "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."

I am seeking all available relief for violations of these laws, including but not limited to: statutory damages; restitution; injunctive (public and private) and declaratory relief; reasonable attorneys' fees and costs; and all other relief that is just and equitable.  The amounts sought for each violation are no less than the statutory damages allowed under the Wiretap Act ($10,000) and CIPA ($5,000).

I am represented by the law firm of Zimmerman Reed LLP.  All communications and information regarding this matter should be directed to my attorneys and representatives at the address below instead of to my personal email or address:

**Zimmerman Reed LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
CLM@zimmreed.com

I request that H&R Block, Meta, Google and any of their affiliates immediately disclose to my counsel at Zimmerman Reed LLP: (1) all information related to me that was intercepted or shared between them through use of the tracking technologies and pixel codes employed; (2) fully describe in detail all arrangements, including contracts, that H&R Block, Meta, Google and any of their affiliates had to employ tracking technologies that could share consumers' (like mine) tax preparation information and data; (3) fully describe all uses of the information shared; (4) fully describe all compensation or other things of value, monetary or otherwise, that was exchanged between H&R Block, Meta, Google and any of their affiliates in

1

ER-91

relation to the use of the tracking technologies employed; and (5) disclose all information provided to any person or agency in relation to the U.S. Senate Report, Attacks on Tax Privacy: How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023 (found at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf.)

To expedite resolution of my claim, I waive my personal participation in any pre-arbitration Informal Settlement Conference and authorize Zimmerman Reed LLP to appear on my behalf and represent me at any such conference and other proceedings.  I instruct you to address all matters related to my claims, including those at any Informal Settlement Conference, directly with my attorneys.  I object to any requirement that I personally participate in the Informal Settlement Conference.  If required to personally appear, however, I will do so with my attorneys.

Through this notice, I inform you that I also object to any batched filing processes (Sec. 11.6) that may be imposed at any arbitration forum as unconscionable, unfair and inconsistent, among other things, and that will unduly delay the processing and resolution of my individual claims.

Finally, I ask that you immediately pay any and all fees and costs imposed by any arbitration forum, including the American Arbitration Association.


Sincerely,


| Name | John Doe |
| --- | --- |
| Address | 1519 Tester Way |
|  | Test, California 90210 |
| Telephone Number | (123) 123-1234 |
| Email | John.Doe@tester.com |
| SSN | 12345 |

2

ER-92

# EXHIBIT 2

WWW.ZIGLERLAWGROUP.COM                                           WWW.COMPLEXCOUNSEL.COM

November 4, 2024

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

To Whom It May Concern:

While reserving all rights to contest application of any part of any agreement between myself and HRB Digital LLC, HRB Tax Group, Inc, or any affiliates thereof (collectively, "H&R Block" or "You"), I write to provide notice of my claim against You for intercepting and/or disclosing my private tax return information and other confidential and sensitive information to Meta Platforms, Inc. and Alphabet Inc. (and any other entity) without my consent and using that information for purposes beyond preparing and submitting my tax return.  While reserving all rights to add or modify claims as our investigation and discovery continues, it appears that H&R Block's conduct violates the federal Wiretap Act, 18 U.S.C. § 2511, the federal Tax Act, 26 U.S.C. § 7431, and applicable state-based wiretapping statutes.

I intend to seek relief up to $10,000, punitive damages, a declaration that H&R Block violated my legal rights, an injunction against future violations, and reasonable attorneys' fees. My address, telephone number, and e-mail address are provided underneath my signature. I should be contacted through my counsel listed below. I hereby request an informal settlement conference as set forth in the Online Services Agreement in Section 11.



*Counsel for* ▮▮▮▮▮▮▮▮▮▮

George A. Zelcs                                 Aaron M. Zigler
Randall P. Ewing, Jr.                            ZIGLER LAW GROUP, LLC
KOREIN TILLERY, LLC                              308 S. Jefferson Street, Suite 333
205 N. Michigan Avenue, Suite 1950               Chicago, IL 60661
Chicago, IL 60601                                Tel: 312.673.8427
Tel: 312.641.9750                                aaron@ziglerlawgroup.com
gzelcs@koreintillery.com
rewing@koreintillery.com

ER-94

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, and HRB TAX GROUP, INC., a Missouri Corporation,<br><br>    Defendants. | CASE NO.: 3:25-CV-03530 |

### DECLARATION OF STEPHEN M. TILLERY

I, Stephen M. Tillery, declare as follows:

1.    I am a partner in the law firm of Korein Tillery, LLC.

2.    My law firm represents more than 25,000 clients with claims against HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") arising from H&R Block's alleged disclosure of consumers' tax return information as described in the U.S. Senate report, "Attacks on Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data."

3.    In October 2024, pursuant to the H&R Block Online Services Agreements that purport to govern disputes between consumers and H&R Block, my firm filed Consumer Demands for Arbitration with the American Arbitration Association ("AAA") on behalf of 10 of our clients.

ER-95

4.      As of the date of this declaration, with the exception of one claim that was voluntarily dismissed, all of these claims remain pending before the AAA, with four arbitration hearings scheduled for mid-to-late November 2025 to mid-January 2026 and the others anticipated to be scheduled for February 2026 or later.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2025

_____
STEPHEN M. TILLERY

UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
CALIFORNIA

PEDRO RIOS, JR., and CHRISTIAN
MARQUEZ, individually, and on behalf of
those similarly situated,

　　　Plaintiffs,

v.

HRB DIGITAL, LLC, a Delaware
Corporation, and HRB TAX GROUP, INC., a
Missouri Corporation,

　　　Defendants.

CASE NO.: 3:25-CV-03530

## DECLARATION OF SCOTT J. FALGOUST

I, Scott J. Falgoust, declare as follows:

1.　　I am a partner in the law firm of Milberg Coleman Bryson Phillips Grossman, LLC

2.　　My law firm represents thousands of clients with claims against HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") arising from H&R Block's alleged disclosure of consumers' tax return information as described in the U.S. Senate report, "Attacks on Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data."

3.　　In February 2024, pursuant to the H&R Block Online Services Agreements that purport to govern disputes between consumers and H&R Block, my firm filed Consumer Demands for Arbitration with the American Arbitration Association ("AAA") on behalf of 20 of our clients.

4.　　As of the date of this declaration, my firm is still litigating that first stage of 20 claims filed with the AAA over 18 months ago, with an anticipated completion date of the first stage being no earlier than October 1, 2025.

ER-97

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2025

_____
SCOTT J. FALGOUST

ER-98

Vinesign Document ID: 1903E02E-A52B-4805-BA77-EB5A60C12AB6

**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

*Attorney for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>                Plaintiffs,<br><br>     vs.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>                Defendants. | Case No. 3:25-cv-03530-EMC<br><br><br>**DECLARATION OF PLAINTIFF PEDRO RIOS, JR. IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |

1

DECLARATION OF PLAINTIFF PEDRO RIOS, JR. IN OPP. TO DEF.'S MOTION TO COMPEL

The signed document can be validated at https://app.vinesign.com/Verify

I, Pedro Rios, declare as follows:

1.    I submit this declaration in opposition to the Motion to Compel Arbitration and Stay Litigation filed by HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") in this case.

2.    I have retained the law firm of Zimmerman Reed LLP to represent me in my dispute with H&R Block involving the disclosure of my tax information to third parties without my prior consent.

3.    I have discharged other law firms that I previously retained in connection with my dispute against H&R Block. I am now proceeding solely with the legal representation of Zimmerman Reed.

4.    I seek to have my legal claims resolved without delay. Despite previously retaining other law firms to present my claims against H&R Block in arbitration, my understanding is that my claims have not been filed in the arbitration forum and have not advanced towards an arbitration hearing. As a result, I am now seeking to present my claims in court.

5.    I reviewed and approved the class action complaint filed in this case. I agreed to serve as a class representative because I believed the arbitration process was taking too long, I wanted to have my claim heard, and I wanted to help other impacted consumers have their claims heard without unnecessary delay.

6.    I understand the class action complaint challenges: (1) unfair requirements in the H&R Block arbitration agreement, resulting in unnecessary delays; and (2) unfair business practices and privacy violations by H&R Block related to the disclosure of private tax information to third parties like Facebook and Google.

7.    While I did not understand it at the time I filed my taxes online through H&R Block, I now understand that H&R Block's arbitration agreement limits the number of similar claims that a law firm can file for their clients in arbitration.

8.    At the time I used H&R Block's services, I did not know about the privacy violations, my need for legal assistance, or the number of other clients any law firm I ultimately hired would have.

9.    I do not think my rights should be affected by hiring a law firm with experience in the types of claims I have against H&R Block.  It does not make sense to me to retain a law firm with little or no experience in these types of claims.

2

DECLARATION OF PLAINTIFF PEDRO RIOS, JR. IN OPP. TO DEF.'S MOTION TO COMPEL

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __07/31/2025__ day of July, 2025.

_____
Pedro Rios, Jr.

DECLARATION OF PLAINTIFF PEDRO RIOS, JR. IN OPP. TO DEF.'S MOTION TO COMPEL

ER-101

Vinesign Document ID: FF67286138E5E4CBB-A371-C4D1425ECBD76

Case 3:25-cv-03530-EMC   Document 27   Filed 08/05/25   Page 1 of 3

**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

*Attorney for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>        Defendants. | Case No. 3:25-cv-03530-EMC<br><br>**DECLARATION OF PLAINTIFF CHRISTIAN MARQUEZ IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |

<hr>

1

DECL. OF PLAINTIFF CHRISTIAN MARQUEZ IN OPP. TO DEF.'S MOTION TO COMPEL

The signed document can be validated at https://app.vinesign.com/Verify

ER-102

I, Christian Marquez, declare as follows:

1.      I submit this declaration in opposition to the Motion to Compel Arbitration and Stay Litigation filed by HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") in this case.

2.      I have retained the law firm of Zimmerman Reed LLP to represent me in my dispute with H&R Block involving the disclosure of my tax information to third parties without my prior consent.

3.      I have discharged another law firm that I previously retained in connection with my dispute against H&R Block. I am now proceeding solely with the legal representation of Zimmerman Reed.

4.      I seek to have my legal claims resolved without delay. Despite previously retaining another law firm to present my claims against H&R Block in arbitration, my understanding is that my claims have not been filed in the arbitration forum and have not advanced towards an arbitration hearing. As a result, I am now seeking to present my claims in court.

5.      I reviewed and approved the class action complaint filed in this case. I agreed to serve as a class representative because I believed the arbitration process was taking too long, I wanted to have my claim heard, and I wanted to help other impacted consumers have their claims heard without unnecessary delay.

6.      I understand the class action complaint challenges: (1) unfair requirements in the H&R Block arbitration agreement, resulting in unnecessary delays; and (2) unfair business practices and privacy violations by H&R Block related to the disclosure of private tax information to third parties like Facebook and Google.

7.      While I did not understand it at the time I filed my taxes online through H&R Block, I now understand that H&R Block's arbitration agreement limits the number of similar claims that a law firm can file for their clients in arbitration.

8.      At the time I used H&R Block's services, I did not know about the privacy violations, my need for legal assistance, or the number of other clients any law firm I ultimately hired would have.

9.      I do not think my rights should be affected by hiring a law firm with experience in the types of claims I have against H&R Block.  It does not make sense to me to retain a law firm with little or no experience in these types of claims.

2

DECL. OF PLAINTIFF CHRISTIAN MARQUEZ IN OPP. TO DEF.'S MOTION TO COMPEL

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this __07/31/2025__ day of July, 2025.



Christian Marquez

3
DECL. OF PLAINTIFF CHRISTIAN MARQUEZ IN OPP. TO DEF.'S MOTION TO COMPEL

ER-104

**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com

Zain A. Shirazi (SBN 302841)
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel (612) 341-0400
Fax (612) 341-0844
zain.shirazi@zimmreed.com

*Attorney for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br><br>**DECLARATION OF RYAN ELLERSICK IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |

1
DECLARATION OF RYAN ELLERSICK

ER-105

## DECLARATION OF RYAN ELLERSICK

I, Ryan Ellersick, declare as follows:

1.     I am a partner at Zimmerman Reed LLP and am licensed to practice before this Court. I am counsel of record for Plaintiffs Pedro Rios, Jr., and Christian Marquez (collectively "Plaintiffs"). I submit this Declaration in support of Plaintiffs' Opposition to the Motion to Compel Arbitration and Stay Litigation filed by Defendants HRB DIGITAL, LLC, and HRB TAX GROUP, INC. (collectively "H&R Block") (Dkt. 18). If called upon as a witness, I could and would testify competently to the facts stated in this Declaration.

2.     Zimmerman Reed currently represents numerous individuals (over 2,400), including Rios and Marquez, with claims against H&R Block for privacy law violations as set forth in the operative Class Action Complaint (Dkt. 1). The allegations in the Complaint are based, in part, on reporting from *The Markup* and findings by the U.S. Senate.

3.     Attached hereto as Exhibit 1 is a true and correct copy of *The Markup* report, "Tax Filing Websites Have Been Sending Users' Financial Information to Facebook," dated November 22, 2022.

4.     Attached hereto as Exhibit 2 is a true and correct copy of the Senate report, "Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data," dated July 2023.

### A. Rios and Marquez Have Discharged Other Law Firms and are Represented Exclusively by Zimmerman Reed.

5.     H&R Block's motion asserts that Rios and Marquez previously retained other law firms to represent them in their disputes with H&R Block over privacy law violations.

6.     Before filing its Motion to Compel Arbitration, H&R Block did not inform Zimmerman Reed of any dual legal representation issues involving Rios and Marquez.

7.     Rios and Marquez have discharged any representation by other law firms and are now proceeding with their privacy claims represented solely by Zimmerman Reed in this matter. *See* Decl. of Pedro Rios, Jr. ¶ 3; Decl. of Christian Marquez ¶ 3. Both Plaintiffs have agreed to serve as class representatives for the putative classes in this action. Rios Decl. ¶ 5; Marquez Decl. ¶ 5.

**B. Plaintiffs Provided Pre-Filing Notices of Dispute to H&R Block, but H&R Block refused to Accept the Notices for Several Months.**

8. On September 20, 2024, Zimmerman Reed sent H&R Block a Pre-Filing Notice of Dispute Letter ("Pre-Filing Letter") via first class certified mail to H&R Block's Legal Department at the address designated in H&R Block's Online Services Agreement ("OSA").

9. The Pre-Filing Letter contained three ShareFile links: (1) Exhibit A, containing a list of all Claimants, including their name, email address, phone number, mailing address, and the first five digits of their social security number; (2) Exhibit A-1, containing 2,481 individually signed Notices of Dispute, one for each Claimant, that provided a further description of the individual claimant's legal claims, relief sought, and all other information required by ¶11.2(A) of the OSA; and (3) Exhibit A-2, which contained 2,481 individually signed Consents to Disclose Tax Information to Attorneys ("Tax Consent forms") authorizing H&R Block to share the Claimant's tax information with counsel as part of any Informal Settlement Conference.

10. Attached hereto as Exhibit 3 is a true and correct copy of the Pre-Filing Letter to H&R Block dated September 20, 2024.

11. Attached hereto as Exhibit 4 is a true and correct copy of one of the Notices of Dispute contained in Exhibit A-1.

12. Attached hereto as Exhibit 5 is a true and correct copy of one of the Tax Consent forms contained in Exhibit A-2.

13. Attached hereto as Exhibit 6 is a true and correct copy of the return receipt for the service of the Pre-Filing Letter, signed as received by a representative of H&R Block on September 27, 2024.

14. Attached hereto as Exhibit 7 is a true and correct copy of a second Pre-Filing Notice of Dispute Letter to H&R Block dated October 4, 2024, on behalf of an additional 166 claimants.

15. Attached hereto as Exhibit 8 is a true and correct copy of a letter from H&R Block to Zimmerman Reed dated October 17, 2024, in response to the initial Pre-Filing Letter.

16. Attached hereto as Exhibit 9 is a true and correct copy of a letter from Zimmerman Reed to H&R Block dated October 23, 2024.

17. Attached hereto as Exhibit 10 is a true and correct copy of a letter from H&R Block to Zimmerman Reed dated November 7, 2024.

3

DECLARATION OF RYAN ELLERSICK

18.    Attached hereto as Exhibit 11 is a true and correct copy of a letter from Zimmerman Reed to H&R Block dated November 21, 2024.

**C. H&R Block Reserved its Right to Argue that the Limitations Periods Were Not Tolled, Subjecting Plaintiffs and Others to Risk of Prejudice.**

19.    After the exchange of the above-referenced correspondence, on December 5, 2024, H&R Block communicated to Zimmerman Reed that "H&R Block agree[d] to accept service of your Notices of Dispute sent on behalf of 2,481 claimants" but did so "without waiving any rights and expressly reserving all rights."

20.    Attached hereto as Exhibit 12 is a true and correct copy of H&R Block's letter to Zimmerman Reed dated December 5, 2024, in which H&R Block agreed to accept service of the Notices of Dispute included in the Pre-Filing Letter dated September 20, 2024.

21.    Attached hereto as Exhibit 13 is a true and correct copy of H&R Block's letter to Zimmerman Reed dated December 6, 2024, in which H&R Block agreed to accept service of the Notices of Dispute included in the Pre-Filing Letter dated October 4, 2024.

22.    Under H&R Block's OSA, the statute of limitations is tolled beginning on the date a claimant sends H&R Block a "fully complete Notice." *See* Decl. of Valerie Schuessler Ex. 4 ¶ 11.2(B) ("Any applicable statute of limitations will be tolled for the claims and relief set forth in the Notice during the period between the date that either you or we send the other a fully complete Notice, until the later of (1) 60 days after receipt of the Notice; or (2) if a Settlement Conference is timely requested, 30 days after completion of the Settlement Conference (the 'Informal Resolution Period')."); *id.* ¶ 11.6 ("If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved.").

23.    Because H&R Block accepted the Notices of Dispute "without waiving any rights and expressly reserving all rights," *see* Ex. 12 herein, H&R Block could later contest the adequacy of the Notices of Dispute, argue that claimants did not provide a "fully complete Notice," and consequently challenge any tolling of the statute of limitations.

**D. Zimmerman Reed Filed Claims in Arbitration and this Court to Preserve Claimants' Rights**

24.     On December 18, 2024, H&R Block began sending individual demands that claimants participate in Informal Settlement Conferences.

25.     Attached hereto as Exhibit 14 is a true and correct copy of a request dated December 18, 2024, from H&R Block to schedule an Informal Settlement Conference with one of the claimants.

26.     Because H&R Block made the requests more than 60 days after receiving the Notices of Dispute on September 27, 2024, Zimmerman Reed took the position that H&R Block waived its rights under the OSA to mandate claimants' participation in the Informal Settlement Conferences. *See* Schuessler Decl. Ex. 4 ¶ 11.2(B) ("After the Notice containing all of the information required above is received, within 60 days either party may request an individualized discussion (by telephone or videoconference) regarding informal resolution of the dispute ('Informal Settlement Conference'). If timely requested, the parties will work together in good faith to select a mutually agreeable time for the Informal Settlement Conference.").

27.     On April 21, 2025, Zimmerman Reed filed 25 arbitration demands in AAA on behalf of clients other than Rios and Marquez. The 25 claimants did not participate in pre-filing conferences for the reasons noted above. The parties eventually agreed to hold 5 demands in abeyance, allowing just 20 demands to proceed forward with AAA. To date, AAA has not appointed merits arbitrators to adjudicate the claims.

28.     Under H&R Block's OSA, no additional Zimmerman Reed clients can file or advance their claims in arbitration until the first batch of 20 demands is resolved, and the date of any such resolution remains uncertain. For Rios or Marquez (or any other Zimmerman Reed client) to file their claims in AAA and proceed with an individual arbitration: (1) the first batch of 20 arbitrations would have to conclude, and claimants would need their names selected over other claimants as part of the second batch of 20; or (2) claimants would have to find legal counsel who did not have clients with similar claims against H&R Block.

29.     On April 22, 2025, Zimmerman Reed filed this case on behalf of Plaintiffs Rios and Marquez and putative classes of similarly situated H&R Block customers.

**E.  H&R Block has Repeatedly Refused to Identify Alleged Defective Claims**

30.     H&R Block's motion states that Zimmerman Reed presented a large number of "patently frivolous" claims.

31.     H&R Block first raised this issue in correspondence to Zimmerman Reed dated January 7, 2025. That same day, I emailed counsel for H&R Block requesting that they identify the names of claimants who allegedly had defective claims. H&R Block refused to provide the names of those claimants.

32.     Attached hereto as Exhibit 15 is a true and correct copy of my email to counsel for H&R Block dated January 7, 2025.

33.     On March 13, 2025, Zimmerman Reed reiterated its request that H&R Block identify the specific claimants who allegedly had defective claims so Zimmerman Reed could investigate further. Despite our requests, to date H&R Block has not provided the names of claimants with allegedly defective claims.

34.     Attached hereto as Exhibit 16 is a true and correct copy of the letter from Zimmerman Reed to counsel for H&R Block dated March 13, 2025.

**F.  H&R Block's OSA Continues to Suggest that Arbitrations can be Resolved in 120 Days Despite Evidence to the Contrary**

35.     Section 11.6 of the OSA states, "The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness." Schuessler Decl. Ex. 4 ¶ 11.6.

36.     A version of the OSA published in January 2025 makes the same representation. Attached hereto as Exhibit 17 is a true and correct copy of H&R Block's OSA last updated January 16, 2025.

37.     As of August 4, 2025, the OSA on H&R Block's website makes the same representation.

38.     Evidence from other law firms litigating privacy disputes against H&R Block demonstrates that arbitrations are taking much longer than 120 days. For example, Korein Tillery filed 10 arbitration demands in October 2024, but not a single case has advanced to an arbitration hearing.

6

DECLARATION OF RYAN ELLERSICK

ER-110

Decl. of Stephen Tillery ¶¶ 3-4. Similarly, Milberg is still in the process of litigating the initial batch of 20 arbitration demands filed in February 2024. Decl. of Scott Falgoust ¶¶ 3-4.

39.    In addition, the plaintiffs compelled to arbitration in *Caimano v. H&R Block*, 23-cv-03272-JHS, had not completed their individual arbitrations as of June 10, 2025, despite filing their demands on August 1, 2024.

40.    Attached hereto as Exhibit 18 is a true and correct copy of correspondence dated August 13, 2024, from plaintiffs' counsel in *Caimano* informing the court that arbitration demands were filed on August 1, 2024.

41.    Attached hereto as Exhibit 19 is a true and correct copy of correspondence dated June 10, 2025, from plaintiffs' counsel in *Caimano* informing the court that the arbitrations remained pending.

42.    Attached hereto as Exhibit 20 is a true and correct copy of an Order from a AAA Process Arbitrator dated February 22, 2022, finding that the mass arbitration protocol at issue in *MacClelland v. Cellco Partnership* violated Principle 8 of the AAA's Consumer Due Process Protocol Statement of Principles.

43.    Attached hereto as Exhibit 21 is a true and correct copy of the AAA Consumer Due Process Protocol Statement of Principles.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 5, 2025                     By: _____
                                               Ryan Ellersick

7
DECLARATION OF RYAN ELLERSICK

ER-111

# EXHIBIT 3

ER-112

ZIMMERMAN │ REED

September 20, 2024

**Via First Class Certified Mail**

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

**Re:     Pre-Filing Notice of Dispute / Confidential Settlement Communication**

To Whom It May Concern:

We write to inform you of the legal claims of 2,481 of our firm's clients, identified in Exhibit A attached hereto (collectively "Claimants"), that we intend to file in individual arbitrations against HRB Digital, LLC and HRB Tax Group, Inc. (collectively "H&R Block") based on the unlawful disclosure of protected tax information to Meta Platforms, Inc., and Google LLC. We request the opportunity to discuss informal resolution prior to the formal filing of the claims for individual arbitrations in the arbitration forum designated in your Terms.

     I.      <u>General Nature of Allegations</u>

Claimants are H&R Block customers who used H&R Block's online tax-preparation services to file their taxes in 2021 and 2022. Unbeknownst to Claimants, H&R Block deployed certain tracking technologies on the H&R Block website, which triggered the unlawful disclosure of Claimants' tax return information to Meta, Google, and other potential third parties.

Some details regarding this unlawful disclosure are outlined in the November 2022 report by The Markup. According to that report, H&R Block "embedded a pixel on its site that gathered information on filers' health savings account usage and dependents' college tuition grants and expenses."[1] After being confronted with this information, H&R Block told The Markup it removed the pixel from its tax filing website "to stop any client tax information from being collected."[2]

In response to The Markup's report, the U.S. Senate initiated an investigation into H&R Block's unlawful data-sharing practices, which revealed that the disclosures were much more serious than previously reported. The Senate report found that "[t]hrough the Meta Pixel and Google's business tools, the tax prep companies investigated in this report - TaxAct, TaxSlayer, and H&R Block - recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."[3]

In response to the congressional inquiry, H&R Block told Senate investigators that H&R Block had been using the Meta Pixel for "at least a couple of years."[4] According to H&R Block, "Meta's default settings of their pixel allowed them to collect additional information, including page

---

[1] https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook

[2] *Id.*

[3] https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf at 39.

[4] *Id.* at 11.

ER-113

September 20, 2024
Page 2

title information from our online tax filing service."[5] In addition, "[s]ome of those page titles included a subset of information related to the customer and his or her tax situation, including the first name of the taxpayer and aggregate amounts relating to HSA contributions, scholarships, and education expenses."[6] H&R Block also revealed that "the Pixel transmitted information on page headers-meaning that the Pixel would transmit information on whether taxpayers had visited pages for many broad categories, such as dependents, certain types of income (such as rental income or capital gains), and certain tax credits or deductions."[7]

The investigation also discovered that H&R Block disclosed protected tax return information to Google. According to the report, "H&R Block representatives communicated that they were 'not aware' of any other pixels used on their website, 'past or present,' despite Google confirming that H&R Block did have [Google Analytics] installed on their website - which was also previously unreported and raises the concern that tax prep companies themselves are unaware of what pixels they are using and how this may be affecting taxpayer privacy."[8]

H&R Block also admitted that these disclosures impacted every person who used its online tax preparation services. According to the report, "although the companies initially dissembled when it came to revealing how many taxpayers had their data shared with Big Tech firms, they ultimately indicated that - because of the way the pixels were set up and implemented - every single taxpayer who used their websites to file their taxes could have had at least some of their data shared."[9]

II.    H&R Block's Conduct Violated Federal and State Laws

H&R Block's disclosure of protected tax return information via the tracking technologies on its website violated multiple federal and state laws.

First, the Federal Wiretap Act prohibits the intentional interception of electronic communications. 18 U.S.C. § 2511(1)(a). While the statute provides an exception for "parties" to the communication, the exception does not apply here because H&R Block intercepted its customers' communications "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* § 2(d). Specifically, H&R Block deployed the tracking technologies for the purpose of sharing its customers tax return information with Meta and Google in violation of 26 U.S.C. § 7216. That provision prohibits "[a]ny person who is engaged in the business of preparing, or providing services in connection with the preparation of [tax returns] . . . and who knowingly or recklessly . . . discloses any information furnished to him for, or in connection with, the preparation of any such return, or uses any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a). Because H&R Block used the tracking technologies "for the purpose" of disclosing its customers tax return information to Meta and Google for ad retargeting, H&R Block violated the Federal Wiretap Act and is liable for $10,000 in statutory damages per violation.

---

[5] *Id.* at 12.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 11.

[9] *Id.* at 13.

September 20, 2024
Page 3

H&R Block's conduct also violated 26 U.S.C. § 7431, which prohibits the unauthorized disclosure of tax return information and imposes $1,000 in statutory damages for "each act of unauthorized . . . disclosure." 26 U.S.C. § 7431(c)(1)(A). That statute provides that "[i]f any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 . . . such taxpayer may bring a civil action for damages against such person in a district court of the United States." *Id.* § (a)(2). Section 6103, in turn, states that "no other person . . . who has or had access to returns or return information under . . . subsection (n) . . . shall disclose any return or return information obtained by him in any manner . . . under the provisions of this section." 26 U.S.C. § 6103(3). Because H&R Block "had access to returns or return information under . . . subsection (n)" in connection with its services in "processing, storage, transmission, and reproduction of such returns and return information," 26 U.S.C. § 6103(n), H&R Block's unauthorized disclosure to Meta and Google violated Section 6103 and 7431. These statutes also serve as independent bases for the crime-tort exception under the Federal Wiretap Act.

In addition, H&R's conduct violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, for the reasons outlined in *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557-PCP, 2024 WL 1251350, at *7 (N.D. Cal. Mar. 25, 2024), and *Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024). H&R Block is liable under CIPA because it "aid[ed], agree[d] with, employ[ed], or conspire[d] with any person or persons"—i.e. Meta and Google—"to unlawfully do, or permit, or cause to be done any of the acts," prohibited by CIPA. Cal. Penal Code § 631(a). Accordingly, H&R Block is liable for $5,000 in statutory damages for California-based Claimants.

Finally, H&R Block never obtained its customers' consent to disclose their tax return information to Meta and Google. As outlined in detail in the Senate report, H&R Block did not comply with relevant tax laws that mandate fulsome and transparent consent before disclosing a customer's tax return information. Further, H&R Block did not comply with its contractual consent obligations associated with Meta and Google tracking technologies. Meta's Business Tools Terms, for example, require web developers to provide "robust and sufficiently prominent notice" to users about their data collection, including "clear and prominent <u>notice on each web page where our pixels are used</u>" and instructions for "how users can opt-out of the collection and use of information for ad targeting." Despite deploying the Meta Pixel and other tracking technologies, H&R Block did not provide sufficient notice—let alone "notice on each web page"—to obtain its customers' consent.

III.   <u>Claims Presented</u>

Based on the foregoing, each Claimant presents claims against H&R Block for: (1) violations of the Federal Wiretap Act, (2) violations of the Federal Tax Disclosure law, 26 U.S.C. § 7431, (3) for California Claimants, violations of CIPA; and (4) other laws, including but not limited to those for invasion of privacy and intrusion upon seclusion. Each Claimant, on an individual basis, seeks monetary relief (including all compensatory damages, restitution, and statutory damages), injunctive and declaratory relief, and reasonable attorneys' fees and costs.

ER-115

September 20, 2024
Page 4

IV.     Dispute Process

While a class action proceeding may be an efficient way to proceed with these common disputes, class actions are prohibited by H&R Block's Online Services Agreement, which requires that any disputes be submitted to arbitration before the American Arbitration Association ("AAA").

This letter and the accompanying documents are intended to provide H&R Block with notice of Claimants' disputes consistent with "Pre-arbitration notice of dispute" provision of the arbitration agreement. Exhibit A-1 contains individual Notices of Dispute signed by each Claimant in accordance with that provision. In addition, Exhibit A-2 contains individual Authorizations signed by each Claimant allowing H&R Block to disclose any relevant tax return information to Zimmerman Reed LLP as counsel for Claimants.

In anticipation of the Informal Settlement Conference, we request that you produce:

(1)  the letter from H&R Block Chief Government Relations Officer Tom Gannon to Senator Elizabeth Warren dated January 3, 2023, referenced in footnote 61 to the Senate report;

(2)  any documents related to the March 2, 2023, virtual meeting with Congressional staff and H&R Block officials, referenced in footnote 71 to the Senate report; and

(3)  documents and ESI sufficient to identify the data of each Claimant that was disclosed to Meta, Google, or other third parties through H&R Block's use of the tracking technologies.

To the extent necessary, we are willing to enter into an appropriate protective order regarding the production of such materials. If you have a preferred form that you would like us to consider, please forward.

Each Claimant agrees to arbitrate their claims in AAA without delay. By providing the foregoing, however, we do not concede that all pre-filing provisions relating to the arbitration of claims are enforceable and Claimants reserve all rights in that regard. Certain provisions appear to be aimed at unfairly delaying the presentation and resolution of claims, but we are open to discussing those procedures with the aim of reaching a reasonable solution.

We look forward to your response and to addressing this matter further with you.

Sincerely,

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
caleb.marker@zimmreed.com

cc:     Hart L. Robinovitch
        Ryan Ellersick

ER-116

September 20, 2024
Page 5

Zimmerman Reed LLP
14648 North Scottsdale Road, Suite 130
Scottsdale, AZ 85254
hart.robinovitch@zimmreed.com
ryan.ellersick@zimmreed.com

ER-117

September 20, 2024
Page 6

## **Exhibit A**

To download Exhibit A, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-sc3cd0dd3eaf745c5a4a42b9ab800c413

September 20, 2024
Page 7

**<u>Exhibit A-1</u>**

To download Exhibit A-1, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-s4d6779c280c64db89ab448c33ef97625

September 20, 2024
Page 8

**Exhibit A-2**

To download Exhibit A-2, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-sf5a74046ec954800bd40fc7e1d05adc5

# EXHIBIT 4

ER-121

Monday, July 29, 2024

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

Re: Pre-Arbitration Notice of Dispute

To Whom It May Concern:

This letter is submitted as a written notice describing a dispute I have with HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block"), Google, LLC ("Google"), and Meta Platforms, Inc. ("Meta"), as well as any of their affiliates, and the desired resolution prior to commencing  arbitration proceedings with the American Arbitration Association.

In 2021 and 2022, I used the H&R Block website (www.hrblock.com) to prepare and file my taxes online.  As part of the tax preparation process, I was required to provide certain sensitive and personal financial and other information to H&R Block through its website.

It is my understanding that without my knowledge or consent, H&R Block embedded certain tracking tools from Meta and Google and/or other third parties on its website, which resulted in the unauthorized interception and disclosure of my personal and tax information to Meta, Google and/or other third parties.  I allege that this conduct violates the Federal Wiretap Act (18 U.S.C. § 2510, et seq.), the California Invasion of Privacy Act (Cal Penal Code § 631, et seq.) ("CIPA"), and/or other state and federal laws.

The claims presented are based, in part, on the July 2023 report by the U.S. Senate finding that, "Through the Meta Pixel and Google's business tools, the tax prep companies investigated in this report," including H&R Block, "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."

I am seeking all available relief for violations of these laws, including but not limited to: statutory damages; restitution; injunctive (public and private) and declaratory relief; reasonable attorneys' fees and costs; and all other relief that is just and equitable.  The amounts sought for each violation are no less than the statutory damages allowed under the Wiretap Act ($10,000) and CIPA ($5,000).

I am represented by the law firm of Zimmerman Reed LLP.  All communications and information regarding this matter should be directed to my attorneys and representatives at the address below instead of to my personal email or address:

**Zimmerman Reed LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
CLM@zimmreed.com

I request that H&R Block, Meta, Google and any of their affiliates immediately disclose to my counsel at Zimmerman Reed LLP: (1) all information related to me that was intercepted or shared between them through use of the tracking technologies and pixel codes employed; (2) fully describe in detail all arrangements, including contracts, that H&R Block, Meta, Google and any of their affiliates had to employ tracking technologies that could share consumers' (like mine) tax preparation information and data; (3) fully describe all uses of the information shared; (4) fully describe all compensation or other things of value, monetary or otherwise, that was exchanged between H&R Block, Meta, Google and any of their affiliates in

1

ER-122

relation to the use of the tracking technologies employed; and (5) disclose all information provided to any person or agency in relation to the U.S. Senate Report, Attacks on Tax Privacy: How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023 (found at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf.)

To expedite resolution of my claim, I waive my personal participation in any pre-arbitration Informal Settlement Conference and authorize Zimmerman Reed LLP to appear on my behalf and represent me at any such conference and other proceedings. I instruct you to address all matters related to my claims, including those at any Informal Settlement Conference, directly with my attorneys. I object to any requirement that I personally participate in the Informal Settlement Conference. If required to personally appear, however, I will do so with my attorneys.

Through this notice, I inform you that I also object to any batched filing processes (Sec. 11.6) that may be imposed at any arbitration forum as unconscionable, unfair and inconsistent, among other things, and that will unduly delay the processing and resolution of my individual claims.

Finally, I ask that you immediately pay any and all fees and costs imposed by any arbitration forum, including the American Arbitration Association.

Sincerely,



| | |
|---|---|
| Name | |
| Address | |
| | |
| Telephone Number | |
| Email | |
| SSN | |

2

ER-123

# EXHIBIT 5

ER-124

## Consent to Disclose Tax Information

Monday, July 29, 2024

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

Re: Consent to Disclose Tax Information to Attorneys

To Whom It May Concern:

The purpose of this letter is to authorize HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") and any of their affiliates, as well as Meta Platforms Inc. ("Meta") and Google LLC ("Google) and their affiliates, to disclose my tax return information for 2021 and 2022 to my attorneys at Zimmerman Reed LLP to assist them in pursuing my claims against H&R Block, Google, and Meta, for the unauthorized interception and disclosure of my personal and tax information.

I authorize H&R Block, Meta, Google and any of their affiliates to disclose to Zimmerman Reed all tax return information, including, but not limited to, data I provided to H&R Block for tax preparation, for the relevant year(s) that Zimmerman Reed deems is necessary to pursue my claims.  This would include, but is not limited to, disclosure of any information describing or related to the data tracking and sharing activities that H&R Block engaged in with Meta, Google and/or any other third-party as described in whole or part in the U.S. Senate Report, Attacks on Tax Privacy, How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023.

Sincerely,



Name
Address

Telephone
Number
Email
SSN

ER-125

# EXHIBIT 6



**UNITED STATES POSTAL SERVICE**

September 28, 2024

Dear Reference  Ntc of Dispute to HR Block 1789 002:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9414 8118 9876 5487 2679 26.**

| Item Details | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | September 27, 2024, 3:35 pm |
| **Location:** | KANSAS CITY, MO 64108 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | ATTN Notice of Dispute H R Block Legal Departmen |

| Recipient Signature | |
|---|---|
| Signature of Recipient: | |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

ER-127

# EXHIBIT 7

ER-128

ZIMMERMAN | REED

October 4, 2024

**Via Certified Mail
with Return Receipt Requested**

H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

**Re:    Pre-Filing Notice of Dispute / Confidential Settlement Communication**

To Whom It May Concern:

We write to inform you of the legal claims of 166 of our firm's clients, identified in Exhibit B attached hereto (collectively "Claimants"), that we intend to file in individual arbitrations against HRB Digital, LLC and HRB Tax Group, Inc. (collectively "H&R Block") based on the unlawful disclosure of protected tax information to Meta Platforms, Inc., and Google LLC. We request the opportunity to discuss informal resolution prior to the formal filing of the claims for individual arbitrations in the arbitration forum designated in your Terms.

I.    <u>General Nature of Allegations</u>

Claimants are H&R Block customers who used H&R Block's online tax-preparation services to file their taxes in 2021 and 2022. Unbeknownst to Claimants, H&R Block deployed certain tracking technologies on the H&R Block website, which triggered the unlawful disclosure of Claimants' tax return information to Meta, Google, and other potential third parties.

Some details regarding this unlawful disclosure are outlined in the November 2022 report by The Markup. According to that report, H&R Block "embedded a pixel on its site that gathered information on filers' health savings account usage and dependents' college tuition grants and expenses."[1] After being confronted with this information, H&R Block told The Markup it removed the pixel from its tax filing website "to stop any client tax information from being collected."[2]

In response to The Markup's report, the U.S. Senate initiated an investigation into H&R Block's unlawful data-sharing practices, which revealed that the disclosures were much more serious than previously reported. The Senate report found that "[t]hrough the Meta Pixel and Google's business tools, the tax prep companies investigated in this report - TaxAct, TaxSlayer, and H&R Block - recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."[3]

In response to the congressional inquiry, H&R Block told Senate investigators that H&R Block had been using the Meta Pixel for "at least a couple of years."[4] According to H&R Block,

---

[1] https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook
[2] *Id.*
[3] https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf at 39.
[4] *Id.* at 11.

MINNEAPOLIS | LOS ANGELES | PHOENIX | ZIMMREED.COM
6420 Wilshire Boulevard   Suite 1080   Los Angeles, California 90048   T 877.500.8780

ER-129

October 4, 2024
Page 2

"Meta's default settings of their pixel allowed them to collect additional information, including page title information from our online tax filing service."[5] In addition, "[s]ome of those page titles included a subset of information related to the customer and his or her tax situation, including the first name of the taxpayer and aggregate amounts relating to HSA contributions, scholarships, and education expenses."[6] H&R Block also revealed that "the Pixel transmitted information on page headers- meaning that the Pixel would transmit information on whether taxpayers had visited pages for many broad categories, such as dependents, certain types of income (such as rental income or capital gains), and certain tax credits or deductions."[7]

The investigation also discovered that H&R Block disclosed protected tax return information to Google. According to the report, "H&R Block representatives communicated that they were 'not aware' of any other pixels used on their website, 'past or present,' despite Google confirming that H&R Block did have [Google Analytics] installed on their website - which was also previously unreported and raises the concern that tax prep companies themselves are unaware of what pixels they are using and how this may be affecting taxpayer privacy."[8]

H&R Block also admitted that these disclosures impacted every person who used its online tax preparation services. According to the report, "although the companies initially dissembled when it came to revealing how many taxpayers had their data shared with Big Tech firms, they ultimately indicated that - because of the way the pixels were set up and implemented - every single taxpayer who used their websites to file their taxes could have had at least some of their data shared."[9]

II.    H&R Block's Conduct Violated Federal and State Laws

H&R Block's disclosure of protected tax return information via the tracking technologies on its website violated multiple federal and state laws.

First, the Federal Wiretap Act prohibits the intentional interception of electronic communications. 18 U.S.C. § 2511(1)(a). While the statute provides an exception for "parties" to the communication, the exception does not apply here because H&R Block intercepted its customers' communications "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* § 2(d). Specifically, H&R Block deployed the tracking technologies for the purpose of sharing its customers tax return information with Meta and Google in violation of 26 U.S.C. § 7216. That provision prohibits "[a]ny person who is engaged in the business of preparing, or providing services in connection with the preparation of [tax returns] . . . and who knowingly or recklessly . . . discloses any information furnished to him for, or in connection with, the preparation of any such return, or uses any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a). Because H&R Block used the tracking technologies "for the purpose" of disclosing its customers tax return information to Meta and Google for ad retargeting, H&R Block violated the Federal Wiretap Act and is liable for $10,000 in statutory damages per violation.

---

[5] *Id.* at 12.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 11.

[9] *Id.* at 13.

October 4, 2024
Page 3

H&R Block's conduct also violated 26 U.S.C. § 7431, which prohibits the unauthorized disclosure of tax return information and imposes $1,000 in statutory damages for "each act of unauthorized . . . disclosure." 26 U.S.C. § 7431(c)(1)(A). That statute provides that "[i]f any person who is not an officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 . . . such taxpayer may bring a civil action for damages against such person in a district court of the United States." *Id.* § (a)(2). Section 6103, in turn, states that "no other person . . . who has or had access to returns or return information under . . . subsection (n) . . . shall disclose any return or return information obtained by him in any manner . . . under the provisions of this section." 26 U.S.C. § 6103(3). Because H&R Block "had access to returns or return information under . . . subsection (n)" in connection with its services in "processing, storage, transmission, and reproduction of such returns and return information," 26 U.S.C. § 6103(n), H&R Block's unauthorized disclosure to Meta and Google violated Section 6103 and 7431. These statutes also serve as independent bases for the crime-tort exception under the Federal Wiretap Act.

In addition, H&R's conduct violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, for the reasons outlined in *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557-PCP, 2024 WL 1251350, at *7 (N.D. Cal. Mar. 25, 2024), and *Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024). H&R Block is liable under CIPA because it "aid[ed], agree[d] with, employ[ed], or conspire[d] with any person or persons"—i.e. Meta and Google—"to unlawfully do, or permit, or cause to be done any of the acts," prohibited by CIPA. Cal. Penal Code § 631(a). Accordingly, H&R Block is liable for $5,000 in statutory damages for California-based Claimants.

Finally, H&R Block never obtained its customers' consent to disclose their tax return information to Meta and Google. As outlined in detail in the Senate report, H&R Block did not comply with relevant tax laws that mandate fulsome and transparent consent before disclosing a customer's tax return information. Further, H&R Block did not comply with its contractual consent obligations associated with Meta and Google tracking technologies. Meta's Business Tools Terms, for example, require web developers to provide "robust and sufficiently prominent notice" to users about their data collection, including "clear and prominent notice on each web page where our pixels are used" and instructions for "how users can opt-out of the collection and use of information for ad targeting." Despite deploying the Meta Pixel and other tracking technologies, H&R Block did not provide sufficient notice—let alone "notice on each web page"—to obtain its customers' consent.

III.    Claims Presented

Based on the foregoing, each Claimant presents claims against H&R Block for: (1) violations of the Federal Wiretap Act, (2) violations of the Federal Tax Disclosure law, 26 U.S.C. § 7431, (3) for California Claimants, violations of CIPA; and (4) other laws, including but not limited to those for invasion of privacy and intrusion upon seclusion. Each Claimant, on an individual basis, seeks monetary relief (including all compensatory damages, restitution, and statutory damages), injunctive and declaratory relief, and reasonable attorneys' fees and costs.

ER-131

October 4, 2024
Page 4

      IV.    <u>Dispute Process</u>

While a class action proceeding may be an efficient way to proceed with these common disputes, class actions are prohibited by H&R Block's Online Services Agreement, which requires that any disputes be submitted to arbitration before the American Arbitration Association ("AAA").

This letter and the accompanying documents are intended to provide H&R Block with notice of Claimants' disputes consistent with "Pre-arbitration notice of dispute" provision of the arbitration agreement. Exhibit B-1 contains individual Notices of Dispute signed by each Claimant in accordance with that provision. In addition, Exhibit B-2 contains individual Authorizations signed by each Claimant allowing H&R Block to disclose any relevant tax return information to Zimmerman Reed LLP as counsel for Claimants.

In anticipation of the Informal Settlement Conference, we request that you produce:

(1) the letter from H&R Block Chief Government Relations Officer Tom Gannon to Senator Elizabeth Warren dated January 3, 2023, referenced in footnote 61 to the Senate report;

(2) any documents related to the March 2, 2023, virtual meeting with Congressional staff and H&R Block officials, referenced in footnote 71 to the Senate report; and

(3) documents and ESI sufficient to identify the data of each Claimant that was disclosed to Meta, Google, or other third parties through H&R Block's use of the tracking technologies.

To the extent necessary, we are willing to enter into an appropriate protective order regarding the production of such materials. If you have a preferred form that you would like us to consider, please forward.

Each Claimant agrees to arbitrate their claims in AAA without delay. By providing the foregoing, however, we do not concede that all pre-filing provisions relating to the arbitration of claims are enforceable and Claimants reserve all rights in that regard. Certain provisions appear to be aimed at unfairly delaying the presentation and resolution of claims, but we are open to discussing those procedures with the aim of reaching a reasonable solution.

We look forward to your response and to addressing this matter further with you.

Sincerely,

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
caleb.marker@zimmreed.com

cc:    Hart L. Robinovitch
       Ryan Ellersick

ER-132

October 4, 2024
Page 5

Zimmerman Reed LLP
14648 North Scottsdale Road, Suite 130
Scottsdale, AZ 85254
hart.robinovitch@zimmreed.com
ryan.ellersick@zimmreed.com

ER-133

October 4, 2024
Page 6

**<u>Exhibit B</u>**

To download Exhibit B, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-s4d6896135604464ab8f2eeab15519aea

October 4, 2024
Page 7

**<u>Exhibit B-1</u>**

To download Exhibit B-1, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-s4180f5c873f04353ae8a51ce060d4529

ER-135

October 4, 2024
Page 8

## Exhibit B-2

To download Exhibit B-2, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-s070990e50f954319934f2334e93b55f2

ER-136

# EXHIBIT 8

ER-137



October 17, 2024

**VIA UPS**

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
caleb.marker@zimmreed.com

   Re: Your Correspondence Dated September 20, 2024

Dear Mr. Marker:

I am Corporate Counsel for H&R Block. On September 27, 2024, H&R Block received a letter from you dated September 20, 2024, which purports to be a "Pre-Filing Notice of Dispute" on behalf of 2,481 putative claimants. Your effort to consolidate the alleged disputes of 2,481 individuals into one "Pre-Filing Notice of Dispute" does not conform with the terms of the Online Services Agreement ("OSA") between H&R Block and each of its clients.

As you are aware, each client who uses H&R Block's online tax preparation and filing service agrees to an OSA containing an arbitration agreement. While the terms of the OSAs can vary from year to year, the OSAs generally state that "all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration." *See, e.g.*, Tax Year 2022 OSA § 11.1 (attached). The OSAs require that "[a] party who intends to seek arbitration must first mail a written Notice of Dispute ('Notice') to the other party," and that such notice "must be on an individual basis." *Id.* § 11.2(A). In addition, the OSAs provide that "[y]ou and the H&R Block Parties also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and the H&R Block Parties hereby waive the right . . . to assert or participate in . . . any . . . joint or consolidated arbitration of any kind." *Id.* at § 11.4.

Accordingly, the purported consolidated "Pre-Filing Notice of Dispute" you sent on behalf of 2,481 putative claimants is improper and ineffective.

While less clear, your letter also seems to have contemplated a single "Informal Settlement Conference" for all 2,481 putative claimants and without personal participation by the claimants. This also is inconsistent with the parties' agreement not to pursue claims on a joint or consolidated basis and violates other essential terms of the agreements. The OSAs provide that either party "may request an individualized discussion . . . regarding informal resolution of the dispute" and that the claimant and H&R Block's representative "must both personally participate in a good-

One H&R Block Way | Kansas City, MO 64105 | HRB_Legal@hrblock.com



faith effort to settle the dispute without the need to proceed with arbitration." *Id.* at § 11.2(B). This requirement "may be waived only if both you and we agree in writing." *Id.* H&R Block values the informal resolution process, including personal participation by the claimant in that process.[1]

To the extent any of the 2,481 putative claimants referenced in your letter wishes to proceed with an individualized claim, please submit a mailed Notice on an individual basis and in compliance with the other terms stated in that claimant's applicable OSA. Any such Notice may be mailed to H&R Block-Legal Department, Attention: Notice of Dispute, One H&R Block Way, Kansas City, MO 64105.

This letter is not intended to waive any rights. H&R Block hereby expressly reserves all rights.

Sincerely,

*SKT*

Shruti K. Tejwani
Corporate Counsel

---

[1] Please note that, while a claimant is not required to have an attorney participate in an informal settlement conference, if a claimant chooses to do so, we are required by law to obtain a signed consent from the claimant (and any joint taxpayer) authorizing us to discuss the claimant's tax and account information with a third party, including their attorney. For your reference, I am attaching a sample copy.

One H&R Block Way | Kansas City, MO 64105 | HRB_Legal@hrblock.com

### DISCLOSURE OF TAX RETURN INFORMATION
### CONSENT AND AUTHORIZATION

This consent is entered into by the undersigned taxpayer(s) ("you" or "I" or "my" or "Taxpayer") in connection with your use of H&R Block tax preparation products or services.

If you sign this form and check the box below, you authorize H&R Block to disclose your tax return information for the designated purpose. Insert a check mark in the corresponding box if you consent.

| ☐ | I authorize H&R Block to disclose to [Insert Name] my tax return information in relation to the Notice of Dispute sent by [Insert Name] on my behalf to H&R Block. |
|---|---|

Federal law requires this consent form be provided to you. Unless authorized by law, H&R Block cannot disclose your tax return information to third parties for purposes other than the preparation and filing of your tax return without your consent. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form to engage H&R Block's tax return preparation services. If H&R Block obtains your signature on this form by conditioning H&R Block's tax return preparation services on your consent, your consent will not be valid. If you agree to the disclosure of your tax return information, your consent is valid for the amount of time that you specify. If you do not specify the duration of your consent, your consent is valid for one year from the date of signature.

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law or without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email at *complaints@tigta.treas.gov*.

**By signing below, you authorize H&R Block to disclose your tax return information for the purposes you've authorized above.**

Taxpayer Signature: _____     Date:_____

Name (print): _____

(if "Married Filing Jointly")

Spouse's Signature: _____     Date: _____

Name (print): _____

WITNESSED: _____     _____
               Witness Signature                              Print Witness Name

ER-140

# EXHIBIT 9

# ZIMMERMAN | REED

October 23, 2024

**Via First Class Mail and Email to HRB_Legal@hrblock.com**

Shruti K. Tejwani
Corporate Counsel
H&R Block-Legal Department
One H&R Block Way
Kansas City, MO 64105
HRB_Legal@hrblock.com

**Re:    Your October 17, 2024 Letter Responding to Our Clients' Pre-Filing Notice of Dispute of September 20, 2024**

Ms. Tejwani,

We are in receipt of your letter dated October 17, 2024 and wanted to respond to the points made. We disagree that our letter of September 20, 2024 that was sent on behalf of our 2,481 clients is in any way improper and ineffective, as you assert. Contrary to your assertions, we did not improperly attempt to consolidate the disputes of our 2,481 individual clients into a single Pre-Filing Notice Of Dispute through our September 20 cover letter. Instead, as the September 20 letter made clear, specific ShareFile links were provided in the text of the letter where H&R Block could access:

1.    Individual Pre-Arbitration Notices of Disputes signed by each of the 2,481 claimants;

2.    Individual Consents to Disclose Tax Information to Attorneys signed by each of the 2,481 claimants.

These documents were accessible through ShareFile URL's published on pages 6-8 of the September 20, 2024 letter, respectively as follows, and which remain active.

#### Exhibit A

To download Exhibit A, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-sc3cd0dd3eaf745c5a4a42b9ab800c413

#### Exhibit A-1

To download Exhibit A-1, please click the following ShareFile link:

https://zimmreed.sharefile.com/d-s4d6779c280c64db89ab448c33ef97625

#### Exhibit A-2

To download Exhibit A-2, please click the following ShareFile link:

ER-142

October 23, 2024
Page 2

https://zimmreed.sharefile.com/d-sf5a74046ec954800bd40fc7e1d05adc5

Had you accessed the ShareFile documents through the above URL's found in the September 20 letter, you would have seen that in addition to the description of the common claims in our letter each of the 2,481 Claimants also presented to H&R Block a separate, individual "Pre-filing Notice of Dispute" document that consistent with ¶11.2(A) of H&R Block's Online Services Agreement:

    1.      provided each claimant's name, address, telephone number, email address[1];

    2.      described the nature and basis of their claims against H&R Block based on H&R Block's practice of unlawfully disclosing protected tax information that the Claimant provided when using the H&R Block website to third-parties, including Meta Platforms, Inc., and Google LLC through tracking technologies, as described in the U.S. Senate Report, *Attacks on Tax Privacy: How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data*, July 2023 (available at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf.) which found, *inter alia*, "Through the Meta Pixel and Google's business tools, the tax prep companies investigated in this report," including H&R Block, "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers" *Id.* at 39;[2]

    3.      described the specific relief sought by the identified Claimant (*i.e.*, "I am seeking all available relief for violations of these laws, including but not limited to: statutory damages; restitution; injunctive (public and private) and declaratory relief; reasonable attorneys' fees and costs; and all other relief that is just and equitable. The amounts sought for each violation are no less than the statutory damages allowed under the Wiretap Act ($10,000) and CIPA ($5,000).");

    4.      was individually signed by each Claimant;

*See* 2,481 individual Notices of Dispute, Exhibit A-1 to our September 20, 2024 letter, available to print and download at https://zimmreed.sharefile.com/d-s4d6779c280c64db89ab448c33ef97625.

Items 1-4 above more than satisfied any requirements of the Prefiling Notice of Dispute under ¶11.2(A) of H&R Block's Online Services Agreement.  In addition, each Claimant's individual Pre-Filing Notice of Dispute that was provided to H&R Block:

---

[1]  In addition, Exhibit A to our September 20, 2024 letter, available to print and download at https://zimmreed.sharefile.com/d-sc3cd0dd3eaf745c5a4a42b9ab800c413 was a spreadsheet containing each of the 2,481 Claimant's names, addresses, primary email, email used for H&R Block, phone number and truncated final digits of their social security number.

[2]  The description of claims by each Claimants' individual Pre-filing Notice of Dispute was sufficient for purposes of satisfying ¶11.2 but can be supplemented by the September 20, 2024 letter describing same in additional detail.

October 23, 2024
Page 3

1.      directed H&R Block to direct all communications related to the disputes to their designated legal counsel at Zimmerman Reed LLP, for which a separate Consent to Disclose Tax Information to Attorneys was also provided to H&R Block via a different ShareFile link in the September 20 letter;

2.      requested that copies of certain documents and materials related to the third-party tracking activities be provided by H&R Block to the Claimant through their attorneys at Zimmerman Reed , LLP, which is both reasonable and necessary for the obligations to be mutual;

3.      indicated that they would comply with the arbitration agreement by proceeding with despite resolution before the American Arbitration Association;

4.      authorized counsel to represent them at any pre-filing conference or other proceedings, while also maintaining that: "If required to personally appear, however, I will do so with my attorneys."

5.      objected to any batched filing / bellwether processes under ¶11.6 of the OSA as it could unfairly delay the processing of their claim before the AAA.[3]

6.      Requested that H&R Block pay any arbitration fees and costs imposed by AAA.

Exhibit A to September 20, 2024 letter.

Based on the foregoing, the contentions in your October 17 letter that any of the 2,481 individual failed to provide a proper individual Prefiling Notice of Dispute are without merit.

Your additional contentions that each Claimant has failed to comply with any "Informal Settlement Conference" requirement is also without merit.  While our clients disagree with the need for this process and reserve all rights to challenge certain provisions, as noted above, each Claimants' individual Prefiling Notice of Dispute provides that while they authorize counsel to appear and represent them at any conference, "[i]f required to personally appear, however, I will do so with my attorneys."  *See* Exhibit A-1 to September 20, 2024 letter.  There has been no failure to comply with requirements.

You conclude your letter by providing a blank copy a Disclosure of Tax Return Information Consent and Authorization Form instructing claimants that a completed document is required for counsel to appear at any conference.  In this regard we again note that such authorizations were already provided to H&R Block on September 20, 2024. *See* 2,481 individual Consent to Disclose Tax Information to Attorneys, Exhibit A-2 to September 20, 2024 letter (available to print and download at https://zimmreed.sharefile.com/d-sf5a74046ec954800bd40fc7e1d05adc5).

Given the acknowledgment in your Disclosure of Tax Return Information Consent and Authorization Form that "[u]nless authorized by law, H&R Block cannot disclose your tax return

---

[3]    *See e.g., Pandolfi v. Aviagames, Inc.*, 2024 WL 4051754 (N.D. Cal., Sept. 4, 2024)(batching / bellwether process in arbitration agreement found to be unconscionable and unenforceable due to delay and asymmetry of obligations).

ER-144

October 23, 2024
Page 4

information to third parties for purposes other than the preparation and filing of your tax return without your consent", we ask that you provide to us all executed authorization forms and the like that H&R Block contends provided it prior authority to disclose any of the 2,481 Claimants' tax return information to third parties, including but not limited to Meta Platforms, Inc., Google, LLC and their affiliates.  We seek this in addition to the information requested in each Claimants' Pre-Arbitration Notice of Dispute and the September 20 letter so any pre-filing discussions aimed at resolution of the disputes can be informed and meaningful.

Finally, we believe the bellwether / batching provision in ¶1.6 attempting to delay Claimants' ability to proceed with their claims, including claims seeking injunctive relief is unconscionable and unfair as it seems to be aimed at creating lengthy delays which are unnecessary, serve no purpose and are prejudicial.  We ask that you confirm whether H&R Block will agree to the immediate filing of all Claimants' claims in AAA to prevent further prejudice.

Please let us know if would like to discuss any of the foregoing matters further.

Sincerely,

Caleb L. Marker
caleb.marker@zimmreed.com

cc:     Hart L. Robinovitch
        Ryan Ellersick

ER-145

# EXHIBIT 10



November 7, 2024

**VIA E-MAIL**

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
caleb.marker@zimmreed.com

   Re: Your Correspondence Dated October 23, 2024

Dear Mr. Marker:

I am in receipt of your letter of October 23, 2024, in which you take the position that your previous letter dated September 20, 2024, which purports to be a "Pre-Filing Notice of Dispute" on behalf of 2,481 putative claimants, complies with the terms of the Online Services Agreements ("OSAs") between H&R Block and each of its clients. It remains H&R Block's position that your letter does not comply with the clear terms of the OSAs and does not give proper or effective notice of any claimant's dispute with H&R Block.

You state that your September 20 letter is sufficient because it provides "ShareFile links" to electronic files "H&R Block could access," which you state consist of 2,481 "Individual Pre-Arbitration Notices of Dispute" and "Individual Consents to Disclose Tax Information to Attorneys." The OSAs do not provide for notice of a claim to be given through "access" to electronic ShareFile links. Rather, as detailed in my letter of October 17, 2024, the OSAs require that "[a] party who intends to seek arbitration must first mail a written Notice of Dispute ('Notice') to the other party," and that such notice "must be on an individual basis." *Id.* § 11.2(A). A purported ShareFile link to 2,481 Notices of Dispute is not a mailed written Notice of Dispute made on an individual basis. Nor is it consistent with the parties' agreement in the OSAs that "[y]ou and the H&R Block Parties also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and the H&R Block Parties hereby waive the right . . . to assert or participate in . . . any . . . joint or consolidated arbitration of any kind." *Id.* at § 11.4.

To the extent any of the 2,481 putative claimants referenced in your letter wishes to proceed with a claim, please mail an individualized Notice of Dispute to H&R Block-Legal Department, Attention: Notice of Dispute, One H&R Block Way, Kansas City, MO 64105. We will review any Notices received and will work to set up Informal Settlement Conferences at mutually agreed upon times.



Per the OSAs, claimant and H&R Block's representative "must both personally participate in a good-faith effort to settle the dispute without the need to proceed with arbitration." While not required, a claimant may choose to have an attorney also participate in their Informal Settlement Conference. In that case, we will need a signed consent from the claimant (and any joint taxpayer) authorizing us to discuss the claimant's tax and account information with the attorney.

Please note that applicable law and regulations provide for very specific language to be included in the signed consent. For this reason, we provide a sample copy (attached again here), which complies with all applicable requirements. While the consent form contemplates a handwritten signature, if desired, we can also accept an electronic signature provided it is completed through an identity verification platform, such as DocuSign, and includes the accompanying audit trail.

Finally, your letter contends that certain terms of the OSAs with respect to arbitration are "unconscionable and unfair" and "serve no purpose and are prejudicial," and you ask H&R Block to agree to the immediate filing of 2,481 claims in arbitration. H&R Block respectfully disagrees with your position, stands by all terms of the OSAs as fair and reasonable, and does not agree to waive or modify any terms of the OSAs.

This letter is not intended to waive any rights. H&R Block hereby expressly reserves all rights.

Sincerely,

*SKT*

Shruti K. Tejwani
Corporate Counsel

One H&R Block Way | Kansas City, MO 64105 | HRB_Legal@hrblock.com

ER-148

**DISCLOSURE OF TAX RETURN INFORMATION**
**CONSENT AND AUTHORIZATION**

This consent is entered into by the undersigned taxpayer(s) ("you" or "I" or "my" or "Taxpayer") in connection with your use of H&R Block tax preparation products or services.

If you sign this form and check the box below, you authorize H&R Block to disclose your tax return information for the designated purpose. Insert a check mark in the corresponding box if you consent.

| ☐ | I authorize H&R Block to disclose to [Insert Law Firm Name] my tax return information in relation to the Notice of Dispute sent by [Insert Law Firm Name] on my behalf to H&R Block. |
|---|---|

Federal law requires this consent form be provided to you. Unless authorized by law, H&R Block cannot disclose your tax return information to third parties for purposes other than the preparation and filing of your tax return without your consent. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form to engage H&R Block's tax return preparation services. If H&R Block obtains your signature on this form by conditioning H&R Block's tax return preparation services on your consent, your consent will not be valid. If you agree to the disclosure of your tax return information, your consent is valid for the amount of time that you specify. If you do not specify the duration of your consent, your consent is valid for one year from the date of signature.

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law or without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email at *complaints@tigta.treas.gov.*

**By signing below, you authorize H&R Block to disclose your tax return information for the purposes you've authorized above.**

Taxpayer Signature: _____    Date:_____

Name (print): _____

(if "Married Filing Jointly")

Spouse's Signature: _____    Date: _____

Name (print): _____

WITNESSED: _____    _____
Witness Signature                              Print Witness Name

ER-149

# EXHIBIT 11

ER-150

ZIMMERMAN│REED

November 21, 2024

**Via First Class Mail and Email to HRB_Legal@hrblock.com**

Shruti K. Tejwani
Corporate Counsel
H&R Block-Legal Department
One H&R Block Way
Kansas City, MO 64105
HRB_Legal@hrblock.com

**Re:    Your November 7, 2024 Letter Responding to Our Clients' Pre-Filing Notice of Dispute of September 20, 2024 and October 23, 2024 letter.**

Ms. Tejwani,

We are in receipt of your letter dated November 7, 2024 and respond to the points made below.

**A.    2,481 Individual Pre-Filing Notices of Dispute Were Provided to H&R Block in September.**

As an initial matter, we disagree that our letter dated September 20, 2024 that was sent on behalf of our 2,481 individual clients is in any way an improper or ineffective means to provide H&R Block the 2,481 clients' individual Pre-Filing Notices of Dispute, as you assert.  There is no material difference as to whether the Notices of Disputes were provided via 2,481 individually mailed letters or more efficiently via a single letter, sent to H&R Block by certified mail, providing a ShareFile link that provided access to the exact same documents for your review.  What is material is that H&R Block actually received the 2,481 clients' individual Pre-Filing Notices of Dispute (and Consent to Disclose Tax Information to Attorneys forms), which it clearly did.  The certified mail receipt confirms delivery of the September 20, 2024 letter to H&R Block in Kansas City, Missouri on September 27, 2024 (signed by J. Graham for H&R Block).  Whether H&R Block elected to read the Notices of Dispute provided to it that day or not, was its choice.

Any refusal by H&R Block to review and consider the 2,481 individual Pre-Filing Notices of Dispute already provided in September, appears to be in bad faith and done for purposes of trying to obstruct the advancement of the claims in the designated arbitration forum and to cause needless delay and prejudice.  Your refusal to consider the 2,481 individual Notices of Dispute, however, does not mean they were not provided to H&R Block and it is not on notice of them or is unable to review them.  The use of electronic means to exchange documents has long been the equivalent of that sent via U.S. mail, as confirmed by the fact courts now use ECF filings as does the American Arbitration Association (AAA), the arbitration forum H&R Block chose to designate in its terms.[1]  In fact, H&R Block's entire business model is based on the exchange and

---

[1]  *See e.g.*, AAA Rules MA-2-3 ("MA-3. Serving of Documents, Notices, and Communications (a) For all purposes in accordance with these Supplementary Rules, the parties shall accept documents, notices, and communications pertaining to each Mass Arbitration via single, combined, electronic communication from the AAA-ICDR. The AAA-ICDR will determine when

ER-151

November 21, 2024
Page 2

filing of formal tax documents primarily through electronic means, opposed to exclusively through U.S. mail. Your letters of October 17 and November 7 further confirm that H&R Block already possesses or has immediate access to all 2,481 individual Pre-Filing Notices of Dispute. We treat any such condition as being satisfied and will proceed accordingly.

To this effect, while you attempt to argue that we have not provided "proper or effective notice of any claimant's dispute with H&R Block", you fail to identify any required information that was not provided to H&R Block in the 2,481 individual Pre-Filing Notices of Dispute provided on September 27.  And to again clarify, each of the 2,481 Claimants that provided a separate and individual Pre-Filing Notice of Dispute via the ShareFile link published in our prior letter only seeks individual dispute resolution in AAA not any class, joint or consolidated arbitration process.  If H&R Block, however, continues to refuse to arbitrate their claims, each of our 2,481 clients reserve any and all rights they may have under applicable laws. *See e.g.*, Cal Civil Code §1281.97-.99.

To the extent H&R Block wishes to discuss resolution any of the 2,481 individual claims for which a Prefiling Notice of Dispute has been provided, please let us know as we are prepared to do so. Likewise, to the extent you wish to present any reasonable individual settlement offers to our clients to resolve their claims at this stage, feel free to do so.  We will promptly respond to any reasonable settlement offers made to our clients.

**B.      Each of the 2,481 Clients Provided H&R Block Their Individual Consent to Disclose Tax Information to Attorneys in Writing.**

Next, you improperly take issue with the form of the Individual Consents to Disclose Tax Information to Attorneys signed by each of the 2,481 claimants.  Your position is misplaced for several reasons.

First, there is nothing defective about any of the 2,481 consent documents already provided to H&R Block on September 27, 2024.  As you are aware, each is signed by the individual client and expressly provides in writing that authorization is given to H&R Block to discuss their claims with counsel at Zimmerman Reed, LLP.  Each clearly provides that the individual client authorizes H&R Block and any of its affiliates to disclose to Zimmerman Reed LLP all of their tax return information, including data that they provided to H&R Block for tax preparation for the relevant years/ time period referenced.  The sample consent form you attach to your October 17 and November 7 letters provides nothing different.[2] Any comments challenging this simply represents an attempt to elevate form over substance in bad faith.

---

separate documents, notices, and communications are required. (b) Service of documents, notices, and communications pertaining to Mass Arbitrations will be effected via electronic means, such as a file transfer protocol administered by the AAA-ICDR or AAA WebFile® platform. Parties providing service of documents, notices, and communications must simultaneously notify opposing parties in writing that the documents, notices, or communications have been submitted. ") and R-2 ("The Claimant may file my mail. … Or, the claimant may file online using AAA WebFile: https://www.adr.org").

[2]   Given H&R Block's position that a signed statement is required by law to authorize the H&R Block Parties to disclose the individuals' confidential tax and account records to third parties,

November 21, 2024
Page 3

Second, with respect to any informal settlement conference that may occur, H&R Block's Online Service Agreement (OSA) only provides: "Any counsel representing you or us may also participate; however, if you have retained counsel, a signed statement is required by law to authorize the H&R Block Parties to disclose your confidential tax and account records to your counsel." The OSA does not indicate that this must done only via the specific form you now attach to your letter and try to impose as a new requirement. Rather, the OSA only requires a "signed statement" not that it be submitted on any particular form or manner. The specific form you now provide was not made part of the OSA or otherwise referenced. The Individual Consents to Disclose Tax Information to Attorneys signed by each of the 2,481 claimants and provided to H&R Block on September 27 each comply with the actual language in the OSA, as they each constitute signed statements authorizing the H&R Block Parties to disclose the individual's confidential tax and account records to their designated counsel, as the following language from each of the 2,481 clients' submitted Consents to Disclose confirms:

> The purpose of this letter is to authorize HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block") and any of their affiliates, as well as Meta Platforms Inc. ("Meta") and Google LLC ("Google) and their affiliates, to disclose my tax return information for 2021 and 2022 to my attorneys at Zimmerman Reed LLP to assist them in pursuing my claims against H&R Block, Google, and Meta, for the unauthorized interception and disclosure of my personal and tax information.

> I authorize H&R Block, Meta, Google and any of their affiliates to disclose to Zimmerman Reed all tax return information, including, but not limited to, data I provided to H&R Block for tax preparation, for the relevant year(s) that Zimmerman Reed deems is necessary to pursue my claims. This would include, but is not limited to, disclosure of any information describing or related to the data tracking and sharing activities that H&R Block engaged in with Meta, Google and/or any other third-party as described in whole or part in the U.S. Senate Report, Attacks on Tax Privacy, How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023.

Nothing more was required and the terms of the OSA cannot be modified after the fact at this time by H&R Block to create new and different barriers, "requirements" and delays, as H&R Block now attempts to do.

Third, use of the sample consent form you attach to your October 17 and November 7 letters is not a pre-requisite for providing the Pre-Filing Notice and commencing arbitration proceedings in AAA. Nor is submission of any consent form a requirement for any informal settlement conference. To the extent any confidential tax data needs be addressed that will occur at the later merits stage after the appointment of a merits arbitrator by AAA and Rule 22 procedures.

There is no requirement that any prefiling informal settlement conference address, involve disclosure of or discussion of any clients' "confidential tax and account records." In this regard,

---

however, we do again ask H&R Block to provide us copies of any such signed statements authorizing H&R Block to disclose any of the 2,481 individuals' tax and account information to third-parties including Meta and Google.

November 21, 2024
Page 4

we do not anticipate any need to discuss the details of any of the 2,481 Claimants' tax and account records in any informal settlement conferences with our clients under section 11.2 of the OSA to the extent they occur.  Any paragraph 11.2 conference would address settlement terms, should H&R Block wish to present a settlement offer to our clients in a specific amount, not any client specific discovery or tax account records.[3]  Discovery proceedings come later under AAA Rule R-22, after the claim is filed in AAA and a merits arbitrator is appointed.  *See* R-22(c ) ("No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.").  H&R Block cannot attempt to condition an arbitration filing in AAA through a procedure that attempts to reverse the order of AAA procedures and require discovery (or the discussion of information to potentially be disclosed in discovery) first .

The scope of any informal settlement conference (if any) before the filing of claims in AAA only need address and be limited to settlement terms that may be offered by H&R Block to resolve legal claims.  AAA Rules call for more detailed settlement discussions at a later stage, after Rule 22 exchanges and other permitted discovery, should the parties be willing to engage in such proceedings.  *See e.g.*, AAA Rules MA-9 and R-10 ("At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.").

To the extent any confidential materials need be exchanged with regard to a claim, that is also a matter for the assigned merits arbitrator to oversee at a later stage of proceedings. *See*, AAA Rule R-23 ("The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to: (a) an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality").

Fourth, to the extent discovery is undertaken, the ability to request and receive information from the other party must be mutual.  H&R Block cannot attempt to dictate that only it receive information from adverse parties at any stage.

---

[3]  Pursuant to California Rule of Professional Conduct 4.2(a) and other applicable rules, it appears improper for H&R Block's counsel, directly or indirectly, to communicate with any Claimant about the subject of their representation. We as counsel are, of course, willing to personally participate in any informal dispute conference with H&R Block's counsel and will promptly confer with our individual clients regarding any settlement offer made and respond in due course.  As indicated before, our individual clients are willing to attend any settlement conference to the extent necessary but are entitled to confer privately with their counsel regarding any offers.

ER-154

November 21, 2024
Page 5

### C.      H&R Block Is Not Engaging in Any Good Faith Effort to Settle any of the 2,481 Claimants' Disputes Without the Need to Proceed With Arbitration.

The OSA requires both parties to "participate in a *good-faith effort* to settle the dispute without the need to proceed with arbitration" after provision of a Notice of Claim.  By refusing to consider the 2,481 individual Prefiling Notices of Disputes that it plainly has possession of, and by attempting to create other needless barriers and delays for our clients, H&R Block is plainly refusing to "participate in a good-faith effort to settle the dispute without the need to proceed to arbitration" and in breach of its own agreement.

We understand H&R Block's position, as stated in the final two paragraphs of your November 7 letter, to be that due to the foregoing disputes it still does not agree to the immediate filing of any of the 2,481 claims in arbitration.  We plan to proceed accordingly as we believe all enforceable conditions precedent have been met; other conditions that H&R Block is attempting impose are unconscionable, unlawful and/or unenforceable; and our clients are being prejudiced by the improper delays and barriers to actual dispute resolution in any forum (including the ability to secure necessary injunctive relief) that H&R Block is attempting to impose.  Among other things, H&R Blocks' refusal to consider the Notices of Claim already provided and the tolling of limitations periods during the pre-filing notice period is prejudicial.  Further, AAA rules and policies require that ADR proceedings actually occur within a reasonable time, without undue delay.  *See*, AAA Consumer Due Process Protocol Statement of Principals No.  8 ("ADR proceedings should occur within a reasonable time, without undue delay. The rules governing ADR should establish specific reasonable time periods for each step in the ADR process and, where necessary, set forth default procedures in the event a party fails to participate in the process after reasonable notice.").  See also, H&R Block's ongoing obstruction prevents that and we therefore reserve all rights to seek appropriate relief in any forum.

### D.      Provisions of H&R Blocks' OSA are Unconscionable and Unenforceable.

As a final matter, while we have indicated that we are willing present our 2,481 clients' claims for prompt dispute resolution in individual, bilateral arbitrations at AAA, it is apparent that H&R Block seeks to prevent this through its stated positions on the rejection of the prefiling notices of claim provided; prefiling informal settlement conferences; mandated delays to arbitration filings; delays and interferences based on the identity of a claimant's chosen legal counsel; and delays through batched arbitration procedures or "staged bellwether proceedings".  Many of these tactics are aimed at chilling claims by creating needless barriers, prejudices and delays that hinder our clients' abilities to seek prompt resolution of legal disputes though bilateral arbitrations with the assistance of their chosen legal counsel. *See e.g., Heckman v. Ticketmaster*, - F.4th - , 2024 WL 4586971, *13-14, 15-16 (9th Cir., Oct. 28, 2024), citing *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) and *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022). It is improper to seek to interfere with attorney-client relationships by seeking to impose additional burdens on clients' claims based on the identity of their selected counsel. The prejudices are further amplified when clients' tax information remains in the possession of third-parties but barriers imposed hinder their ability to seek immediate relief.  As a result, Claimants reserve all rights they may have in this regard.

ER-155

November 21, 2024
Page 6

We remain available to discuss the matters addressed above.

Sincerely,

Caleb L. Marker
caleb.marker@zimmreed.com

cc:     Hart L. Robinovitch
        Ryan Ellersick
        Hannah Brown

ER-156

# EXHIBIT 12

ER-157



December 5, 2024

**VIA E-MAIL**

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
caleb.marker@zimmreed.com

      Re: Your Correspondence Dated November 21, 2024

Dear Mr. Marker:

I am in receipt of your letter dated November 21, 2024.  H&R Block disagrees with the arguments therein, including the proposition that your firm's departure from the written notice of dispute procedures set out in H&R Block's Online Services Agreement ("OSA"), and H&R Block's request that you comply with the OSA's terms, somehow renders it unconscionable and/or means that H&R Block is acting in "bad faith."  The OSA sets out clear and reasonable terms and is valid in all respects.

Nonetheless, without waiving any rights and expressly reserving all rights, H&R Block agrees to accept service of your Notices of Dispute sent on behalf of 2,481 claimants.  We will review the submissions and send responses, including requests for informal settlement conferences.  H&R Block has no objection to counsel participating in any informal settlement conference and does not propose to speak to any represented party without their counsel.

The required consent form to allow for counsel's participation in the informal settlement conferences is not governed by any preference of H&R Block.  26 U.S.C. § 7216 and 26 C.F.R. §§ 301.7216-1 to 301.7216-3 require us to obtain consent from a claimant (and any joint taxpayer) to discuss the claimant's information.  No meaningful dialogue could occur at a conference if H&R Block is restricted from discussing the allegations, including information that H&R Block knows from its files but cannot discuss.  Moreover, Internal Revenue Procedure 2013-14, section 5.04, sets forth the mandatory language that must be included in the consent, which is the language included in the sample forms I sent you.

      I look forward to working with you on these matters.

            Sincerely,

            *SKT*

            Shruti K. Tejwani
            Corporate Counsel

One H&R Block Way | Kansas City, MO 64105 | HRB_Legal@hrblock.com

ER-158

# EXHIBIT 13



December 6, 2024

**VIA E-MAIL**

Caleb L. Marker
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
caleb.marker@zimmreed.com

  Re: Your Correspondence Dated October 4, 2024

Dear Mr. Marker:

Consistent with my letter to you dated December 5, 2024, and without waiving any rights and expressly reserving all rights, H&R Block agrees to accept service of the Notices of Dispute you sent on behalf of 166 claimants in your correspondence dated October 4, 2024. We will review the submissions and send responses, including requests for informal settlement conferences.

I look forward to working with you on these matters.

    Sincerely,

    *SKT*

    Shruti K. Tejwani
    Corporate Counsel

---

One H&R Block Way | Kansas City, MO 64105 | HRB_Legal@hrblock.com

ER-160

# EXHIBIT 14

ER-161

 Outlook

---

**_____'s Notice of Dispute**

---

**From** HRB Legal <hrb legal@hrblock.com>
**Date** Wed 12/18/2024 9:58 AM
**To** CLM <CLM@zimmreed.com>

📎 1 attachment (149 KB)
Zimmerman Disclosure of Tax Return Information Consent and Authorization.pdf;

**EXTERNAL EMAIL:** Use caution with requests, links, and attachments.

Dear Counsel:

I am Corporate Counsel for H&R Block. H&R Block is in receipt of a Notice of Dispute from you on behalf of _____ ("Claimant"). H&R Block denies that it has engaged in the conduct set forth in the Notice of Dispute and denies that it is liable for the claims asserted in the Notice of Dispute.

Pursuant to the arbitration terms set forth in the H&R Block Online Services Agreement, I am writing to request an Informal Settlement Conference via telephone or videoconference between Claimant and H&R Block. H&R Block does not agree to waive either H&R Block's or Claimant's personal participation. As counsel for Claimant, you may also participate in the conference. For counsel to participate, we will need Claimant to sign a valid consent form, which is required by law to authorize us to discuss their confidential tax and account records with you. To the extent Claimant filed a joint tax return, we will also need the joint taxpayer to sign the consent form.

Please note that the consent form you submitted for Claimant is insufficient because it does not include mandatory language required by Internal Revenue Procedure 2013 14, section 5.04. I am enclosing a standard consent form, which complies with the Internal Revenue Procedure. Please submit a valid consent form for Claimant prior to the Informal Settlement Conference. You will see that the consent form contemplates a handwritten signature. If desired, we can also accept an electronic signature, provided it is completed through an identity verification platform, such as DocuSign, and includes the accompanying audit trail.

Please email the signed consent to me at HRB Legal@hrblock.com. At that time, please also provide dates and times that would work for Claimant to schedule their Informal Settlement Conference. We will work to accommodate one of those times or provide alternative options if we are unable to do so.

Meanwhile, please take steps to ensure Claimant retains and does not alter, discard, or destroy potentially relevant documents, data, or things relating to this dispute, including but not limited to internet browser information; add ons, extensions, and plug ins, such as AdBlockers and scriptblockers; social media account histories and settings; and information relating to Claimant's use of H&R Block products and services.

H&R Block respectfully disagrees with your objections to the terms of the Online Services Agreement, including but not limited to the provisions regarding arbitration costs and arbitration of similar claims, and stands by the terms of the Online Services Agreement.

This email is not intended to waive any rights. All rights are hereby reserved.

We look forward to working with you on this matter.

Sincerely,

Shruti K. Tejwani
Corporate Counsel

NOTICE: This e-mail (and any attachments) may be confidential and proprietary. It is for the sole use of the intended recipient(s) and any use or disclosure by others is prohibited. If you are not the intended recipient(s), please notify the sender by return e-mail and delete all copies of this e-mail (and any attachments).

Case 3:25-cv-03530-EMC     Document 26-15     Filed 08/05/25     Page 1 of 2

# EXHIBIT 15

ER-164

**From:** Ryan Ellersick
**Sent:** Tuesday, January 7, 2025 5:45 PM
**To:** Durone, Anthony J. <
**Cc:** Caleb Marker <                              ; Hart Robinovitch                                        ;
Gilman, Stacey R. <                              >; Hannah Brown
**Subject:** RE: H&R Block

Tony,

We are in receipt of your letter sent earlier today contending that certain Claimants were not H&R Block customers. We would like to discuss this, so please let us know if you're available for a call tomorrow or Thursday. In the meantime, we would appreciate if you would provide us the names of any Claimants who you contend did not use H&R Block's online do it yourself tax preparation and filing services during the relevant years or otherwise were never clients of H&R Block.

Best,
Ryan

---

**From:** Durone, Anthony J.
**Sent:** Tuesday, January 7, 2025 3:20 PM
**To:** Ryan Ellersick
**Cc:** Caleb Marker                                       Hart Robinovitch
Gilman, Stacey R.
**Subject:** RE: H&R Block

EXTERNAL EMAIL: Use caution with requests, links, and attachments.

Ryan, please see the attached letter. I suggest that once you've had a chance to review, we talk again. Please let me know your availability once you do. Tony

*Anthony J. Durone*

BERKOWITZOLIVER LLP
**2600 Grand Boulevard, Suite 1200**
**Kansas City, MO 64108**
**Direct: 816-627-0217**
**Fax: 816-561-1888**
**www.berkowitzoliver.com**

---

**From:** Ryan Ellersick <

Page 1 of 4

ER-165

# EXHIBIT 16

ER-166

## ZIMMERMAN | REED

March 13, 2025

**Via Email Only**

Anthony Durone
Berkowitz Oliver
2600 Grand Blvd., Suite 1200
Kansas City, MO 64108
adurone@berkowitzoliver.com

**Re:     Individual Claimants v. HR Block, Inc.**
       **AAA Case No 01-24-0009-3363**

Tony,

Now that efforts to potentially resolve the matters have not been successful, we are prepared to move forward and wanted to address certain issues.

First, in the event we refile claims in arbitration and AAA does not credit Zimmerman Reed the original initiation fees paid, we would ask that H&R Block to promptly reimburse us 50 percent of the initiation fees consistent with our agreement.

Second, we wanted to follow up on past correspondence, including your letter of January 7, 2025, where you indicated that certain Claimants have: (a) filed claims seeking to arbitrate legal disputes with H&R Block in the AAA arbitration forum; and/or (b) presented prefiling Notices of Disputes to H&R Block that either: (1) did not use H&R Block's online do-it-yourself tax preparation and filing services during the relevant time period; (2) did not use H&R Block's online do-it-yourself tax preparation and filing services at all; or (3) were never clients of H&R Block. Our internal records and information provided by our clients do not reflect this and following receipt of your letter in January we asked you to identify the claimants you were referring to. So we can further evaluate your assertions as they pertain to particular claimants, we again request that H&R Block provide us with the names of the specific Claimants that H&R Block alleges fall into each of the above categories and as referenced in your January 7 letter.

While your January 7 letter suggests this is a matter of our firm's lack of diligence, to the contrary, each of our clients previously represented to us that they used the H&R Block website (www.hrblock.com) to prepare and file their taxes online in 2021 and/or 2022. We have already provided to H&R Block the Claimants' signed prefiling Notices of Claim stating this, and at the appropriate time, we may produce declarations stating the same. Without waiving any privilege, each Claimant further confirmed that they used the H&R Block website (www.hrblock.com) to prepare and file their taxes online in 2021 and/or 2022 at the time they retained our firm to represent them. Each Claimant also provided our firm with their email address and phone number associated with their H&R Block account, along with the first five digits of their social security number as further verification, all of which we have provided to H&R Block. Finally, each provided a signed authorization for H&R Block to disclose their tax return information to our firm, which we also provided to H&R Block in September 2024. To the extent H&R Block's internal records purport to show that the representations that any Claimant has made about using

ER-167

March 13, 2025
Page 2

the H&R Block website to prepare and file their taxes online in 2021 and/or 2022 are incorrect, we again ask that you identify these individuals, and indicate which category (1, 2, or 3 above) that you claim they fall into, so we can investigate further.

Third, while the parties have debated issues in the correspondence exchanged related to prefiling settlement conferences and whether the requests were timely in prior correspondence, this is simply a matter of counsel exchanging objective data within H&R Block's possession to confirm customer status, and does not require individual interviews of any Claimants by H&R Block under the guise of a settlement conference. If certain clients had no dealings with H&R Block, as your prior letter states, the Online Services Agreement (including sections 11.2 and 11.6) would not apply to those individuals – a matter we seek to clarify. Additionally, we assume there would be no settlement offer to present to such persons. It is therefore in the best interest of both parties for H&R Block to identify the Claimants referenced in your letter as allegedly never having any type of dealings with H&R Block.

Finally, to the extent H&R Block actually wishes to present any bona fide settlement offers to any Claimants, that can be done in writing or via AAA's Online Settlement Tool.[1] After reasonable time for private consultations with our clients, we will respond to any offer in due course.

Sincerely,

Hart Robinovitch

---

[1] *See* https://www.adr.org/online-settlement-tool and https://www.adr.org/sites/default/files/document_repository/AAA239-Online-Settlement-Tool-FAQs.pdf. ("The AAA offers parties to consumer arbitration cases an opportunity to engage in online settlement negotiations to resolve their disputes themselves. The Online Settlement Tool provides parties with a dedicated space to submit, review, respond to, and track settlement negotiations throughout the case") .

ER-168

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:     (415) 874-4230

DANIEL E. JONES (*pro hac vice to be filed*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF DANIEL MURDOCK IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:       August 28, 2025<br>Time:       1:30 P.M.<br>Location:   Courtroom 5, 17th Floor |

MURDOCK DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

**DECLARATION OF DANIEL MURDOCK IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

I, Daniel Murdock, declare as follows:

1.    I have personal knowledge of the facts and matters set forth below or I have determined that such facts and matters are true and correct on the basis of information from records kept in the ordinary course of business and/or information brought to my attention by individuals upon whom I regularly rely. If I were called as a witness in this matter, I could and would testify competently to each of the matters stated.

**My Role at H&R Block**

2.    I have worked at H&R Block since June of 2024. I am currently serving as Corporate Counsel. In that role, I am familiar with the Notices of Dispute that H&R Block has received from Zimmerman Reed on behalf of claimants that they purport to represent.

3.    I am also familiar with how, in the regular and ordinary course of business, H&R Block maintains identifying information about customers who use H&R Block tax filing services, including through retail stores and online.

**The Zimmerman Reed Notices of Dispute**

4.    To date, H&R Block has received 2,644 Notices of Dispute on behalf of claimants purporting to be represented by Zimmerman Reed. These Notices purport to assert claims on behalf of claimants who used H&R Block's online tax filing services during the 2021 or 2022 tax seasons to file their taxes.

5.    At my direction, the company performed a review of the information provided by Zimmerman Reed in the Notices and compared that information to information in H&R Block records to identify which claimants are H&R Block customers, and which claimants used H&R Block's online tax filing services during the 2021 or 2022 tax seasons to file their taxes.

6.    The review produced the following findings:

a.    8 of the Notices were duplicate notices, meaning Zimmerman Reed submitted duplicate Notices on behalf of these claimants;

MURDOCK DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION; CASE NO. 3:25-CV-03530-EMC

b.    110 of the Notices were submitted on behalf of individuals who have never been an H&R Block customer, meaning H&R Block cannot locate any record of these individuals based on the information provided in the Notice;

c.    434 of the Notices were submitted on behalf of individuals who H&R Block was able to locate in its records, but whose records indicate they only obtained services through an H&R Block retail location or by using H&R Block's boxed (not online) software;

d.    63 of the Notices were submitted on behalf of individuals who H&R Block was able to locate in its records, but whose records indicate they never completed a tax filing transaction with H&R Block; and

e.    445 of the Notices were submitted on behalf of individuals who filed their taxes using H&R Block's online tax filing services, but not during the 2021 or 2022 tax seasons.

7.    Based on the review just described, of the 2,644 total Notices of Dispute, 1,584 of the Notices (59.9%) were submitted on behalf of claimants who used H&R Block's online tax filing services during the 2021 or 2022 tax seasons to file their taxes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of July, 2025.

Daniel Murdock

2

MURDOCK DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

ER-171

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:    (415) 874-4230

DANIEL E. JONES (*pro hac vice to be filed*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF VALERIE SCHUESSLER IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:      August 28, 2025<br>Time:      1:30 P.M.<br>Location:  Courtroom 5, 17th Floor |

SCHUESSLER DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION; CASE NO. 3:25-CV-03530-EMC

ER-172

**DECLARATION OF VALERIE SCHUESSLER IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

I, Valerie Schuessler, declare as follows:

1.    I either have personal knowledge of the facts and matters set forth below or I have determined that such facts and matters are true and correct on the basis of information from records kept in the ordinary course of business and/or information brought to my attention by individuals upon whom I regularly rely, including with respect to the process for using H&R Block online tax preparation and filing services and related records. If I were called as a witness in this matter, I could and would testify competently to each of the matters stated.

**My Role at H&R Block**

2.    I have worked at H&R Block since May of 2014. I am currently Director, Global Consumer Tax for H&R Block online tax preparation and filing services. Prior to my current role, I also have served as a Product Manager, Senior Product Manager, and Lead Product Manager for these services. I am familiar with the process through which clients may use H&R Block online tax preparation and filing services. I am also familiar with how the H&R Block online tax preparation and filing system is structured and operates. In addition, I am familiar with how information obtained through the H&R Block online tax preparation and filing system is stored, preserved, and retrieved in the regular and ordinary course of business.

**The H&R Block Online Services Agreement**

3.    Both new clients and returning clients are required to agree to the H&R Block Online Services Agreement, which includes an agreement to individually arbitrate disputes, each year they use H&R Block online tax preparation and filing services. This has been true at least since I started with H&R Block in 2014.

4.    The processes that I describe below are the processes that Plaintiffs Pedro Rios, Jr. ("Rios") and Christian Marquez ("Marquez") used to log into their existing H&R Block online accounts in January 2024 and agree to the H&R Block Online Services Agreement in effect at that time. These processes have remained substantially similar throughout my employment.

5.    Both Rios and Marquez first created accounts to use H&R Block online tax preparation and filing services in 2017.

**Returning Clients**

6.    Rios and Marquez each was required, like all returning clients, to enter his username, email, or mobile number on the H&R Block login page in order to log into his account. Attached as **Exhibit 1** is a true and correct copy of an exemplar screenshot showing the H&R Block login page as it appeared in January 2024 (*see* page l of Exhibit 1). Entering a correct username, email, or mobile number associated with the client's account and pressing the "Continue" button displays a new screen prompting the client to enter his password or log in with a security code generated and sent to the email account or phone number designated by the client. A true and correct copy of an exemplar screenshot showing this H&R Block login page as it appeared in January 2024 is shown on the second page of Exhibit 1. The client must enter the correct password or security code in order to complete the log-in process.

7.    Upon logging in, a returning client is then presented with a new screen: the "Returning Client Acknowledgment Screen." This screen states, "We've updated our terms & policies." Attached as **Exhibit 2** is a true and correct copy of an exemplar screenshot showing the Returning Client Acknowledgment Screen as it appeared in January 2024. The Returning Client Acknowledgment Screen presents the client with an acknowledgment that "I agree to the terms and conditions of the Electronic Communications Consent and the Online Services Agreement, which includes the requirement that any dispute be resolved through binding arbitration," directly adjacent to a check box that the client marks (by clicking on the box) to confirm his acknowledgement of this agreement. *See* Exhibit 2.[1] The client is given the opportunity to view the complete H&R Block Online Services Agreement in effect at the time by clicking on the green, underlined words "Online

---

[1] The Online Services Agreement has included an arbitration agreement for the entire time I have worked at H&R Block. The existence of the arbitration agreement has always been called out on the online page where the client affirms their acknowledgement of the Online Services Agreement in substantially the same way it was in January 2024, as described here and shown in Exhibit 2.

SCHUESSLER DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION; CASE NO. 3:25-CV-03530-EMC

Services Agreement" in the text immediately next to the check box, which contain an embedded link that takes the client to a webpage containing the complete document. *See id.*[2]

8. Once the returning client views the Returning Client Acknowledgment Screen, the returning client then must: (i) click the check box to agree to the H&R Block Online Services Agreement; and (ii) click "Next" to move past the Returning Client Acknowledgment Screen and access H&R Block online tax preparation and filing services. If the client tries to click the "Next" button to move past the Returning Client Acknowledgment Screen without clicking the check box or by later deselecting the check box (by clicking on it a second time), he cannot proceed, and an error message is displayed. Attached as **Exhibit 3** is a true and correct copy of an exemplar screenshot showing the error message as it appeared in January 2024, which reads in red font: "In order to continue, you must agree to the above terms and conditions." The "Next" button will only operate to advance to the next screen if the check box is clicked to acknowledge the client's agreement to the Online Services Agreement. In other words, no client is able to proceed past the Returning Client Acknowledgment Screen without agreeing to the then-current H&R Block Online Services Agreement.

**Acceptance of the H&R Block Online Services Agreement**

9. When a client accepts the H&R Block Online Services Agreement under the processes described above, the date and time of acceptance are automatically stored in H&R Block's records.

10. According to H&R Block records, Rios accepted the H&R Block Online Services Agreement under the processes described above on January 5, 2024, at 11:24 P.M. central time. According to H&R Block records, Marquez accepted the H&R Block Online Services Agreement under the processes described above on January 26, 2024 at 4:22 P.M. central time. Attached as

---

[2] The green, underlined terms "Electronic Communications Consent" and "Privacy Notice" shown in Exhibit 2 are also links. If clicked, each link takes the client to a webpage containing the respectively-named, complete document.

**Exhibit 4** is a true and correct copy of the operative H&R Block Online Services Agreement agreed to by Rios and Marquez at those dates and times.[3]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  10_day of July, 2025.

_____
Valerie Schuessler

---

[3] H&R Block records further confirm that Plaintiffs accepted the Online Services Agreement in every year that they had used H&R Block online tax preparation and filing services in the past, as well as when they recently accessed their accounts in 2025. The arbitration provisions in those agreements, like the provisions they agreed to in January 2024, require them to individually arbitrate all disputes and claims with any of the H&R Block Parties, including H&R Block, Inc., HRB Tax Group, Inc., and their parents, subsidiaries, and affiliates.

4

SCHUESSLER DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY
LITIGATION; CASE NO. 3:25-CV-03530-EMC

# EXHIBIT 1





**Sign in to your account**

Enter your username, email, or mobile number to get started.

Username, email, mobile

Continue

OR

Create Account

Ver.0.01 | Imprint

Copyright © 2022-2023 HRB Digital LLC. All rights reserved

Privacy

ER-178





Copyright © 2022-2023 HRB Digital LLC. All rights reserved

Privacy

ER-179

# EXHIBIT 2

ER-180





We've updated our
terms & policies.

☐ I agree to the terms and conditions of
the Electronic Communications Consent
and the Online Service Agreement,
which includes the requirement that any
dispute be resolved through binding
arbitration. I also acknowledge that the
H&R Block Privacy Notice was made
available to me.

Next

Ver 0.01 | Imprint

Copyright © 2022-2023 HRB Digital LLC. All rights reserved                                                                                  Privacy

ER-181

# EXHIBIT 3

ER-182





**We've updated our terms & policies.**

☐ I agree to the terms and conditions of the Electronic Communications Consent and the Online Service Agreement, which includes the requirement that any dispute be resolved through binding arbitration. I also acknowledge that the H&R Block Privacy Notice was made available to me.

In order to continue, you must agree to the above terms and conditions.

**Next**

Ver.0.31 | Imprint

Copyright © 2022-2023 HRB Digital LLC. All rights reserved                                    Privacy

ER-183

# EXHIBIT 4

<u>ONLINE SERVICES AGREEMENT</u>

**1. <u>Introduction.</u>**

1.1. This Online Services Agreement ("Agreement") is a contract between you and HRB Digital LLC and HRB Tax Group, Inc. (together, "H&R Block," "we," or "us"). This Agreement governs your use of Products and Services (defined in Section 15) provided by H&R Block, H&R Block Affiliates (defined in Section 15), and H&R Block's third party independently owned franchisees.

1.2. Be sure that you carefully read and fully understand this Agreement.

(A)     You may use H&R Block's Products and Services only if you agree to all the terms of the Agreement.

(B)     You are considered to have agreed to all the terms of the Agreement if you check your acceptance of the terms of the Agreement during the creation of your account, or if you otherwise access, copy, or use any Products and Services.

(C)     You do not have the right to access and use the Products and Services if you do not agree to the terms of this Agreement.

1.3. **THIS AGREEMENT INCLUDES A MUTUAL BINDING ARBITRATION AGREEMENT IN SECTION 11 THAT REQUIRES RESOLUTION OF DISPUTES BY INDIVIDUAL ARBITRATION UNLESS YOU OPT-OUT AS PROVIDED IN SECTION 11.**

1.4.  Definitions of key terms are provided in Section 15 below.

**2. <u>Your Use of The Products and Services.</u>**

2.1. **Your licensed and permitted use.** H&R Block grants you a non-exclusive, non-transferrable, non-sublicenseable, and limited license to access and use the Products and Services for your individual personal and/or internal business purposes under the terms, conditions, and limitations set forth in this Agreement and upon payment of all applicable fees. H&R Block reserves any and all rights not expressly granted to you in this Agreement.

2.2. **Your account.**

(A)     **Creating your account.** You will be required to register and create an account with us to access certain features of the Products and Services. You will be assigned or will select a username and password through the registration process. By creating an account, you consent to receive e-mail correspondence from H&R Block regarding your account or your use of the Products and Services.

(B)      **Accurate information.** By registering or creating an account to use the Products and Services, you represent and warrant that your information is true and accurate to the best of your knowledge. You agree not to submit false information such as name, email, address, or telephone number when registering for an account to use the Products and Services.

1

ER-185

(C)  **Business Users.** You represent and warrant through your registration and your use of the Products and Services that you have the authority of your company to participate and use the Products and Services on its behalf. Thus, you and your company are responsible for all activity occurring under your account.

2.3.  **Maintaining the security of your account.** You are responsible for all use of the Products and Services under your account.

(A)  **Account protection.** You are responsible for setting up and keeping confidential your account, username, password, Quick Access, and other sensitive information. You must take security precautions with at least reasonable and prudent care.

(B)  **Quick Access protection.** Quick Access is an alternative method you may use to sign into your account to use the Products and Services. You may use alternative credentials like your fingerprint or biometrics to sign into your account.

(1)  **Enable and disable Quick Access.** You may choose to enable or disable Quick Access on your device at any time by signing into your account and using the Settings Menu.

(2)  **Personal use.** Only you may use Quick Access to sign into your account. You must never allow others to use Quick Access on your device. If someone other than yourself is authorized to use your device with a fingerprint or other biometric, you must remove any access to your device by someone other than yourself.

(C)  **Unauthorized use of the Products and Services.** You will notify us immediately of any unauthorized use of the Products and Services including use of your account, username, password, Quick Access, or any other security breach of which you are aware.

(1)  **Notification of unauthorized use.** We will have no liability to you for any unauthorized access or transaction made using your account, username, password, or Quick Access that occurs before you have notified us of possible unauthorized use and we have had a reasonable opportunity to act on that notice.

(2)  **Suspension of your account.** If we suspect any unauthorized or fraudulent use, we may suspend or cancel your account, username, password, or Quick Access even without receiving notice from you or report such use to the authorities.

(D)  **Your equipment.** You are solely responsible for all device and network security for devices used to access and use the Products and Services, including but not limited to any active firewall, anti-virus software, and anti-spyware software necessary to secure and protect any proprietary or confidential information that you provide, store, submit, send, or disclose directly or indirectly with your use of the Products and Services.

**2.4. Conditions of Use.**

ER-186

(A) **Minimum Age.** You must be 18 years of age or older to use the Products and Services. You represent you are 18 years of age or older.

(B) **Payment of Applicable Fee.** Your use of the Products and Services may require you to pay a fee to H&R Block, and your use of certain Products and Services may be conditioned upon paying the applicable fee for such Products and Services. If H&R Block processes your payments using a third-party payment processor, such payments will be governed by the third-party payment processor's terms of use and privacy policy. If you obtain a Refund Transfer, your fees are not due until after all services are complete, which is typically when your refund is received and your authorized payments are disbursed, but in any event, no more than 30 days after your tax return is e-filed.

(C) **Prohibited use.** You must not, directly or indirectly use the Products and Services in a way that is a Prohibited Use (as defined in Section 15).

(D) **Additional limitations.** Specific limitations to each of the Products and Services are explained further in Section 6.

2.5. **You are responsible for the accuracy and completeness of information.**

(A) **Tax returns you file.** You will be the preparer of any tax return filed using the Products and Services (except for Tax Pro Review in Section 6.5 and Assisted Tax Preparation in Section 6.8). You have the sole responsibility and liability for reviewing and verifying all tax returns and results from the Products and Services for accuracy and completeness, and for verifying that all required forms have been filed with the IRS or applicable Revenue Authority, including forms that are supported by the Products and Services.

(B) **Information you provide.** You represent that all information you provide is accurate, consistent, and complete and that you have the right to provide the information to us. You understand that we are relying upon information provided by you (including information on source documents), and we do not independently verify information that you provide. It is your responsibility to substantiate the basis for any claimed credits, deductions, or expenses. You grant H&R Block a perpetual and royalty-free license to reproduce, use, store, and process any information that you provide, including Tax Information and other personal information in accordance with Section 4, including but not limited to, (1) as necessary for H&R Block to provide the Products and Services, and (2) in a de-identified and aggregated format throughout the world for any purpose. If you provide, or we reasonably believe you have provided, information that is false, incorrect, incomplete, pornographic, or improper, we have the right to delete the information, suspend any of your accounts, and refuse all current or future use of the Products and Services.

2.6. **User Content**.

(A) **User Content**. Some Products and Services may provide you the opportunity to contribute User Content in User Areas. You will not provide any User Content that is a Prohibited Use or that violates any intellectual property right of any third party.

(B) **License to User Content**. You grant H&R Block a perpetual and royalty-free license to reproduce, use, store, and process your User Content throughout the world for any purpose without any compensation or remuneration to you. You acknowledge that H&R Block may preserve and

3

ER-187

disclose User Content if required to do so by law or we believe in good faith that such preservation or disclosure is reasonably necessary to comply with legal process, enforce this Agreement, respond to a claim that User Content violates any third party's rights, or protect the right, property or personal safety of H&R Block, any users of the Products and Services, and the public.

(C) **No Monitoring of User Content**. H&R Block does not assume any obligation to review, screen, or approve the User Content. However, H&R Block may, in its sole discretion, remove any User Content from a User Area at any time and for any or no reason

2.7. **Your export restrictions**. You will not export the Products and Services or other materials provided by us without obtaining H&R Block's prior written consent.

2.8. **Compliance with applicable laws.** You are solely responsible for compliance with all applicable laws, regulations, statutes, ordinances, and governmental authority rules regarding your use of the Products and Services, including those related to data privacy, international communications and the transmission of personal data.

2.9. **Unauthorized use of the Products and Services.** You are responsible for all use of the Products and Services and compliance with this Agreement. You have all responsibility and liability for any breach of this Agreement by you or any user under your account.

3. **Intellectual property rights.** The Products and Services, modifications, copyrights, patents, trade secrets, trademarks, and other intellectual property rights pertaining to any aspect of the Products and Services are our exclusive property. You acquire no ownership interest, derivative work, or component of the Products and Services through your use of the Products and Services. You are not granted right, title, or interest to any trademark, service mark, logo, or trade name of H&R Block under this Agreement.

4. **Your Privacy.**

4.1. **Our Privacy Notice.** Your use of the Products and Services is subject to our Privacy Notice, available at: http://www.hrblock.com/universal/software_privacy_policy.html.

4.2. **Changes to our Privacy Notice.** Consistent with applicable law, we reserve the right to change the Privacy Notice at any time. If we make a material change to the Privacy Notice, we will

(A)    post a notice on our web site describing the change, or

(B)    send you an electronic notification of the change.

4.3. **Your Tax Information.** Through your use of the Products and Services, you may be required or requested to supply certain Tax Information or other personal financial information.

(A)    **E-file.** If you e-file your tax return, we will collect and send your Tax Information through our affiliated electronic transmitter to the Revenue Authority that you designate. In compliance with applicable law, we will keep an electronic copy of your Tax Information, including e-filing details and status.

4

ER-188

(B)   **Errors.** We may alert and provide information to Revenue Authorities to correct or identify errors in the Software.

5. <u>**Your Access to Products and Services.**</u>

5.1. **Cancellation or modification of Products and Services.** We reserve the right to: change the Products and Services at any time, without notice, and for any reason; or cancel or terminate your use of the Products and Services if you violate this Agreement. We will not be liable to you or any third party for any modification or discontinuance of Products and Services.

5.2. **Technical difficulties.** We cannot always anticipate technical or other difficulties. These difficulties may result in loss of your data, personal settings, or other interruptions to the Products and Services. We have no responsibility for the timeliness, deletion, mis-delivery, or failure to store any data, communications, or personal settings with the Products and Services.

6. <u>**The Products and Services.**</u>

6.1. **2023 Software.**

(A)   **Software limitations.** The Software may be used only for the following:

(1)   prepare and e-file your U.S. federal personal tax returns;
(2)   prepare and provide information for your personal state tax returns;
(3)   e-file your personal state tax returns;
(4)   prepare and file your U.S. federal business tax return; and
(5)   prepare and provide information for your business state tax returns.

(B)   H&R Block will make commercially reasonable efforts to keep the Software available to you until October 15, 2024.

6.2. **Electronic Filing (e-file).**

(A)   **Your responsibility.** You are solely responsible for verifying that your tax returns have been filed and received by the applicable Revenue Authorities. You are responsible for taking appropriate alternative actions if necessary to ensure the Revenue Authority receives your tax return, and for retaining a copy of your tax returns for your records.

(B)   **State requirements.** The ability to e-file your state tax return depends on the policy of each individual state. As such, e-filing may not available in some states. Some states may require you to e-file your personal federal and state tax returns at the same time.

(C)   **Our limited responsibility to e-file.** If an H&R Block tax professional does not file your tax return and you select, qualify for, and pay applicable fees, our only responsibility with respect to e-filing your tax return is limited to using commercially reasonable efforts to send your tax return electronically to the Revenue Authority.

6.3. **MyBlock℠ Account and related functions on the MyBlock Mobile Application ("MyBlock").** MyBlock is an online portal that allows you to manage information, interface with a tax professional, and access different Products and Services. You may also manage this information or access this

5

ER-189

functionality from the H&R Block Mobile App. The MyBlock My Documents feature is provided as a service to enable customers to utilize H&R Block's tax preparation and financial products or services. Any document or personal information you upload may be shared with your tax professional to assist in the preparation of your tax return or to otherwise provide the Products and Services to you. You are prohibited from storing any documents or files that do not relate to tax preparation or financial products or services ("Unrelated Files"). H&R Block reserves the right to delete without notice Unrelated Files stored in My Documents.

(A) **Examples of personal information.** Examples of your personal information you can manage in MyBlock include:

(1)     contact information;
(2)     Tax Information and supporting documentation;
(3)     tax return status;
(4)     previous year's tax returns;
(5)     healthcare information;
(6)     Communications (as defined below);
(7)     financial products information and access; and
(8)     any information you add about yourself and store for future use subject to this Agreement.

6.4. **Online Assist ("Online Assist").** Online Assist allows you to submit a tax-related question and receive a response from H&R Block or franchisee tax professionals (collectively "Online Assist Providers") through a chat function on a website designated by us, or sharing your screen with the Online Assist Providers in some instances.

(A) **Online Assist limitations.** Online Assist is limited to your personal and non-commercial use and you will not use Online Assist to obtain information for any person or entity other than you. You must not use the information provided for any purpose except for the preparation of your tax return. Online Assist is limited to U.S. tax issues. Online Assist does not include solutions to payroll tax questions or questions about the tax law applicable to estates, trusts, corporations, partnerships, gifts, and tax exempt organizations. Online Assist is limited to responding to specific tax questions and does not include a general review of your tax return or preparation of any part of your tax return. Although tax return preparation services are not available through Online Assist, we offer tax return preparation services through other offerings such as Tax Pro Review. The Online Assist Provider will not be responsible for the review of any source documentation. If you share your screen with the Online Assist Providers, they will not have control over your screen but may be able to highlight specific areas for your attention. The ability to share your screen with the Online Assist Provider may not be available. Online Assist is only available during specific hours which will be provided to you.

(B) **Our response to your request.** Because proper guidance varies based upon individual circumstances, sometimes the Online Assist Provider's response will not be a direct or complete answer. Instead, the response could be a reference to applicable Revenue Authority that the Online Assist Provider believes is appropriate in consideration of the information that you have provided. It is your responsibility to interpret the regulations and their applicability to your situation or to engage a professional to assist you in this interpretation.

6

(1) **Our response time.** Online Assist Providers attempt to respond to your question or request as soon as possible. Response times vary. Responses may be delayed to increased volume of inquiries, technical problems, complexity or nature of your request, or your failure to provide the necessary information to answer the request. We agree to use commercially reasonable efforts to provide Online Assist in a timely manner if you cooperate with Online Assist Provider as necessary to provide the information requested.

(2) **Our right to refuse a request.** The Online Assist Provider reserves the right to refuse any request and refund you any fee paid for Online Assist.

(C) **We recommend that you consult with applicable advisors.** Online Assist and the Online Assist Providers are not providing you any legal advice, financial advice, tax preparation services, or investment recommendations. It is recommended that you consult with your own legal, financial, tax, and investment advisors where appropriate.

6.5. **Tax Pro Review.** If you select and pay for the Tax Pro Review service, H&R Block or franchisees (collectively, "Tax Pro Review Providers") may provide tax advice, review a tax return you have prepared, prepare your tax return using information you have provided, and e-file your tax return with the Revenue Authority, as applicable.

(A) **Your responsibilities**. You must cooperate with the Tax Pro Review Providers, provide all information and copies of all documents requested, and review information provided by your Tax Pro Review Providers in a timely manner that is reasonably in advance of any applicable tax filing deadlines.

(1) If you complete the requirements in (A) above and otherwise comply with the terms of this Agreement, we agree to use commercially reasonable efforts to provide the Tax Pro Review service you have selected and paid for.

(2) If you do not complete the requirements in (A) above, or the information provided is inaccurate, inconsistent or incomplete, your tax return may be inaccurate or incomplete, and any guarantee offered by us will be void.

(B) **Additional fees.** The Tax Pro Review Provider may charge an additional hourly service fee for manual data entry, tax schedules, or any other service.

(C) **Bill of Rights.** If you reside in Chicago, you can find the Chicago Bill of Rights Regarding Tax Preparation Services here. If you reside in New York state, you can find the New York Consumer Bill of Rights Regarding Tax Preparers here. If you reside in New York City, you can find the New York City Consumer Bill of Rights Regarding Tax Preparers here. By accepting agreeing to this Agreement, you acknowledge receipt of the linked documents. Your Tax Pro Review Providers can answer your questions regarding these Bills of Rights.

6.6. **AI Tax Assist.** AI Tax Assist is a generative artificial intelligence chatbot that is included with H&R Block Online Plus, Deluxe, Premium, and Self-Employed tax offerings. AI Tax Assist provides answers to your general tax and H&R Block products related questions. While AI Tax Assist is available to you, you are not required to use AI Tax Assist and you can always contact one of our live tax experts instead. AI Tax Assist's responses are based on artificial intelligence technology and predictions and may not always be accurate or appropriate for your situation. We are committed to improving our services including AI Tax Assist, and we are monitoring and re-testing AI Tax Assist for further

7

ER-191

improvements.  If you have a problem with AI Tax Assist, please contact 1-800-HRBLOCK to report the problem and for any additional assistance you may need.

**(A)** AI Tax Assist is limited to your personal and non-commercial use and you will not use AI Tax Assist to obtain information for any person or entity other than you. You must not use the information provided for any purpose except for the preparation of your tax return. AI Tax Assist is limited to U.S. tax issues and product support. AI Tax Assist is limited to responding to specific tax questions and does not include a general review of your tax return or preparation of any part of your tax return.   While the responses generated by AI Tax Assist are personalized to your specific question, the responses generated by AI Tax Assist may not be unique. AI Tax Assist may not be able to answer all tax or product related questions.

**(B)** AI Tax Assist is not a substitute for live help, and AI Tax Assist is not providing you any legal or financial advice and is not preparing your tax return. Your return is self-prepared. If you have any questions or concerns about the completeness or accuracy of any information provided by AI Tax Assist, you should consult with applicable financial, legal, or tax advisors. H&R Block Online includes various live chat and assistance features to assist with tax questions.

(C) Do not provide AI Tax Assist with your personally identifiable information (PII), such as your Social Security Number, name, or financial account numbers. AI Tax Assist cannot provide responses based on your PII. We maintain a record of AI Tax Assist prompts and responses.

6.7. **Automatic Importing of Tax Information.** We may enter agreements with certain financial institutions or other service providers that will allow you to electronically import Tax Information directly into the Software.

(A) **Access to Tax Information.** If you elect to use Automatic Importing of Tax Information, you will be using the financial institution or other service provider's data systems to transfer your Tax Information into the Software. Thus, by requesting such automatic transfer of your Tax Information, you consent to H&R Block accessing, transmitting, and storing your Tax Information.

(B) **Accuracy and availability of information.** We do not represent or guarantee that Automatic Importing of Tax Information will be available or accurate. It is your responsibility to review the accuracy of all information in your tax return, including information imported from the Automatic Importing of Tax Information.

6.8. **Healthcare Subsidy Reconciliation and Penalty Calculation**.

(A) **Healthcare specific software.** The Software will calculate any healthcare subsidy reconciliation and any penalty you are required to pay because of a lack of healthcare coverage. Additionally, the Software will:
  (1)    e-file or include in the printout IRS Form 8962;
  (2)    automatically include the calculated reconciliation or penalty amount into your refund or amount you owe; and
  (3)    e-file or include in the printout IRS Form 8965 if you already have a penalty exemption number.

ER-192

(B) **Filing of your penalty.** You are required to file the penalty exemption application with the IRS. Although the Software may pre-fill a penalty exemption application, we will not and are not required to file the penalty exemption application for you.

(C) **Your eligibility for other guarantees.** 100% Accuracy Guarantee and Maximum Refund Guarantee discussed in Sections 7.1 and 7.2 below do not apply to any refund, penalty, or interest amount altered by a penalty exemption that is granted after the original tax return was filed.

6.9. **Assisted Tax Preparation Service.** If you select and pay for virtual assisted tax preparation with a tax professional **("Assisted Tax Preparation")**, we will prepare your 2023 federal and state tax returns using information you have provided, and e-file your tax returns with the Revenue Authority, as applicable.

(A) **Process.** You will provide us with initial information about you and your tax situation, and we will assign you a tax professional. You will then provide us with your personal information, including but not limited to your name, birthdate, SSN, phone number, and email address and drop off your tax documents at a local office or upload your tax documents either to your MyBlock account or through our secure message center. After we receive your documents, the tax professional will contact you to gather additional information. The tax professional will work to complete your federal and state tax returns. You will then pay for and review the tax returns to make sure the returns are complete and accurate, and if you approve the returns, we will electronically file them for you. You will be required to use a MyBlock account to use the Assisted Tax Preparation.

(B) **Bill of Rights.** If you reside in Chicago, you can find the Chicago Bill of Rights Regarding Tax Preparation Services here. If you reside in New York state, you can find the New York Consumer Bill of Rights Regarding Tax Preparers here. If you reside in New York City, you can find the New York City Consumer Bill of Rights Regarding Tax Preparers here. By accepting agreeing to this Agreement, you acknowledge receipt of the linked documents. Your Tax Pro Review Providers can answer your questions regarding these Bills of Rights.

(C) **Assisted Tax Preparation Limitations.** Assisted Tax Preparation cannot be transferred to others. The Assisted Tax Preparation is not available to you if you are under eighteen (18) years of age. You understand and agree that we are not engaged in rendering legal services or other advice, and Assisted Tax Preparation is not legal advice, financial advice, or investment recommendations. You understand that we are relying upon information provided by you, including information on source documents, and we do not independently verify information provided by you. However, we may ask you for further clarification and expect you to provide that clarification promptly and candidly. We assume no responsibility for adverse consequences due to your failure to provide information to us in a timely fashion. We are not responsible for providing any services under Assisted Tax Preparation if you fail to fully comply with any of your Duties listed in Section 6.8(D) and elsewhere in this Agreement. If your tax professional receives your information within 10 days of the filing deadline, you may be required to file an extension, or we may be unable to provide Assisted Tax Preparation.

(D) **Your Duties.**

ER-193

(1)    **Provide Information.** You must provide us with accurate, consistent, and complete information that we request to provide or supply you with one or more of the benefits associated with Assisted Tax Preparation which may include, without limitation your name, address, telephone number, email address, Social Security number, income documents (W2, 1099, etc.), deduction and credit documentation, receipts, and other personal information. You will provide this information by dropping of your documents at your local office, uploading relevant documents to you MyBlock account or through the MyBlock mobile app, or to your tax professional through the secure message center. If we are unable to obtain the required personal information from you, Assisted Tax Preparation may be unavailable, limited, or reduced.

(2)    **Review and Approve Returns.** After your tax professional completes your federal and state tax returns, you must review and approve all returns before your tax professional can file your tax returns for you. We will not file any tax returns unless we receive your approval. If you identify any errors in your tax return during your review (and before you approve), your tax professional will work with you to correct any errors.

(3)    **Payment.** We will not file any tax returns until we receive payment for your tax returns (or you agree to the appropriate paperwork if you are paying for your tax preparation fees with your refund).

(4)    **Tax Payment.** YOU HAVE THE OBLIGATION TO PAY ALL YOUR TAX LIABILITY FOR CURRENT AND FUTURE TAX YEARS, INCLUDING PAYMENT OF PROPER WITHHOLDINGS AND QUARTERLY ESTIMATED TAX PAYMENTS, AND TO COMPLY WITH ALL FILING REQUIREMENTS DURING AND SUBSEQUENT TO OUR ASSISTED TAX PREPARATION SERVICES.

7. **Limited Guarantees.**

7.1. **100% Accuracy Guarantee.** If you used and paid for the Software (or used and paid for Tax Pro Review or Assisted Tax Preparation), and the Software (or your tax professional) makes an error on your return, subject to the conditions below, we will reimburse you (up to a maximum of ten thousand dollars ($10,000) if you used the Software) for the penalty and interest caused by the error that you would otherwise not have been required to pay. This guarantee is not available if the alleged Software or tax professional error was caused in part by changes to tax laws after January 1, 2024.

(A)    **Qualifications for reimbursement.** To qualify for the reimbursement under this Section 7.1, all the following conditions must be met:
(1)    The penalty and interest are for your 2023 tax year personal or business tax return.
(2)    You used the Software, Tax Pro Review, or Assisted Tax Preparation in accordance with all terms and conditions of this Agreement and any operating instructions.
(3)    You filed the return by April 15, 2024, or you filed the return by the filing date that was properly extended.
(4)    You paid the amount of penalties and interest to a Revenue Authority.
(5)    The penalty and interest caused solely and directly because of:
(a)    an arithmetic error made by the Software;
(b)    incorrect advice on the electronic chat transcript from Online Assist; or
(c)    a tax professional error on your return.

10

ER-194

(6) If you used Tax Pro Review or Assisted Tax Preparation, you notified your tax professional, or if you used the Software, you notified H&R Block at HRB Digital LLC, Attn: Calculations Guarantee Claims, P.O. Box 10435, Kansas City, Missouri 64171-0435, each notification must be made within thirty (30) days after the penalty or interest was assessed or you received a notice from any Revenue Authority regarding your tax return, whichever is earlier.

(7) You timely sent us complete documentation of the penalty and interest, including:
  (a) all correspondence to and from each Revenue Authority;
  (b) a paper and electronic copy that is readable by the Software of your tax returns filed with each Revenue Authority;
  (c) proof that you paid the penalty and interest; and
  (d) any other relevant information we reasonably request.

(8) You took any action reasonably requested by us including filing an amended tax return if necessary, to limit any further penalties and interest from accruing.

(9) You paid any applicable fees for license of the Software and the Products and Services at the time of the initial filing or printing of your tax return.

(10) The penalty or interest is not based on incorrect advice you received from us that you knew was incorrect at the time you filed your return.

(11) You did not provide any inaccurate, inconsistent, or incomplete information in connection with your account registration or tax return.

(12) The Software, Tax Pro Review, or Assisted Tax Preparation is originally licensed to you and is not assigned or otherwise transferred from another party.

(B) **Ineligibility for reimbursement.** We will not reimburse you for penalty or interest resulting from:
  (1) your choice to take a credit or deduction suggested to you by the Software;
  (2) any form not supported by the Software;
  (3) interest from the filing deadline to the date you filed your return if you filed your return late;
  (4) more than an aggregate of ten thousand dollars ($10,000) in interest and penalties owed to any Revenue Authorities based on all federal or state tax returns, including business returns, you filed for the 2023 tax year using the Software;
  (5) incorrect entry of data by you or any third party;
  (6) data incorrectly imported into the Software from a financial institution, Automatic Importing of Tax Information, or other software;
  (7) your failure to follow the Software instructions;
  (8) your breach of any of the terms of this Agreement;
  (9) your failure to correct and resolve errors identified by the Software;
  (10) a claim for an improper or unsupportable deduction;
  (11) a failure to report income;
  (12) your failure to provide all necessary information to us or your failure to provide accurate, consistent and complete information;
  (13) positions taken by you on your return that may be unsubstantiated or incorrect, or an incorrect interpretation of the law by you;
  (14) retroactive changes to federal or state tax laws or conflicting tax laws; or
  (15) any other reason outside of our control.

(C) **Exclusive remedy.** Sections 7.1 and 7.3 (if applicable) state our entire obligation and liability and your exclusive remedy for any errors in your return caused by us or the Software, Tax Pro

11

ER-195

Review, or Assisted Tax Preparation. The monetary remedies available under Sections 7.1 and 7.3 (if applicable) are not available if you request a refund for any Software, Tax Pro Review, or Assisted Tax Preparation in accordance with Section 7.2 below.

7.2. **Maximum Refund Guarantee.** If you used and paid for the Software, Tax Pro Review, or Assisted Tax Preparation, and if you find an H&R Block error in the Software or on your return that entitles you to a larger refund (or smaller tax liability) for your personal or business tax returns, we will refund the Software, Tax Pro Review, or Assisted Tax Preparation fees to prepare that return and you may file an amended return using our Software (or we will file an amended return) at no additional charge.

(A) **Qualification.** To qualify, the refund claim must be made during the calendar year in which the return was prepared, and the larger refund or smaller tax liability must not be from:
  (1)  inaccurate, inconsistent, or incomplete information provided by you;
  (2)  your choice not to claim a deduction or credit;
  (3)  inclusion of a form that is not supported by the Software;
  (4)  positions taken by you on your return that may be unsubstantiated or incorrect, or that are contrary to law or any Revenue Authority regulations;
  (5)  changes in federal or state tax laws after January 1, 2024, or conflicting tax laws; or
  (6)  any other H&R Block or Block Advisors branded tax preparation solution.

(B) **To make a claim.** Within the same calendar year that your tax return was prepared and filed you must contact your tax professional or mail a copy of your federal and state tax return, supporting evidence showing the error, and any other relevant information requested by us. You must send the claim to ATTN: Refund Claims, HRB Digital LLC, P.O. Box 10435, Kansas City, Missouri 64171-0435

(C) **Limited application.** This Section 7.2 does not apply to supplemental products or services you obtained through your use of the Software, Tax Pro Review, or Assisted Tax Preparation.

7.3. **Accuracy of DeductionPro®("DeductionPro") online deduction service program valuations.** DeductionPro is a tool in the Software to help users track and value their charitable donations and other itemized deductions.

(A) **Values.** The values of all items contained in DeductionPro are compiled based on our research of average fair market values for clothing, appliances, sporting goods, and other items. The value of an item is primarily based on the quality and condition of the item that you determine and input into DeductionPro. If you have any questions about a valuation, you should consult with a qualified appraiser or tax advisor. We recommend that you keep detailed descriptions and photographs of donated items if any of your values are challenged by the IRS or any state revenue authority.

(B) **Limitation of DeductionPro.** DeductionPro does not calculate or accommodate complex tax situations including:

  (1)  charitable trust donations;
  (2)  partial interest donation;
  (3)  carryovers from the previous year's donations; or
  (4)  non-cash donations of over $5,000 in value.

12

ER-196

(C)    **Remedy for IRS objection or error.** If the IRS objects to the values placed on donations by DeductionPro or any mathematical calculations provided by DeductionPro are inaccurate, your exclusive remedy is for us to reimburse you as set forth in Section 7.1 subject to the requirements in Section 7.1 and the additional requirements and limitations in this Section 7.3. We will not reimburse you for additional taxes owed to the IRS. We will only reimburse you for any penalties or interest paid to the IRS provided the following qualifications are met.

(1)    You obtained access to DeductionPro from us or an authorized source and used it for the 2023 tax year.

(2)    The fee or penalty was caused directly and solely from incorrect valuation or a mathematical error in DeductionPro.

(3)    You accurately identified the donated item from the list of items contained in DeductionPro and accurately assessed the quality and condition of the item.

(4)    You obtain and possess documentation of your donation from the charitable organization and an appraisal for the items as required by law.

(5)    You notified H&R Block at HRB Digital LLC, Attn: Calculations Guarantee Claims, P.O. Box 10435, Kansas City, Missouri 64171-0435 within thirty (30) days after the penalty or interest was assessed or you received a notice from any Revenue Authority regarding your tax return, whichever is earlier.

(6)    You send us complete documentation of the penalty and interest including:
   (a)    all correspondence to and from the IRS;
   (b)    a copy of your tax return as filed with the IRS in paper and electronic media;
   (c)    proof that you paid the penalty and interest; and
   (d)    other information we reasonably request.

(D)    **Limitations.** This Section 7.3 does not apply to:
   (1)    any items or groups of items that you claimed a deduction of more than $5,000 per item or group;
   (2)    items not contained in DeductionPro's database;
   (3)    donations of automobiles;
   (4)    publicly traded securities or appreciated property;
   (5)    items that you cannot substantiate the deduction or the condition of the items;
   (6)    any property that you enter your own value or override the value suggested by DeductionPro; or
   (7)    Tax Pro Review or Assisted Tax Preparation.

8. **Disclaimer of Warranties.**

8.1.    **General Disclaimer.** OTHER THAN THOSE EXPRESS WARRANTIES AND GUARANTEES SET FORTH IN THIS AGREEMENT, H&R BLOCK, H&R BLOCK AFFILIATES, AND FRANCHISEES MAKE NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE PRODUCTS AND SERVICES.

(A)    **Disclaimer of implied warranty.** WITHOUT LIMITING THE PRECEDING SENTENCE AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AGREE THAT ANY IMPLIED WARRANTIES SUCH AS THE IMPLIED WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXCLUDED FROM YOUR LICENSE AND USE OF THE PRODUCTS AND SERVICES. SOME STATES, INCLUDING NEW JERSEY, DO NOT ALLOW EXCLUSIONS OR LIMITATIONS OF IMPLIED WARRANTIES. IF YOU LIVE IN ONE OF THESE STATES,

ER-197

THE ABOVE LIMITATIONS DO NOT APPLY TO YOU AND IN SUCH CASE, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO THE MINIMUM PERMISSIBLE UNDER APPLICABLE LAW FROM THE DATE YOU FIRST ACCESSED, USED OR ACQUIRED THE PRODUCTS AND SERVICES.

(B)  **Disclaimer of express warranty**. OTHER THAN EXPRESSLY PROVIDED IN THIS AGREEMENT, H&R BLOCK, H&R BLOCK AFFILIATES, AND FRANCHISEES DO NOT WARRANT OR PROMISE THAT THE PRODUCTS AND SERVICES WILL IDENTIFY THE APPROPRIATE DOCUMENTS FOR YOUR NEEDS, THAT THE OPERATION OF THE PRODUCTS AND SERVICES WILL BE UNINTERRUPTED, OR THAT THE PRODUCTS AND SERVICES ARE FREE FROM BUGS OR ERRORS. OTHER THAN EXPRESSLY PROVIDED IN THIS AGREEMENT, H&R BLOCK, H&R BLOCK AFFILIATES, AND FRANCHISEES MAKE NO OTHER PROMISES ABOUT THE PERFORMANCE, ACCURACY, OR RELIABILITY OF THE PRODUCTS AND SERVICES OR THEIR ABILITY TO MEET YOUR REQUIREMENTS. WHILE H&R BLOCK, H&R BLOCK AFFILIATES, AND FRANCHISEES ARE PROVIDING THE PRODUCTS AND SERVICES TO ASSIST YOU IN PREPARING AND FILING YOUR TAX RETURNS AND OTHER FUNCTIONS, THE PRODUCTS AND SERVICES DO NOT REPLACE YOUR OBLIGATION TO EXERCISE YOUR INDEPENDENT JUDGMENT IN USING THE PRODUCTS AND SERVICES. YOU ARE SOLELY RESPONSIBLE FOR CORRECTLY INPUTTING YOUR INFORMATION INTO THE PRODUCTS AND SERVICES AND FOR VERIFYING ALL OUTPUTS RESULTING FROM YOUR USE OF THE PRODUCTS AND SERVICES. OTHER THAN EXPRESSLY PROVIDED IN THIS AGREEMENT, H&R BLOCK, H&R BLOCK AFFILIATES, AND FRANCHISEES DO NOT WARRANT ANY PARTICULAR RESULTS THAT YOU MAY OBTAIN IN USING THE PRODUCTS AND SERVICES.

8.2.  **The Products and Services are not legal advice.** YOU ACKNOWLEDGE THAT H&R BLOCK AND ITS RESPECTIVE LICENSORS, H&R BLOCK AFFILIATES, AND FRANCHISEES DO NOT PRACTICE LAW NOR ARE THEY PROVIDING OR RENDERING ANY SUCH LEGAL ADVICE, FINANCIAL ADVICE, OR INVESTMENT RECOMMENDATIONS. YOU ACKNOWLEDGE AND AGREE THAT YOUR USE OF THE PRODUCTS AND SERVICES ARE NOT SUBSTITUTES FOR THE ADVICE OF AN ATTORNEY OR OTHER COMPETENT FINANCIAL PROFESSIONAL. YOU FURTHER ACKNOWLEDGE AND AGREE THAT LAWS VARY FROM STATE TO STATE AND CHANGE OVER TIME AND THAT THE FINAL DOCUMENTS, FORMS AND LETTERS SHOULD BE REVIEWED BY AN ATTORNEY OR OTHER COMPETENT FINANCIAL PROFESSIONAL BEFORE USE AND BEFORE YOU FILE YOUR TAX RETURN.

9. **Limitations on Liability and Damages.**

9.1.  **Exclusive remedy.** EXCEPT AS EXPRESSLY PERMITTED BY SECTION 7, YOUR EXCLUSIVE REMEDY AND THE ENTIRE LIABILITY OF H&R BLOCK AND ITS LICENSORS, H&R BLOCK AFFILIATES AND FRANCHISEES WITH RESPECT TO YOUR USE OF THE PRODUCTS AND SERVICES WILL BE LIMITED TO THE AMOUNT PAID BY YOU TO H&R BLOCK FOR THE PRODUCTS AND SERVICES. IN NO EVENT WILL H&R BLOCK, H&R BLOCK AFFILIATES, LICENSORS OR FRANCHISEES BE LIABLE TO YOU, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT OR IN TORT, INCLUDING NEGLIGENCE, FOR ANY TAX LIABILITIES OR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO, LOST DATA, LOST PROFITS OR BUSINESS, LOSS OF USE, OR FOR ANY CLAIM OR DEMAND AGAINST YOU BY ANY OTHER PARTY, EVEN IF H&R BLOCK OR H&R BLOCK AFFILIATES, LICENSORS OR FRANCHISEES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2.  **No additional liability.** You agree that H&R Block, H&R Block Affiliates, licensors and franchisees will not at any time have any additional liability for any claim, cause of action or injury that you or any other person may have as a result of: (1) your use of, or inability to use, the Products and Services; (2) your use of any documents generated by the Products and Services; (3) your retention of, or your

14

ER-198

failure to consult or retain, an attorney or other competent professional with respect to any contract, document or legal matter; (4) connection or toll charges for using the Products and Services or obtaining updates for the Products and Services; or (5) any fees, costs or expenses arising out of troubleshooting or technical support for the Products and Services.

9.3. **States excluded.** SOME STATES, INCLUDING NEW JERSEY, DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES. IF YOU LIVE IN ONE OF THESE STATES, THE ABOVE LIMITATION OR EXCLUSION DOES NOT APPLY TO YOU.

9.4. **Essential purpose of this agreement.** You agree that the essential purposes of this Agreement may be fulfilled even with these limitations on liabilities. You acknowledge that H&R Block would not be able to offer the Products and Services on an economical basis without these limitations.

10. **Indemnification.** You agree to defend and hold harmless H&R Block, H&R Block Affiliates, their franchisees and their respective current and former successors, assigns, officers, directors, representatives, employees, and agents from and against any and all claims, suits, settlements, losses, liabilities, penalties, damages (including incidental and consequential damages), costs, and expenses (including reasonable attorneys' fees and expenses) resulting from or arising out of your breach of this Agreement or your User Content.

11. **ARBITRATION IF A DISPUTE ARISES ("Arbitration Agreement").**

11.1. **Scope of Arbitration Agreement.** You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below. However, to the fullest extent permitted by applicable law, either you or the H&R Block Parties may elect that an individual claim be decided in small claims court, as long as it is brought and maintained as an individualized claim and is not removed or appealed to a court of general jurisdiction. All issues are for the arbitrator to decide, except that issues relating to the arbitrability of disputes and the validity, enforceability, and scope of this Arbitration Agreement, including the interpretation of and compliance with sections 11.2, 11.4, and 11.6 below, shall be decided by a court and not an arbitrator. The terms **"H&R Block Parties"** or "we" or "us" in this Arbitration Agreement include HRB Digital LLC, HRB Tax Group, Inc., and Emerald Financial Services, LLC, along with their predecessors, successors, and assigns, and each of the past, present, and future direct or indirect parents, subsidiaries, affiliates, officers, directors, agents, employees, and franchisees of any of them.

> **Arbitration Opt Out: You may opt out of this Arbitration Agreement within 30 days after you accept this Agreement by filling out the form at www.hrblock.com/goto/optout, or by sending a signed letter to Arbitration Opt Out, P.O. Box 32818, Kansas City, MO 64171. The letter should include your printed name, address, the first five digits of your Social Security Number, and the words "Reject Arbitration." If you opt out of this Arbitration Agreement, any prior arbitration agreement shall remain in force and effect.**

11.2. **Commencing arbitration.** You or we may commence an arbitration proceeding only if you and we do not reach an agreement to resolve the dispute or claim during the Informal Resolution Period (defined below).

(A)     **Pre-arbitration notice of dispute.** A party who intends to seek arbitration must first mail a written Notice of Dispute ("Notice") to the other party. The Notice to the H&R Block Parties

15

ER-199

should be addressed to: H&R Block-Legal Department, Attention: Notice of Dispute, One H&R Block Way, Kansas City, MO 64105. The Notice to you will be sent to the last known address on file with the H&R Block Parties. The Notice must be on an individual basis and include all of the following: (1) the claimant's name, address, telephone number, and e-mail address; (2) the nature or basis of the dispute or claim; (3) the specific relief sought; and (4) the claimant's signature.

(B) **Informal Settlement Conference.** After the Notice containing all of the information required above is received, within 60 days either party may request an individualized discussion (by telephone or videoconference) regarding informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the parties will work together in good faith to select a mutually agreeable time for the Informal Settlement Conference. You and our business representative must both personally participate in a good-faith effort to settle the dispute without the need to proceed with arbitration. The requirement of personal participation in an Informal Settlement Conference may be waived only if both you and we agree in writing. Any counsel representing you or us may also participate; however, if you have retained counsel, a signed statement is required by law to authorize the H&R Block Parties to disclose your confidential tax and account records to your counsel. Any applicable statute of limitations will be tolled for the claims and relief set forth in the Notice during the period between the date that either you or we send the other a fully complete Notice, until the later of (1) 60 days after receipt of the Notice; or (2) if a Settlement Conference is timely requested, 30 days after completion of the Settlement Conference (the "Informal Resolution Period"). The parties agree that the existence or substance of any settlement discussions are confidential and shall not be disclosed, except as provided by applicable law.

(C) **Enforcement of pre-arbitration requirements.** The Notice and Informal Settlement Conference requirements are essential so that you and we have a meaningful chance to resolve disputes informally before proceeding to arbitration. A court will have authority to enforce this section 11.2, including the power to enjoin the filing or prosecution of an arbitration or the assessment of or demand for payment of fees in connection with an arbitration, if the party who intends to seek arbitration does not first provide a fully complete Notice and participate in a timely requested Informal Settlement Conference. In addition, unless prohibited by applicable law, the arbitration administrator shall not accept, assess or demand fees for, or administer an arbitration commenced during the Informal Resolution Period.

11.3. **How arbitration works.** Arbitration shall be conducted by the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules ("AAA Rules"), as modified by this Arbitration Agreement. The AAA Rules are available on AAA's website www.adr.org. If AAA is unavailable or unwilling to administer the arbitration consistent with this Arbitration Agreement, the parties shall agree to, or the court shall select, another arbitration provider. Unless the parties agree otherwise, any arbitration hearing shall take place in the county of your residence. If you accept this Agreement outside the United States, the arbitration hearing shall take place in the county in which you last resided in the United States. The arbitrator will be either a retired judge or an attorney specifically licensed to practice law in the state of your residence and selected by the parties from the arbitration provider's national roster of arbitrators. The arbitrator will be selected using the following procedure: (1) the arbitration provider will send the parties a list of five candidates meeting this criteria; (2) if the parties cannot agree on an arbitrator from the list, each party shall return its list to the arbitration provider within 10 days, striking up to two candidates, and ranking the remaining candidates in order of preference; (3) the arbitration provider shall appoint as arbitrator the candidate with the highest aggregate ranking; and (4) if for any reason the

16

ER-200

appointment cannot be made according to this procedure, the arbitration provider will provide the parties a new list of five candidates meeting the above criteria until an appointment can be made.

11.4. **Waiver of right to bring class action and representative claims.** All arbitrations shall proceed on an individual basis. The arbitrator is empowered to resolve the dispute with the same remedies available in court, including compensatory, statutory, and punitive damages; attorneys' fees; and declaratory, injunctive, and equitable relief. However, the arbitrator's rulings or any relief granted must be individualized to you and shall not apply to or affect any other client. The arbitrator is also empowered to resolve the dispute with the same defenses available in court, including but not limited to statutes of limitation. **You and the H&R Block Parties also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and the H&R Block Parties hereby waive the right to a trial by jury, to assert or participate in a class action lawsuit or class action arbitration, to assert or participate in a private attorney general lawsuit or private attorney general arbitration, and to assert or participate in any joint or consolidated lawsuit or joint or consolidated arbitration of any kind.** If, after exhaustion of all appeals, a court decides that applicable law precludes enforcement of any of this section's limitations as to a particular claim or any particular request for a remedy for a claim (such as a request for public injunctive relief), then the parties agree that the particular claim or the particular request for a remedy (and only that particular claim or particular request for a remedy) must remain in court and be severed from any arbitration. No arbitration shall proceed in any manner as a class action arbitration, private attorney general arbitration, or arbitration involving joint or consolidated claims, unless all parties consent in writing.

11.5. **Arbitration costs.** Payment of all filing, administrative, case-management, arbitrator, and hearing fees will be governed by AAA Rules, but if you inform us that you cannot afford to pay your share of the fees, we will consider advancing those fees on your behalf and will do so if required by applicable law. In addition, we will reimburse you for your share of the fees at the conclusion of the arbitration (regardless of who wins), so long as (i) you complied with the requirements in sections 11.2 and 11.4 above and section 11.6 below, and (ii) neither the substance of your claim nor the relief you sought was determined to be frivolous or brought for an improper purpose as measured by the standards set forth in Federal Rule of Civil Procedure 11(b); otherwise, the payment of fees will be governed by AAA Rules and you agree to reimburse the H&R Block Parties for all fees advanced on your behalf.

11.6. **Arbitration of similar claims.** If 25 or more claimants submit Notices or seek to file arbitrations raising similar claims and are represented by the same or coordinated counsel (regardless of whether the cases are submitted simultaneously), all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved during the Informal Resolution Period. You agree to this process even though it may delay the arbitration of your claim. In the first stage, each side shall select 10 cases (20 cases total) to be filed in arbitration and resolved individually by different arbitrators, with each case assigned to an arbitrator from the claimant's home state. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, assess or demand fees for, or administer arbitrations that are commenced in violation of this section. The arbitrators are encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness. If the remaining cases are unable to be resolved after the conclusion of the first stage bellwether proceeding, each side shall select up to another 10 cases (20 cases total) to be filed in arbitration and resolved individually in accordance with this Arbitration Agreement. During this second stage, no other cases may be filed in arbitration. If any claims remain after the second stage, the process will be repeated until all claims are resolved through settlement or arbitration, with two alterations. First, a total of 50 cases may be filed each

17

ER-201

round (unless a higher number of cases is mutually agreed upon in writing). Second, arbitrators who were assigned cases in previous rounds may be appointed to new cases. If this section 11.6 applies to a Notice, the statute of limitations applicable to the claims and relief set forth in that Notice shall be tolled from the beginning date of the Informal Resolution Period until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have authority to enforce this section 11.6, including to enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations.

11.7. **Other terms.** This Arbitration Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the Federal Arbitration Act and other applicable federal law. Except as set forth above in section 11.4, if any portion of this Arbitration Agreement is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Agreement. Notwithstanding any provision in this Agreement to the contrary, we will not make any material change to this Arbitration Agreement without providing you with an opportunity to reject that change by following the directions in the notice of changes. Rejection of any future change will not impact this or any other arbitration agreement between you and the H&R Block Parties. No arbitration award or decision will have any preclusive effect as to any issues or claims in any dispute, arbitration, or court proceeding where any party was not a named party in the arbitration, unless and except as required by applicable law.

12. **SMS Text Messages.** You can receive different types of text messages from us, including refund status and promotional offers. If you agree to receive text messages from us, you agree to and understand the following:
   (A)    Your wireless service carrier's standard text message and data rates may apply.
   (B)    You agree that we may communicate with you by automated SMS, MMS, text message or other electronic means to your mobile device.
   (C)    Message frequency varies.
   (D)    In the event you change or deactivate your mobile telephone number, you agree to promptly update your account information.
   (E)    We may send you a message to confirm your choice to receive text messages.
   (F)    You can cancel text messaging at any time by replying "STOP" to the most recent text message you received.
       (1)    If you have agreed to receive multiple types of text messages, you will need to cancel each message type separately.
       (2)    We will send you a text message to confirm you have been unsubscribed.
   (G)    Reply "HELP" for instructions and how to unsubscribe.
       (1)    This may not be available for some message types.

13. **Termination of this Agreement.** Without prejudice to any other rights, H&R Block may immediately terminate this Agreement if you fail to comply with these terms and conditions. Upon termination of this Agreement, you must immediately stop use and access to the Products and Services. All provisions of this Agreement that are intended to survive or that must survive in order to give effect to its meaning (including, but not limited to, the provisions of Sections 3, 8, 9, 10, 11, and 14) will survive the termination or expiration of this Agreement.

14. **Other.**

14.1.  **Governing law.** Except as otherwise provided in the Arbitration Agreement, this Agreement is governed by, interpreted, construed, and enforced in accordance with the law of the state where you accepted this Agreement except to the extent inconsistent with or preempted by federal law.

14.2. **Entire agreement.** Except as otherwise provided in the Arbitration Agreement, this Agreement is the entire and exclusive agreement between the parties with respect to the Products and Services, defined in Section 15 below and it supersedes all previous communications, representations, or agreements, either oral or written, between them. A representation or statement of any kind made by any representative of H&R Block and not included in this Agreement, is not binding on H&R Block.

14.3. **Amendments.** We have the sole discretion to change the terms of this Agreement or make changes related to any aspect of the Products and Services, except as otherwise provided in this Agreement. If this occurs, we will provide notice to you via any means we consider reasonable including, without limitation, e-mail, posting on our website, or updates to the Products and Services. After we provide notice, continued use of the Products and Services constitutes your acceptance of the changes and the Agreement (as amended).

14.4. **Waiver.** No waiver of any provision or condition herein is valid unless in writing and signed by you and an authorized representative of us. Our failure to insist on or enforce strict performance of any provision of this Agreement or any right is not to be construed as a waiver of any provision or right.

14.5. **Severability.** Except as provided in the Arbitration Agreement, any provision of this Agreement determined to be illegal or unenforceable is automatically reformed and construed to be valid, operative, and enforceable to the maximum extent permitted by law or equity while preserving its original intent; the invalidity of any part of this Agreement will not render invalid the remainder of this Agreement.

14.6. **Notices.** Except as otherwise indicated, any notices under this Agreement to us must be personally delivered or sent by certified or registered mail, return receipt requested, or by U.S. Postal Service express mail, to HRB Digital LLC, Attn: Tax Program Notices, One H&R Block Way, Kansas City, Missouri 64105 or to such other address as H&R Block specifies in writing. Notices will be effective upon receipt that may be shown by confirmation of delivery.

14.7. **H&R Block and H&R Block Affiliates.** All references in this Agreement to H&R Block and H&R Block Affiliates, where the context permits, includes H&R Block's and H&R Block Affiliates' respective directors, officers, employees, contractors and agents.

14.8. **Agreement headings.** The headings contained herein are for the convenience of the parties only and are not be used to interpret or construe any of the terms of this Agreement.

14.9. **Third Party beneficiaries and assignment.** H&R Block's respective licensors, suppliers, franchisees, and H&R Block Affiliates are considered to be third party beneficiaries of this Agreement solely to the extent necessary for them to enforce any protections afforded them by this Agreement, except as otherwise provided in this Agreement. All rights and benefits of this Agreement from H&R Block are intended solely for the original purchaser of the Products and Services. You must not assign, delegate or otherwise transfer this Agreement or any of your rights under this Agreement. H&R Block may assign this Agreement in its sole discretion and will use reasonable efforts to notify you of an assignment. The remedies and all other rights and benefits provided under this Agreement are personal to the original purchaser of the Products and Services from H&R Block or from its authorized reseller and such rights and benefits must not be assigned or otherwise transferred to

ER-203

any other party. This Agreement inures to the benefit of H&R Block and its respective permitted successors and assigns.

14.10. **Taxation.** The taxability of the Products and Services will be determined and governed by the purchase agreement or invoice for the specific Products and Services used or paid for.

15. **Definitions.**

15.1.  **"Communications"** means all notices, disclosures (including those required by law), agreements, fee schedules, tax returns, records, documents, or other information we provide to you or that you sign or agree to relating to your use of Products and Services or your relationship with us.

15.2. **"H&R Block Affiliates"** includes any entities that directly or indirectly control, are controlled by, or are under common control with HRB Digital LLC or HRB Tax Group, Inc.

15.3.  **"Products and Services"** means the Software, the Products and Services listed and described in Section 6, and any other product or service offered or delivered by H&R Block, H&R Block Affiliates, or their franchisees, that you select, pay for, or use.

15.4.  **"Prohibited Use"** includes any of the following activities when using the Products and Services:
   (A)    re-distribute, sell, rent, loan, or otherwise transfer the Products and Services or any rights or benefits in the Products and Services to any other person or entity;
   (B)    share your username or password with any third party;
   (C)    use the Products and Services in any unintended manner;
   (D)    use the Products and Services for the benefit of any third parties;
   (E)    make the Products and Services available on a file-sharing service, application service provider, outsourcing basis, or service bureau basis;
   (F)    use the Products and Services to provide services for third parties, including but not limited to tax-related advice or consulting services, and preparation of any documents using the Products and Services for a third party;
   (G)    duplicate the Products and Services by any means;
   (H)    remove any proprietary notice, labels, or marks on the Products and Services, documentation, advice related to the Products and Services, or any work product generated from your use of the Products and Services;
   (I)    derive or attempt to derive the source code of the Products and Services;
   (J)    disable or circumvent any access control or related device, process, or procedure established with respect to the Products and Services;
   (K)    disassemble, modify, or reverse engineer the Products and Services;
   (L)    seek to derive the source code from any executable object code provided to you;
   (M)    modify, translate, or otherwise create derivative works based on any part of the Products and Services;
   (N)    use the Products and Services in any unlawful manner or in any other manner that could damage, disable, overburden, or impair the Products and Services;
   (O)    upload, post, transmit, share, store, or otherwise make available any content that we deem to be harmful, threatening, unlawful, defamatory, infringing, abusive, inflammatory, harassing, vulgar, obscene, fraudulent, invasive of privacy or publicity rights, hateful, or racially, ethnically, or otherwise objectionable;

20

ER-204

(P)  upload, post, transmit, share, or otherwise make available any unsolicited or unauthorized advertising, solicitations, promotional materials, "junk mail," "spam," "chain letters," "pyramid schemes," or any other form of solicitation;

(Q)  upload, post, transmit, share, or otherwise make available any material that contains software viruses or any other code, files, or programs designed to interrupt, destroy, or limit the functionality of any software or hardware or telecommunications equipment; and

(R)  upload, post, transmit, share, store, or otherwise make available content that would constitute, encourage, or provide instructions for a criminal offense, violate the rights of any party, or that would otherwise create liability or violate any local, state, national, or international law.

15.5.  **"Revenue Authority"** means the IRS and any applicable state revenue authorities.

15.6.  **"Software"** means the hosted 2023 online and mobile version of the H&R Block or Block Advisors tax software and related functions provided by H&R Block or Block Advisors.

15.7.  **"Tax Information"** means all your personal information, documents, and any other information used to prepare your tax return.

15.8.  **"User Content"** means any ideas, comments, questions, feedback, survey responses, testimonials, or other content you provide in User Areas.

15.9.  **"User Areas"** means blogs, message boards, chat rooms, e-mail, surveys, questionnaires, reviews, and other features of the Products and Services that may be offered from time to time and are operated by H&R Block or a third party on our behalf.

ER-205

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:    (415) 874-4230

DANIEL E. JONES (*pro hac vice to be filed*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DECLARATION OF BOBBIE CREW IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Date:    August 28, 2025<br>Time:    1:30 P.M.<br>Location:  Courtroom 5, 17th Floor |

ER-206

**DECLARATION OF BOBBIE CREW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**

I, Bobbie Crew, declare as follows:

1. I either have personal knowledge of the facts and matters set forth below or I have determined that such facts and matters are true and correct on the basis of information from records kept in the ordinary course of business and/or information brought to my attention by individuals upon whom I regularly rely. If I were called as a witness in this matter, I could and would testify competently to each of the matters stated.

**My Role at H&R Block**

2. I have worked at H&R Block since September 2007. I am currently employed as a Senior Paralegal in the H&R Block Legal Department.

3. I am familiar with the process through which clients opt out of the arbitration agreement contained in the H&R Block Online Services Agreement. I am also familiar with how client opt outs are stored, preserved, and retrieved in H&R Block's records in the regular and ordinary course of business.

4. I am also familiar with how Notices of Dispute submitted by claimants or their counsel pursuant to the Online Services Agreement are stored, preserved, and retrieved in H&R Block's records in the regular and ordinary course of business.

**Plaintiffs Rios And Marquez Did Not Opt Out of Arbitration**

5. Attached as Exhibit 4 to the Declaration of Valerie Schuessler is a true and correct copy of the Online Services Agreement agreed to by Plaintiff Pedro Rios, Jr. ("Rios") on January 5, 2024 and agreed to by Plaintiff Christian Marquez ("Marquez") on January 26, 2024. That Online Services Agreement contained an opt out provision that allowed Rios and Marquez to opt out of arbitration within 30 days of accepting the Online Services Agreement by filling out an online form or mailing a simple letter. *See* Schuessler Decl., Exhibit 4, § 11. Neither Rios nor Marquez opted out of the arbitration agreement in the Online Services Agreement.[1]

---

[1] In each of the other years for which Rios and Marquez used H&R Block online tax filing services, the H&R Block Online Services Agreement contained a similar opt out provision, but neither Rios nor Marquez opted out.

**Notices Of Dispute Submitted On Behalf Of Plaintiffs Rios And Marquez**

6.    According to H&R Block records, different law firms have submitted Notices of Dispute to H&R Block on behalf of each of the two Plaintiffs, Rios and Marquez.

*Rios*

7.    Attached as **Exhibit 1** is a true and correct copy of a Notice of Dispute, dated August 4, 2023, submitted on behalf of Rios.

8.    Attached as **Exhibit 2** is a true and correct copy of a Notice of Dispute, dated July 19, 2024, submitted on behalf of Rios.

9.    Attached as **Exhibit 3** is a true and correct copy of a Notice of Dispute, dated September 26, 2024, submitted on behalf of Rios.

*Marquez*

10.    Attached as **Exhibit 4** is a true and correct copy of a Notice of Dispute, dated March 16, 2023, submitted on behalf of Marquez.

11.    Attached as **Exhibit 5** is a true and correct copy of a Notice of Dispute, dated July 18, 2024, submitted on behalf of Marquez.

12.    Attached as **Exhibit 6** is a true and correct copy of a Notice of Dispute, dated September 18, 2024, submitted on behalf of Marquez.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of July, 2025.

Bobbie Crew

CREW DECL. ISO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION;
CASE NO. 3:25-CV-03530-EMC

ER-208

# EXHIBIT 1

08/04/2023

**VIA FEDERAL EXPRESS**

**H&R Block-Legal Department**
**Attn: Notice of Dispute**
**One H&R Block Way**
**Kansas City, MO 64105**

    **RE:   NOTICE OF INDIVIDUAL CONSUMER DISPUTE REGARDING HRB DIGITAL LLC AND HRB TAX GROUP, INC.'S VIOLATIONS OF STATE PRIVACY LAWS**

To Whom It May Concern:

Pursuant to HRB Digital LLC and HRB Tax Group, Inc.'s (collectively, "H&R Block") Online Services Agreement governing the use of H&R Block's products and services, we are writing on behalf of our client, ("Claimant"), whose information is as follows:

Name: Pedro Rios
Street Address: 232 ████████
City/State: Bay point, CA
Zip: 94565
Email: Pedro.rios██@gmail.com
Phone: 925████████

Claimant retained our law firm for the express purpose of pursuing Claimant's claims against H&R Block for its violations of the California Invasion of Privacy Act, CA Penal Code Sec. 631 and/or the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747, in connection with H&R Block's practice of using Meta Pixel to track, capture, and harvest its customers' activities on H&R Block's website, and sharing this information and more with Meta without disclosure or consent. To this end, Claimant's information is being provided in a good faith effort to resolve Claimant's claims against H&R Block resulting from its violations of the aforementioned state wiretapping act(s), in connection with its undisclosed and non-consensual use of Meta Pixel, which is an invasion of the privacy rights of H&R Block's customers.
From within Claimant's home state, Claimant used H&R Block's online tax preparation products and services. Upon information and belief, H&R Block embeds Meta Pixel in its website, which it uses to track customers' activities as they navigate the website, including tracking and logging each page they visit, each button they click, each search they perform, and any specific information they input into H&R Block's website (collectively, "User Data"). In addition, and without consent, H&R Block covertly shares this harvested User Data with Meta via Meta Pixel along with personally identifiable information ("PII"), including, but not limited to, the customer's name, email address, telephone number, Facebook ID ("FID") and/or IP address. As a result, Meta has the ability to collect and analyze H&R Block customers' interactions with the H&R Block website, including all PII that customers enter into the website, which Meta can use to send targeted advertisements to H&R Block customers based on the information gathered about them via Meta Pixel.
Claimant was unaware that H&R Block harvested and shared Claimant's User Data and PII with Meta because the Meta Pixel software is inconspicuously embedded in H&R Block's website without disclosure and without obtaining consent. Further, Claimant had a reasonable expectation of privacy that Claimant's User Data and PII would not be harvested from H&R Block's website or shared with third parties such as Meta.
The California Invasion of Privacy Act, CA Penal Code Sec. 631 ("CIPA"), prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one

another or by means of a telephone, telegraph, or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication. Under § 637.2(a), any person who has been injured by a violation of CIPA may bring an action against the violator for the greater of: (1) $5,000 per violation; or (2) three times the amount of any actual damages sustained, as well as injunctive or other equitable relief. Suffering actual damages is not a prerequisite for a victim to pursue a claim for violations of CIPA. Similarly, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747 ("PWESCA"), prohibits the interception of electronic, wire, and/or oral communications and allows for the recovery of actual damages, profits made by the violator as a result of the violation, punitive damages, equitable or declaratory relief, attorneys' fees, and reasonable litigation costs. In no case will a victim of the PWESCA recover less than one-thousand dollars ($1,000.00).

Claimant had a reasonable expectation of privacy and that Claimant's User Data and PII would not be harvested by H&R Block and shared with third parties, including Meta. Claimant demands payment of $5,000.00 to be made on Claimant's behalf to the undersigned attorneys in order to fully resolve the dispute detailed in this letter. This amount is the appropriate relief for H&R Block's statutory violations and will reasonably compensate Claimant for the harm to Claimant's privacy interests. In the event that H&R Block fails to resolve Claimant's claims within 60 days of receiving this notice letter, Claimant is prepared to initiate individual arbitration under the American Arbitration Association's Consumer Rules in accord with the above-referenced Online Services Agreement implemented on the date of this letter. It is important to note that we dispute the legality of several requirements within H&R Block's arbitration provision. Nevertheless, out of an abundance of caution and to avoid further delay of Claimant's claims being addressed and resolved, we have made a good faith effort to comply with H&R Block's onerous arbitration provision. If you consider this letter to be deficient in any manner, please let us know so that we can remedy the deficiency.

Finally, we want to inform you that Milberg currently represents thousands of additional clients who are also victims of H&R Block's illegal conduct, as described above, and have claims identical to those of Claimant. Additional clients are retaining our firm on a daily basis. While we can certainly provide individual notice letters for each of our clients, it may be more efficient for us to discuss a streamlined process for addressing and exploring the potential resolution of all of our clients' claims contemporaneously.

We look forward to hearing from you regarding this matter.

Sincerely,

CLIENT SIGNATURE:

Pedro Rios
*Claimant*

Jonathan B. Cohen
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
221 W. Monroe Street, Suite 2100

ER-211

Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

Nick Suciu
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
(313) 303-3472
nsuciu@milberg.com

Daniel K. Bryson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5000
dbryson@milberg.com

*Attorneys for Claimant*

ER-212

# EXHIBIT 2

Friday, July 19, 2024


H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105


Re: Pre-Arbitration Notice of Dispute


To Whom It May Concern:

This letter is submitted as a written notice describing a dispute I have with HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block"), Google, LLC ("Google"), and Meta Platforms, Inc. ("Meta"), as well as any of their affiliates, and the desired resolution prior to commencing  arbitration proceedings with the American Arbitration Association.

In 2021 and 2022, I used the H&R Block website (www.hrblock.com) to prepare and file my taxes online.  As part of the tax preparation process, I was required to provide certain sensitive and personal financial and other information to H&R Block through its website.

It is my understanding that without my knowledge or consent, H&R Block embedded certain tracking tools from Meta and Google and/or other third parties on its website, which resulted in the unauthorized interception and disclosure of my personal and tax information to Meta, Google and/or other third parties.  I allege that this conduct violates the Federal Wiretap Act (18 U.S.C. § 2510, et seq.), the California Invasion of Privacy Act (Cal Penal Code § 631, et seq.) ("CIPA"), and/or other state and federal laws.

The claims presented are based, in part, on the July 2023 report by the U.S. Senate finding that, "Through the Meta Pixel and Google's business tools, the tax prep companies investigated in this report," including H&R Block, "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."

I am seeking all available relief for violations of these laws, including but not limited to: statutory damages; restitution; injunctive (public and private) and declaratory relief; reasonable attorneys' fees and costs; and all other relief that is just and equitable.  The amounts sought for each violation are no less than the statutory damages allowed under the Wiretap Act ($10,000) and CIPA ($5,000).

I am represented by the law firm of Zimmerman Reed LLP.  All communications and information regarding this matter should be directed to my attorneys and representatives at the address below instead of to my personal email or address:

**Zimmerman Reed LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
CLM@zimmreed.com

I request that H&R Block, Meta, Google and any of their affiliates immediately disclose to my counsel at Zimmerman Reed LLP: (1) all information related to me that was intercepted or shared between them through use of the tracking technologies and pixel codes employed; (2) fully describe in detail all arrangements, including contracts, that H&R Block, Meta, Google and any of their affiliates had to employ tracking technologies that could share consumers' (like mine) tax preparation information and data; (3) fully describe all uses of the information shared; (4) fully describe all compensation or other things of value, monetary or otherwise, that was exchanged between H&R Block, Meta, Google and any of their affiliates in

1

ER-214

relation to the use of the tracking technologies employed; and (5) disclose all information provided to any person or agency in relation to the U.S. Senate Report, Attacks on Tax Privacy: How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023 (found at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf.)

To expedite resolution of my claim, I waive my personal participation in any pre-arbitration Informal Settlement Conference and authorize Zimmerman Reed LLP to appear on my behalf and represent me at any such conference and other proceedings.  I instruct you to address all matters related to my claims, including those at any Informal Settlement Conference, directly with my attorneys.  I object to any requirement that I personally participate in the Informal Settlement Conference.  If required to personally appear, however, I will do so with my attorneys.

Through this notice, I inform you that I also object to any batched filing processes (Sec. 11.6) that may be imposed at any arbitration forum as unconscionable, unfair and inconsistent, among other things, and that will unduly delay the processing and resolution of my individual claims.

Finally, I ask that you immediately pay any and all fees and costs imposed by any arbitration forum, including the American Arbitration Association.


Sincerely,





| **Name** | Pedro Rios jr |
| **Address** | 232 ███████ |
| | BAY POINT, California 94565 |
| **Telephone Number** | (925) ████████ |
| **Email** | pedro.rios██@gmail.com |
| **SSN** | ██████ |

2

ER-215

# EXHIBIT 3

ER-216

**This Pre-Arbitration Notice of Dispute is an important document that establishes that you have an account with H&R Block and would like to bring your privacy claim in arbitration. Please read carefully to confirm that the following is correct and then check the box and sign to confirm that you affirm these facts under penalty of perjury.**

# PRE-ARBITRATION NOTICE OF DISPUTE

H&R Block Legal Department
Attn: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105

Google LLC
c/o 1505 Corporation CSC – Lawyers Incorporating Service
Attn: Notice of Dispute
1600 Amphitheatre Parkway
Mountain View, CA 94043

Meta Platforms, Inc.
c/o 1505 Corporation CSC – Lawyers Incorporating Service
Attn: Notice of Dispute
1 Meta Way
Menlo Park, CA 94025

**Re: Pre-Arbitration Notice of Dispute**

To Whom It May Concern,

My name is Pedro Rios. This letter is a Notice of Dispute pursuant to H&R Block's Online Services Agreement (https://www.hrblock.com/pdf/HRBlock-Online-Services-Agreement.pdf).

I am and H&R Block account holder. This H&R Block account belongs to me and not a third party.

In 2022, I prepared my 2021 tax return using H&R Block's "file taxes on my own" option on H&R Block's website, www.hrblock.com.

I recently learned that H&R Block disclosed my tax return information ("TRI") to third parties, including Meta and Google for marketing and analytics purposes, without my authorization. When H&R Block installed software from Google and Meta to intercept my tax return information, it violated several federal and state laws, including the Electronic Communications Privacy Act ("ECPA") and the Internal Revenue Code, which states that a tax return preparer such as H&R Block may not disclose "any information furnished... in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing, any such return." U.S.C. 7216(a).

I have retained Labaton Keller Sucharow LLP to investigate and pursue claims against H&R Block, Google, and Meta on my behalf under the ECPA and applicable federal and state laws. I have authorized my attorneys to seek at least $10,000—the maximum statutory penalty under the ECPA —for disclosing my confidential tax return information for purposes other than preparing my tax return without my consent. I authorize H&R Block to disclose my H&R Block account details, including confidential tax and account information, Google to disclose my Google account details, and Meta to disclose my Meta (Facebook) account details to my attorneys if my attorneys believe those details are helpful to resolve my claim.

I also hereby elect to waive my participation in a class action settlement that would otherwise include my claim(s). I further consent to my attorneys executing an opt-out form on my behalf in any class action settlement, or, if there is no class action settlement for which preliminary approval or final approval has been granted, to give notice to the court that I have elected to opt-out of the class action. I retain the right to revoke this waiver at any time after providing written notice to my attorneys at Labaton Keller Sucharow LLP.

H&R Block's Customer Agreement provides for a 60-day pre-dispute resolution period before arbitration to allow the parties to negotiate in good faith before expending the significant resources private arbitration requires. I am committed to that process. If you are also committed to that process, please contact my attorneys at Labaton to discuss resolving my dispute.

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: 5d2648b10h47c30u0a0770r54996f00r44178C023f1ca1b7cr59300d152rJ80b7f1a6377b00d03a4a542d8eb009a7f1301c226742be12fre38fdf5f96ab8d09a15

ER-217

Sincerely,

Pedro Rios

*Required information to bring your claim in arbitration:*

First Five Digits of Your Social Security Number

Your Full Mailing Address

232 ▓▓▓▓ Bay Point, CA 94565

pedro.rios▓@gmail.com

☑ BY CHECKING THIS BOX AND SIGNING BELOW, I STATE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THIS INFORMATION IS TRUE AND CORRECT.

*Pedro Rios*

**Pedro Rios**
9/26/2024

This document is signed using GetAccept Digital Signature Technology.
Fingerprint: 5d2048e10f67c33c0ar77bc54464000r4a1780023f1ca1f87cf693092f92fcf80b7f1a637700dec3a4af42e9ef9098777351a226742be120fe56fdfcd3ab8d03e15

ER-218

# EXHIBIT 4

ER-219

03/16/2023

**VIA FEDERAL EXPRESS**

**H&R Block-Legal Department**
**Attn: Notice of Dispute**
**One H&R Block Way**
**Kansas City, MO 64105**

**RE:    NOTICE OF INDIVIDUAL CONSUMER DISPUTE REGARDING HRB DIGITAL LLC AND HRB TAX GROUP, INC.'S VIOLATIONS OF STATE PRIVACY LAWS**

To Whom It May Concern:

Pursuant to HRB Digital LLC and HRB Tax Group, Inc.'s (collectively, "H&R Block") Online Services Agreement governing the use of H&R Block's products and services, we are writing on behalf of our client, ("Claimant"), whose information is as follows:

Name: CHRISTIAN MARQUEZ
Street Address: 4475 ███████████
City/State: Riverside, CA
Zip: 92503
Email: CMARQUEZ██@GMAIL.COM
Phone: 951████████

Claimant retained our law firm for the express purpose of pursuing Claimant's claims against H&R Block for its violations of the California Invasion of Privacy Act, CA Penal Code Sec. 631 and/or the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747, in connection with H&R Block's practice of using Meta Pixel to track, capture, and harvest its customers' activities on H&R Block's website, and sharing this information and more with Meta without disclosure or consent. To this end, Claimant's information is being provided in a good faith effort to resolve Claimant's claims against H&R Block resulting from its violations of the aforementioned state wiretapping act(s), in connection with its undisclosed and non-consensual use of Meta Pixel, which is an invasion of the privacy rights of H&R Block's customers.

From within Claimant's home state, Claimant used H&R Block's online tax preparation products and services. Upon information and belief, H&R Block embeds Meta Pixel in its website, which it uses to track customers' activities as they navigate the website, including tracking and logging each page they visit, each button they click, each search they perform, and any specific information they input into H&R Block's website (collectively, "User Data"). In addition, and without consent, H&R Block covertly shares this harvested User Data with Meta via Meta Pixel along with personally identifiable information ("PII"), including, but not limited to, the customer's name, email address, telephone number, Facebook ID ("FID") and/or IP address. As a result, Meta has the ability to collect and analyze H&R Block customers' interactions with the H&R Block website, including all PII that customers enter into the website, which Meta can use to send targeted advertisements to H&R Block customers based on the information gathered about them via Meta Pixel.

Claimant was unaware that H&R Block harvested and shared Claimant's User Data and PII with Meta because the Meta Pixel software is inconspicuously embedded in H&R Block's website without disclosure and without obtaining consent. Further, Claimant had a reasonable expectation of privacy that Claimant's User Data and PII would not be harvested from H&R Block's website or shared with third parties such as Meta.

The California Invasion of Privacy Act, CA Penal Code Sec. 631 ("CIPA"), prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one

ER-220

another or by means of a telephone, telegraph, or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication. Under § 637.2(a), any person who has been injured by a violation of CIPA may bring an action against the violator for the greater of: (1) $5,000 per violation; or (2) three times the amount of any actual damages sustained, as well as injunctive or other equitable relief. Suffering actual damages is not a prerequisite for a victim to pursue a claim for violations of CIPA. Similarly, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747 ("PWESCA"), prohibits the interception of electronic, wire, and/or oral communications and allows for the recovery of actual damages, profits made by the violator as a result of the violation, punitive damages, equitable or declaratory relief, attorneys' fees, and reasonable litigation costs. In no case will a victim of the PWESCA recover less than one-thousand dollars ($1,000.00).

Claimant had a reasonable expectation of privacy and that Claimant's User Data and PII would not be harvested by H&R Block and shared with third parties, including Meta. Claimant demands payment of $5,000.00 to be made on Claimant's behalf to the undersigned attorneys in order to fully resolve the dispute detailed in this letter. This amount is the appropriate relief for H&R Block's statutory violations and will reasonably compensate Claimant for the harm to Claimant's privacy interests. In the event that H&R Block fails to resolve Claimant's claims within 60 days of receiving this notice letter, Claimant is prepared to initiate individual arbitration under the American Arbitration Association's Consumer Rules in accord with the above-referenced Online Services Agreement implemented on the date of this letter. It is important to note that we dispute the legality of several requirements within H&R Block's arbitration provision. Nevertheless, out of an abundance of caution and to avoid further delay of Claimant's claims being addressed and resolved, we have made a good faith effort to comply with H&R Block's onerous arbitration provision. If you consider this letter to be deficient in any manner, please let us know so that we can remedy the deficiency.

Finally, we want to inform you that Milberg currently represents thousands of additional clients who are also victims of H&R Block's illegal conduct, as described above, and have claims identical to those of Claimant. Additional clients are retaining our firm on a daily basis. While we can certainly provide individual notice letters for each of our clients, it may be more efficient for us to discuss a streamlined process for addressing and exploring the potential resolution of all of our clients' claims contemporaneously.

We look forward to hearing from you regarding this matter.

Sincerely,

CHRISTIAN MARQUEZ
*Claimant*

Jonathan B. Cohen
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

ER-221

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
221 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

Nick Suciu
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
(313) 303-3472
nsuciu@milberg.com

Daniel K. Bryson
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5000
dbryson@milberg.com

*Attorneys for Claimant*

# EXHIBIT 5

ER-223

Thursday, July 18, 2024


H&R Block-Legal Department
Attention: Notice of Dispute
One H&R Block Way
Kansas City, MO 64105


Re: Pre-Arbitration Notice of Dispute


To Whom It May Concern:

This letter is submitted as a written notice describing a dispute I have with HRB Digital, LLC and HRB Tax Group, Inc. ("H&R Block"), Google, LLC ("Google"), and Meta Platforms, Inc. ("Meta"), as well as any of their affiliates, and the desired resolution prior to commencing  arbitration proceedings with the American Arbitration Association.

In 2021, I used the H&R Block website (www.hrblock.com) to prepare and file my taxes online.  As part of the tax preparation process, I was required to provide certain sensitive and personal financial and other information to H&R Block through its website.

It is my understanding that without my knowledge or consent, H&R Block embedded certain tracking tools from Meta and Google and/or other third parties on its website, which resulted in the unauthorized interception and disclosure of my personal and tax information to Meta, Google and/or other third parties.  I allege that this conduct violates the Federal Wiretap Act (18 U.S.C. § 2510, et seq.), the California Invasion of Privacy Act (Cal Penal Code § 631, et seq.) ("CIPA"), and/or other state and federal laws.

The claims presented are based, in part, on the July 2023 report by the U.S. Senate finding that, "Through the Meta Pixel and Google's business tools, the tax prep companies investigated in this report," including H&R Block, "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."

I am seeking all available relief for violations of these laws, including but not limited to: statutory damages; restitution; injunctive (public and private) and declaratory relief; reasonable attorneys' fees and costs; and all other relief that is just and equitable.  The amounts sought for each violation are no less than the statutory damages allowed under the Wiretap Act ($10,000) and CIPA ($5,000).

I am represented by the law firm of Zimmerman Reed LLP.  All communications and information regarding this matter should be directed to my attorneys and representatives at the address below instead of to my personal email or address:

**Zimmerman Reed LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
CLM@zimmreed.com

I request that H&R Block, Meta, Google and any of their affiliates immediately disclose to my counsel at Zimmerman Reed LLP: (1) all information related to me that was intercepted or shared between them through use of the tracking technologies and pixel codes employed; (2) fully describe in detail all arrangements, including contracts, that H&R Block, Meta, Google and any of their affiliates had to employ tracking technologies that could share consumers' (like mine) tax preparation information and data; (3) fully describe all uses of the information shared; (4) fully describe all compensation or other things of value, monetary or otherwise, that was exchanged between H&R Block, Meta, Google and any of their affiliates in

1

ER-224

relation to the use of the tracking technologies employed; and (5) disclose all information provided to any person or agency in relation to the U.S. Senate Report, Attacks on Tax Privacy: How the Tax Prep Industry Enable Meta to Harvest Millions of Taxpayers' Sensitive Data, July 2023 (found at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf.)

To expedite resolution of my claim, I waive my personal participation in any pre-arbitration Informal Settlement Conference and authorize Zimmerman Reed LLP to appear on my behalf and represent me at any such conference and other proceedings.  I instruct you to address all matters related to my claims, including those at any Informal Settlement Conference, directly with my attorneys.  I object to any requirement that I personally participate in the Informal Settlement Conference.  If required to personally appear, however, I will do so with my attorneys.

Through this notice, I inform you that I also object to any batched filing processes (Sec. 11.6) that may be imposed at any arbitration forum as unconscionable, unfair and inconsistent, among other things, and that will unduly delay the processing and resolution of my individual claims.

Finally, I ask that you immediately pay any and all fees and costs imposed by any arbitration forum, including the American Arbitration Association.


Sincerely,



| | |
|---|---|
| **Name** | Christian  Marquez |
| **Address** | 4475 ▮▮▮▮▮▮▮▮ |
| | Riverside , California 93503 |
| **Telephone Number** | (951) ▮▮▮▮▮▮ |
| **Email** | Cmarquez▮@gmail.com |
| **SSN** | ▮▮▮▮ |

# EXHIBIT 6

ER-226

September 18, 2024

**VIA FEDERAL EXPRESS**

**H&R Block-Legal Department**
**Attn: Notice of Dispute**
**One H&R Block Way**
**Kansas City, MO 64105**

> **RE:    NOTICE OF INDIVIDUAL CONSUMER DISPUTE REGARDING HRB DIGITAL**
> **LLC AND HRB TAX GROUP, INC.'S VIOLATIONS OF STATE PRIVACY LAWS**

To Whom It May Concern:

Pursuant to HRB Digital LLC and HRB Tax Group, Inc.'s (collectively, "H&R Block") Online Services Agreement governing the use of H&R Block's products and services, we are writing on behalf of our client, ("Claimant"), whose information is as follows:

Name: Christian Marquez
Street Address: 4475 ▮▮▮▮▮
City/State: Riverside CA
Zip: 92503
Email: cmarquez▮▮@gmail.com
Phone: 951 ▮▮▮▮▮

Claimant retained our law firm for the express purpose of pursuing Claimant's claims against H&R Block for its violations of the California Invasion of Privacy Act, CA Penal Code Sec. 631 and/or the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747, in connection with H&R Block's practice of using Meta Pixel to track, capture, and harvest its customers' activities on H&R Block's website, and sharing this information and more with Meta without disclosure or consent. To this end, Claimant's information is being provided in a good faith effort to resolve Claimant's claims against H&R Block resulting from its violations of the aforementioned state wiretapping act(s), in connection with its undisclosed and non-consensual use of Meta Pixel, which is an invasion of the privacy rights of H&R Block's customers.

From within Claimant's home state, Claimant used H&R Block's online tax preparation products and services. Upon information and belief, H&R Block embeds Meta Pixel in its website, which it uses to track customers' activities as they navigate the website, including tracking and logging each page they visit, each

ER-227

button they click, each search they perform, and any specific information they input into H&R Block's website (collectively, "User Data"). In addition, and without consent, H&R Block covertly shares this harvested User Data with Meta via Meta Pixel along with personally identifiable information ("PII"), including, but not limited to, the customer's name, email address, telephone number, Facebook ID ("FID") and/or IP address. As a result, Meta has the ability to collect and analyze H&R Block customers' interactions with the H&R Block website, including all PII that customers enter into the website, which Meta can use to send targeted advertisements to H&R Block customers based on the information gathered about them via Meta Pixel.

Claimant was unaware that H&R Block harvested and shared Claimant's User Data and PII with Meta because the Meta Pixel software is inconspicuously embedded in H&R Block's website without disclosure and without obtaining consent. Further, Claimant had a reasonable expectation of privacy that Claimant's User Data and PII would not be harvested from H&R Block's website or shared with third parties such as Meta.

The California Invasion of Privacy Act, CA Penal Code Sec. 631 ("CIPA"), prohibits eavesdropping upon or recording of any confidential communication, including those occurring among the parties in the presence of one another or by means of a telephone, telegraph, or other device, through the use of an electronic amplifying or recording device without the consent of all parties to the communication. Under § 637.2(a), any person who has been injured by a violation of CIPA may bring an action against the violator for the greater of: (1) $5,000 per violation; or (2) three times the amount of any actual damages sustained, as well as injunctive or other equitable relief. Suffering actual damages is not a prerequisite for a victim to pursue a claim for violations of CIPA.

Similarly, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5747 ("PWESCA"), prohibits the interception of electronic, wire, and/or oral communications and allows for the recovery of actual damages, profits made by the violator as a result of the violation, punitive damages, equitable or declaratory relief, attorneys' fees, and reasonable litigation costs. In no case will a victim of the PWESCA recover less than one-thousand dollars ($1,000.00).

Claimant had a reasonable expectation of privacy and that Claimant's User Data and PII would not be harvested by H&R Block and shared with third parties, including Meta. Claimant demands payment of $5,000.00 to be made on Claimant's behalf to the undersigned attorneys in order to fully resolve the dispute detailed in this letter. This amount is the appropriate relief for H&R Block's statutory violations and will reasonably compensate Claimant for the harm to Claimant's privacy interests. In the event that H&R Block fails to resolve Claimant's claims within 60 days of receiving this notice letter, Claimant is prepared to initiate individual arbitration under the American Arbitration Association's Consumer Rules in accord with the above-referenced Online Services Agreement implemented on the date of this letter. It is important to note

2

that we dispute the legality of several requirements within H&R Block's arbitration provision. Nevertheless, out of an abundance of caution and to avoid further delay of Claimant's claims being addressed and resolved, we have made a good faith effort to comply with H&R Block's onerous arbitration provision. If you consider this letter to be deficient in any manner, please let us know so that we can remedy the deficiency.

Finally, we want to inform you that Milberg currently represents thousands of additional clients who are also victims of H&R Block's illegal conduct, as described above, and have claims identical to those of Claimant. Additional clients are retaining our firm on a daily basis. While we can certainly provide individual notice letters for each of our clients, it may be more efficient for us to discuss a streamlined process for addressing and exploring the potential resolution of all of our clients' claims contemporaneously.

We look forward to hearing from you regarding this matter.

Sincerely,

CLIENT_NAME: Christian Marquez

Jonathan B. Cohen
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
3833 Central Ave.
St. Petersburg, FL 33713
(813) 699-4056
jcohen@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
221 W. Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878
gklinger@milberg.com

Nick Suciu
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
(313) 303-3472
nsuciu@milberg.com

Daniel K. Bryson
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan St.
Raleigh, NC 27603
(919) 600-5000
dbryson@milberg.com

Attorneys for Claimant

3

ER-229

**ZIMMERMAN REED LLP**
Ryan J. Ellersick (SBN 357560)
Caleb Marker (SBN 269721)
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com
caleb.marker@zimmreed.com
jessica.liu@zimmreed.com

*Attorneys for Plaintiffs and the Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | CASE NO.: 3:25-CV-03530<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. § 2511(1),** *et seq.*<br>2. **VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT, Cal. Penal Code § 630,** *et seq.*<br>3. **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200,** *et seq.*<br>4. **VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, Cal. Civil Code § 1750,** *et seq.*<br><br>(JURY TRIAL DEMANDED) |

COMPLAINT – 3:25-CV-03530

ER-230

Plaintiffs Pedro Rios Jr. and Christian Marquez ("Plaintiffs"), on behalf of themselves and all other similarly situated persons in the Classes defined below, file this Class Action Complaint against Defendants HRB Digital LLC, and HRB Tax Group, Inc. (collectively, "H&R Block" or "Defendants"), and in support state the following:

**INTRODUCTION**

1.  This is a class action lawsuit brought on behalf of classes of taxpayers against H&R Block for unlawfully sharing private and sensitive taxpayer data with Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and/or other third-parties without the taxpayers' knowing and voluntary consent.

2.  Without taxpayers' knowledge and consent, H&R Block deployed various tracking tools on its website, https://www.hrblock.com, and related subpages (hereinafter the "Website"), where taxpayers prepared and filed their federal and state tax returns. The tracking tools included the use of "pixels"— pieces of code that website developers like H&R Block install on their websites—to intercept and disclose tax return information to Meta and Google.

3.  Defendants' unlawful disclosures were first outlined in the November 2022 report by *The Markup*.[1] In response to The Markup's report, the U.S. Senate initiated an investigation into H&R Block's unlawful data-sharing practices, which revealed that the disclosures were much more serious than previously reported.  *See*, *Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data*, U.S. Senate, July 2023 at 5-6 (available at https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf) ("Senate Report").

4.  The Senate Report confirmed that H&R Block's use of the tracking tools resulted in the interception and disclosure of confidential tax return information to Meta and Google. The confidential and personal tax return information H&R Block unlawfully intercepted and disclosed to third parties included, but was not limited to, taxpayers' names, personal identifiers, health savings account

---

[1]  *See* The Markup, Tax Filing Websites Have Been Sending Users' Financial Information to Facebook (Nov. 22, 2022), https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook (last accessed Dec. 30, 2024).

contributions, college tuition grants, scholarships, educational expenses, and the specific pages visited by the taxpayers, such as those relating to dependents, certain types of income, and certain tax credits and deductions. *Id.*

5.      The Senate investigation found that "[t]hrough the Meta Pixel and Google's business tools, the tax prep companies investigated in this report--TaxAct, TaxSlayer, and H&R Block-- recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers." *Id.* at 39.

6.      In response to the congressional inquiry, H&R Block told Senate investigators that H&R Block had been using the Meta Pixel for "at least a couple of years." *Id.* at 11. According to H&R Block, "Meta's default settings of their pixel allowed them to collect additional information, including page title information from our online tax filing service." *Id.* at 12. In addition, "[s]ome of those page titles included a subset of information related to the customer and his or her tax situation, including the first name of the taxpayer and aggregate amounts relating to HSA contributions, scholarships, and education expenses." *Id.* at 12. H&R Block also revealed that "the Pixel transmitted information on page headers- meaning that the Pixel would transmit information on whether taxpayers had visited pages for many broad categories, such as dependents, certain types of income (such as rental income or capital gains), and certain tax credits or deductions." *Id.*

7.      The Senate investigation also found that H&R Block disclosed protected tax return information to Google. According to the Senate Report, "H&R Block representatives communicated that they were 'not aware' of any other pixels used on their website, 'past or present,' despite Google confirming that H&R Block did have [Google Analytics] installed on their website - which was also previously unreported and raises the concern that tax prep companies themselves are unaware of what pixels they are using and how this may be affecting taxpayer privacy." *Id.* at 11.

8.      H&R Block indicated that these disclosures potentially impacted every person who used its online tax preparation services. According to the Senate Report, "although the companies initially dissembled when it came to revealing how many taxpayers had their data shared with Big Tech firms, they ultimately indicated that - because of the way the pixels were set up and implemented - **every single**

**taxpayer who used their websites to file their taxes could have had at least some of their data shared**.” *Id.* at 13 (emphasis added).

9. Further, the Senate Report explained that "'under the law 'a tax return preparer may not disclose or use a taxpayer's tax return information prior to obtaining a written consent from the taxpayer,' – and they failed to do so when it came to the information that was turned over to Meta and Google." *Id.* at 3, 23-24[2], 32-35 ("Review of H&R Block's privacy policy and disclosure agreements also strongly suggests that H&R Block did not obtain valid consent for its disclosures of taxpayer data to Meta and Google.").

10. By intercepting and disclosing sensitive taxpayer data—including protected tax return information—to Meta, Google and/or other third-parties, H&R Block violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et. seq.* H&R Block's practices should be enjoined to protect the Classes as well as the general public who may deal with Defendants in the future. On behalf of the Classes, Plaintiffs seek damages, including all statutory damages, private injunctive relief, public injunctive relief, declaratory relief, reasonable attorneys' fees and costs, and all other relief that may be just and equitable under the circumstances.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed classes, and at least one member of the classes is a citizen of a state different from Defendants.

12. This Court has personal jurisdiction over H&R Block. First, H&R Block operates approximately 750 tax offices in California, making California the state with the most H&R Block tax offices in the country.[3] Thus, H&R Block has purposefully availed itself of the privilege of doing

---

[2] Senate Report at 23 ("Treasury Regulation 301.7216-3 describes specific instances when a tax return preparer may disclose or use TRI with the consent of the taxpayer – but the tax prep companies failed to meet the detailed requirements for consent.")

[3] https://www.scrapehero.com/location-reports/H%26R%20Block-USA/

business in California. Second, H&R Block's Website (and the interception of taxpayer information through the tracking tools) is directly linked to H&R Block's physical operations in California, in that consumers can prepare and file their taxes through the Website, but can also interact with and set up appointments to speak with tax professionals at one of H&R Block's tax offices located in California. Thus, the conduct at issue regarding the tracking of taxpayer activity on the Website is directly related to Defendants' business in California. *See Kauffman v. Papa John's Int'l, Inc.*,2024 WL 171363, at *3-4 (S.D. Cal. Jan. 12, 2024). Finally, Plaintiffs and Class Members were harmed in California because that is where Plaintiffs' and Class Members' information was intercepted.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to lead Plaintiff Rios's claims occurred in this District.

14.    Pursuant to Civil L.R. 3-2(c), this matter should be assigned to the San Francisco Division because a substantial portion of the events giving rise to lead Plaintiff Rios's claims occurred in Contra Costa County, where Plaintiff Rios resides.

15.    In accordance with California Civil Code 1780(d), Plaintiff Rios concurrently files herewith a declaration establishing that he paid money to file his tax returns online through H&R Block's Website from Bay Point, California.

16.    Defendants' Online Services Agreement ("OSA") includes a provision that disputes against H&R Block shall be brought in arbitration before the American Arbitration Association ("AAA"). But because the arbitration clause is unconscionable and unenforceable, this case is properly brought in this Court for several reasons, including the following. First, because the OSA contains a mass-arbitration protocol—including batching of claims, use of bellwethers, and delayed/staged filings—the arbitration agreement is unenforceable under *Heckman v. Live Nation Entertainment, Inc.* 120 F.4th 670 (9th Cir. 2024) and *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76 (2005). As explained in *Heckman*, mass arbitration protocols do not involve bilateral arbitration proceedings and are therefore not subject to any Federal Arbitration Act ("FAA") provision that preempts California's *Discover Bank* rule prohibiting the waiver of class actions through arbitration agreements. *Heckman*, 120 F.4th at 689-90 ("Arbitration, as understood by Congress when it enacted the FAA, was designed to be a fair and efficient alternative to bilateral judicial proceedings. It may not

be too much to say that this method of dispute resolution contemplated by New Era's Rules is unworthy even of the name of arbitration. It is certainly beyond dispute that it is not arbitration as envisioned by the FAA in 1925. Accordingly, we hold that the application of California law to Ticketmaster's Terms and New Era's Rules is not preempted by the FAA. *Discover Bank* therefore applies.") (cleaned up).

17.     The arbitration provision is also unconscionable because the staged bellwether process prevents the filing of claims—potentially for many years—based solely on the identity of a claimant's chosen legal counsel. *See Pandolfi v. AviaGames, Inc.*, No. 23-CV-05971-EMC, 2024 WL 4051754, at *11 (N.D. Cal. Sept. 4, 2024) ("[T]here is another troubling aspect to the bellwether provision. The bellwether provision is triggered – causing delay – when twenty-five or more claims are asserted against Avia by the same or coordinated counsel. As Plaintiffs argue, to avoid the bellwether provision, players would have to find different counsel, which affects the right to counsel of their choice or indeed, the ability to find any counsel at all: where the individual claims are small (as consumer claims often are), it may be difficult to find an attorney who represents only a single or small number of similarly situated clients.").

18.     Such a provision in the OSA is also unconscionable because it interferes with the client's relationship with their counsel of choice, the client's ability to retain their counsel of choice, and the client's ability to consider retaining experienced and/or qualified legal counsel over counsel with less experience or qualifications. The clause aims to direct persons with claims against Defendants (here Plaintiffs and members of the Classes) to counsel who are less qualified and less experienced in handling the type of claims presented, but who may not be burdened by the mandatory delays and staged processes because they do not represent other clients with similar claims and can proceed directly with filings and prosecution of the claims in the designated arbitration forum.

19.     The staged bellwether provision in the OSA is further unconscionable as it functions as a prospective waiver of users' rights to pursue statutory remedies—including remedies for privacy violations under federal and state law. *See American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235 (2013) (explaining the "effective vindication" doctrine allows courts "to invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies") (cleaned up). The OSA's staged bellwether provision prevents Plaintiffs

and the Classes from even filing their claims in arbitration for potentially many years—and realistically, indefinitely—based solely on the identity of their chosen legal counsel. Plaintiffs and the Classes are therefore unable to exercise their rights to pursue important statutory remedies available to them for the harm caused by Defendants.

20.    The OSA is procedurally unconscionable as it is an adhesion contract, between parties' of unequal relative bargaining positions (large corporation vs. individual taxpayers), and presented in a complex, 21-page single-spaced document, drafted in small font and dense legalese that is difficult for ordinary laypersons to understand. The actual terms are not seen by website users unless one clicks on hyperlink to access the OSA. Persons seeking to use Defendants' services generally do so when facing a pending time deadline to file their tax returns on risk of financial or criminal penalties if they are late. There is no notice to class members in the OSA that Defendants and third parties engage in the privacy practices challenged below so they would be aware of the need to review the OSA found behind the hyperlink. Defendants' failure to disclose this information was an omission of material fact to Plaintiffs and other reasonable consumers in the class. The arbitration clause in the OSA is designed to delay the initiation and adjudication of claims and to create a process aimed at discouraging consumers from vindicating their rights.

21.    The staged bellwether provision is further procedurally unconscionable because it constitutes procedural surprise. "Procedural surprise focuses on whether the challenged term is ... beyond the reasonable expectation of the weaker party." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321, 27 Cal. Rptr. 3d 797, 808 (2005). Even if Plaintiffs had the opportunity to read and understand the OSA, the fact that they must wait an indiscernible number of years to even file their claims in the arbitration forum is a procedural surprise. Plaintiffs and class members also lack the ability to know the identity of their counsel, their counsel's other clients and the nature of those other clients' claims so to be able to anticipate having their individual claims delayed or suspended indefinitely by having similar claims.

22.    Defendants' OSA is also procedurally unconscionable to the extent Defendants attempt to use its provisions to conduct prefiling discovery and interrogation of Plaintiffs. Through the prefiling conference clause in the OSA, Defendants seek to improperly interrogate represented claimants (without

the consent of claimants' counsel) before claimants may initiate their claims, contrary to Rule 4.2 of the California Rules of Professional Conduct. The prefiling provision of the OSA requiring claimants to appear personally and submit to Defendants' questioning against the advice and without the consent of claimants' counsel violates the UCL, CLRA, Cal. Civil Code §§ 1608, 1670.5 and/or other laws. Plaintiffs lack the reciprocal ability to interrogate or take prefiling discovery of Defendant regarding the challenged practices.

23.    Finally, prejudice results from the staged bellwether provision as consumers' claims are not tolled, and claimants are prevented from moving forward and filing their claims in court or the designated arbitration forum, based solely on Defendant's subjective determination regarding claimants' compliance with the prefiling procedures set forth in the OSA. Defendant can therefore attempt to use non-material factors to prevent or delay claim filings and otherwise prejudice Claimants seeking to timely present and preserve claims within applicable limitations periods. This adds to the unconscionability of the OSA.

24.    For these and other reasons, Defendants' arbitration provision is unenforceable, and Plaintiffs' claims are properly brought in this Court.[4]

25.    Plaintiffs provided their initial notice of the violations to Defendants by letter dated September 20, 2024, which Defendants received on September 27, 2024.

26.    Plaintiffs have materially complied with any conditions precedent for filing their claims. Plaintiffs provided signed Notices of Dispute to Defendants through the September 20, 2024, letter that Defendants received on September 27, 2024. Defendants did not timely request any pre-filing conference with Plaintiffs within 60 days of their receipt of Plaintiffs' pre-filing Notices of Dispute. After Plaintiffs presented their claims for arbitration, Defendants attempted to postpone and frustrate the claims resolution process in a manner contrary to *Heckman*, making the filing of this case in this forum appropriate.

---

[4]  While a prior case involving Defendants was compelled to arbitration, that decision is distinguishable as it was decided prior to the Ninth Circuit's decision in *Heckman*, and the plaintiff there presented limited arguments establishing some level of procedural unconscionability. *Hunt v. Meta Platforms, Inc.*, 729 F.Supp.3d 964 (N.D. Cal., 2024). Substantive unconscionability was not addressed by the court.

27. According to Defendants, pursuant to the OSA, Plaintiffs and other members of the Classes are unable to file their claims in AAA at this time due to the existence of 25 other customers' cases being currently on file in AAA represented by the same legal counsel. OSA § 11.6. Any tolling of the limitations period for Plaintiffs' claims during this period is uncertain as Defendants have not unconditionally agreed to tolling but instead have reserved all rights including the ability to argue the lack of tolling. This prejudices Plaintiffs and the Classes, renders the arbitration provision in the OSA unconscionable, and makes this class action appropriate and necessary to file in this Court at this time.

## **PARTIES**

28. Plaintiff Pedro Rios Jr. is a natural person domiciled in the State of California. At all relevant times, he resided in Bay Point, California. Plaintiff Rios used H&R Block's online tax preparation and filing services to file his taxes from 2020 to 2023. Plaintiff Rios also maintained accounts with Facebook and Instagram during that time period. Plaintiff Rios paid money to use H&R Block's online tax preparation and filing services. Plaintiff Rios did not knowingly and voluntarily consent to H&R Block's interception and disclosure of his confidential tax return information. Nor did Plaintiff Rios knowingly and voluntarily consent to the disclosure, dissemination, and sharing of his confidential tax return information with third parties Meta and Google and their resulting use of his confidential tax return information.

29. Plaintiff Christian Marquez is a natural person domiciled in the State of California. At all relevant times, he resided in Riverside, California. Plaintiff Marquez used H&R Block's online tax preparation and filing services to file his taxes in 2022. Plaintiff Marquez also maintained accounts with Facebook and Instagram during that time period. Plaintiff Marquez paid money to use H&R Block's online tax preparation and filing services. Plaintiff Marquez did not knowingly and voluntarily consent to H&R Block's interception and disclosure of his confidential tax return information. Nor did Plaintiff Marquez knowingly and voluntarily consent to the disclosure, dissemination, and sharing of his confidential tax return information with third parties Meta and Google and their resulting use of his confidential tax return information.

30. Plaintiffs reasonably expected that their online communications—including communications related to their protected tax return information—with H&R Block would remain

ER-238

private, and would not be shared with third parties without their consent.  Plaintiffs never consented to H&R Block disclosing their private tax return information to Meta and Google.

31.    Defendant HRB Digital LLC is a Delaware limited liability company with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105.  HRB Digital LLC has control over, is responsible for, and owns content provided to consumers through the www.hrblock.com website.

32.    Defendant HRB Tax Group, Inc. is a Missouri corporation with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105.  HRB Tax Group, Inc. oversees and implements H&R Block's online tax filing products and is responsible for services provided to consumers via the www.hrblock.com website.

### FACTUAL BACKGROUND

**A.    H&R Block provides federal and state tax preparation services to taxpayers.**

33.    H&R Block provides taxpayers, including Plaintiffs and the Classes, with "assisted and do-it-yourself (DIY) tax preparation solutions through multiple channels (including in-person, online and mobile applications, virtual, and desktop software)."[5]

34.    H&R Block develops, maintains, offers, and operates online tax preparation software on the internet at http://www.hrblock.com as well as other mobile and computer platforms for the purpose of assisting taxpayers in preparing and filing federal and state tax returns.

35.    H&R Block also offers a variety of other financial services, including small business management, loan issuance, and a "Tax Identity Shield" program to assist users in protecting and restoring their tax identity information—for an additional fee.[6]

36.    For fiscal year 2024, H&R Block prepared "11.4 million U.S. assisted tax returns," and processed another "3.8 million DIY online paid tax returns" which generated $3.6 billion in consolidated revenues and $598 million in net income.[7]

---

[5] H&R Block Form 10-K at 3, filed Aug. 15, 2024, https://investors.hrblock.com/node/32116/html (last accessed April 14, 2025).

[6] *Id.* at 4; *see also* H&R Block, "Protect your refund with Tax Identity Shield®", https://www.hrblock.com/tax-offices/product-services/tax-identity-shield/?srsltid=AfmBOoqfR9Xu6rXNycJYJH6CY9wxAHf7PHm8VUNw83oNYcBkiDW9nD9Y

[7] H&R Block Form 10-K at 2.

ER-239

37.    In its 2024 10-K, H&R Block acknowledged that "[d]ue to the nature of [its] business," it "collect[s], use[s], and retain[s] large amounts of personal information and data pertaining to clients, including tax return information, financial product and service information, and social security numbers."[8]

38.    H&R Block also acknowledged that it is "subject to laws, rules, and regulations relating to the collection, use, disclosure, and security of such consumer and employee personal information, which have drawn increased attention from U.S. federal, state, and foreign governmental authorities in jurisdictions in which [it] operate[s]."[9]

39.    As stated in its 2024 10-K, H&R Block is aware that "the IRS generally requires a tax return preparer to obtain the written consent of the taxpayer prior to using or disclosing the taxpayer's tax return information for certain purposes other than tax preparation, which may limit our ability to market revenue-generating products to our clients."[10]

40.    In the 2024 10-K, H&R Block further acknowledged that its "current privacy and data protection policies and practices may not be consistent with all of those requirements, interpretations, or applications."[11]

**B.    H&R Block, as a tax return preparer, is subject to strict federal regulations.**

41.    Federal law mandates that tax "returns and return information shall be confidential."  26 U.S.C. § 6103(a).  As explained herein, H&R Block's deployment of the tracking tools on its Website violates this mandate.

42.    The Internal Revenue Code prohibits tax return preparers from disclosing "any information furnished to him for, or in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a).

43.    A "tax return preparer" is "[a]ny person who is engaged in the business of preparing or assisting in preparing tax returns," including "[a]ny person who is engaged in the business of providing

---

[8] *Id*. at 14-15.
[9] *Id*. at 15.
[10] *Id*. at 15.
[11] *Id*.

ER-240

auxiliary services in connection with the preparation of tax returns, including a person who develops software that is used to prepare or file a tax return and any Authorized IRS e-file Provider[.]" 26 C.F.R. § 301.7216-1(b)(2)(i).

44.     At all relevant times, H&R Block was a "tax return preparer" under 26 C.F.R. § 301.7216-1(b)(2)(i) as it is engaged in the business of providing auxiliary services in connection with the preparation of tax returns as a developer, owner, and operator of software used to prepare and file tax returns. As a "tax return preparer," H&R Block is subject to federal laws governing the use of confidential tax return information.

45.     Federal law provides criminal penalties for tax return preparers that "knowingly and recklessly . . . disclose[] any information furnished to [them] for, or in connection with, the preparation of any such return, or use[] any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a).

46.     Indeed, following the congressional inquiry into H&R Block's deployment of the tracking tools and disclosure of taxpayer information to Meta and Google, the Senate Report concluded, "This potentially illegal misuse of taxpayer data should be immediately investigated by the DOJ, IRS, TIGTA, and FTC, and liable actors should be duly prosecuted."[12]

**C.     H&R Block intercepted and disclosed confidential tax return information to Meta and Google.**

47.     Through the tracking tools deployed on its Website, H&R Block systematically intercepted and disclosed the confidential tax return information of Plaintiffs and the Classes to Meta, Google, and other potential third parties.

48.     Tracking pixels are snippets of code that, once inserted into a website's source code, trigger the real-time interception of user activities on the website, revealing the substance of a user's website communications to unauthorized third parties like Meta and Google.

49.     When a user accesses a website containing a tracking pixel from Meta or Google, the embedded code directs the user's browser to contemporaneously send a separate message to Meta or

---

[12] Senate Report at 39.

Google that duplicates in real-time the user's activities on the website. The tracking tools also transmit a user's unique identifiers to Meta and Google, which the tech companies can use to link a user's online communications with their accounts at Meta and Google for purposes of ad retargeting. *See* Senate Report at 6-7 ("Once placed on the website, the pixel downloads more code from Meta and Google, which then gathers valuable information about website visitors and their activity. This information allows advertisers to understand their users' behaviors and shopping patterns, measure the performance of ad campaigns, and build an audience-base for future ad targeting. But 'Facebook' [Meta] also retains that data and can use it for its own advertising purposes . . . . Through this data collection process, Meta is able to provide its marketing partners with deep insights into their user's activities, allowing them the ability to track visitors' actions define custom audiences to better target ads to potential customers, and create lookalike audiences to 'reach new people who are likely to be interested in [their] business because they share similar characteristics to [the businesses'] existing customers.'").

50.    In this way, the information collected through tracking pixels allows advertisers to understand consumers' behaviors and online patterns. It also allows advertisers to measure the performance of their websites and advertising campaigns and build an audience base for future targeted advertising.

51.    The only way to install the Meta Pixel on a website is through deliberate action by the website developer, in this case H&R Block. Meta offers its pixel to companies, including H&R Block, "to make sure [their] ads are shown to the right people" and "drive more sales."[13] Meta's pixel is made available to third parties, like H&R Block, for free with the recommendation that the developer add the pixel "between the opening and closing <head> tags on every page where [they] will be tracking website visitor actions."[14] Meta recommends that its pixel be inserted in this way to "reduce[] the chance" that consumers can protect themselves through the use of ad-blocking technologies and to execute the code sooner, thereby increasing the chance that visitor information is tracked and collected.[15]

---

[13] The Markup, Applied for Student Aid Online? Facebook Saw You (Apr. 28, 2022), https://themarkup.org/pixel-hunt/2022/04/28/applied-for-student-aid-online-facebook-saw-you (last accessed Dec. 30, 2024).

[14] Meta, Meta Pixel – Get Started, https://developers.facebook.com/docs/meta-pixel/get-started/ (last accessed Jan. 14, 2025).

[15] *Id.*

52.     According to the third-party tech companies, the express purpose for deploying the tracking tools is to intercept and disclose a user's activities on a website, identify that individual user, and retarget that individual with advertising. For example, Meta tells web developers to "[i]nstall the Facebook pixel if you want to retarget your website visitors."[16]  Meta explains that "[t]he Facebook pixel is a small snippet of code that you, your website engineer or a Facebook Business Partner can paste in your code. It tracks the people and the types of actions they take when they engage with your brand, including any of your Facebook ads they saw before going to your website, the pages of your site they visit and the items they add to their carts."[17]

53.     Once Meta's pixel is enabled on a website, the pixel collects information about the user's activity and matches it with the user's unique "c_user cookie."[18]  The "c_user cookie" enables Meta to record and organize a user's activities and communications, which it can attribute to the individual user's account with Meta.  The "c_user cookie" thus allows Meta to effectively create a "dossier" for each individual.[19]

54.     Even if a user does not have a Facebook or Instagram account or is not logged in to Facebook or Instagram when browsing the H&R Block website, the Meta Pixel transmits the user's web communications with the Website to Meta along with a unique identifier associated with another cookie called the "_fbp" cookie. Meta can then use that unique identifier to link the user's web communications with the user's Facebook ID.

55.     Meta's Business Tools Terms make clear that the pixel is meant to "match the Contact Information" of users "against user IDs . . . as well as to combine those user IDs with corresponding Event Data."[20]

---

[16] https://www.facebook.com/business/goals/retargeting
[17] *Id.*
[18] Senate Report at 7; *see also*, Meta Privacy Center, Cookies Policy, https://www.facebook.com/privacy/policies/cookies/?entry_point=cookie_policy_redirect&entry=0 (last accessed Jan 14, 2025); Meta, Meta Pixel – Conversion Tracking, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking (last accessed Jan 14, 2025).
[19] Senate Report at 7.
[20] Meta Business Tool Terms, Section 2(a)(i)(1), https://www.facebook.com/legal/businesstech?paipv=0&eav=AfaHqYwiwGYZ0X0vZZ1I5uQ1zuI0STn-VURAyVhvlzw1Df5nxIgiuXOqcd5A8yKuEtk&_rdr (last visited April 14, 2025).

56.    After Meta is finished processing users' intercepted information, it makes the relevant analytics available to H&R Block through Meta's Events Manager tool. Using the Events Manager, H&R Block can and is intended to review a summary of users' activity, including the pages, parameters and URLs sent through the pixel,[21] as well as any included metadata.[22]

57.    The default settings for the Meta Pixel trigger the interception of URLs visited, domains visited, and the devices used by visitors. "The URLs, by virtue of including the particular document within a website that a person views, . . .  divulg[e] a user's personal interests, queries, and habits." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023). Here, H&R Block admitted to Senate investigators that the Meta Pixel triggered the disclosure of "page title information from [its] online tax filing service," which revealed the substance of a taxpayer's return information.

58.    Because the Meta Pixel can only be installed on a website through deliberate action of adding the pixel code to the website, and because the default settings for the Meta Pixel trigger the disclosure of URL and pageview information revealing the substance of user activities on a website, H&R Block did not act by mistake or accident in intercepting and disclosing protected tax return information via the Meta Pixel. Indeed, H&R Block intentionally deployed the Meta Pixel for its intended purpose: to intercept its customers' activities on the Website—including communications regarding the substance of protected tax return information—and disclose those communications to Meta for purposes of ad retargeting.

59.    Like the Meta Pixel, Google's tracking code intercepts a user's activities on a website in real-time, revealing the substance of the user's online communications, and discloses that information to Google along with the user's unique identifiers for purposes of ad retargeting. Further, like the Meta Pixel, the Google tracking code can be installed on a website only through deliberate actions by the

---

[21] *How to view pages, parameters and URLs in Meta Events Manager*, https://www.facebook.com/business/help/815029860145251 ("In Meta Events Manager, you can see a summary of pages, parameters and URLs recently sent through the Meta Pixel . . . .") (last visited April 14, 2025).

[22] A web developer using the Events Manager can "[c]lick on the filter icon to select what activity types and details are display." Developers can sort by activity types, including "automatically logged pixel events," which may contain metadata. *Test your app or web browser events using the test events tool*, https://www.facebook.com/business/help/2040882565969969?id=1205376682832142 (last visited April 14, 2025).

website developer—in this case, H&R Block.

60.    According to the Senate Report, H&R Block confirmed that it had used the Meta Pixel for "at least a couple of years."[23] Congressional investigators also found that H&R Block had deployed Google Analytics on the Website.[24]

61.    By deploying the tracking tools with default settings designed to intercept substantive content like "page views," H&R Block acted intentionally in intercepting and disclosing its users' protected tax return information to Meta and Google. Because the express purpose of the tracking tools is to disclose a user's website activities to third parties, and the default settings triggered the disclosure of substantive content like "page views," H&R Block did not act out of mistake or accident when disclosing its users' protected tax return information, including pages visited on the Website that revealed details about users' taxes.

62.    H&R Block admitted to Congressional investigators that "Meta's default settings of their pixel allowed them to collect additional information, including page title information from our online tax filing service…[S]ome of those pages titles included a subset of information related to the customer and his or her tax situation, including the first name of the taxpayer and the aggregate amounts relating to HSA contributions, scholarships, and education expenses."[25] H&R Block also admitted that the Pixel transmitted information on its "page headers," which included information on whether taxpayers had visited certain pages for many broad categories of tax information, including dependents, certain types of income, and certain tax credits and deductions.[26]

63.    All of this information constituted protected tax return information, which H&R Block knew it was prohibited from disclosing to third parties without consent. Yet H&R Block took the deliberate step to deploy the tracking tools anyway.

64.    By intentionally deploying the tracking tools on its Website, H&R Block was able to monetize its users' protected tax return information through targeted advertising. For example, H&R Block has recently run the following ads on Facebook:

---

[23] Senate Report at 11.
[24] *Id.*
[25] *Id*. at 12.
[26] *Id*.



65.     Meta and Google were also able to monetize the data harvested from Plaintiffs and the Classes by incorporating the data into their algorithms, building custom audiences, and selling advertising to other companies that want to target individuals like Plaintiffs and the Class Members with advertising based on individual interests, hobbies, and demographics.[27]

**D.     H&R Block violated federal law by sharing tax return information with Meta and Google without valid taxpayer consent.**

66.     H&R Block is a tax return preparer subject to strict regulations regarding its use and disclosure of tax return information.

67.     "Tax return information" is "any information, including, but not limited to, a taxpayer's name, address, or identifying number, which is furnished in any form or manner for, or in connection with, the preparation of a tax return of the taxpayer[,]" including information that "the taxpayer would not have furnished…to the tax return preparer but for the intention to engage…the tax return preparer to prepare the tax return." 26 C.F.R. § 301.7216-1(b)(3)(i).

---

[27] *See* Senate Report at 7.

68.     The definition of "tax return information" is intentionally broad to "provide taxpayers with the most protection."[28] All information provided by Plaintiffs and other taxpayers to H&R Block in connection with preparing and filing their taxes qualifies as "tax return information."

69.     Any information that Plaintiffs provided to H&R Block was solely for the purpose of preparing or assisting in preparing their tax returns, and was intended to be private and confidential and not disclosed to third-parties such as Meta and Google. H&R Block's disclosure of private tax information to third parties through the tracking tools was not for purposes of helping or assisting with the preparation of its customers' tax returns. Rather, the purpose was to enhance H&R Block's advertising and marketing efforts and ultimately increase H&R's profits. Plaintiffs would not have provided their tax return information to H&R Block if they were not using H&R Block for tax return preparation services.

70.     The "use" of taxpayer return information includes "any circumstance in which a tax return preparer refers to, or relies upon, [tax return information] as a basis to take or permit an action." 26 C.F.R. § 301.7216-1(b)(4).

71.     "Disclosure" of tax return information is "the act of making [tax return information] known to any person in any manner whatsoever." 26 C.F.R. § 301.7216-1(b)(5).

72.     H&R Block's disclosure of tax return information to Meta and Google constituted both a "use" and "disclosure" of the information under the above-described federal regulations.

73.     The Internal Revenue Code authorizes tax return preparers to disclose or use taxpayer return information only with the written consent of the taxpayer and only under certain narrowly prescribed circumstances. 26 C.F.R. § 301.7216-3(a)(1). Specifically, "a tax return preparer may not disclose or use a taxpayer's tax return information prior to obtaining a written consent from the taxpayer," which must be "knowing and voluntary." *Id*. Additionally, if a tax return preparer conditions its services on the taxpayer giving consent, the consent is considered involuntary.

---

[28] TaxNotes, The Facebook Pixel and Unauthorized Use and Disclosure of Tax Return and Tax Return Information (Nov. 29, 2022) https://www.taxnotes.com/procedurally-taxing/facebook-pixel-and-unauthorized-use-and-disclosure-tax-return-and-tax-return-information/2022/11/29/7h6v7 (last accessed Dec. 30, 2024).

74.    For consent to be valid, at least six conditions must be met, including: (1) the consent must include the name of the tax return preparer and the name of the taxpayer; (2) the consent must identify the purpose of the disclosure and the intended recipients; (3) the consent must describe the particular use authorized; (4) the consent must specify the tax return information to be disclosed; (5) the consent must be signed and dated by the taxpayer; and, (6) the consent must specify a duration of time where it is valid; if no time is specified, then the consent is limited to one year. 26 C.F.R. § 301.7216-3(a), (b).

75.    H&R Block did not satisfy these conditions when it used and disclosed Plaintiffs' and Class Members' tax return information to Meta and Google.

76.    H&R Block thus failed to obtain valid consent from Plaintiffs and other taxpayers in the Classes before using and disclosing their tax return information to Meta and Google and/or before using the tax return information for non-preparation purposes, such as ad retargeting and profiting off private tax return information.

**E.    Plaintiffs' and the Classes' tax return information is valuable.**

77.    The tax return information of Plaintiffs and the Classes is valuable. Indeed, one of the world's most valuable resources is the exchange of personal data.[29]

78.    Business News Daily reported that businesses collect personal data (i.e., gender, web browser cookies, IP addresses, and device IDs), engagement data (i.e., consumer interaction with a business's website, applications, and emails), behavioral data (i.e., customers' purchase histories and product usage information), and attitudinal data (i.e., consumer satisfaction data) from consumers.[30] Companies then use this data to impact the customer experiences, modify their marketing strategies, publicly disclose or sell data, and even to obtain more sensitive data that may be even more lucrative.[31]

[29] *The world's most valuable resource is no longer oil, but data*, THE ECONOMIST (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data

[30] Max Freedman, *How Businesses Are Collecting Data (And What They're Doing With It)*, BUSINESS NEWS DAILY (Aug. 5, 2022; updated Aug. 25, 2022), https://www.businessnewsdaily.com/10625-businesses-collecting-data.html

[31] *Id.*

ER-248

79.    The power to capture and use customer data to manipulate products, solutions, and the buying experience is invaluable to a business's success.  Research shows that organizations that "leverage customer behavior insights outperform peers by 85 percent in sales growth and more than 25 percent in gross margin."[32]

80.    In 2013, the Organization for Economic Cooperation and Development ("OECD") published a paper entitled "Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value."[33]  In this paper, the OECD measured prices demanded by companies for user data derived from "various online data warehouses."[34]

81.    OECD indicated that "[a]t the time of writing, the following elements of personal data were available for various prices: USD 0.50 cents for an address, USD 2 [i.e., $2] for a date of birth, USD 8 for a social security number (government ID number), USD 3 for a driver's license number and USD 35 for a military record.  A combination of address, date of birth, social security number, credit record and military is estimated to cost USD 55."[35]

82.    A robust marketplace exists for users' online data, and multiple companies pay users for the privilege to collect device usage data, browsing histories, and more.[36]

83.    Third-party technology companies, like Meta and Google, generate a substantial portion of their revenue through highly targeted advertising—a valuable service that is enabled by entities like H&R Block sharing information about their users.  Entities like H&R Block likewise benefit financially from the collection and sharing of user data by increasing sales or customer acquisitions while also reducing advertising costs.[37]

---

[32] Brad Brown, Kumar Kanagasabai, Prashant Pant & Goncalo Serpa Pinto, *Capturing value from your customer data*, MCKINSEY (Mar. 15, 2017), https://www.mckinsey.com/business-functions/quantumblack/our-insights/capturing-value-from-your-customer-data.

[33] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD Digital Economy Papers, NO. 220, OECD PUBLISHING PARIS, (Apr. 2, 2013), https://www.oecd.org/en/publications/exploring-the-economics-of-personal-data_5k486qtxldmq-en.html

[34] *Id.* at 25.

[35] *Id.*

[36] https://millennialmoneyman.com/get-paid-for-your-data/

[37] *See* Meta Pixel Case Studies, https://www.facebook.com/business/tools/meta-pixel/case-studies (last visited Oct. 29, 2024)

84.    Through H&R Block's conduct described herein, Plaintiffs and the Classes were injured and lost the benefit and financial value of their private data, while H&R Block unjustly benefitted.

**F.    Plaintiffs and the Classes had a reasonable expectation of privacy in their interaction with Defendants' website.**

85.    Consumers are concerned about entities like H&R Block collecting their data, and they assume the data they provide, particularly highly sensitive tax return information, will be kept secure and private, as required by law.

86.    The majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' data.[38] As such, website visitors reasonably expect that their interactions with a website should not be released to third parties unless explicitly stated.

87.    Taxpayers and website users act consistently with their expectation of privacy.  For example, following a new rollout of iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users chose not to allow such tracking.[39]

88.    Like the greater population, H&R Block's users, including Plaintiffs, would expect the highly sensitive tax return information they provided to Defendants to be kept secure and private.

89.    Plaintiffs paid H&R Block to prepare and file their tax returns with the reasonable expectation that H&R Block would not disclose their tax return information to third parties without consent. At the time they used H&R Block's services, Plaintiffs were unaware of H&R Block's unlawful interception and disclosure of their protected tax return information.

90.    Had Plaintiffs known that H&R Block had tracking tools embedded in its Website or that H&R Block would be disclosing their personal tax return information to third parties such as Meta and Google, Plaintiffs would not have paid or used H&R Block for its tax preparation services.

---

[38] *Public Opinion on Privacy*, EPIC.ORG, https://archive.epic.org/privacy/survey/.

[39] Margaret Taylor, *How Apple screwed Facebook*, WIRED, (May 19, 2021), https://www.wired.co.uk/article/apple-ios14-facebook.

ER-250

## CLASS ALLEGATIONS

91.    Plaintiffs brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and any other applicable rules on behalf of themselves and all others similarly situated, as representatives of the following Classes:

Nationwide Class
All persons who, during the Relevant Time Period, used H&R Block's online tax preparation services and had their tax return information disclosed to third-parties, including Meta and/or Google. (the "Class")

California Subclass
All persons residing in California who, during the Relevant Time Period, used H&R Block's online tax preparation services and had their tax return information disclosed to third-parties, including Meta and/or Google. (the "Subclass")

92.    Excluded from the Classes are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest in, is a parent or subsidiary of, or which is otherwise controlled by Defendants; Defendants' affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assignees; and counsel for any party.  Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

93.    The Relevant Time Period dates back to the length of any statute of limitations on the claims presented from the date of filing, plus any period when the claims were subject to tolling. Plaintiffs reserve the right to modify and/or amend the Class definitions as necessary.

94.    All members of the proposed Class and Subclass are readily identifiable through Defendants' records.

95.    All requirements of Fed.R.Civ.P. 23(a) and 23(b)(2) and (3) are satisfied, making class certification appropriate.

96.    **Numerosity.**  The members of the Class and Subclass are so numerous that joinder of all members of the Classes is impracticable.  H&R Block prepares taxes for millions of people per year. According to the Senate Report, H&R Block acknowledged that, "every single taxpayer who used their website[] to file their taxes could have had at least some of their data shared." The proposed Class and Subclass therefore likely include at least tens of thousands and potentially millions of taxpayers. The

precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendants' records.

97.    **Commonality and Predominance.**  This action involves common questions of law and fact to the Plaintiffs and Class Members, which predominate over any questions only affecting individual Class Members. These common legal and factual questions include, without limitation:

 a. Whether Plaintiffs' and Class Members' communications with Defendants' Website were unlawfully intercepted and disclosed to third parties;

 b. Whether Defendants acted with a criminal or tortious purpose in intercepting Plaintiffs' and Class Members' communications;

 c. Whether Plaintiffs and Class Members consented to the disclosure;

 d. Whether Defendants' acts and omissions harmed Plaintiffs and Class Members;

 e. Whether Plaintiffs and the Classes are entitled to recover damages; and

 f. Whether Plaintiffs and the Classes are entitled to other appropriate remedies including injunctive relief.

98.    Defendants engaged in a common course of conduct giving rise to the claims asserted by Plaintiffs on behalf of themselves and the Classes. Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.

99.    **Typicality.**  Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' tax return information, like that of every other Class member, was improperly disclosed by Defendants. Defendants' misconduct impacted all Class Members in a similar manner.  Plaintiffs' claims are typical of those of the Class Members having used H&R Block's online tax preparation services to prepare and file tax returns during the relevant period, resulting in the unauthorized disclosure of their tax return information.

100.    **Adequacy.**  Plaintiffs will fairly and adequately represent and protect the interest of the members of the Classes and have retained counsel experienced in complex class action litigation and intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class or Subclass.

101. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims. There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class Members in a single action will provide substantial benefits to all parties and to the Court. Absent a class action, individual taxpayers like Plaintiffs would find the cost of litigating their claims prohibitively high and would have no effective remedy for monetary relief.

102. Additionally, Defendants have acted or refused to act on grounds that apply generally to the Classes, thereby making monetary, injunctive, equitable, declaratory, or a combination of such relief appropriate. Because the sensitive tax return information of Plaintiffs and the Classes remains exposed to third-party technology companies, including Meta and Google, the risk of future harm to Plaintiffs, the Class and Subclass (as well to future customers of Defendants within the general public) remains, making injunctive relief appropriate. The prosecution of separate actions by all affected individuals with dealings and contracts similar to Plaintiffs', even if possible, would create a substantial risk of (a) inconsistent or varying adjudications with respect to individual taxpayers, which would establish potentially incompatible standards of conduct for Defendants, and/or (b) adjudications with respect to individual taxpayers which would, as a practical matter, be dispositive of the interests of the other taxpayers not parties to the adjudications, or which would substantially impair or impede the ability to protect the interests of the Classes. Further, the claims of individual taxpayers in the defined Classes are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses.

103. Based on the foregoing, all requirements of Fed.R.Civ.P. 23(a) and 23(b)(2) and (3) are satisfied, making class certification appropriate.

ER-253

## EQUITABLE TOLLING OF STATUTES OF LIMITATIONS, CONCEALMENT, AND ESTOPPEL

104. Each unauthorized transmission of Plaintiffs' and the Class Members' confidential tax return information constitutes a separate act, which triggers anew any statute of limitations.

105. Any applicable statutes of limitations have been tolled by (l) the discovery doctrine, as Plaintiffs and the Class Members could not reasonably have discovered H&R Block's conduct, including the use of unseen tracking code to intercept and disclose their tax return information; and (2) the fraudulent concealment doctrine, due to H&R Block's knowing, purposeful, and active concealment of all facts alleged herein, including the surreptitious deployment of tracking pixels to impermissibly intercept and disclose tax return information of its users.

106. With respect to its taxpayer clients, H&R Block had exclusive knowledge that its Website incorporated pixels and other tracking tools, which information it failed to disclose to Plaintiffs and the Class Members.

107. H&R Block had a duty to disclose to its tax clients the nature, significance, and consequences of its interception and disclosure of tax return information, including that pixels were present on the Website and being used to share protected tax return information with Meta and Google. *See* 26 C.F.R. § 301.7216-3(a), (b). As H&R Block has not conceded, acknowledged, or otherwise indicated to its customers and other website visitors that it has disclosed confidential tax return information without valid consent, it is estopped from relying on any statute of limitations.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATIONS OF ELECTRONIC COMMUNICATIONS PRIVACY ACT

### ("ECPA") 18 U.S.C. § 2511(1), *et seq.*

### (*On Behalf of Plaintiffs and the Nationwide Class*)

108. Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

109. The primary purpose of ECPA is to protect the privacy of communications.

ER-254

110.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of ECPA.

111.    <u>Electronic Communications.</u> The transmission of tax return information between Plaintiffs and Class Members and Defendant's Website are "transfer[s] of signs, signals, writing, . . . data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

112.    <u>Content.</u> ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

113.    <u>Interception.</u> ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

114.    <u>Electronical, Mechanical, or Other Device.</u> ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5).

115.    The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a.    Plaintiffs' and Class Members' browsers;

    b.    Plaintiffs' and Class Members' computing devices;

    c.    Defendants' web-servers; and,

    d.    The tracking technology code deployed by Defendants to effectuate acquiring and disclosing taxpayer communications.

116.    By deploying the tracking tools on its Website, Defendants intentionally intercepted the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a). The intercepted communications included the content of substantive communications from Plaintiffs and Class Members to Defendants regarding tax return information.

117.    <u>Crime/Tort Exception.</u> Defendants intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing tortious or criminal acts in violation

<div align="center">25</div>

of the Constitution or laws of the United States or of any State. Specifically, H&R Block intercepted or acquired the contents of its users' communications for the purpose of disclosing those communications to third parties for ad retargeting in violation of the Internal Revenue Code.

118. The Internal Revenue Code prohibits tax return preparers from disclosing "any information furnished to him for, or in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a).

119. 26 U.S.C. §§ 6713 and 7216 of the Internal Revenue Code provide criminal penalties against a tax return preparer that discloses or uses tax return information "for any purpose other than to prepare, or assist in preparing" tax returns.

120. The express purpose of the tracking tools is to disclose a website visitor's activities on a website, identify that individual, and retarget that individual with advertising based on the user's website activities. By secretly deploying the tracking tools on its Website, H&R Block acted with the purpose of knowingly disclosing tax return information without users' consent in violation of the Internal Revenue Code and related laws and regulations. Disclosure of tax return information to Meta and Google was not necessary to prepare or assist in preparing Plaintiffs' and the Classes' tax returns. Rather, H&R Block deployed the tracking tools for their intended purpose—to disclose taxpayer information to the third-party tech companies for ad retargeting, and, ultimately, to increase H&R Block's profits.

121. The communications intercepted by the tracking technologies constituted tax return information under 26 C.F.R. § 301.7216-1(b)(3)(i).

122. Because the purpose of H&R Block's interception of Plaintiffs' communications was to engage in conduct that violated criminal provisions of the Internal Revenue Code, and also constituted tortious conduct (including invasion of privacy and intrusion upon seclusion), H&R Block cannot claim immunity under ECPA's party exception.

123. Defendants were not acting under color of law to intercept Plaintiffs' and the Class Members' electronic communications.

124. A person who violates § 2511(1)(a) is liable for $10,000 in statutory damages to any person whose wire, oral, or electronic communications are unlawfully intercepted. Because H&R Block

26

ER-256

intercepted Plaintiffs' and Class Members' communications for a purpose that was criminal and/or tortious, the interceptions were unlawful, and Plaintiffs and the Classes are entitled to all available statutory damages under ECPA.

125. Based on the foregoing, Plaintiffs and Class Members seek all other relief as the Court may deem just and proper, including all available monetary relief, injunctive and declaratory relief, any applicable penalties, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**("CIPA") Cal. Penal Code § 630, *et seq.***

**(*On Behalf of Plaintiffs and the California Subclass*)**

126. Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

127. The California Invasion of Privacy Act ("CIPA") is codified at California Penal Code §§ 630 to 638.

128. CIPA begins with its statement of purpose:

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Pen. Code § 630.

129. California Penal Code § 631(a) imposes liability on:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

130. At all relevant times, H&R Block was a "person" within the scope of CIPA. Cal. Penal Code § 631(a).

ER-257

131.    H&R Block aided, employed, agreed with, and conspired with third-parties, including Meta and Google, to track and intercept Plaintiffs' and the Class Members' internet communications in transit while using Defendants' Website. Defendants' conduct allowed unauthorized third parties to read and learn about the contents or meaning of any message, report, or communication from Plaintiffs and the California Subclass while the same was in transit or passing over any wire, line, or cable, or was being sent from, or received at any place within California.

132.    Defendants intentionally inserted an electronic device on their Website (the tracking pixel code) that, without the knowledge and consent of Plaintiffs and the California Subclass, recorded and transmitted their confidential communications with Defendants to third parties.

133.    Defendants willfully facilitated and aided the interception and collection of Plaintiffs and the California Subclass's tax return information by embedding the tracking code on the Website.

134.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the tracking code falls under the broad catch-all category of "any other manner":

    a.  The computer codes and programs Meta and Google used to track Plaintiffs' and the Class's communications while they were navigating the Website;

    b.  Plaintiffs' and the Class's browsers;

    c.  Defendants' Website and webserver;

    d.  Plaintiffs' and the Class's computing and mobile devices;

    e.  The web and ad servers from which Meta, Google, and other third parties tracked and intercepted Plaintiffs' and the Class's communications while they were using a web browser to access or navigate the Website;

    f.  The computer codes and programs used by Meta, Google, and other third parties to effectuate its tracking and interception of Plaintiffs' and the Class's communications while they were using a browser to visit the Website; and

    g.  The plan Defendants, Meta, Google, and/or other third parties carried out to effectuate their tracking and interception of Plaintiffs' and the Class's communications while they were using a web browser to visit the Website.

135.    As a result of the above violations and pursuant to CIPA Section 637.2, Defendants are liable to Plaintiffs and the California Subclass for the greater of: a) treble actual damages related to their loss of privacy in an amount to be determined at trial; or b) for statutory damages in the amount of $5,000 per violation. Section 637.2 specifically states that "[i]t is not a necessary prerequisite to an action pursuant to this section that the Plaintiff has suffered, or be threatened with, actual damages."

136.    Under the statute, Defendants are also liable for reasonable attorneys' fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendants in the future.

137.    Based on the foregoing, Plaintiffs and the California Subclass seek all other relief as the Court may deem just and proper, including all available monetary relief, injunctive and declaratory relief, any applicable penalties, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code § 17200, *et seq.* – Unlawful Business Practices

### (*On Behalf of Plaintiffs and the California Subclass*)

138.    Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

139.    The California Unfair Competition Law ("UCL") prohibits, inter alia, "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code §§ 17200, 17203-04, 17206.

140.    Plaintiffs, Class Members, and Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

141.    The acts, omissions, and conduct of Defendants as alleged herein constitute "business practices" within the meaning of the UCL.

142.    Defendants' conduct described herein violates the UCL's unlawful and unfair prongs.

143.    Plaintiffs and Class Members bring their claims for injunctive relief as they have no confidence that Defendants have altered their privacy practices, and their personal tax return information continues to be in the hands of third parties.

144.    Plaintiffs and Class Members bring their claims for restitution and injunctive relief in the alternative to their claims for damages in the event they have an inadequate remedy at law.

145.    Plaintiffs and Class members paid fees to Defendants for services performed on the understanding that private information would not be intercepted by or disclosed to third-parties.  Such fees should be returned to Plaintiffs and the members of the Class as restitution or disgorgement.

146.    Defendants engaged in unlawful business practices by disclosing Plaintiffs' and Class Members' private tax return information to unauthorized third parties, including Meta and Google, without prior consent in violation of the ECPA, the Internal Revenue Code, and privacy laws alleged herein.

147.    Defendant's unlawful and unfair acts and practices include violations of Plaintiffs' and Class Members' rights to privacy, the EPCA, CLRA, Cal. Penal Code § 630, *et seq.*, and other violations of law alleged herein.

148.    In addition to violation of Plaintiffs' and Class Members' privacy rights, as described herein, Defendants' procedural practices H&R Block seeks to enforce through the OSA violate the UCL's unlawful and unfair prongs. As described above, Defendants seek to unfairly delay and hinder the filing and presentation of claims through the batched filing and bellwether provisions in the OSA's arbitration clause.  Further, through the prefiling conference clause in the OSA, Defendants seek to improperly interrogate represented claimants (without the consent of claimants' counsel) before they file claims, contrary to Rule 4.2 of the California Rules of Professional Conduct. The foregoing provisions of the OSA therefore violate the UCL, CLRA, as well as Cal. Civil Code §§ 1608, 1670.5.

149.    Plaintiffs' request appropriate injunctive and declaratory relief against the continuation of the practices described and complained herein. Such relief will create a public benefit. Plaintiffs separately seek public injunctive relief on behalf of the general public of California who have yet to deal with Defendants in the manner described herein, but are likely to in the future, and therefore, are in need of protection provided by the public injunctive relief sought. Such public injunctive relief will create additional public benefits.

150.    As a direct result of Defendants' violations of the UCL, Plaintiffs and Class Members have suffered injury in fact and lost money or property including, but not limited to, loss of the benefit

30

of the bargain in using Defendants' services.  Specifically, Plaintiffs and Class Members paid money to Defendants in exchange for tax preparation services with the expectation that their personal tax return information would remain confidential. Had Plaintiffs known the truth that Defendants secretly disclosed their private information to third parties, they would have used the services of a different tax return preparer.

151.    The unauthorized access to Plaintiffs' and Class Members' private and personal data also diminished the value of that information by making it available for free to Meta, Google, and other third parties for their use in marketing and advertising and generating profits.

152.    To the extent Defendants received any benefits or things of value from Meta, Google, and other third parties for helping to provide Plaintiffs' and Class Members' private data, Defendants have been unjustly enriched as have those third parties, at Plaintiffs' and the Class Members' expense. Any benefits or things of value received should have been provided to Plaintiffs and the Class, not retained by Defendants or third parties and any such amounts should be disgorged.

153.    As a direct result of its unlawful practices, Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204, disgorgement of all profits accruing to Defendants because of the unlawful business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5) and injunctive or other equitable relief.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

**Cal. Civil Code § 1750,** *et seq.*

(***On Behalf of Plaintiff and the California Subclass***)

154.    Plaintiffs re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

155.    The California Consumer Legal Remedies Act ("CLRA") prohibits deceptive business practices.

156.    Section 1770 provides, in part: "The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful":

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

(14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

(19) Inserting an unconscionable provision in the contract.

157.    Through its conduct, acts, and material omissions described above, Defendants violated the foregoing provisions of the CLRA. Defendants deceptively disclosed private tax information to third parties in violation of subsections (5), (14), and/or (19).

158.    Under federal law, H&R Block was required to disclose to its customers whether it shared tax return information with third parties and obtain its customers' knowing and voluntary consent before sharing such information. In violation of its duty to disclose, H&R Block secretly deployed the tracking tools, which triggered the interception and disclosure of protected tax return information to Meta and Google for purposes of ad retargeting. H&R Block's omission was material because a reasonable consumer would deem it important to know whether their tax preparer was secretly disclosing protected tax return information to two of the largest advertising companies in the world, Meta and Google. H&R Block's conduct therefore violates subsections (5) and (14).

159.    Defendants' arbitration provision in the OSA, including the class waiver, batched filing/staged bellwether provision, and prefiling conference requirement constitute unconscionable provisions that also violate subsections (14) and (19). Through these provisions of the OSA, Defendants seek to improperly prohibit class proceedings. *See Heckman*, 120 F.4th at 689-92 (holding that the FAA does not apply to preempt state law where arbitration agreements include requirements for bellwether proceedings and batched filings). Defendants also seek to hinder the prompt progression of claims and prejudice class members based on the identity of their chosen legal counsel. And through the prefiling conference requirement, Defendants seek to improperly interrogate represented claimants (without the

consent of claimants' counsel) before they file claims, contrary to Rule 4.2 of the California Rules of Professional Conduct. The foregoing provisions of the OSA therefore violate the CLRA, as well as Cal. Civil Code §§ 1608, 1670.5.

160.    The above-described conduct of H&R Block also constitutes unlawful conduct under the UCL.

161.    At least 30 days prior to filing these claims, Plaintiffs provided any required notice to Defendants of the substantive violations pursuant to Civil Code §1782. Written notice was sent on September 20, 2024, and received by Defendants on September 27, 2024.

162.    As a result of Defendants' violations of the CLRA, Plaintiffs and the California Subclass seek actual damages, statutory damages, punitive damages, reasonable attorneys' fees and costs, and all other relief available and just under the circumstances.  In the alternative to their claims for damages, Plaintiffs and the Subclass seek declaratory relief and injunctive relief (public and private) prohibiting the continuation of H&R Block's unlawful data disclosure practices, which threaten to harm the members of the California Subclass as well as members of general public who may attempt to transact with Defendants in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes respectfully pray for judgment in their favor on all Counts as follows:

a.    Certification of the Classes pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and an order that notice be provided to all Class Members;

b.    Designation of Plaintiffs as representatives of the Classes and the undersigned counsel as Class Counsel;

c.    An award of damages or other monetary relief in an amount to be determined at trial or by this Court;

d.     An award of restitution and/or disgorgement in an amount to be determined at trial or by this Court;

e.    An order for injunctive relief, enjoining Defendants from engaging in the wrongful and unlawful acts described herein;

33

ER-263

f.    An order for declaratory relief as may be appropriate;

g.    An award of statutory interest and penalties;

h.    An award of costs and attorneys' fees; and

i.    All such other relief the Court may deem just and proper in law or equity.

<div align="center">

**DEMAND FOR TRIAL BY JURY**

</div>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Dated: April 22, 2025

By:    *s/ Ryan J. Ellersick*
Ryan J. Ellersick (SBN 357560)
Caleb Marker (SBN 269721)
Jessica M. Liu (SBN 358713)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel (877) 500-8780
Fax (877) 500-8781
ryan.ellersick@zimmreed.com
caleb.marker@zimmreed.com
jessica.liu@zimmreed.com

*Attorneys for Plaintiffs and the Classes*

Vinesign Document ID: 5D9B88233-8958-4049-9A3D-E092719TC2E3

**ZIMMERMAN REED LLP**
Ryan Ellersick (SBN 357560)
ryan.ellersick@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780

Richard Hansen (*Pro Hac Vice forthcoming*)
richard.hansen@zimmreed.com
80 South 8th Street, Suite 1100
Minneapolis, MN 55402
Telephone: (800) 755-0098

*Attorneys for Plaintiffs and the Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation, <br><br> Defendants. | CASE NO.: <br><br> **DECLARATION OF PLAINTIFF PEDRO RIOS JR.** |

The signed document can be validated at https://app.vinesign.com/Verify

ER-265

I, Pedro Rios Jr., declare:

1. I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3. I reside in Bay Point, California. As set forth in my complaint, I paid money to file my taxes online through H&R Block's website while residing in Bay Point, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

_04/18/2025_
Date

_____
Pedro Rios Jr.

2
DECLARATION OF PLAINTIFF PEDRO RIOS JR.

ER-266

JS-CAND 44 (Rev. 12/2024)

# CIVIL COVER SHEET

This civil cover sheet does not replace or supplement the filing and service of pleadings or other papers. The information on this form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket. Instructions are on the reverse of this form.

## I. PLAINTIFF(S)

PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated

**County of Residence of First Listed Plaintiff:** Contra Costa
*Leave blank in cases where United States is plaintiff.*

**Attorney or Pro Se Litigant Information** *(Firm Name, Address, and Telephone Number)*
Ryan Ellersick, Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080, Los Angeles, CA 90048. Tel: 877-500-8780

## DEFENDANT(S)

HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation

**County of Residence of First Listed Defendant:**
*Use ONLY in cases where United States is plaintiff.*

**Defendant's Attorney's Name and Contact Information** *(if known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] U.S. Government Plaintiff
- [x] Federal Question *(U.S. Government Not a Party)*
- [ ] U.S. Government Defendant
- [ ] Diversity

## III. CAUSE OF ACTION

Cite the U.S. Statute under which you are filing: *(Use jurisdictional statutes only for diversity)*
18 U.S.C. § 2511(1)

Brief description of case: Violations of Electronic Communications Privacy Act

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane / 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander / 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 710 Fair Labor Standards Act | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine / 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 460 Deportation |
| | 350 Motor Vehicle / **PERSONAL PROPERTY** | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability / 370 Other Fraud | 790 Other Labor Litigation | 880 Defend Trade Secrets Act of 2016 | 480 Consumer Credit |
| | [x] 360 Other Personal Injury / 371 Truth in Lending | 791 Employee Retirement Income Security Act | | 485 Telephone Consumer Protection Act |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice / 380 Other Personal Property Damage | | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 190 Other Contract | | | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | / 385 Property Damage Product Liability | **IMMIGRATION** | 862 Black Lung (923) | |
| 196 Franchise | **CIVIL RIGHTS** / **PRISONER PETITIONS** | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| | 441 Voting / **HABEAS CORPUS** | | 865 RSI (405(g)) | 893 Environmental Matters |
| 210 Land Condemnation | 442 Employment / 463 Alien Detainee | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 220 Foreclosure | 443 Housing/ Accommodations / 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment / 530 General | | 871 IRS–Third Party 26 U.S.C. § 7609 | 896 Arbitration |
| 240 Torts to Land | / 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other / **OTHER** | | | |
| 290 All Other Real Property | 448 Education / 540 Mandamus & Other | | | 950 Constitutionality of State Statutes |
| | 550 Civil Rights | | | |
| | 555 Prison Condition | | | |
| | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] Original Proceeding
- [ ] Removed from State Court
- [ ] Remanded from Appellate Court
- [ ] Reinstated or Reopened
- [ ] Transferred from Another District
- [ ] Multidistrict Litigation–Transfer
- [ ] Multidistrict Litigation–Direct File

## VI. FOR DIVERSITY CASES ONLY: CITIZENSHIP OF PRINCIPAL PARTIES
*(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

| Plaintiff | Defendant | |
|---|---|---|
| [x] | [ ] | Citizen of California |
| [ ] | [ ] | Citizen of Another State |
| [ ] | [ ] | Citizen or Subject of a Foreign Country |
| [ ] | [ ] | Incorporated or Principal Place of Business In California |
| [ ] | [x] | Incorporated and Principal Place of Business In Another State |
| [ ] | [ ] | Foreign Nation |

## VII. REQUESTED IN COMPLAINT

- [x] Check if the complaint contains a jury demand.
- [x] Check if the complaint contains a monetary demand. Amount: 5,000,000.00
- [x] Check if the complaint seeks class action status under Fed. R. Civ. P. 23.
- [x] Check if the complaint seeks a nationwide injunction or Administrative Procedure Act vacatur.

## VIII. RELATED CASE(S) OR MDL CASE
*Provide case name(s), number(s), and presiding judge(s).*

## IX. DIVISIONAL ASSIGNMENT pursuant to Civil Local Rule 3-2
*(Place an "X" in One Box Only)*
- [x] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE
- [ ] EUREKA-MCKINLEYVILLE

**DATE** 04/22/2025    **SIGNATURE OF ATTORNEY OR PRO SE LITIGANT** /s/ Ryan J. Ellersick

ER-267

JS-CAND 44 (rev. 12/2024)

## COMPLETING THE CIVIL COVER SHEET

Complete the form as follows:

I.  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **County of Residence**. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.

    **Attorney/Pro Se Litigant Information**. Enter the firm name, address, telephone number, and email for attorney of record or pro se litigant. If there are several individuals, list them on an attachment.

II.  **Jurisdiction.** Under Federal Rule of Civil Procedure 8(a), pleadings must establish the basis of jurisdiction. If multiple bases for jurisdiction apply, prioritize them in the order listed:

    (1)  *United States plaintiff.* Jurisdiction based on 28 U.S.C. §§ 1345 and 1348 for suits filed by the United States, its agencies or officers.

    (2)  *United States defendant.* Applies when the United States, its agencies, or officers are defendants.

    (3)  *Federal question*. Select this option when jurisdiction is based on 28 U.S.C. § 1331 for cases involving the U.S. Constitution, its amendments, federal laws, or treaties (but use choices 1 or 2 if the United States is a party).

    (4)  *Diversity of citizenship.* Select this option when jurisdiction is based on 28 U.S.C. § 1332 for cases between citizens of different states and complete Section VI to specify the parties' citizenship. Note: Federal question jurisdiction takes precedence over diversity jurisdiction.

III.  **Cause of Action.** Enter the statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless jurisdiction is based on diversity. Example: U.S. Civil Statute: 47 U.S.C. § 553. Brief Description: Unauthorized reception of cable service.

IV.  **Nature of Suit.** Check one of the boxes. If the case fits more than one nature of suit, select the most definitive or predominant.

V.  **Origin.** Check one of the boxes:

    (1)  *Original Proceedings*. Cases originating in the United States district courts.

    (2)  *Removed from State Court*. Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. § 1441. When the petition for removal is granted, check this box.

    (3)  *Remanded from Appellate Court*. Check this box for cases remanded to the district court for further action, using the date of remand as the filing date.

    (4)  *Reinstated or Reopened*. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

    (5)  *Transferred from Another District*. Check this box for cases transferred under Title 28 U.S.C. § 1404(a). Do not use this for within-district transfers or multidistrict litigation (MDL) transfers.

    (6)  *Multidistrict Litigation Transfer*. Check this box when a multidistrict (MDL) case is transferred into the district under authority of Title 28 U.S.C. § 1407.

    (7)  *Multidistrict Litigation Direct File.* Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

VI.  **Residence (citizenship) of Principal Parties.** Mark for each principal party *only* if jurisdiction is based on diversity of citizenship.

VII.  **Requested in Complaint.**

    (1)  *Jury demand.* Check this box if plaintiff's complaint demanded a jury trial.

    (2)  *Monetary demand*. For cases demanding monetary relief, check this box and enter the actual dollar amount being demanded.

    (3)  *Class action.* Check this box if plaintiff is filing a class action under Federal Rule of Civil Procedure 23.

    (4)  *Nationwide injunction.* Check this box if plaintiff is seeking a nationwide injunction or nationwide vacatur pursuant to the Administrative Procedures Act.

VIII.  **Related Cases.** If there are related pending case(s), provide the case name(s) and number(s) and the name(s) of the presiding judge(s). If a short-form MDL complaint is being filed, furnish the MDL case name and number.

IX.  **Divisional Assignment.** Identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated." Note that case assignment is made without regard for division in the following case types: Property Rights (Patent, Trademark and Copyright), Prisoner Petitions, Securities Class Actions, Anti-Trust, Bankruptcy, Social Security, and Tax.

ER-268

MAYER BROWN LLP
ARCHIS A. PARASHARAMI (SBN 321661)
*aparasharami@mayerbrown.com*
MAYER BROWN LLP
575 Market Street, Suite 2500
San Francisco, CA 94105
Telephone:     (415) 874-4230

DANIEL E. JONES (*pro hac vice*)
*djones@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PEDRO RIOS, JR., and CHRISTIAN MARQUEZ, individually, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HRB DIGITAL, LLC, a Delaware Corporation, HRB TAX GROUP, INC., a Missouri Corporation,<br><br>Defendants. | Case No. 3:25-cv-03530-EMC<br><br>Assigned to the Hon. Edward M. Chen<br><br>**DEFENDANTS' NOTICE OF APPEAL** |

DEFENDANTS' NOTICE OF APPEAL; CASE NO. 3:25-cv-03530-EMC

ER-269

Notice is hereby given that, pursuant to Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a), Defendants HRB Digital, LLC and HRB Tax Group, Inc. appeal to the United States Court of Appeals for the Ninth Circuit from this Court's October 27, 2025 order (Dkt. No. 47) denying Defendants' motion to compel arbitration and to stay the litigation.  A copy of the order being appealed is attached as Exhibit 1.

In accordance with Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rule 3-2(b), a Representation Statement is attached as Exhibit 2.

Dated: November 13, 2025                    Respectfully submitted,


By:  */s/ Archis A. Parasharami*
      Archis A. Parasharami
      *aparasharami@mayerbrown.com*
      MAYER BROWN LLP
      575 Market Street, Suite 2500
      San Francisco, CA 94105
      Telephone: (415) 874-4230

      *Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

# Exhibit 2

## REPRESENTATION STATEMENT

In accordance with Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rule 3-2(b), the following list identifies all of the parties to the action and, on information and belief, their respective counsel by name, address, telephone number, and email address:

| Party | Counsel of Record |
|---|---|
| Plaintiffs-Appellees Pedro Rios, Jr. and Christian Marquez | Ryan J. Ellersick<br>ZIMMERMAN REED LLP<br>6420 Wilshire Blvd., Suite 1080<br>Los Angeles, CA 90048<br>Tel (877) 500-8780<br>ryan.ellersick@zimmreed.com<br><br>Hart L. Robinovich<br>ZIMMERMAN REED LLP<br>14648 N. Scottsdale Rd, Ste 130<br>Scottsdale, AZ 85254<br>Tel (480) 348-6400<br>hart.robinovitch@zimmreed.com<br><br>Zain A. Shirazi<br>ZIMMERMAN REED LLP<br>1100 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>Tel (612) 341-0400<br>zain.shirazi@zimmreed.com |
| Defendants-Appellants HRB Digital, LLC and HRB Tax Group, Inc. | Archis A. Parasharami<br>MAYER BROWN LLP<br>575 Market Street, Suite 2500<br>San Francisco, CA 94105<br>Telephone: (415) 874-4230<br>aparasharami@mayerbrown.com<br><br>Daniel E. Jones<br>MAYER BROWN LLP<br>1999 K Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 263-3000<br>djones@mayerbrown.com |

DEFENDANTS' NOTICE OF APPEAL; CASE NO. 3:25-cv-03530-EMC

ER-272

Dated:  November 13, 2025

Respectfully submitted,

**MAYER BROWN LLP**

*/s/ Archis A. Parasharami*
Archis A. Parasharami

*Attorneys for Defendants HRB Digital, LLC and HRB Tax Group, Inc.*

DEFENDANTS' NOTICE OF APPEAL; CASE NO. 3:25-cv-03530-EMC

ER-273

ADRMOP,APPEAL

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:25−cv−03530−EMC

Rios et al v. HRB Digital LLC et al
Assigned to: Judge Edward M Chen
Demand: $5,000,000
 Case in other court:  USCA#:25−07199
Cause: 28:1332 Diversity−(Citizenship)

Date Filed: 04/22/2025
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Federal Question

**Plaintiff**

**Pedro Rios, Jr.**　　　　　　　　　　represented by **Ryan Ellersick**
Zimmerman Reed, LLP
6420 Wilshire Blvd
Suite 1080
Los Angeles, CA 90048
877−500−8780
Email: ryan.ellersick@zimmreed.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caleb L. Marker**
Zimmerman Reed, LLP
6420 Wilshire Boulevard, Suite 1080
Los Angeles, CA 90048
(877) 500−8780
Email: caleb.marker@zimmreed.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hart Lawrence Robinovitch**
Zimmerman Reed, LLP
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
480−348−6400
Email: hart.robinovitch@zimmreed.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Meng Liu**
Zimmerman Reed LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500−8780
Fax: (877) 500−8781
Email: jessica.liu@zimmreed.com
*ATTORNEY TO BE NOTICED*

**Zain Shirazi**
Zain Shirazi Law PLLC
1 West Water Street
Suite 275
Saint Paul, MN 55107
714−943−9083
Email: zain@zainshirazilaw.com
*TERMINATED: 04/07/2026*

**Plaintiff**

**Christian Marquez**　　　　　　　　represented by **Ryan Ellersick**
*individually, and on behalf of those*　　　　　(See above for address)
*similarly situated*　　　　　　　　　　　　*LEAD ATTORNEY*

ER-274

*ATTORNEY TO BE NOTICED*

**Caleb L. Marker**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hart Lawrence Robinovitch**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jessica Meng Liu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Zain Shirazi**
(See above for address)
*TERMINATED: 04/07/2026*

V.

**Defendant**

**HRB Digital LLC**　　　　　represented by　**Archis Ashok Parasharami**
Skadden, Arps, Slate, Meagher & Flom LLP
525 University Avenue
Palo Alto, CA 94301
650−470−4500
Email: Archis.Parasharami@skadden.com
*ATTORNEY TO BE NOTICED*

**Daniel Edward Jones**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005
202−371−7980
Fax: 202−661−9180
Email: daniel.jones@skadden.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stacey R. Gilman**
Berkowitz Oliver
2600 Grand Blvd.
Ste 1200
Kansas City, MO 64108
816−627−0216
Fax: 816−561−1888
Email: sgilman@berkowitzoliver.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**HRB Tax Group, Inc.**　　　　represented by　**Archis Ashok Parasharami**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Edward Jones**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

ER-275

**Stacey R. Gilman**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/22/2025 | 1 | CLASS ACTION COMPLAINT AND JURY TRIAL DEMANDED against Defendants HRB Digital LLC, and HRB Tax Group, Inc., (Filing Fee: $405.00, receipt number ACANDC−20595670). Filed by Pedro Rios, Jr. and Christian Marquez. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(Ellersick, Ryan) (Filed on 4/22/2025) Modified on 4/22/2025 (tn, COURT STAFF). (Entered: 04/22/2025) |
| 04/22/2025 | 2 | Proposed Summons. (Ellersick, Ryan) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 3 | Certificate of Conflicts and Interested Entities or Persons Pursuant to Local Rule 3−15 filed by Pedro Rios, Jr. and Christian Marquez. (Ellersick, Ryan) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 4 | Case assigned to Magistrate Judge Alex G. Tse. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E−Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 5/6/2025. (mbc, COURT STAFF) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 5 | Summons Issued as to HRB Digital LLC, HRB Tax Group, Inc.. (tn, COURT STAFF) (Filed on 4/22/2025) (Entered: 04/22/2025) |
| 04/22/2025 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Joint Case Management Statement due by 7/18/2025. Initial Case Management Conference set for 7/25/2025 at 2:00 PM in San Francisco − Videoconference Only. (tn, COURT STAFF) (Filed on 4/22/2025) (Entered: 04/22/2025)** |
| 04/29/2025 | 7 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Pedro Rios, Jr, Christian Marquez.. (Ellersick, Ryan) (Filed on 4/29/2025) (Entered: 04/29/2025) |
| 05/06/2025 | 8 | **RELATED CASE ORDER re 5:23−cv−04953−PCP. The Court determines the cases are NOT related. Signed by Judge P. Casey Pitts on 5/6/2025. (nmc, COURT STAFF) (Filed on 5/6/2025) (Entered: 05/06/2025)** |
| 05/07/2025 | 9 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE−NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. *This is a text only docket entry; there is no document associated with this notice.* (shy, COURT STAFF) (Filed on 5/7/2025) (Entered: 05/07/2025) |
| 05/07/2025 | 10 | **ORDER REASSIGNING CASE** IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Edward M Chen. Magistrate Judge Alex G. Tse no longer assigned to the case. |

ER-276

| | | |
|---|---|---|
| | | Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.<br><br>Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras.<br><br>Mark B. Busby<br>Clerk, United States District Court<br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)*<br><br>(mbc, COURT STAFF) (Filed on 5/7/2025) (Entered: 05/07/2025) |
| 05/08/2025 | 11 | WAIVER OF SERVICE Returned Executed filed by Pedro Rios, Jr, Christian Marquez. Service waived by HRB Digital LLC waiver sent on 4/23/2025, answer due 6/23/2025. (Ellersick, Ryan) (Filed on 5/8/2025) (Entered: 05/08/2025) |
| 05/08/2025 | 12 | WAIVER OF SERVICE Returned Executed filed by Pedro Rios, Jr, Christian Marquez. Service waived by HRB Tax Group, Inc. waiver sent on 4/23/2025, answer due 6/23/2025. (Ellersick, Ryan) (Filed on 5/8/2025) (Entered: 05/08/2025) |
| 05/09/2025 | 13 | **CLERK'S NOTICE − REASSIGNED CASE − NOTICE OF NEW HEARING DATE.**<br><br>You are notified that the Court has scheduled an Initial Case Management Conference before Judge Edward M. Chen upon reassignment. For a copy of Judge Chen's Standing Orders and other information, please refer to the Court's website at www.cand.uscourts.gov.<br><br>Joint Case Management Statement due by 8/12/2025.<br><br>Initial Case Management Conference set for 8/19/2025, at 1:30 PM in San Francisco, − Videoconference Only. This proceeding will be held via a Zoom webinar.<br><br>**ALL COUNSEL PARTICIPATING IN THE HEARING ARE REQUIRED TO LOG INTO ZOOM NO LATER THAN 1:20 PM.**<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/emc<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.) (vla, COURT STAFF) (Filed on 5/9/2025) (Entered: 05/09/2025)* |
| 05/20/2025 | 14 | STIPULATION *TO EXTEND TIME (CIV. L.R. 6−1(A & B))* filed by HRB Digital LLC, HRB Tax Group, Inc.. (Parasharami, Archis) (Filed on 5/20/2025) (Entered: 05/20/2025) |
| 06/05/2025 | 15 | MOTION to Bifurcate *(Unopposed Motion to Bifurcate Responsive Pleadings)* filed by HRB Digital LLC, HRB Tax Group, Inc.. Motion Hearing set for 7/10/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 6/20/2025. (Attachments: # 1 Proposed Order)(Parasharami, Archis) (Filed on 6/5/2025) (Entered: 06/05/2025) |

ER-277

| 06/17/2025 | 16 | **Order by Judge Edward M Chen GRANTING AS MODIFIED 15 DEFENDANTS HRB DIGITAL LLCS AND HRB TAX GROUP'S UNOPPOSED MOTION TO BIFURCATE RESPONSIVE PLEADINGS.** Defendants' Motion to Compel shall be filed on or before the responsive pleading deadline of 7/14/2025. The hearing shall be set for 8/28/2025. (vla, COURT STAFF) (Filed on 6/17/2025) (Entered: 06/17/2025) |
|---|---|---|
| 07/14/2025 | 17 | Administrative Motion to File Under Seal *Documents in Support of Defendants' Motion to Compel Arbitration and Stay Litigation* filed by HRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Proposed Order, # 2 Exhibit 1 UNDER SEAL, (3) Exhibit 2 UNDER SEAL, # 4 Exhibit 3 UNDER SEAL, # 5 Exhibit 4 UNDER SEAL, # 6 Exhibit 5 UNDER SEAL, # 7 Exhibit 6 UNDER SEAL ) (Parasharami, Archis) (Filed on 7/14/2025) Modified on 7/16/2025 (gba, COURT STAFF). (Entered: 07/14/2025) |
| 07/14/2025 | 18 | MOTION to Compel *Arbitration and Stay Litigation* filed by HRB Digital LLC, HRB Tax Group, Inc.. Motion Hearing set for 8/28/2025 01:30 PM in San Francisco, Courtroom 05, 17th Floor before Judge Edward M Chen. Responses due by 7/28/2025. Replies due by 8/4/2025. (Attachments: # 1 Proposed Order)(Parasharami, Archis) (Filed on 7/14/2025) (Entered: 07/14/2025) |
| 07/14/2025 | 19 | Declaration of Bobbie Crew in Support of 18 MOTION to Compel *Arbitration and Stay Litigation* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Exhibit 1 Sealed, # 2 Exhibit 2 Sealed, # 3 Exhibit 3 Sealed # 4 Exhibit 4 Sealed, # 5 Exhibit 5 Sealed, # 6 Exhibit 6 Sealed) Related document(s) 18 ) (Parasharami, Archis) (Filed on 7/14/2025) Modified on 7/16/2025 (gba, COURT STAFF). (Entered: 07/14/2025) |
| 07/14/2025 | 20 | Declaration of Valerie Schuessler in Support of 18 MOTION to Compel *Arbitration and Stay Litigation* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Exhibit 1− Sign in, # 2 Exhibit 2− Returning Client Acknowledgment, # 3 Exhibit 3− Returning Client Acknowledgment Error, # 4 Exhibit 4− OSA)(Related document(s) 18 ) (Parasharami, Archis) (Filed on 7/14/2025) (Entered: 07/14/2025) |
| 07/14/2025 | 21 | Declaration of Daniel Murdock in Support of 18 MOTION to Compel *Arbitration and Stay Litigation* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Related document(s) 18 ) (Parasharami, Archis) (Filed on 7/14/2025) (Entered: 07/14/2025) |
| 07/23/2025 | 22 | STIPULATION WITH PROPOSED ORDER *to Extend Briefing Schedule for Defendant's Motion to Compel Arbitration* filed by Pedro Rios, Jr, Christian Marquez. (Attachments: # 1 Declaration of Ryan Ellersick)(Ellersick, Ryan) (Filed on 7/23/2025) (Entered: 07/23/2025) |
| 07/24/2025 | 23 | **Order by Judge Edward M Chen GRANTING 22 STIPULATION TO EXTEND TIME PER (CIV.L.R. 6−1(b).(vla, COURT STAFF) (Filed on 7/24/2025) (Entered: 07/24/2025)** |
| 07/24/2025 | 24 | NOTICE of Appearance filed by Zain Shirazi on behalf of Pedro Rios, Jr, Christian Marquez (Shirazi, Zain) (Filed on 7/24/2025) (Entered: 07/24/2025) |
| 08/05/2025 | 25 | OPPOSITION/RESPONSE (re 18 MOTION to Compel *Arbitration and Stay Litigation* ) filed byPedro Rios, Jr, Christian Marquez. (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |
| 08/05/2025 | 26 | Declaration of Ryan Ellersick in Support of 25 Opposition/Response to Motion filed byPedro Rios, Jr, Christian Marquez. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21)(Related document(s) 25 ) (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |
| 08/05/2025 | 27 | Declaration of Plaintiff Christian Marquez in Support of 25 Opposition/Response to Motion filed byPedro Rios, Jr, Christian Marquez. (Related document(s) 25 ) (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |

ER-278

| 08/05/2025 | 28 | Declaration of Plaintiff Pedro Rios in Support of 25 Opposition/Response to Motion filed byPedro Rios, Jr, Christian Marquez. (Related document(s) 25 ) (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |
|---|---|---|
| 08/05/2025 | 29 | Declaration of Scott J. Falgoust in Support of 25 Opposition/Response to Motion filed byPedro Rios, Jr, Christian Marquez. (Related document(s) 25 ) (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |
| 08/05/2025 | 30 | Declaration of Stephen M. Tillery in Support of 25 Opposition/Response to Motion filed byPedro Rios, Jr, Christian Marquez. (Related document(s) 25 ) (Ellersick, Ryan) (Filed on 8/5/2025) (Entered: 08/05/2025) |
| 08/11/2025 | 31 | STIPULATION WITH PROPOSED ORDER *to Continue Case Management Conference (CIV. L.R. 6−1(b), 6−2)* filed by HRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Declaration of Archis A. Parasharami)(Parasharami, Archis) (Filed on 8/11/2025) (Entered: 08/11/2025) |
| 08/13/2025 | 32 | **Order by Judge Edward M Chen GRANTING AS MODIFIED 31 STIPULATION TO CONTINUE CASE MANAGEMENT CONFERENCE.(vla, COURT STAFF) (Filed on 8/13/2025) (Entered: 08/13/2025)** |
| 08/13/2025 | 33 | **CLERK'S NOTICE RESCHEDULING INITIAL CASE MANAGEMENT CONFERENCE.**<br><br>Joint Case Management Statement due by 8/19/2025.<br><br>Initial Case Management Conference reset from 8/19/2025 to 8/28/2025, at 1:30 PM in San Francisco, Courtroom 05, 17th Floor.<br><br>*(This is a text−only entry generated by the court. There is no document associated with this entry.)*(vla, COURT STAFF) (Filed on 8/13/2025) (Entered: 08/13/2025) |
| 08/15/2025 | 34 | REPLY (re 18 MOTION to Compel *Arbitration and Stay Litigation* ) filed byHRB Digital LLC, HRB Tax Group, Inc.. (Parasharami, Archis) (Filed on 8/15/2025) (Entered: 08/15/2025) |
| 08/15/2025 | 35 | Declaration of Daniel Murdock in Support of 18 MOTION to Compel *Arbitration and Stay Litigation . Supplemental Declaration of Daniel Murdock* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Exhibit 1 − ZR John Doe NOD, # 2 Exhibit 2 − Korein NOD)(Related document(s) 18 ) (Parasharami, Archis) (Filed on 8/15/2025) (Entered: 08/15/2025) |
| 08/15/2025 | 36 | Declaration of Gregory E. Ostfeld in Support of 18 MOTION to Compel *Arbitration and Stay Litigation* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Related document(s) 18 ) (Parasharami, Archis) (Filed on 8/15/2025) (Entered: 08/15/2025) |
| 08/15/2025 | 37 | Declaration of Stacey Gilman in Support of 18 MOTION to Compel *Arbitration and Stay Litigation* filed byHRB Digital LLC, HRB Tax Group, Inc.. (Related document(s) 18 ) (Parasharami, Archis) (Filed on 8/15/2025) (Entered: 08/15/2025) |
| 08/19/2025 | 38 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC−21028480.) filed by HRB Digital LLC, HRB Tax Group, Inc.. (Attachments: # 1 Certificate of Good Standing)(Jones, Daniel) (Filed on 8/19/2025) (Entered: 08/19/2025) |
| 08/19/2025 | 39 | JOINT CASE MANAGEMENT STATEMENT filed by Pedro Rios, Jr, Christian Marquez. (Ellersick, Ryan) (Filed on 8/19/2025) (Entered: 08/19/2025) |
| 08/20/2025 | 40 | **Order by Judge Edward M Chen GRANTING 38 Motion for Pro Hac Vice as to Daniel Jones.(vla, COURT STAFF) (Filed on 8/20/2025) (Entered: 08/20/2025)** |
| 08/22/2025 | 41 | OBJECTIONS to re 34 Reply to Opposition/Response *PLAINTIFFS OBJECTION TO REPLY EVIDENCE, AND ALTERNATIVELY NOTICE OF MOTION AND MOTION TO STRIKE* by Pedro Rios, Jr, Christian Marquez. (Ellersick, Ryan) (Filed on 8/22/2025) (Entered: 08/22/2025) |
| 08/26/2025 | 42 | RESPONSE re 41 Objection *(Defendants' Response to Plaintiffs' Objections to Reply Evidence or Motion to Strike; or in the Alternative Administrative Motion for Leave to File Response)* by HRB Digital LLC, HRB Tax Group, Inc.. (Parasharami, Archis) |

ER-279

| | | |
|---|---|---|
| | | (Filed on 8/26/2025) (Entered: 08/26/2025) |
| 08/27/2025 | 43 | NOTICE of Appearance filed by Stacey R. Gilman on behalf of HRB Digital LLC, HRB Tax Group, Inc. (Gilman, Stacey) (Filed on 8/27/2025) (Entered: 08/27/2025) |
| 09/03/2025 | 44 | TRANSCRIPT ORDER for proceedings held on August 28, 2025 before Judge Edward M Chen by HRB Digital LLC, HRB Tax Group, Inc., for Court Reporter Cathy Jill Taylor. (Jones, Daniel) (Filed on 9/3/2025) (Entered: 09/03/2025) |
| 09/03/2025 | 45 | TRANSCRIPT ORDER for proceedings held on 8/28/2025 before Judge Edward M Chen by Pedro Rios, Jr, Christian Marquez, for Court Reporter Cathy Jill Taylor. (Ellersick, Ryan) (Filed on 9/3/2025) (Entered: 09/03/2025) |
| 09/16/2025 | 46 | Transcript of Proceedings held on 08−28−2025, before Judge Edward M. Chen. Court Reporter Cathy J. Taylor, RMR, CRR, CRC, telephone number 602−322−7249. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 45 Transcript Order, 44 Transcript Order ) Release of Transcript Restriction set for 12/15/2025. (Related documents(s) 45 , 44 ) (Taylor, Catherine) (Filed on 9/16/2025) (Entered: 09/16/2025) |
| 10/27/2025 | 47 | **ORDER by Judge Edward M. Chen denying 18 Motion to Compel. (emclc3, COURT STAFF) (Filed on 10/27/2025) (Entered: 10/27/2025)** |
| 11/03/2025 | 48 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number BCANDC−21307565.) filed by Christian Marquez, Pedro Rios, Jr. (Attachments: # 1 Certificate of Good Standing)(Robinovitch, Hart) (Filed on 11/3/2025) (Entered: 11/03/2025) |
| 11/04/2025 | 49 | **ORDER by Judge Edward M. Chen granting in part and denying in part 17 Administrative Motion to File Under Seal. (emclc3, COURT STAFF) (Filed on 11/4/2025) (Entered: 11/04/2025)** |
| 11/04/2025 | 50 | **Order by Judge Edward M Chen GRANTING 48 Motion for Pro Hac Vice as to Hart Robinovitch.(vla, COURT STAFF) (Filed on 11/4/2025) (Entered: 11/04/2025)** |
| 11/10/2025 | 51 | REDACTION to 19 Declaration in Support, *(Redacted Declaration of Bobbie Crew in Support of Defendants' Notice of Motion and Motion to Compel Arbitration and Stay Litigation)* by HRB Tax Group, Inc., HRB Digital LLC. (Attachments: # 1 Exhibit 1 (Redacted), # 2 Exhibit 2 (Redacted), # 3 Exhibit 3 (Redacted), # 4 Exhibit 4 (Redacted), # 5 Exhibit 5 (Redacted), # 6 Exhibit 6 (Redacted))(Parasharami, Archis) (Filed on 11/10/2025) (Entered: 11/10/2025) |
| 11/13/2025 | 52 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by HRB Digital LLC, HRB Tax Group, Inc.. Appeal of Order on Motion to Compel 47 , (Appeal Fee of $605.00, receipt number ACANDC−21344979 paid.) (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Parasharami, Archis) (Filed on 11/13/2025) (Entered: 11/13/2025) |
| 11/17/2025 | 53 | USCA Case Number 25−7199 and Docketing Notice for 52 Notice of Appeal to the Ninth Circuit filed by HRB Digital LLC, HRB Tax Group, Inc.. (tn, COURT STAFF) (Filed on 11/17/2025) (Entered: 11/17/2025) |
| 11/26/2025 | 54 | Transcript Designation Form for proceedings held on 8/28/2025 before Judge Edward M. Chen, (Parasharami, Archis) (Filed on 11/26/2025) (Entered: 11/26/2025) |
| 03/26/2026 | 55 | NOTICE of Change of Address by Archis Ashok Parasharami (Parasharami, Archis) (Filed on 3/26/2026) (Entered: 03/26/2026) |
| 03/26/2026 | 56 | NOTICE of Change of Address by Daniel Edward Jones (Jones, Daniel) (Filed on 3/26/2026) (Entered: 03/26/2026) |
| 04/07/2026 | 57 | NOTICE of Withdrawal filed by Zain Shirazi, no longer appearing on behalf of Christian Marquez, Pedro Rios, Jr in this case (Shirazi, Zain) (Filed on 4/7/2026) (Entered: 04/07/2026) |