**Case No. 25-7199**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

PEDRO RIOS, JR.; et al.,
*Plaintiffs-Appellees,*

v.

HRB DIGITAL, LLC; et al.,
*Defendants-Appellants*

---

On Appeal from the United States District Court for the Northern District of California, Case No. 3:25-cv-03530-EMC
Hon. Edward M. Chen, United States District Judge

---

# ANSWERING BRIEF OF PLAINTIFFS-APPELLEES

---

Hart L. Robinovitch
ZIMMERMAN REED LLP
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Telephone: (480) 348-6400
hart.robinovitch@zimmreed.com

Finnuala K. Tessier
ZIMMERMAN REED LLP
25568 Genesee Trail Rd
Golden, CO 80401
Telephone: (612) 341-0400
finnuala.tessier@zimmreed.com

Caleb Marker
Ryan J. Ellersick
ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, California 90048
Telephone: (877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 2

ISSUES PRESENTED ........ 3

STATEMENT OF THE CASE ........ 3

I. Factual Background ........ 3

A. HRB Disclosed Taxpayer Information to Meta and Google ........ 3

B. HRB's Arbitration Agreement ........ 4

II. Procedural History ........ 7

A. Plaintiffs First Attempted to Proceed in Arbitration ... 7

B. Because They Cannot Proceed in Arbitration, Plaintiffs Filed This Case ........ 8

C. The District Court Denied HRB's Motion to Compel Arbitration ........ 9

SUMMARY OF ARGUMENT ........ 13

STANDARD OF REVIEW ........ 19

ARGUMENT ........ 19

I. The OSA Is Highly Substantively Unconscionable ........ 19

A. Legal Background ........ 20

B. The OSA Is Designed to Delay and Extinguish Meritorious Claims ........ 21

C. HRB's Challenges to the District Court's Analysis of Section 11.6 Are Unavailing ........................................ 25

D. The OSA Is Not Designed to Ensure the Fair and Efficient Adjudication of Mass Arbitration Claims .... 32

II. The OSA Is Procedurally Unconscionable, Even If It Is Not Adhesive ........................................................................... 45

A. Legal Background ....................................................... 46

B. The OSA Is at Least Modestly Procedurally Unconscionable, as It Misleads Consumers Regarding Section 11.6's Consequences ...................... 46

C. *Mohamed* Does Not Preclude Procedural Unconscionability When There Is an Opt-Out Provision ..................................................................... 50

D. HRB's Remaining Procedural Unconscionability Arguments Fail ........................................................... 63

III. The FAA Does Not Preempt Either the Decision Below or the *Discover Bank* Rule .................................................................. 67

A. Legal Background ....................................................... 68

B. The FAA Does Not Protect Arbitration Agreements That Prevent Claimants From Filing Arbitration Demands ..................................................................... 69

C. The District Court's Decision Does Not Disfavor FAA Arbitration ........................................................... 70

D. Because the FAA Does Not Apply, *Discover Bank* Renders the OSA Unenforceable ................................. 73

CONCLUSION ........................................................................... 76

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Produce Co. v. FMC Corp.*,
135 Cal. App. 3d 473 (1982) .................................................................. 52

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
109 F.4th 1132 (9th Cir. 2024) ................................................ 59, 60, 63

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) .................................................................................. 41

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal.4th 83 (2000) ................................................................................. 20

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................................................................... 68, 72, 74

*Avery v. TEKsystems, Inc.*,
165 F.4th 1219 (9th Cir. 2026) ................................................................ 48

*Baghdasarian v. Macy's Inc.*,
2025 WL 999082 (9th Cir. Apr. 3, 2025) .................................................. 53

*Baltazar v. Forever 21, Inc.*,
62 Cal.4th 1237 (2016) ......................................................................... 21, 22

*Booker v. Charter Commc'ns, LLC*,
2025 WL 1910954 (Cal. Ct. App. July 11, 2025) ................ 47, 49, 54, 62

*Brooks v. WarnerMedia Direct, LLC*,
2024 WL 3330305 (S.D.N.Y. July 8, 2024) ............................................ 41

*Browden v. CJ Berry Well Servs. Mgmt., LLC*,
2026 WL 381010 (E.D. Cal. Feb. 11, 2026) ............................................ 57

*Bruni v. Didion*,
160 Cal. App. 4th 1272 (2008) .................................................. 51

*Caimano v. H&R Block*,
2024 WL 3295589 (E.D. Pa. July 3, 2024) ............................................ 4

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ............................................ 55

*Cal. Crane Sch., Inc. v. Google LLC*,
2025 WL 2541913 (9th Cir. Sept. 4, 2025) .......................................... 55

*Chavoya v. Merrill Gardens L.L.C.*,
2025 WL 2196296 (E.D. Cal. Aug. 1, 2025) .......................................... 56

*Circuit City Stores, Inc. v. Mantor*,
335 F.3d 1101 (9th Cir. 2003) .............................................. 52, 53

*Circuit City Stores, Inc. v. Adams*,
279 F.3d 889 (9th Cir. 2002) .................................................. 52

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .............................................. 50, 52

*Cluck v. GEO Secure Servs., LLC*,
347 Cal. Rptr. 3d 44 (Cal. Ct. App. 2026) ........................... 49, 53, 60, 61

*Cordero v. Coinbase*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) .......................................... 75

*Curtis v. Irwin Indus., Inc.*,
913 F.3d 1146 (9th Cir. 2019) .................................................. 59

*Davis v. Experian Info. Sols., Inc.*,
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) ........................................ 75

*Davis v. O'Melveny & Myers*,
485 F.3d 1066 (9th Cir. 2007) .................................................. 23

*Diaz v. T-Mobile USA, Inc.*,
2026 WL 495233 (E.D. Cal. Feb. 20, 2026)............................................ 40

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021)................................................................ 22

*Discover Bank v. Super. Ct.*,
36 Cal.4th 148 (2005)............................................................................ 13

*Edwards v. Chartwell Staffing Servs., Inc.*,
2017 WL 10574360 (C.D. Cal. May 30, 2017) ...................................... 57

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)................................................................................ 69

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938).................................................................................. 59

*Ferguson v. Corinthian Colleges, Inc.*,
733 F.3d 928 (9th Cir. 2013) ................................................................. 24

*Ferguson v. Countrywide Credit Indus., Inc.*,
298 F.3d 778 (9th Cir. 2002) ........................................................... 21, 31

*Gayle Mfg. Co. v. Fed. Sav. & Loan Ins. Corp.*,
910 F.2d 574 (9th Cir. 1990) ................................................................. 30

*Gentry v. Superior Ct.*,
42 Cal.4th 443 (2007)...................................................................... Passim

*Gonzales v. Lowes*,
2025 WL 408497 (E.D. Cal. Jan. 29, 2025)............................................ 57

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
232 Cal.App.4th 1332 (2015)................................................................. 46

*Guerrero v. Citibank, N.A.*,
2025 WL 2483161 (N.D. Cal. Aug. 28, 2025)......................................... 57

*Gustin v. Club Demonstration Servs., Inc.*,
2026 WL 1948873 (E.D. Cal. July 6, 2026) .......................................... 40

*Harper v. Ultimo*,
113 Cal. App. 4th 1402 (2003)............................................................... 51

*Haydon v. Elegance at Dublin*,
97 Cal. App. 5th 1280 (2023)........................................................ Passim

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ...................................................... Passim

*Hoffman v. Citibank (S. Dakota), N.A.*,
546 F.3d 1078 (9th Cir. 2008) ............................................................. 52

*Hooters of Am., Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ............................................................... 69

*Hunt v. Meta Platforms, Inc.*,
729 F. Supp. 3d 964 (N.D. Cal. 2024) ............................................. 4, 56

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ......................................... 4

*In re Watts*,
298 F.3d 1077 (9th Cir. 2002) ............................................................. 59

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ................................................. 21, 31, 52

*Johnson v. Stoneridge Creek Pleasanton CCRC LLC*,
2023 WL 7125117 (Cal. Ct. App. Oct. 30, 2023).................................. 54

*Jones-Mixon v. Bloomingdale's, Inc.*,
2014 WL 2736020 (N.D. Cal. June 11, 2014) ....................................... 57

*Jones v. Starz Ent., LLC*,
129 F.4th 1176 (9th Cir. 2025)....................................................... 42, 75

*Kilgore v. KeyBank, Nat. Ass'n*,
718 F.3d 1052 (9th Cir. 2013) .................................................. 50, 51, 52

*Kinney v. United Healthcare Servs., Inc.*,
70 Cal.App.4th 1322 (1999) ................................................................ 21

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......................................... Passim

*Marquez v. Adobe, Inc.*,
2026 WL 2603998 (N.D. Cal. Sept. 2, 2026) ........................................ 57

*McKeown v. SAS Retail Servs., LLC*,
2025 WL 3563717 (N.D. Cal. Dec. 12, 2025) ....................................... 40

*Mohamed v. Uber Techs.*,
848 F.3d 1201 (9th Cir. 2016) ........................................................... 9, 50

*Montana Pole & Treating Plant v. I.F. Laucks & Co.*,
993 F.2d 676 (9th Cir. 1993) ................................................................ 29

*Olvera v. El Pollo Loco, Inc.*,
173 Cal.App.4th 447 (2009) ................................................................. 48

*O'Malley v. Williams-Sonoma, Inc.*,
2026 WL 2640697 (N.D. Cal. Sept. 8, 2026) ........................................ 40

*OTO, L.L.C. v. Kho*,
447 P.3d 680 (Cal. 2019) ............................................................... 65, 66

*Pabon v. HRB Digital LLC*,
2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025) ............................................ 4

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. Aug. 27, 2025) ........................ 23, 39, 65, 66

*Pappas v. AMN Healthcare Servs., Inc.*,
2025 WL 3720922 (9th Cir. Dec. 23, 2025) ..................................... 63, 65

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) .............................................. 41, 75

*Pinela v. Neiman Marcus Grp., Inc.*,
238 Cal. App. 4th 227 (2015)........................................................ 47, 65

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal.4th 223 (2012)........................................................................ 46

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ..................................................... Passim

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024)................................................................. 25, 31

*Rivera v. Uniqlo California, LLC*,
2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ........................................ 57

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024).................................................... Passim

*Roope v. Westlake Hardware Inc.*,
2026 WL 98438 (N.D. Cal. Jan. 14, 2026) ............................................ 57

*Rowsell v. Am. Express Bank, FSB*,
2018 WL 4710092 (Cal. Ct. App. Oct. 2, 2018).................................... 54

*Rubio v. Aaron's LLC*,
2024 WL 4904512 (E.D. Cal. Nov. 27, 2024) ....................................... 56

*Ruiz v. CarMax Auto Superstores, Inc.*,
2024 WL 1136332 (C.D. Cal. Jan. 18, 2024)......................................... 40

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal.4th 899 (2015)........................................................ 20, 21, 27, 71

*Schlueter-Beckner v. SimpliSafe, Inc.*,
2025 WL 2162948 (N.D. Cal. July 30, 2025) ....................................... 56

*Slaviero v. Baby List, Inc.*,
2026 WL 1097746 (N.D. Cal. Apr. 22, 2026) ........................................ 57

*Smith v. Folsom Invs., L.P.*,
2023 WL 8794888 (Cal. Ct. App. Dec. 20, 2023) ................................. 54

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) .......................................... 4

*Sonic-Calabasas A, Inc. v. Moreno*,
57 Cal.4th 1109 (2013)........................................................................ 62

*Swain v. LaserAway Med. Grp., Inc.*,
57 Cal. App. 5th 59 (2020)........................................................ 54, 61, 67

*Szetela v. Discover Bank*,
97 Cal. App. 4th 1094 (2002)................................................................. 46

*Thomson v. Hodgson*,
150 F.4th 1097 (9th Cir. 2025) ..................................................... 27, 29

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)................................................................................ 68

*Vianca Marquez, et al., Plaintiffs, v. Adobe, Inc.*,
No. 25-CV-06562-NC, 2026 WL 2603998 (N.D. Cal. Sept. 2, 2026)... 62

*Wray v. Humble*,
2025 WL 4662288 (N.D. Cal. Sept. 8, 2025) ......................................... 76

*Y.Y.G.M. SA v. Redbubble, Inc.*,
75 F.4th 995 (9th Cir. 2023) ................................................................. 23

**Statutes**

9 U.S.C. § 16(a)(1) ................................................................................ 2

28 U.S.C. § 1331 and 1367 ..................................................................... 2

28 U.S.C. § 1332(d) ........ 2

28 U.S.C. § 1652 ........ 59

**Rules**

Fed. R. App. P. 32(a)(5) ........ 79

Fed. R. App. P. 32(a)(6) ........ 79

Fed. R. App. P. 32(a)(7)(B) ........ 79

Fed. R. App. P. 32(a)(7)(C) ........ 79

Fed. R. App. P. 32(f) ........ 79

Fed. R. Civ. P. 23(d) ........ 48

## INTRODUCTION

Plaintiffs filed this case not to evade arbitration, but because H&R Block's ("HRB") arbitration agreement makes arbitration unavailable.

Plaintiffs tried to comply with HRB's agreement while preserving their privacy claims. Plaintiffs, along with thousands of similarly-situated consumers, sent individual Notices of Dispute, which should have tolled the statutory period for filing an arbitration demand. But HRB refused to accept the Notices based on requirements not stated in the agreement, then accepted them only while reserving the right to challenge tolling.

HRB also prevented Plaintiffs from filing arbitration demands. Under HRB's mandatory batching protocol, only 20 consumers sharing counsel can file demands. All other consumers must wait until each case in the prior batch of 20 (and later, 50) cases is resolved. Plaintiffs might wait years to file their demands, with no protection against statute-of-limitations expiration. Only this complaint preserves their claims.

The district court correctly held that HRB's agreement is unconscionable. HRB cannot choose arbitration over court and then draft an agreement that stops consumers from filing arbitration demands.

HRB's cost concerns cannot justify a process that delays and extinguishes claims, especially when the rules of its chosen forum address mass-arbitration costs more effectively without barring filings. Nor does the opt-out provision insulate the agreement from review. This Court has never so held, and that rule would conflict with settled California law.

But even if the agreement were not unconscionable, it remains unenforceable under California's rule against class waivers. The Federal Arbitration Act ("FAA") does not preempt that rule because the OSA is not designed to secure individual, bilateral arbitration; it is designed to discourage consumers with endless delay and to prevent them from ever filing arbitration claims.

This Court should affirm the district court's decision.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(d), because this is a class action meeting the minimum diversity and amount-in-controversy requirements, and under 28 U.S.C. § 1331 and 1367, because it involves federal claims. 2.ER.233-38, 254-57.

This Court has jurisdiction under 9 U.S.C. § 16(a)(1) because the district court denied HRB's motion to compel arbitration on October 27,

2025, and HRB timely appealed on November 13, 2025. 1.ER.2; 2.ER.269.

## ISSUES PRESENTED

1. Whether the court erred in holding that an arbitration agreement that prevents Claimants from filing cases for over a decade, without adequate limitations tolling, is substantively unconscionable under California law.

2. Whether the court erred in holding that an arbitration agreement that masks its negative consequences is procedurally unconscionable, notwithstanding a burdensome opt-out provision.

3. Whether an agreement that precludes filing of arbitration demands for a decade is subject to the FAA, and whether unconscionability review interferes with the FAA's goals.

## STATEMENT OF THE CASE

### I. Factual Background

#### A. HRB Disclosed Taxpayer Information to Meta and Google

In 2022, several United States Senators found that HRB had "recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers." SER.68; *see also* SER.22-27. As alleged here, HRB used tracking pixels on its online tax platform to disclose confidential taxpayer information to third parties Meta and

Google for advertising and analytics. 2.ER.231-33. The implementation risked disclosure for every taxpayer using HRB's website. 2.ER.232-33.

Affected taxpayers filed class action lawsuits against Meta and Google, which survived motions to dismiss and are ongoing. *See In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024); *Smith v. Google, LLC*, 2024 WL 2808270 (N.D. Cal. June 3, 2024).

Taxpayers also filed court cases against HRB, which successfully moved to compel arbitration based on the company's Online Services Agreement (OSA). *See Hunt v. Meta Platforms, Inc.*, 729 F. Supp. 3d 964, 967 (N.D. Cal. 2024); *Pabon v. HRB Digital LLC*, 2025 WL 2254008, at *4 (E.D.N.Y. Aug. 7, 2025); *Caimano v. H&R Block*, 2024 WL 3295589, at *17 (E.D. Pa. July 3, 2024).

**B. HRB's Arbitration Agreement**

HRB's OSA is a lengthy, 21-page, single-spaced standard-form contract "drafted by HRB and presented as a non-negotiable condition of using its online platform." 1.ER.11. Consumers must accept the agreement "in the midst of tax season and with the looming threat of IRS penalties." 1.ER.12. The arbitration provision is "embedded deep within the dense text, beginning on page 15." 1.ER.11.

The arbitration provision requires that all disputes be resolved through binding arbitration administered by the American Arbitration Association ("AAA"). 2.ER.199. "[B]uried within [the] lengthy, dense agreement" is a provision allowing users to opt out of arbitration within 30 days. 1.ER.11. But users remain subject to prior arbitration agreements. 1.ER.11. Users who do not opt out "waive their right to a trial by jury or to participate in a class action lawsuit or class action arbitration." 1.ER.4.

Section 11.2 requires that, before initiating arbitration, a consumer must engage in an "informal resolution" process, including providing HRB with a written Notice of Dispute (a "Notice"). 1.ER.4. If HRB demands an "Informal Settlement Conference," consumers must personally participate. 2.ER.200. For counsel to join, consumers must provide a signed statement to release tax information. 2.ER.200. Consumers must also keep confidential the existence and substance of settlement discussions. 2.ER.200. The OSA allows HRB to ask a court to enforce Section 11.2, including by "enjoin[ing] the filing or prosecution of an arbitration." 2.ER.200.

The OSA expressly provides that arbitrators may deny relief on

statute-of-limitations grounds, 2.ER.201, and permits tolling only upon "HRB's receipt of a 'fully complete Notice,'" 1.ER.21 (citing 2.ER.199-200). "Whether a Notice is 'fully complete' is not defined by any objective criteria, and seems instead to be subject to HRB's exclusive interpretation." 1.ER.21.

Section 11.6 is triggered when 25 or more consumers submit similar Notices through coordinated counsel. 2.ER.201. Each side selects ten cases to proceed first, and no other arbitration demands may be filed until all twenty are resolved. 2.ER.201. After two twenty-case rounds, later rounds may include fifty cases, but each round must be completed before the next begins. 2.ER.201-202.

Section 11.6 states that users "agree to this process even though it may delay the arbitration of [their] claim." 2.ER.201. It also states that arbitrators are "encouraged to resolve the cases within 120 days of appointment or as swiftly as possible, consistent with principles of fundamental fairness[,]" but has no enforceable deadlines. 2.ER.201-202. Statute-of-limitations tolling is tied to the Notice. 2.ER.202. Section 11.6 allows HRB to ask a court to "enjoin the filing, assessing or demanding fees for, administration of, or prosecution of arbitrations." 2.ER.202.

The OSA also requires consumers to reimburse HRB for arbitration fees if, at the conclusion of arbitration, the claim is "determined to be frivolous or brought for an improper purpose." 2.ER.201.

Named Plaintiffs first created accounts to use HRB online tax preparation and filing services in 2017. 2.ER.174. They accepted the current OSA in January 2024. 2.ER.175.

## II. Procedural History

### A. Plaintiffs First Attempted to Proceed in Arbitration

On September 20 2024, Plaintiffs' counsel sent a letter by first class certified mail ("the Notices") raising privacy law claims on behalf 2,481 claimants ("Claimants"), including Named Plaintiffs. 2.ER.113-17. The mailed letter included ShareFile links to a Claimants list with their name, address, email, phone, and partial Social Security Number; individually signed Notices specifying each Claimant's claims and relief sought; and individually signed documents authorizing HRB to share tax information with counsel.[1] 1.ER.6; 2.ER.117-120.

HRB deemed the Notices "improper and ineffective" because Claimants did not "individually and separately mail each Notice," and

[1] On October 4, 2024, counsel mailed a second letter for another 166 clients. 2.ER.129-137.

refused to accept the tax-information consents drafted by Claimants' counsel because they did not use a specific form, 1.ER.6-7, which is not mentioned in the OSA, 1.ER.199-200. HRB eventually agreed to accept the Notices, but "only while 'reserving all rights,' possibly including the right to later contest tolling." 1.ER.12; 2.ER.158.

When HRB claimed generally that some Claimants had defective claims, Plaintiffs' counsel twice requested more information from HRB to identify the Claimants in question and resolve the disputes. 2.ER.110. HRB refused to identify the Claimants or provide any additional information. 2.ER.110.

On April 21, 2025, Plaintiffs' counsel filed twenty-five AAA arbitration demands; the parties eventually agreed to hold five claims in abeyance. 2.ER.109. Plaintiffs cannot currently file demands.

### B. Because They Cannot Proceed in Arbitration, Plaintiffs Filed This Case

On April 22, 2025, Plaintiffs Rios and Marquez filed this case on behalf of themselves and putative classes of similarly-situated taxpayers. 2.ER.230-64. Plaintiffs assert federal claims under the Electronic Communications Privacy Act and state claims under California's Invasion of Privacy Act, Unfair Competition Law, and Consumer Legal

Remedies Act. Plaintiffs seek damages, private and public injunctive relief, and declaratory relief.

### C. The District Court Denied HRB's Motion to Compel Arbitration

On July 14, 2025, HRB moved to compel arbitration. 2.ER.278. The district court denied the motion, finding the agreement procedurally and substantively unconscionable. 1.ER.2-24.

As to procedural unconscionability, the district court observed that courts look to several factors, including whether the contract was adhesive and "'whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required.'" 1.ER.10 (quoting *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024)).

The district court rejected HRB's argument that *Mohamed v. Uber Techs.*, 848 F.3d 1201 (9th Cir. 2016), forecloses procedural unconscionability for agreements with an opt-out provision. It concluded that *Mohamed* addressed adhesion, not the full procedural-unconscionability inquiry, and that California law permits courts to consider other indications of oppression or surprise. 1.ER.13 (citing *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017)).

The court also found modest procedural unconscionability, even if the agreement was not adhesive. As to surprise, "the arbitration provision is embedded deep within the dense text," and reasonable consumers would not anticipate that future counsel's identity or their other clients could become "a substantial obstructive hurdle" to resolving disputes with HRB. 1.ER.11. The OSA compounded that surprise by stating only that Section 11.6 "may" delay claims while "encourag[ing]" arbitrators to resolve cases within 120 days, even though "claims are likely to languish for years." 1.ER.12. "The reference to a 120-day timeline therefore instills a false sense of efficiency, masking the real possibility of protracted delay." 1.ER.12.

The court also found that "HRB layered numerous implied hurdles that obstruct claimants from succeeding in their claims[,]" including insisting "that each claimant had to send an individual envelope, even though nothing in the OSA mandated such a procedure[,]" and accepting the Notices only while "'reserving all rights,' possibly including the right to later contest tolling, thereby creating further uncertainty and delay." 1.ER.12.

The court acknowledged that an opt-out provision can mitigate

procedural unconscionability but found that the opt-out was "buried within a lengthy, dense agreement and imposes ongoing burdens, including the requirement that consumers submit a new opt-out request each year." 1.ER.11.

The court next found the agreement highly substantively unconscionable which, combined with a modest degree of procedural unconscionability, rendered the arbitration clause unenforceable. 1.ER.16-22.

The court first held that Section 11.6 "is almost certain to impose unreasonable delays." 1.ER.17. Claimants cannot file claims until the entire prior round is complete. Arbitrators are encouraged to resolve cases within 120 days, but "even that idealistic timeline could impose a 13-year timeline to resolve a batch of 2,000 Notices." 1.ER.17. Moreover, because the OSA "provides no recourse, oversight, or other accountability" for delay, a single protracted case "can hold up hundreds of other claims indefinitely." 1.ER.17. Delay can deter claims, such that Section 11.6 "creates the risk of de facto waiver of valid claims, weighing heavily in favor of finding substantive unconscionability." 1.ER.18.

The court also found that Section 11.6 could "interfere with

claimants' right to counsel of their choosing," as experienced and qualified counsel may be unwilling to take on one or a few "similarly situated clients seeking small claims against HRB." 1.ER.19.

The court rejected HRB's comparison to multidistrict litigation (MDL) bellwethers. "MDL bellwethers do not wholly bar plaintiffs from filing thousands of claims until earlier tranches finish." 1.ER.19. And while the MDL bellwether process "is driven by the limited resources of the public judiciary . . . the constraint here is manufactured." 1.ER.19. Section 11.6 is "a design choice, at best, to control HRB's costs, and at worst, to thwart the adjudication of valid claims." 1.ER.19.

Second, the court found the tolling provision, "contingent on HRB's receipt of a 'fully complete Notice[,]'" particularly problematic. 1.ER.20. "HRB's initial refusal to recognize the validity of Plaintiffs' Notices, coupled with its reservation of rights even after acceptance, creates an unacceptable level of uncertainty as to whether tolling in fact applies," such that "claimants may find themselves wholly unable to vindicate their claims." 1.ER.20. The court also found the tolling provisions asymmetrical because HRB can raise statute-of-limitations defenses based on an allegedly incomplete notices, but Claimants cannot seek

review of decisions on those arguments, nor seek remedy for delays caused by Section 11.6. 1.ER.22.

Finally, the court determined that the arbitration agreement's unconscionable provisions were "designed to structurally and systemically make arbitration an inferior forum." 1.ER.23 (quotation omitted). Because severing the unconscionable provisions "would be an ineffective half-measure or, potentially, a reward for bad faith corporate actors[,]" the court found the entire agreement unenforceable. 1.ER.23. HRB acknowledges but does not challenge that ruling on appeal, Br.18 n.4, and thus affirmatively waives any severance arguments.

The district court declined to address Plaintiffs' alternative argument that FAA preemption does not apply to the OSA, such that the OSA's class-action waiver was unconscionable under *Discover Bank v. Super. Ct.*, 36 Cal.4th 148 (2005). *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 689-90 (9th Cir. 2024); *id.* at 692-93 (VanDyke, J., concurring).

## SUMMARY OF ARGUMENT

HRB's OSA is not designed to foster individual, bilateral arbitration or to encourage merits-based settlement. Instead, it is designed to delay

and extinguish claims so that, at best, consumers agree to settle meritorious claims for a fraction of their worth, and at worst, never file their claims at all. The FAA does not protect such an agreement, and California law does not allow its enforcement.

First, the OSA is highly substantively unconscionable. Section 11.6, which applies when 25 or more consumers share claims and counsel, does not merely sequence the adjudication of already-filed arbitrations. Rather, it prohibits all but a few consumers from filing claims until every case in each prior batch has been resolved. Section 11.6 has no enforceable deadlines—only an illusory 120-day target—and even that unrealistic pace would delay claims for a decade.

That delay is not a neutral feature of the OSA. It operates exclusively against consumers asserting similar low-value claims against HRB. HRB will never be one of thousands of similarly-situated companies forced to wait behind staged proceedings to file claims against a consumer. And delay materially benefits only HRB; evidence grows stale and consumers are deterred from pursuing claims or cannot find counsel to represent them. Delay benefits HRB at consumers' expense, even when consumers can eventually file arbitration demands and win

arbitral awards, as HRB likely need not pay prejudgment interest on statutory-damages awards. California unconscionability doctrine looks to practical effect, not formal symmetry. A provision that appears mutual on paper but obstructs only the weaker party's ability to vindicate statutory rights, and benefits only the stronger party, is one-sided and unconscionable.

The tolling provisions make the problem worse. The OSA ties tolling to HRB's receipt of a "fully complete" notice, but HRB has treated that phrase as a source of unilateral discretion, rejecting Plaintiffs' notices based on requirements not stated in the agreement and later accepting them only while reserving all rights. The OSA creates the delay that prevents Claimants from filing on time and then allows HRB to challenge the delayed claims as time-barred. Moreover, HRB can go to court to enforce beneficial provisions, including by seeking injunctions against arbitration filings. But consumers have no comparable mechanism to compel filing, remedy delay, or obtain judicial review of an adverse statute-of-limitations ruling.

Nor can HRB justify Section 11.6 as a legitimate mass-arbitration management device. True bellwether or staged proceedings may promote

settlement or efficient merits resolution without stripping consumers' procedural protections. But HRB's provision does not resemble MDL bellwethers; consumers cannot file their cases, obtain procedural rights, seek case-management relief, or opt out if the process fails to produce settlement. Nor does it resemble AAA's or JAMS's mass-arbitration procedures, which address the cost and coordination concerns raised by HRB without barring filings or manufacturing limitations defenses. Indeed, Section 11.6 prevents application of the AAA rules that would make arbitration more efficient. HRB's supposed cost concerns do not justify a provision that saves money only by precluding arbitration.

Second, the OSA is at least modestly procedurally unconscionable, which is more than enough given the agreement's substantial substantive unfairness. HRB presented the OSA as a lengthy, dense, take-it-or-leave-it online contract during tax season, when consumers were focused on preparing and filing taxes under deadline pressure, not parsing complex arbitration procedures. The arbitration provision and opt-out language were buried deep in the agreement. More importantly, the OSA did not candidly disclose Section 11.6's consequences. It told consumers only that the staging process "may" delay their claims and

that arbitrators were encouraged to resolve cases within 120 days, creating a false impression that arbitration would be efficient. It did not explain that consumers represented by common counsel could wait years or decades merely to file a demand, or that the delay could give HRB a statute-of-limitations defense.

HRB's opt-out provision does not eliminate that procedural unconscionability. An opt-out may defeat a claim that a contract is adhesive, but it does not categorically preclude procedural unconscionability. California law assesses oppression and surprise under the totality of the circumstances, including whether consumers were misled, pressured, or deprived of an informed choice. That is what happened here. The opt-out was buried, burdensome, and had to be repeated every year. And because HRB concealed the arbitration clause's real consequences, consumers did not understand why opting out mattered.

HRB's contrary arguments rest on an overreading of Ninth Circuit precedent and a mischaracterization of the district court's decision. *Mohamed* held that an agreement with an opt-out was not adhesive, not that such agreements can never be procedurally unconscionable. Later

Ninth Circuit and California authority confirm that courts may consider other indicia of oppression and surprise. The district court did exactly that. It did not disregard precedent, impose a special notice requirement for arbitration clauses, or condemn all mass-arbitration procedures. It held only that this particular agreement—presented in a confusing and misleading way, and requiring recurring annual opt-outs—was procedurally unconscionable.

Third, FAA preemption does not save the OSA. The FAA protects agreements that provide for individual, bilateral adjudication in a forum that preserves arbitration's traditional attributes of speed, efficiency, informality, and enforceability. The OSA does the opposite; it prevents most consumers from filing individual arbitration demands, channeling them into a process designed to postpone or avoid merits adjudication. The FAA does not protect agreements that prevent arbitration filings.

Nor did the district court adopt a rule disfavoring arbitration; it applied generally applicable California contract law to an extraordinarily one-sided agreement that prevents consumers from pursuing claims in the very forum HRB selected. HRB remains free to choose arbitration; it is not free to draft an arbitration agreement that functions as a claims-

suppression device and then invoke the FAA to immunize that agreement from ordinary contract defenses.

Moreover, because the FAA does not apply, California's *Discover Bank* rule independently invalidates the OSA and its class-action waiver. HRB does not dispute that, absent FAA preemption, *Discover Bank* would render the OSA unenforceable. Thus, whether the Court affirms on unconscionability grounds or on Plaintiffs' alternative *Discover Bank* theory, the result is the same. HRB cannot compel Plaintiffs into an arbitration process that unreasonably delays and potentially extinguishes their claims. The order denying HRB's motion to compel arbitration should be affirmed.

## STANDARD OF REVIEW

When reviewing the denial of a motion to compel arbitration, this Court reviews legal questions de novo and underlying factual findings for clear error. *Heckman*, 120 F.4th at 680. It may affirm on any ground supported by the record. *Id.* at 693 (VanDyke, J., concurring).

## ARGUMENT

### I. The OSA Is Highly Substantively Unconscionable

HRB designed the OSA to make arbitration an inferior forum for

consumers. Section 11.6 delays claims for years, if not decades; impairs counsel selection; chills claim filing; creates unfair limitations defenses; and gives HRB alone access to courts to enforce favorable provisions. HRB seeks to justify Section 11.6 as a tool to address mass arbitration complexities. Br.47-67. But AAA's own mass-arbitration rules—which HRB deliberately side steps—address the same concerns more effectively without prejudicing consumers.

**A. Legal Background**

To establish unconscionability under California law, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 912 (2015)). Procedural and substantive unconscionability "need not be present in the same degree." *Id.* Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Id.*; *see Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000).

"Substantive unconscionability pertains to the fairness of an

agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Heckman*, 120 F.4th at 683. An agreement is substantively unconscionable where it is "'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or . . . 'shock[s] the conscience.'" *Poublon*, 846 F.3d at 1261 (quoting *Sanchez*, 61 Cal.4th at 911). The "'central idea' is that 'the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Id.* at 1261 (quoting *Baltazar v. Forever 21*, *Inc.*, 62 Cal.4th 1237, 1244 (2016)).

### B. The OSA Is Designed to Delay and Extinguish Meritorious Claims

Section 11.6 is inherently one-sided. Although facially neutral, HRB will never have claims against one consumer shared by twenty-four companies with coordinated counsel. A facially neutral agreement is unconscionable if it obstructs claims brought by the weaker party. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 787 (9th Cir. 2002); *Kinney v. United Healthcare Servs., Inc.*, 70 Cal.App.4th 1322, 1332 (1999)).

Section 11.6, particularly when combined with the tolling provision,

is designed to prevent arbitration. Less than one percent of Claimants have filed arbitration demands; the rest must wait until every case in each prior batch is complete. Arbitrators are encouraged but not required to adjudicate within 120 days, and there is no remedy for delays. One overworked arbitrator or complicated case can delay all other claims. Even if every batch is resolved within the nigh-impossible 120-day period, Claimants might wait over a decade to file their case. 1.ER.17.

Delaying the ability to vindicate a legal claim by years "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021). Even more for consumer arbitrations, which are supposed to be faster and more efficient than court. And terms that "contravene the public interest or public policy" are unconscionable. *Baltazar*, 62 Cal.4th at 1244.

Moreover, the delays "unreasonably favor[]" HRB. *Poublon*, 846 F.3d at 1261. Claimants bear the burden of proof and are prejudiced by fading memories and degrading evidence. Meanwhile, HRB retains statutory damages while Claimants wait, and even successful Claimants may not be able to recover prejudgment interest on statutory damages.

*See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). Over a decade, a $10,000 ECPA statutory-damages award could generate as much or more in investment returns, all of which HRB may get to keep.

The potential delays also chill claims. *See Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025). Affected consumers will walk away in frustration rather than wait a decade to file relatively modest claims.

Together, Section 11.6 and the tolling provision "severely restrict[] [consumers'] ability to vindicate [their consumer] rights." *Ronderos*, 114 F.4th at 1096. HRB has refused to acknowledge the Notices as "fully complete," based on mailing requirements not stated in the OSA, and reserved the ability to challenge tolling. 1.ER.21, 2.ER.201. All but the first few Claimants will file after the statutory period has expired and face statute-of-limitations arguments, even though they were prohibited from filing their demands. That is even worse than one-sided *shortening* of a limitations period, which this Court has found unconscionable. *See Ronderos*, 114 F.4th at 1094-95 (citing *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1076 (9th Cir. 2007), overruled in part on other grounds as

recognized in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013)).

Section 11.6 also benefits HRB by interfering with Claimants' right to counsel of choice. To avoid delay, consumers must find counsel willing to represent only a few clients with similar claims. Such counsel may be non-existent or significantly less experienced in privacy law. Meanwhile, HRB can "enjoy all the advantages that come from being a 'repeat player,'" using the same counsel across all cases. *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1043 (N.D. Cal. 2022).

Finally, the OSA allows HRB but not Claimants to enforce favorable provisions. HRB can assert limitations defenses. 2.ER.201. Claimants have no comparable enforcement mechanism. Arbitrators cannot remedy delays caused by other arbitrators, Claimants, or HRB in the staging process, and Claimants have no recourse or judicial review if HRB successfully challenges tolling. 2.ER.199-201. Moreover, the OSA precludes proceeding in court except to enforce Sections 11.2 and 11.6, "including to enjoin the filing . . . of arbitrations." 2.ER.200-202. These are remedies only HRB would seek. And although the agreement prohibits collective action against HRB, 2.ER.201, HRB can seek a single

injunction against thousands of arbitration demands. *See Ronderos*, 114 F.4th at 1096-97 (finding unconscionable agreement that provided one-sided carve-out from arbitration) (citing *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal.5th 478, 495-96 (2024)).

Finally, as the district court held, the small-claims-court carveout does not cure these defects, because "small claims proceedings are not a substitute for litigation in a court of general jurisdiction." 1.ER.19. Indeed, many Claimants would be precluded from small claims court because ECPA provides for $10,000 in statutory damages, above small-claims-court limits. HRB does not address, and thus waives any challenge to, that finding on appeal.

In short, the OSA is designed to make arbitration an inferior forum by creating unreasonable delays that favor HRB; chilling claims; creating unfair limitations defenses; making it harder for Claimants to hire counsel; giving HRB repeat-player advantages; and giving HRB alone the ability to enforce favorable provisions. It is highly substantively unconscionable.

### C. HRB's Challenges to the District Court's Analysis of Section 11.6 Are Unavailing

On appeal, HRB fails to grapple with the district court's findings

supporting substantive unconscionability. Br.54-57, 62-63.

1. HRB does not seem to dispute that Section 11.6 delays claims filing by a decade or more. Instead, HRB argues that delay is inherent in all mass arbitration, and that the district court should not have considered the speed at which current claims against HRB are arbitrated. Br.54-57.

First, HRB asserts that AAA cannot *resolve* thousands of cases simultaneously. Br.54-56. But the court's concern was not just that Section 11.6 delays case resolution but case *filing*, creating unfair statute-of-limitation risks. 1.ER.17, 20-21. Section 11.6 does not merely organize an inevitable queue; it creates a filing bar. AAA does not prohibit consumers from *filing* their cases. Indeed, capacity constraints may justify sequencing merits hearings or arbitrator assignments; they do not justify prohibiting consumers from filing demands or preserving their claims.

Moreover, while Section 11.6 exacerbates the delays inherent in mass arbitration, AAA resolves them, consistent with its "Reasonable Time Limits" Principle. *See* Am. Arbitration Ass'n, *Consumer Due Process Protocol Statement of Principles* 2 (April 17, 1998),

https://www.adr.org/media/x3mdzarl/consumer_due_process_protocol.pdf ("ADR proceedings should occur within a reasonable time, without undue delay."). As HRB recognizes, Br.62, AAA has a mass arbitration protocol triggered when coordinated counsel file 25 similar claims. *See* Am. Arbitration Ass'n, *Mass Arbitration Supplementary Rules* 4 (Apr. 1, 2024), https://www.adr.org/media/ofkbtyz2/mass-arbitration-supplementary-rules.pdf ("Mass Arb Rules"). As discussed below, *infra* 34-38, that protocol addresses delays more effectively than Section 11.6, without prejudicing consumers.

HRB also argues that the district court improperly considered real-world evidence of delays. Br.56-57. But even if unconscionability is measured at contract formation, *Sanchez*, 61 Cal. 4th at 920, courts may consider performance as evidence of the contract's intended operation, *Thomson v. Hodgson*, 150 F.4th 1097, 1103 (9th Cir. 2025). Regardless, the district court discussed only the Tillery declaration, 1.ER.18-19, not the other declarations that HRB cites. And regardless of what any declaration said, the court simply observed that "arbitrating batches of 20 or 50 claims at a time is bound to result in impediments and delays." 1.ER.18-19. That statement is incontrovertible.

2. As to the claim-extinguishing effect of the tolling provisions, HRB asserts briefly that all claims are tolled, Br.50, but has never offered to waive statute-of-limitations defenses nor accepted Plaintiffs' Notices as "fully complete." Instead, HRB expressly "reserve[ed] all rights." 1.ER.21. If this case is dismissed, Plaintiffs could still lose their claims on statute-of-limitations grounds.

HRB argues that pre-arbitration dispute processes, including a requirement to provide a "notice" are commonplace and reasonable. Br.63-64. But Plaintiffs do not challenge ordinary pre-arbitration notice-and-confer provisions. The problem is that HRB blocked claim filing, tied tolling to the notice process, and then reserved the right to deem notices incomplete based on unstated requirements, converting a routine pre-arbitration step into a statute-of-limitations trap.

HRB next asserts that whether a Notice is "fully complete" depends on objective criteria in the OSA. Br.65 (citing 1.ER.21). But HRB does not deny that it refused to accept Plaintiffs' Notices because of an unstated criterion—the requirement to mail each notice in a separate envelope. 1.ER.12. And HRB does not now disclaim statute-of-limitations defenses on those grounds.

Nor does HRB's promise of judicial enforcement cure the problem. Br.21, 65-66. HRB may invoke court review to enjoin filings, but once a consumer is forced into arbitration and an arbitrator accepts HRB's limitations defense, the consumer has no comparable avenue for meaningful judicial correction.

HRB also claims that the court improperly considered its post-contract actions when assessing the tolling provisions. Again, performance may be evidence of a contract's intended operation. *Thomson*, 150 F.4th at 1103. HRB understood (and still understands) the OSA to permit limitations challenges to Plaintiffs' claims, even though the OSA is the reason that arbitration demands cannot be filed. Regardless, the delay and tolling problems are apparent from the face of the OSA; HRB's later conduct simply confirms how the provisions operate in practice.

Next, HRB defends its reservation of rights on the tolling issue, arguing that Plaintiffs' counsel used similar language, and that it is unfair to allow Plaintiffs to determine whether a notice is fully complete. Br.66. But the prejudice is entirely one-sided. Statutes of limitations ensure fairness, *Montana Pole & Treating Plant v. I.F. Laucks & Co.*, 993

F.2d 676, 678 (9th Cir. 1993), and protect defendants from surprise, *Gayle Mfg. Co. v. Fed. Sav. & Loan Ins. Corp.*, 910 F.2d 574, 582 (9th Cir. 1990). HRB cannot claim unfairness or surprise from notices sharing an envelope or information shared electronically. Indeed, in mass arbitrations, AAA requires notice via electronic means, including file transfer protocols such as ShareFile. Mass Arb Rules at 5. And the only reservation of rights that extinguishes claims is HRB's. HRB can seek to enjoin filing, 2.ER.200, or raise limitations defenses before an arbitrator, 2.ER.201, and still raise merits defenses if its limitations arguments fail. But consumers cannot compel AAA to accept arbitration demands or obtain judicial review of a limitations ruling that ends their claims.

3. HRB largely ignores the district court's finding that the OSA interferes with Claimants' ability to hire counsel, arguing only that AAA's Mass Arb Rules are also triggered by coordinated counsel. Br.62. The difference is that the Mass Arb Rules do not impose one-sided staging provisions, cause unreasonable delay, or create unfair statute-of-limitations defenses, among other issues, *see infra* 34-38, and thus do not discourage consumers from hiring experienced counsel representing other similarly situated clients.

4. HRB also fails to address specifically the district court's findings of one-sidedness. Instead, HRB makes unpersuasive general arguments about mutuality. HRB claims first that California does not require point-by-point mutuality. Br.62. True. But an agreement cannot be "unjustifiably one sided." *Ramirez*, 16 Cal.5th at 499. And HRB cannot impose on consumers a contract like the OSA, designed to "severely restrict [their] ability to vindicate [their consumer] rights." *Ronderos*, 114 F.4th at 1096.

Next, HRB claims that Section 11.6 and the tolling provision are facially neutral. Br.62, 67. But an agreement can "appear facially neutral" and yet have "the effect of" obstructing the weaker party's ability to substantiate claims. *Ingle*, 328 F.3d at 1180; *Ferguson*, 298 F.3d at 787 ("While many of its arbitration provisions appear equally applicable to both parties, these provisions may work to curtail the employee's ability to substantiate any claim against the employer.") (cleaned up). The OSA systemically disadvantages Claimants bringing similar claims with coordinated counsel in arbitration proceedings. It effectively only applies to consumer claims against HRB and thus has the effect of obstructing consumers' ability to substantiate their claims.

5. Finally, HRB fails entirely to address the district court's finding that the OSA will chill claims, 1.ER.18, thus waiving any such arguments.

### D. The OSA Is Not Designed to Ensure the Fair and Efficient Adjudication of Mass Arbitration Claims

Instead of fully grappling with the district court's findings, HRB tries to defend the OSA as necessary to address mass arbitrations, akin to MDL bellwether proceedings, and justified by alleged wrongdoing by Plaintiffs' counsel. Br.47-54, 58-61. These arguments carry no weight.

1. First, HRB asserts that Section 11.6 is modeled on MDL bellwether procedures and designed to encourage global settlement. Br.47-51. That claim might be believable if staging were limited to one or two sets of cases; if batches were followed by mediation; if Claimants were permitted to file their case while waiting their turn; or if Claimants were permitted to opt out if bellwether cases produce no settlement. The OSA has none of these characteristics because it is not designed to encourage global settlement—it is designed to prevent claim filing. Indeed, the name "bellwether" is inapt when discussing the third, tenth, or fiftieth round of cases. *See* Bellwether, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/bellwether (last visited

Sept. 17, 2026) (defining "bellwether" as "one that takes the lead or initiative: leader").

Moreover, unlike Section 11.6, MDL bellwether proceedings do not prejudice plaintiffs. "In an MDL, plaintiffs actually file their cases, obtain procedural rights, and proceed under active judicial management." 1.ER.20. MDLs do not expose plaintiffs to delay-induced statute-of-limitations defenses, and an MDL plaintiff whose case is unreasonably delayed can seek relief in court. Allowing Claimants to select half of the few cases HRB permits to proceed, Brief of Amicus Curiae Chamber of Commerce ("Am.Br.") at 15, does not cure the injury to the thousands of consumers barred from filing at all.

Moreover, unlike Section 11.6, MDLs do not prohibit class actions, interfere with hiring counsel, or prohibit counsel from coordinating. Rather, MDL courts appoint lead counsel precisely to ensure coordination. *Heckman*, 120 F.4th at 684 (citing 28 U.S.C. § 1407).

Finally, delays in MDLs are due to real-world resource constraints. 1.ER.20. There was no evidence below that AAA is "inherently constrained" in how many arbitrations it can manage. 1.ER.20. Indeed, AAA has had a mechanism to address mass arbitrations since 2021. *See*

*MacClelland*, 609 F. Supp. 3d at 1043.

2. Even though Section 11.6 is nothing like MDL bellwethers, it might be enforceable if HRB had legitimate business justifications. It does not.

HRB claims that Section 11.6 "expedites merits-based resolution of *all* of the claims." Br.50. By "merits-based resolution," HRB does not mean merits-based *adjudication*. At best, it means "merits-based *settlement*." Br.47 (emphasis added); *see also* Br.20, 47-51. (And really, HRB means settlements artificially depressed by procedural obstacles.) But regardless, AAA's Mass Arb Rules are far more effective at encouraging merits-based settlement. They expressly provide for, and thus encourage, global mediation. Mass Arb Rules at 9. Section 11.6, by contrast, never mentions global mediation, contemplates only pre-filing individual settlement, and expressly prevents sharing of settlement information. 2.ER.199-200.

Moreover, AAA's Mass Arb Rules are significantly more effective at ensuring efficient merits-based *adjudication* of claims. They allow appointment of a process arbitrator to resolve universal process issues and a "Limited Services Neutral" to oversee other issues "common to the

cases, such as discovery[.]" Mass Arb Rules at 3, 6-8. But because Section 11.6 limits filing to 20 claims, the Mass Arb Rules—which apply to the filing of 25 or more claims—are not triggered.

The Mass Arb Rules also allow arbitrators to be assigned multiple cases at once. Mass Arb Rules at 8. Section 11.6 prohibits this efficiency, requiring forty different arbitrators for the first forty cases, and prohibiting arbitrators in subsequent batches from hearing more than one case at a time. 2.ER.201-202.

The Mass Arb Rules, moreover, permit but do not require staging of claims to address actual (not invented) resource constraints. The parties might agree to a mutually favorable staging process—such as allowing claims to be filed but limiting how many are assigned to merits arbitrators at a given time. But Section 11.6 prohibits case *filing* until prior batches are complete. 2.ER.201. Delay by one arbitrator does not just prevent that arbitrator from considering another case, it prevents all 4,900 AAA arbitrators (Br.55) from doing so.

HRB also claims that Section 11.6 prevents consumers from "extract[ing] fee-based blackmail settlements" by filing thousands of demands triggering "per-case arbitration fees." Br.21, 58, 61; *see also*

Br.50 (claiming that "in practice [Section 11.6] changes only when the arbitration *fees* are due"). Of course, no such extraction took place here—Claimants filed 20 arbitration demands, triggering minimal filing fees (which Claimants also had to pay).

Moreover, there are better (and fairer) ways than Section 11.6 to avoid "per-case arbitration fees." Br.58. JAMS, whose rules HRB references, Br.69-70, charges no per-case fees in mass arbitrations. Instead, it charges a filing fee, a case management fee (tied to professional fees), and a flat arbitrator appointment fee (regardless how many cases an arbitrator hears). JAMS, *Mass Arbitration Procedures Fee Schedule* (July 6, 2026), https://jamsadr.widen.net/s/slxsvxcgmp/jams-jams-mass-arbitration-procedures-fee-schedule-general (last accessed August 19, 2026).

AAA's Mass Arb Rules also reduce costs more effectively than Section 11.6. For consumer arbitrations, the default AAA filing fees are $225 and $375 for consumers and businesses, respectively. Am. Arbitration Ass'n, *Consumer Arbitration Rules and Mediation Procedures Administrative Fee Schedule* 1 (Jan. 15, 2024), https://www.adr.org/media/1oxencgd/2026_consumer-feeschedule.pdf

("Consumer Fee Schedule"). But the Mass Arb Rules require only an Initiation Fee at the outset ($3,125 and $8,125 for consumers and businesses, respectively), credited to later-charged per-case fees. Am. Arbitration Ass'n, *Consumer Mass Arbitration and Mediation Fee Schedule* 1-2 (Jan. 15, 2024), https://www.adr.org/media/lvgavfty/2026_consumer-mass-arbitration-feeschedule.pdf ("Mass Arb Fee Schedule"). Moreover, case filing fees are reduced, apply only as cases proceed beyond initiation, and decrease as the number of cases increase (from $325 to $100 for businesses and from $125 to $75 for consumers). *Id.*

The Mass Arb Rules also significantly reduce other mandatory fees. Companies pay a $1,400 per-case management fee under the consumer arbitration rules, Consumer Fee Schedule at 1, versus a $450 per-case arbitrator appointment fee under the Mass Arb Rules, Mass Arb Fee Schedule at 2. Thus, to the extent that Section 11.6 precludes application of the Mass Arb Rules, it significantly *increases* HRB's per-case fees.

HRB's fee argument, moreover, conflates filing fees, other arbitration fees, and arbitrator compensation. The estimated $37.4 million cost for 10,000 claimants reflects not the cost at "outset" as HRB

claims, Br.58, but the cost to completion, *see* U.S. Chamber of Commerce Institute for Legal Reform, *Private Power, Public Harm: The Coercive Dynamics of Mass Arbitration* 15 (Dec. 2025), https://instituteforlegalreform.com/wp-content/uploads/2025/12/Private-Power-Public-Harm-Web.pdf. Nearly two-thirds of that estimate is arbitrator hourly compensation. *Id.* And Section 11.6 makes arbitrations lengthier (and thus more expensive) by precluding AAA's efficiency measures, such as allowing arbitrators to consider multiple cases at once.

Regardless, to the extent that HRB's complaint is that individual, bilateral arbitration of 10,000 claims is expensive, that is easily resolved. Nobody is forcing HRB to insist upon individual arbitration. Class actions are designed to address common, low-dollar consumer claims in a fair and efficient manner.

Of course, HRB is right that the OSA reduces its arbitration costs. Under the staging process, it would take 65 years to address HRB's hypothetical 10,000 claims, even assuming each batch was completed in 120 days (which is implausible to the point of impossibility). Preventing consumers from filing claims for generations is extremely cost effective. But it is not conscionable.

3. HRB next argues that courts "have upheld—or even required—similar staging procedures." Br.51-54. The overwhelming weight of authority holds otherwise.

First, this Court has refused to enforce the only staging provision it has considered. *Pandolfi*, 2025 WL 2463742, at *2. In *Pandolfi*, this Court found three substantive concerns: the agreement could cause lengthy delays; it could have a chilling effect; and the delays and chilling would affect only consumer claims. *Id.* Each of those three concerns is present here, and more. *See supra* 21-25. Indeed, *Pandolfi* did not involve the statute-of-limitations concerns present here.

On appeal, HRB distinguishes *Pandolfi* as involving the interaction of the delegation clause and batching provision. Br.53. But *Pandolfi* found the batching provision unconscionable "on its own." 2025 WL 2463742, at *2. Moreover, an agreement that delays arbitrability determinations is no more unconscionable than one that delays claim resolution—particularly when, as here, delay may create limitations defenses. Either way, the agreement is one-sided, cases are delayed, and consumers are deterred from filing. Either way, the agreement reduces the company's arbitration costs only because it deters meritorious claims.

District courts have also refused to enforce staging provisions like Section 11.6. *See O'Malley v. Williams-Sonoma, Inc.*, ___ F.Supp.3d ___, 2026 WL 2640697, at *8 (N.D. Cal. Sept. 8, 2026); *MacClelland*, 609 F. Supp. 3d at 1040-44; *McKeown v. SAS Retail Servs., LLC*, 2025 WL 3563717, at *7-8 (N.D. Cal. Dec. 12, 2025); *Gustin v. Club Demonstration Servs., Inc.*, 2026 WL 1948873, at *6-7 (E.D. Cal. July 6, 2026).

The district court decisions that HRB cites (Br.51-53), meanwhile, involved different facts and arguments. In *Tubi*, the parties agreed to limited bellwethers to inform settlement, and the court did not force consumers through repeated batches before they could file demands. *See generally Tubi, Inc. v. Keller Postman LLC*, No. 1:24-cv-01616 (D.D.C. Dec. 19, 2024), Dkt. No. 29.

In *Ruiz v. CarMax Auto Superstores, Inc.*, the staging provision addressed claims adjudication, not filing, and there was no statute-of-limitations concern. 2024 WL 1136332, at *6 (C.D. Cal. Jan. 18, 2024). In *Diaz v. T-Mobile USA, Inc.*, there was no procedural unconscionability and no statute-of-limitations argument. 2026 WL 495233, at *3-4 (E.D. Cal. Feb. 20, 2026).

Finally, in both *Pilon* and *Brooks*, there were no statute-of-

limitations concerns, the batches were much larger, and the agreement permitted consumers to opt out of arbitration following the phrased procedure. *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 284, 297-98 (S.D.N.Y. 2025); *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305, at *17-18 (S.D.N.Y. July 8, 2024).

4. Finally, HRB tries to justify its unfair and one-sided staging process by criticizing Plaintiffs and their counsel for allegedly pursuing frivolous claims. *See* Br.11-14, 58-61. HRB cannot insist that actual delay is irrelevant to assessing the OSA's effects, Br.56, while also asking the Court to consider the merits of Plaintiffs' claims in assessing the OSA's one-sidedness. Regardless, HRB's criticisms are unfounded.

First, HRB criticizes Plaintiffs for filing this action while counsel arbitrates other cases. Br.2; *see also* Br.15. Plaintiffs have no other choice. They cannot file their arbitration demands until their turn, and a class complaint ensures the tolling that HRB refuses to guarantee. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552-53 (1974). Indeed, Plaintiffs' efforts demonstrate how different this case is from *Jones v. Starz Ent., LLC*, where this Court criticized the plaintiff for *not* taking a multi-pronged approach to ensure her case was addressed on the

merits. 129 F.4th 1176, 1183 (9th Cir. 2025) (noting that if the plaintiff "genuinely wanted to obtain a resolution on the merits, she could have availed herself of the California Superior Court").

HRB also tries to justify prohibiting consumers from filing demands by claiming that many claims are "frivolous," Br.60, implying that they are being used to "extract a settlement," Br.21. But counsel repeatedly asked HRB to identify the "frivolous" claims, 2.ER.110, because there is no point in filing nonviable claims when there are thousands of strong claims. Even if counsel were inclined to "extract a settlement" (and they are not), the filing fees for a few hundred cases would do little to pressure HRB financially, while considerably increasing costs for Claimants, who also pay filing fees. Moreover, the OSA requires Claimants to reimburse HRB for arbitration fees if their claim is determined to be frivolous at the conclusion of arbitration. 2.ER.201. HRB refused to share which claims it viewed as "frivolous" because it is not interested in resolving some claims, it is interested in preventing all of them.

Regardless, HRB has not established that so many claims are frivolous. Every Notice was accompanied by an individually signed letter stating that the Claimant filed taxes with HRB online during relevant

tax years. 1.ER.6. HRB's contrary evidence is a two-page declaration stating that HRB reviewed information in the Notices, compared it to HRB's own records, and concluded that some Claimants had used HRB in different years, filed their taxes in store or with boxed software, or could not be found in records. 2.ER.170-171. But that declaration did not explain what records HRB reviewed, what matching criteria it used, whether partial matches were investigated, or whether purported in-store or boxed-software customers also accessed HRB's website or online portal. Did HRB reject a claim because, for example, one of the five pieces of information in the Notice (name, email, phone, mailing address, and partial SSN) failed to match perfectly? The answer to this and any number of other questions could explain discrepancies between Claimants' recollection and HRB's records. Moreover, even though HRB has significantly better records of access to its online services than Claimants, and despite repeated requests for information, HRB refused to use the informal settlement period to address the record discrepancies. 2.ER.110.

Of course, some claims may be nonviable. Counsel regrets overlooking one facially invalid Notice among 2,481 Notices. Br.14. And

other Claimants may have been confused by online versus boxed software, misread relevant dates, or made some other error in their individually signed Notice. Likewise, some Claimants previously retained other law firms, Br.12-13, in an understandable, but futile, attempt to file arbitration demands.

But it is unclear how the presence of some potentially nonviable claims among thousands of Notices, or some Claimants hiring multiple lawyers, justifies preventing all but 20 Claimants from filing demands. The Notices themselves trigger no filing fees and are necessary (though apparently not sufficient) for tolling. And HRB has not shown that any individual has filed demands through multiple law firms. Plaintiffs cannot file even one demand. In short, HRB cannot complain that nonviable or duplicative claims increased its filing costs when only 20 viable demands were filed.

Moreover, Section 11.6 does not ensure that nonviable cases precede viable cases. Am.Br.19-20. It does not move valid claims to the front of the line. And unlike AAA's Mass Arb Rules, it does not provide for a process arbitrator who could devise a process or discovery plan to triage claims. Indeed, if HRB were concerned about weeding out

nonviable claims, it would have used the informal settlement period to resolve the records discrepancies for Claimants. It refused, because HRB's goal is not prioritizing arbitration of potentially valid claims—it is stopping arbitration entirely.

* * *

HRB is right about one thing—the OSA will save it money. But not because it encourages efficient merits-based resolution of claims. It saves HRB money because it is designed to structurally and systemically make arbitration an inferior forum for consumers. The OSA is highly substantively unconscionable.

## II. The OSA Is Procedurally Unconscionable, Even If It Is Not Adhesive

Because the OSA is highly substantively unconscionable, modest procedural unfairness renders it unenforceable. The district court correctly found procedural unconscionability in HRB's take-it-or-leave-it contract. The opt-out provision did not eliminate procedural unconscionability because HRB minimized the arbitration clause's real consequences, fully aware that consumers focused on meeting tax-filing deadlines were unlikely to grasp those consequences or navigate an opt out—much less repeat that process every year.

### A. Legal Background

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 246 (2012)). "[O]ppression may be established by showing the contract was one of adhesion *or* by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Id.* (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1347-48 (2015)) (emphasis added); *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100 (2002) ("[E]ven if the clause at issue here is not an adhesion contract, it can still be found unconscionable.").

### B. The OSA Is at Least Modestly Procedurally Unconscionable, as It Misleads Consumers Regarding Section 11.6's Consequences

The district court correctly found that the OSA was at least modestly procedurally unconscionable. 2.ER.11. Consumers were pressured into signing a dense 21-page agreement while focused on looming tax filing deadlines. *Haydon v. Elegance at Dublin*, 97 Cal.App.5th 1280, 1289 (2023) ("temporal and financial pressure" can contribute to procedural unconscionability). The arbitration process was

buried in the agreement and was confusing and difficult for laypersons to understand. *See Ronderos*, 114 F.4th at 1093-94 ("[T]he agreement involves some surprise because the cost-splitting provision is substantively opaque."); *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal.App.4th 227, 244 (2015); *Haydon*, 97 Cal.App.5th at 1289 (plaintiff could not make "an authentic informed choice to reject the arbitration clause given its confusing presentation"). Even a consumer who understands what an arbitration clause is "would not anticipate that the identity of their yet-unknown attorneys, and the number of other claimants that the attorneys represent, could comprise a substantial obstructive hurdle in the path toward resolving their dispute with HRB." 1.ER.11-12.

The OSA, moreover, affirmatively disguised its problems, discouraging consumers from opting out. *Gentry v. Superior Ct.*, 42 Cal.4th 443, 472 (2007) (finding procedural unconscionability, notwithstanding opt-out, due in part to "[t]he lack of material information about the disadvantageous terms of the arbitration agreement"); *Booker v. Charter Commc'ns, LLC*, 2025 WL 1910954, at *7 (Cal. Ct. App. July 11, 2025) (agreement with opt-out provision was

procedurally unconscionable where defendant "highlighted arbitration's attributes without identifying any disadvantages"); *see also Olvera v. El Pollo Loco, Inc.,* 173 Cal.App.4th 447, 455 (2009) ("Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice.").

The agreement created a "false sense of efficiency, masking the real possibility of protracted delay." 1.ER.12. It did not explain that consumers could wait a decade or more to file their cases, disclosing only that the staging process "may" cause delay and that arbitrators were encouraged to resolve cases within 120 days "consistent with principles of fundamental fairness." 2.ER.201. A consumer reading this provision might believe that arbitration promised quicker resolution (under 120 days) than court—not significantly slower resolution. By failing to explain candidly the delays resulting from Section 11.6, the OSA unfairly discouraged consumers from opting out. *Cf. Avery v. TEKsystems, Inc.*, 165 F.4th 1219, 1231 (9th Cir. 2026) (invalidating arbitration agreement under Federal Rule of Civil Procedure 23(d) where defendant's communications about the agreement "were misleading and confusing").

Even more problematic, the OSA gave consumers a false sense of

security as to claim tolling. It was not until HRB refused to accept Plaintiffs' Notices and then reserved its rights to challenge those Notices that it became apparent that HRB plans to raise statute-of-limitations defenses, even though Section 11.6 prevents timely filing. The OSA failed to disclose that Section 11.6 might not just delay claims but prevent their adjudication entirely.

The opt-out provision mitigated but did not eliminate procedural unconscionability. The opt-out provision itself is "burdensome in practice." 1.ER.13. It is "buried within a lengthy, dense agreement and imposes ongoing burdens," including that consumers "submit a new opt-out request each year." 1.ER.11. "[E]ven users who once opted out may be swept back into arbitration unless they repeatedly navigate the process annually." 1.ER.11; *see Cluck v. GEO Secure Servs., LLC,* 347 Cal.Rptr. 3d 44, 51 (Cal. Ct. App. 2026) ("[T]he procedure to opt out of the Arbitration Agreement was sufficiently cumbersome that it did not meaningfully mitigate the procedural unconscionability."); *Booker*, 2025 WL 1910954, at *7 (noting that to opt out, "employees had to exit the intranet site to which they were initially directed, sign into a different platform, and navigate through multiple menus to reach the opt-out

form"). And even if a consumer realized the wisdom of opting out in one tax year, they would remain subject to prior arbitration agreements unless they had opted out in every prior tax year that they used HRB. Plaintiffs would have had to opt out every year since 2017, when they first use HRB online. Br.8.

Finally, and critically, because the OSA provided a false sense of security as to delay—and the possibility that delay would extinguish claims—consumers would not understand the consequences of the arbitration agreement. A consumer who cannot understand the implications of the arbitration agreement cannot make an "informed choice" to opt out. *Haydon*, 97 Cal.App.5th at 1288-89.

### C. *Mohamed* Does Not Preclude Procedural Unconscionability When There Is an Opt-Out Provision

On appeal, HRB's primary argument is that under *Mohamed*, an arbitration agreement with an opt-out provision can never be procedurally unconscionable. Br.25-37. *Mohamed* did not so hold. This Court held only that "an arbitration agreement is not *adhesive* if there is an opportunity to opt out of it." 848 F.3d at 1211 (citing *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (*Circuit City*); *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (*en*

*banc*)) (emphasis added). That holding "support[ed]" the Court's conclusion that the delegation provision was not unconscionable, *id.*, because it eliminated adhesion as a path to procedural unconscionability. But a non-adhesive agreement can be procedurally unconscionable in other ways.

Indeed, although adhesion is often the "starting point" for assessing procedural unconscionability (and often the easiest way to establish procedural unconscionability), it "is not a prerequisite."[2] *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1409-10 (2003); *see also Haydon*, 97 Cal.App.5th 1288-89; *Bruni v. Didion*, 160 Cal.App.4th 1272, 1289 (2008). Even HRB appears to concede as such. *See* Br.25 ("[I]n the absence of adhesiveness, a contract term is *generally* not procedurally unconscionable.") (emphasis added); *see also* 2.ER.31 (THE COURT: Are you saying there could be no degree of unconscionability? When you have

[2] HRB cites *Mohamed* as holding that adhesion is the "threshold inquiry" in unconscionability analysis. Br.25. And so it is. Because adhesive contracts are generally procedurally unconscionable, whether a contract is adhesive is the "place or point of entering or beginning" of the analysis. *See* Threshold, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/threshold (last visited Sept. 17, 2026). But it is not the end of the analysis, and it is not necessary to establish unconscionability.

an opt-out, there's no procedural unconscionability, period? MR. PARASHARAMI: I think there — there may be circumstances in which something additional could exist . . .)

Thus, in *Kilgore*, the opt-out provision was not dispositive; the *en banc* Court additionally analyzed whether the agreement was buried in fine print. 718 F.3d at 1059 (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473 (1982)). *Circuit City* also recognized that a non-adhesive contract can be procedurally unconscionable. 283 F.3d at 1199 ("Moreover, and *apart from its non-adhesive nature*, the arbitration agreement here also lacked any *other indicia* of procedural unconscionability.") (emphasis added). This Court later distinguished *Circuit City* on those grounds, finding the same defendant's arbitration agreement procedurally unconscionable based on such other indicia of procedural unconscionability (namely, pressure on the plaintiff to sign the agreement). *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106-07 (9th Cir. 2003) (*Mantor*) (citing *Ingle*, 328 F.3d at 1172 n.4; *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002)).

Other panels applying *Circuit City* and *Mohamed* have likewise eschewed HRB's broad reading. *See Hoffman v. Citibank (S. Dakota),*

*N.A.*, 546 F.3d 1078, 1085 (9th Cir. 2008) (remanding for a factual analysis of whether, in light of opt-out provision, agreement was procedurally unconscionable) (citing *Circuit City* and *Mantor*); *see also Baghdasarian v. Macy's Inc.*, 2025 WL 999082, at *2 (9th Cir. Apr. 3, 2025) (finding no procedural unconscionability where "the totality of the circumstances also does not reveal any oppression or suggest that employees were misled") (citing *Mohamed*).

The district court's reading of *Mohamed* also comports with California courts, which have repeatedly rejected HRB's broad rule.[3] *See, e.g.*, *Gentry*, 42 Cal.4th at 451 ("[T]he present agreement has an element of procedural unconscionability notwithstanding the opt-out provision[.]"); *Cluck*, 347 Cal.Rptr.3d at 50 ("[A]n opt-out provision does not automatically insulate an arbitration agreement from [procedural unconscionability]."); *Haydon*, 97 Cal.App.5th 1288-89 ("Even where an

---

[3] In *Gentry*, the California Supreme Court found procedurally unconscionable the same arbitration agreement at issue in *Circuit City* and *Mantor*. But even the *Gentry* Court did not describe *Circuit City* as categorically precluding unconscionability where there is an opt-out provision. Rather, *Gentry* stated that *Circuit City* did not consider additional indicia of unconscionability. 42 Cal.4th at 472 (observing that *Circuit City* "did not consider the concealment of disadvantageous terms" nor that the defendant "was in a position to pressure employees to choose its favored option").

arbitration provision allows a party to opt out, there may be procedural unconscionability[.]"); *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal.App.5th 59, 69 (2020) ("[A]n opt out provision does not insulate an arbitration agreement from a finding of procedural unconscionability."); *see also Booker*, 2025 WL 1910954, at *6 ("[O]ur high court has held that procedural unconscionability is not necessarily eliminated by an opt-out opportunity.") (citing *Gentry*); *Smith v. Folsom Invs., L.P.*, 2023 WL 8794888, at *4 (Cal. Ct. App. Dec. 20, 2023); *Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, 2023 WL 7125117, at *2-3 (Cal. Ct. App. Oct. 30, 2023); *Rowsell v. Am. Express Bank, FSB*, 2018 WL 4710092, at *10 (Cal. Ct. App. Oct. 2, 2018).

Finally, the district court's reading of *Mohamed* comports with common sense. As the California Supreme Court explained in *Gentry*, if "there was no element of procedural unconscionability in the arbitration agreement because of the 30-day opt-out provision, then the logical conclusion is that a court would have no basis under common law unconscionability analysis to scrutinize or overturn even the most unfair or exculpatory of contractual terms." 42 Cal.4th at 470.

Indeed, Amici's policy arguments prove the point. Bright-line rules

tell contract drafters, "when they design an arbitration program, what will make it enforceable." Am.Br.9. HRB's bright-line rule would tell companies that any opt-out provision, no matter how burdensome, will render any arbitration agreement enforceable, no matter how unfair. It would give companies carte blanche to design arbitration programs that entirely prevent arbitration, just as HRB tried to do here.

Moreover, contrary to Amici's claims, Am.Br.10, companies have every incentive to continue offering meaningful opt-outs because they remain highly relevant to procedural unconscionability. They are simply not a license to impose claim-suppressing terms.

2. In support of its broad reading of *Mohamed*, HRB ignores *Mantor*, *Hoffman*, and *Baghdasarian*, citing instead a single unpublished memorandum. Br.28 (citing *Cal. Crane Sch., Inc. v. Google LLC*, 2025 WL 2541913, at *1 (9th Cir. Sept. 4, 2025)). But there, the plaintiff argued only adhesion and nothing else. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1034-35 (N.D. Cal. 2024) ("The opt out provision in Google's Terms of Service defeats CCS's argument that the arbitration agreement is *adhesive*.") (emphasis added). This Court had no opportunity to consider whether a non-adhesive contract can be

procedurally unconscionable.

Likewise, in *Hunt*, the sole district court case assessing the OSA under California law,[4] the "*only argument* on procedural unconscionability [was] that the agreement was a contract of adhesion." 729 F. Supp. 3d at 970 (emphasis added).

Similarly, in the unpublished district court decisions that HRB cites (Br.28, 34), the court had no reason to consider whether a non-adhesive contract can be procedurally unconscionable. *See Chavoya v. Merrill Gardens L.L.C.*, 2025 WL 2196296, at *10 (E.D. Cal. Aug. 1, 2025) ("To the extent Chavoya argues that, notwithstanding the meaningful opt-out option, the arbitration agreement is nonetheless *adhesive* and thus procedurally unconscionable, this argument is foreclosed[.]") (emphasis added); *Rubio v. Aaron's LLC*, 2024 WL 4904512, at *6 (E.D. Cal. Nov. 27, 2024) (same); *Schlueter-Beckner v. SimpliSafe, Inc.*, 2025 WL 2162948, at *7 (N.D. Cal. July 30, 2025) (observing that plaintiff raised no procedural concerns with the opt-out provision).

By contrast, when plaintiffs have raised additional indicia of

---

[4] *Caimano* and *Pabon* involved Pennsylvania and New York unconscionability law and are thus inapposite.

oppression and surprise, district courts citing *Mohamed* and *Circuit City* have found procedural unconscionability where there was an opt out process. *See, e.g., Marquez v. Adobe, Inc.*, 2026 WL 2603998, at *9 (N.D. Cal. Sept. 2, 2026); *Browden v. CJ Berry Well Servs. Mgmt., LLC*, 2026 WL 381010, at *5 (E.D. Cal. Feb. 11, 2026); *Rivera v. Uniqlo California, LLC*, 2017 WL 6539016, at *8 (C.D. Cal. Sept. 8, 2017)*; Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at *8 (N.D. Cal. June 11, 2014); *see also Roope v. Westlake Hardware Inc.,* 2026 WL 98438, at *2 (N.D. Cal. Jan. 14, 2026); *Edwards v. Chartwell Staffing Servs., Inc.,* 2017 WL 10574360, at *4 (C.D. Cal. May 30, 2017);

Even courts enforcing agreements because of an opt-out provision do so only after considering other indicia of procedural unconscionability. *See, e.g., Slaviero v. Baby List, Inc.*, 2026 WL 1097746, at *5 (N.D. Cal. Apr. 22, 2026) ("The opt-out provision thus renders the contract non-adhesive, and nothing else indicates the arbitration provision was procedurally unconscionable."); *Guerrero v. Citibank, N.A.*, 2025 WL 2483161, at *4 (N.D. Cal. Aug. 28, 2025) (aside from adhesion, "Plaintiff's other arguments as to procedural unconscionability are unavailing"); *Gonzales v. Lowes*, 2025 WL 408497, at *4 (E.D. Cal. Jan. 29, 2025)

("Apart from its non-adhesive nature, the Arbitration Agreement also lacks any other indicia of procedural unconscionability.").

3. In the same way that HRB misreads *Mohamed*, *Circuit City*, and *Kilgore*, it misreads the district court's decision, painting Judge Chen as a rogue jurist repeatedly flaunting precedent. *See, e.g.,* Br.3. The district court did not "refuse[] to follow *Mohamed*." Br.3, 19, 26, 31. Rather, the district court acknowledged both *Mohamed*'s adhesion holding and *Poublon*'s post-*Mohamed* recognition that "courts may alternatively find an agreement procedurally unconscionable where 'there are other indications of oppression or surprise.'" 1.ER.13 (quoting *Poublon*, 846 F.3d at 1261-62); *see also* 1.ER.16. The district court then found the OSA procedurally unconscionable even if, under *Mohamed*, it was not adhesive.

Likewise, the district court did not "encourage[] this Court to 'revisit[] and overrule[] its own precedent' on the basis of intermediate California appellate decisions." Br.3,16. Rather, the district court found that *Mohamed* did not preclude a finding of procedural unconscionability, 1.ER.13 ("*Mohamed* did not so hold."), and that such an expansive reading of *Mohamed* would conflict with "the clear directive of

intervening California appellate decisions," by which it was bound, 1.ER.16.

The district court did observe that this Court has "revisited and overruled its own precedent" when "intervening California intermediate appellate decisions provide convincing evidence of how the state high court would rule." 1.ER.15 (citing *In re Watts*, 298 F.3d 1077, 1082-83 (9th Cir. 2002); *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019)). But only to establish that it was bound by state court decisions—not because revisiting is necessary here.

4. Of course, if *Mohamed* is as broad as HRB claims (it is not), then the district court is right—that broad holding does not bind subsequent panels because it conflicts with California law. The *Erie* doctrine requires federal courts to follow state supreme court and appellate decisions on state law issues. *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1142-43 (9th Cir. 2024) (Miller, J., concurring) (citing 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938)); *id.* at 1136 ("[F]ederal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."). And California

courts—including the Supreme Court before *Mohamed* and appellate courts since *Mohamed*—have consistently held that an opt-out provision does not preclude procedural unconscionability. *See supra* 53 (citing *inter alia Gentry*, *Cluck*, *Haydon*, and *Swain).*

HRB's dismisses *Gentry* because it preceded *Mohamed*. Br.27, 32. But the *Erie* doctrine does not allow federal courts to ignore controlling state precedent simply because it precedes a federal decision. Moreover, as *AGK* more recently clarified, a panel holding that opt-outs preclude procedural unconscionability would bind later panels only in the "*absence* of any subsequent indication from the California courts," including appellate courts, contradicting that state law interpretation. *AGK*, 109 F.4th at 1136 (emphasis added). And *Cluck*, *Haydon*, and *Swain*, along with multiple other unpublished appellate decisions, *supra* 53*,* contradict HRB's interpretation of California law.

HRB next tries to distinguish California authority on its facts. Br.32-35. But in several respects, there was more surprise and oppression here than in *Gentry*, *Haydon*, and *Swain*. For example, in *Gentry* and *Haydon*, there was no allegation that the opt-out provision was burdensome. *Gentry*, 42 Cal.4th 470-72; *Haydon*, 97 Cal.App.5th

1288-89. Here, the opt-out provision required repeated, yearly opting out. 1.ER.11. In *Gentry*, "the opt-out provision of the acknowledgment agreement was neither inconspicuous or difficult to understand." 42 Cal.4th 468. And in *Swain*, the arbitration agreement was as a separate document (albeit alongside other agreements), and plaintiff was purchasing a nonessential service that she could have found elsewhere. 57 Cal.App.5th at 69-71. Here, the arbitration agreement was buried within a significantly longer agreement and presented to consumers while they faced time and financial pressure to file their taxes. 1.ER.11. Tax filing is required, not optional, and there are high costs associated with switching tax preparation services. Moreover, neither *Swain* nor *Haydon* involved allegations that the arbitration agreement itself misled consumers as to its consequences. Here, HRB downplayed the OSA's harmful aspects, lulling consumers into accepting it. 1.ER.12.

HRB does not address recently decided *Cluck*, which also supports procedural unconscionability here. Indeed, *Cluck* found that the opt-out provision did not mitigate unconscionability for the sole reason that it was "cumbersome." 347 Cal.Rptr.3d at 51. Here, the opt-out provision's burdensome nature was only one of several factors establishing

procedural unconscionability.

But at bottom, all these factual differences demonstrate is that procedural unconscionability is a "fact-specific inquiry," *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013), requiring an assessment of the "totality of the circumstances," *Poublon*, 846 F.3d at 1260, and is thus poorly suited for HRB's categorical opt-out rule.

5. In any event, for two additional reasons, *Mohamed* does not preclude a finding of procedural unconscionability here. First, the agreement in *Mohamed* allowed employees to entirely opt out of arbitration. The OSA, by contrast, only allows consumers to switch from the current arbitration agreement to a prior agreement. Given that consumers use HRB to file taxes annually, most consumers who attempt to opt out will remain subject to a prior adhesive arbitration agreement. *See Marquez*, 2023 WL 2603998 at *9 (*Mohamed* did not apply where "it is ambiguous as to whether consumers need to continuously opt out of the arbitration agreement").

Moreover, *Mohamed* likely incorrectly predicted California state law when holding that an agreement with an opt-out provision can never be adhesive. *See Booker*, 2025 WL 1910954, at *6 (disagreeing "that the

opt-out mechanism rendered the agreement nonadhesive"). This Court need not reach that issue, as discussed above. But this Court may alternatively hold that *Mohamed*'s adhesion holding is not binding given subsequent state court decisions. *AGK*, 109 F.4th at 1136.

### D. HRB's Remaining Procedural Unconscionability Arguments Fail

Alternatively, HRB challenges the district court's determination that the agreement involved surprise and oppression. Br.38-45. Those arguments fail.

1. The district court's surprise analysis centered on its finding that the OSA provided a false sense of security to consumers regarding both delay and tolling. 1.ER.12. On these points, HRB argues only that the agreement never promised to resolve cases within 120 days. Br.43. That misses the point. The reference to the 120-day period and "fundamental fairness," 2.ER.201, instilled a false sense of efficiency, "masking the real possibility of protracted delay", 1.ER.12. A mass-arbitration specialist might understand that Section 11.6 could create a decade-long delay because consumers could likely only find representation from firms handling hundreds or thousands of similar cases. But a consumer would not realize that fact unless it was expressly explained. *See Pappas v.*

*AMN Healthcare Servs., Inc.*, 2025 WL 3720922, at *2 (9th Cir. Dec. 23, 2025) ("a layperson's inability to understand the legal effect" of a provision can "contribute[] to procedural unconscionability") (citing *Ronderos*, 114 F.4th at 1093). HRB not only failed to disclose Section 11.6's consequences, it actively downplayed them.

Rather than directly address the court's "false sense of security" finding, HRB erects a series of strawman arguments. HRB claims that there is no surprise when an agreement is well flagged, accusing the district court of adopting a "special notice" requirement for arbitration. Br.39. But the district court found only that the arbitration provision's location towards the end of the lengthy OSA contributed to the surprise, not that this fact alone rendered the OSA procedurally unconscionable. 1.ER.11; *see Haydon*, 97 Cal.App.5th at 1288 (finding "high degree of surprise" where arbitration provision was one of many provisions within a larger document).

Next, HRB argues that the court conflated procedural and substantive unconscionability by looking at "the *content* of the clause." Br.40; *see also* Br.44. But the district court was careful to distinguish between the OSA's substantive and procedural unfairness. The OSA was

substantively unconscionable because it was designed to prevent adjudication of claims on the merits; it was procedurally unconscionable because consumers would not understand and thus be surprised to learn how it works. This Court has found procedural unconscionability where a layperson would be surprised or confused by an arbitration provision's substance. *Pandolfi*, 2025 WL 2463742, at *1 (citing *OTO, L.L.C. v. Kho*, 447 P.3d 680, 691-92 (Cal. 2019)); *Ronderos*, 114 F.4th at 1092 (citing *Pinela*, 238 Cal.App.4th at 243). And *Pappas* (Br.40) expressly held that the confusing nature of a contract establishes procedural unconscionability, not substantive unconscionability. 2025 WL 3720922, at *1-2.

Finally, HRB paints the district court's decision as effectively rendering all mass arbitration provisions procedurally unconscionable. Br.42. But the district court did not criticize mass arbitration processes generally, only HRB's "*complicated* and *unusual* bellwether sequencing provision," 1.ER.12 (emphasis added), which HRB did not candidly explain.

2. As to oppression, HRB claims that the district court "ignore[d] that consumers could opt out of the arbitration agreement." Br.43. It did

not; the court found that the opt-out provision mitigated but did not eliminate oppression because it was contained within a long, dense document and required annual action by the consumer. 1.ER.11, 16. Unless an HRB customer opts out of arbitration the *first* and *every subsequent* year they use the service, the customer cannot pursue claims in court.

HRB also claims that Section 11.6 is not oppressive because it was "clearly disclosed." Br.44. But, as the district court observed, 1.ER.12, HRB did not disclose all the procedural hurdles it intended to throw against Claimants—such its objections to a shared envelope and electronic files. And even disclosed language can be oppressive if it is opaque to a layperson. *Ronderos*, 114 F.4th at 1093-94; *Pandolfi*, 2025 WL 2463742, at *1; *OTO*, 8 Cal.5th at 128.

Finally, HRB challenges the district court's assessment of tax-season pressure. Br.45. But the OSA was presented in tax season—plaintiffs agreed to the operative OSA in January 2024, during tax season. The agreement would be more oppressive if it were sprung on taxpayers days or weeks before tax-filing deadlines. But an individual logging into HRB's online portal in January is focused on accessing their

stored tax information and completing and filing their taxes on time—not opting out of opaque arbitration agreements that imply that arbitration is a faster way to address claims. *Cf. Swain*, 57 Cal.App.5th at 70 (finding procedural unconscionability even where consumer was purchasing "nonessential" laser hair removal services that she could have purchased elsewhere).

* * *

Because the OSA is so substantively unconscionable, even modest procedural unconscionability renders it unenforceable. The district court correctly found modest procedural unconscionability notwithstanding the opt-out provision, as the OSA is confusing and lulls consumers into accepting arbitration. This Court has never held that an opt-out provision insulates an unconscionable agreement from review and should not create a conflict with California law by so holding here.

## III. The FAA Does Not Preempt Either the Decision Below or the *Discover Bank* Rule

In the alternative, HRB argues that the district court's unconscionability analysis is preempted by the FAA. Br.71-75. But the decision below does not "disfavor" arbitration; it invalidates an agreement that prevents arbitration filings. And because the OSA itself

prevents individual, bilateral arbitration, FAA preemption does not apply, and the OSA is unenforceable under California's rule against class waivers in consumer contracts.

**A. Legal Background**

The FAA was enacted in 1925 in response to judicial hostility to arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA permits arbitration agreements to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but preempts state law rules that "disfavor[]" arbitration and "stand as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 339, 343; *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657 (2022) (Section 2's "saving clause does not preserve defenses that would allow a party to declare that a contract is unenforceable just because it requires bilateral arbitration") (cleaned up).

"Simply labeling something as 'arbitration' does not automatically bring it within the ambit of the FAA's protection." *Heckman*, 120 F.4th at 691 (VanDyke, J., concurring); *see also id.* at 689. The FAA was designed to enforce "a *particular type* of arbitration—bilateral arbitration

with its specific advantages and attributes." *Id.* at 691; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 508 (2018) ("courts may not allow a contract defense to reshape *traditional individualized arbitration*") (emphasis added).

### B. The FAA Does Not Protect Arbitration Agreements That Prevent Claimants From Filing Arbitration Demands

The OSA is not the "*particular type* of arbitration" agreement the FAA was designed to protect. *Heckman*, 120 F.4th at 691 (VanDyke, J., concurring). Its "attributes fundamentally differ from the core attributes of bilateral arbitration envisioned by the FAA." *Id.* The OSA is "*intentionally designed* to avoid individual, bilateral adjudication of claims," *id.* at 692, by preventing Claimants from even filing their claims for years, if not decades. An agreement that actively prevents individuals from filing arbitration demands is "'unworthy even of the name arbitration.'" *Id.* at 689 (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)).

The OSA, moreover, "differ[s] significantly" from the standard rules of "traditional arbitration fora," *Heckman*, 120 F.4th at 679, even in the context of mass arbitration. AAA's and JAMS' mass arbitration procedures are set up to enable resolution of large numbers of cases on the merits. Neither AAA nor JAMS imposes mandatory staging

procedures, prevents consumers from filing demands, or creates unfair statute-of-limitations defenses. *See supra* 34-38; JAMS, *Mass Arbitration Procedures and Guidelines* (May 1, 2024), https://www.jamsadr.com/mass-arbitration-procedures. The OSA, by contrast, is set up to delay claims and prevent their adjudication.

Indeed, HRB appears to concede that the OSA will not result in individual, bilateral arbitration of claims. *See* Br.55-56. Rather, HRB claims that the OSA's primary purpose (besides lowering HRB's costs) is facilitating global *settlement*. Br.20, 47-51, 55-56, 61. But even if Section 11.6 were designed to promote global, merits-based settlement (and it is not, *see supra* 34), that objective, even if laudable, is not the FAA's objective.

Because the OSA is not designed to ensure bilateral arbitration of claims, but instead to prevent consumers from filing arbitration demands, it is not subject to the FAA.

### C. The District Court's Decision Does Not Disfavor FAA Arbitration

Even if the OSA were subject to the FAA, the decision below does not disfavor arbitration. HRB's contrary arguments (Br.71-75) mischaracterize the decision.

First, HRB claims that the district court created a "blanket rule against staging procedures." Br.72. It did not. It held only that HRB cannot impose staging that prevents Claimants from filing demands while their claims die on the vine.

Second, HRB claims the district court found the OSA unconscionable even though it is like MDL procedures. Br.72. Not true. The district court found the OSA unconscionable because it is *not* like MDL procedures. 1.ER.20. MDL procedures do not create decades-long delays, manufacture statute-of-limitations defenses, and entirely prevent Claimants from vindicating their claims.

Third, HRB asserts that the district court improperly required "point-by-point mutuality of all contract terms" and insisted that the OSA "affect both sides equally in practice." Br.73 (citing *Sanchez*, 61 Cal.4th at 911). That is incorrect. The court acknowledged that "[u]nconscionability requires unfairness beyond a 'simple old-fashioned bad bargain.'" 1.ER.16-17 (quoting *Sanchez*, 61 Cal.4th at 911). But it found the OSA so one-sided as to shock the conscience because it precluded only one side—consumers—from vindicating claims.

Next, HRB accuses the district court of preventing companies from

adopting procedures "tailored to the type of dispute." Br. 73 (quoting *Concepcion*, 563 U.S. at 344-45). Not so. HRB can specify that the arbitrator "be a specialist in the relevant field" or require "confidential[ity] to protect trade secrets." *Concepcion*, 563 U.S. at 344-45. It cannot demand that Claimants proceed by arbitration while prohibiting them from filing demands.

HRB also accuses the district court of "forc[ing it] to face large numbers of unsupportable and unvetted claims" and "fee-based abuses of the arbitration process." Br.73-74, 75. Not so. HRB refused to provide information to identify what it alleged were nonviable claims, but nonetheless only faced 20 arbitration demands—the viability of which HRB has not challenged—with modest filing fees. 2.ER.109-110. Even if Claimants had filed thousands of demands, AAA does not demand all filing fees immediately, and its procedures enable claims to be triaged through common discovery on threshold issues before merits assignment.

Finally, HRB accuses the district court of "antagonism" and "hostility to arbitration" and a "preference for class litigation," Br.74-75, citing as evidence the district court's observation that "courts are pretty good" at dealing with large numbers of cases, Br.74 (citing 2.ER.63). That

comment was in response to HRB's complaints about the difficulties of mass arbitration. 2.ER.62. And the district court's point was a good one—HRB can choose arbitration or class litigation, but it cannot choose arbitration to avoid class litigation and then use the arbitration costs to justify an agreement that prevents Claimants from pursuing arbitration.

### D. Because the FAA Does Not Apply, *Discover Bank* Renders the OSA Unenforceable

Because the FAA has no preemptive effect in this case, California's *Discover Bank* rule "springs back to life." *Heckman*, 120 F.4th at 692 (VanDyke, J., concurring). *Discover Bank* held that class waivers are unenforceable when contained in a "consumer contract of adhesion," when small damage disputes could predictably arise between the parties, and when the "party with the superior bargaining power" is alleged to have "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Heckman*, 120 F.4th at 690. Those criteria are easily met here.

On appeal, as below, HRB does not dispute that absent FAA preemption, *Discover Bank* makes the OSA unenforceable.[5] Br.67-71; *see*

[5] HRB has never asserted (and thus waives) any argument that the opt-out provision defeats *Discover Bank*. Nor would such an argument

SER.1-21, 82-112. Instead, HRB argues that *Heckman* "is confined to its unusual facts." Br.69. But *Heckman* did not carve out an exception to *Concepcion* for a single set of facts. It reaffirmed the core tenet of *Concepcion*—the FAA only preempts state law posing an obstacle to the FAA's goal of permitting agreements intended to result in individual, bilateral adjudication of claims. *Heckman*, 120 F.4th at 689, 692. Invalidating an "arbitration" agreement that prevents consumers from filing arbitration demands does not "stand as an obstacle to the accomplishment of the FAA's objective." *Concepcion*, 563 U.S. at 343.

To be sure, the OSA differs from the New Era rules in *Heckman*. Br.68-69. But *Heckman*'s FAA analysis did not turn solely on the preclusive effect of the New Era bellwether proceedings—indeed, it was not even mentioned in the majority analysis or the concurrence. Moreover, in ways that matter here, Section 11.6 is worse than the New Era rules. New Era did not bar consumers from filing demands or delay individual adjudication for years or decades.

HRB argues that *Jones* limited *Heckman*'s alternative holding to

---

succeed. Even if the opt-out provision precludes a finding that the arbitration agreement is procedurally unconscionable, the OSA as a whole remains adhesive and falls within *Discover Bank*.

representative arbitration. Br.69-70. But *Jones* did not involve a *Discover Bank* argument, and the parties agreed that the FAA applied to the agreement in question. The Court used *Heckman* only as an illustrative example when rejecting the Plaintiff's claim that consolidated proceedings were the same as class or representative proceedings. *Jones*, 129 F.4th at 1182.

The district court decisions cited by HRB (Br.69-71) are similarly inapposite. The arbitration provision in *Cordero v. Coinbase* neither prohibited consumers from filing demands nor delayed adjudication of claims. 2025 WL 2223495, at *2 (N.D. Cal. Aug. 5, 2025). All it did was consolidate multiple claims before a single arbitrator to reduce costs. *Id.*; *see also Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157, at *7 (N.D. Cal. Oct. 24, 2025). Section 11.6, by contrast, prohibits arbitrators from hearing multiple cases at once—one of the ways in which it delays claim filing and adjudication.

The court in *Pilon*, meanwhile, did not consider the *Heckman* FAA argument because it applied New York law. 769 F. Supp. 3d at 298. And *Wray v. Humble* (like *Jones*) involved neither a *Discover Bank* argument nor an assessment of the enforceability of a mass arbitration provision.

2025 WL 4662288, at *9 (N.D. Cal. Sept. 8, 2025).

*   *   *

In short, because the OSA is designed to prevent consumers from filing their arbitration demands, it is not the type of arbitration agreement the FAA was designed to protect. Thus, the district court's unconscionability analysis is not preempted. And even if that unconscionability analysis was wrong, *Discover Bank* renders the agreement unenforceable.

**CONCLUSION**

The district court's denial of HRB's motion to compel arbitration should be affirmed.

Dated: September 18, 2026

Respectfully submitted,

**ZIMMERMAN REED LLP**

By: s/ *Finnuala K. Tessier*

Caleb Marker
Ryan Ellersick
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-8780
caleb.marker@zimmreed.com
ryan.ellersick@zimmreed.com

Hart L. Robinovitch
14648 N. Scottsdale Road
Suite 130
Scottsdale, AZ 85254
Telephone: (480) 348-6400
hart.robinovitch@zimmreed.com

Finnuala K. Tessier
25568 Genesee Trail Rd
Golden, CO 80401
Telephone: (612) 341-0400
finnuala.tessier@zimmreed.com

***Plaintiffs-Appellees' Counsel***

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned counsel states that there are no related cases pending before this Court.

Dated: September 18, 2026

Respectfully submitted,

**ZIMMERMAN REED LLP**

By: s/ *Finnuala K. Tessier*
Finnuala K. Tessier

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1(a) because this brief contains 13,942 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Dated: September 18, 2026

Respectfully submitted,

**ZIMMERMAN REED LLP**

By: s/ *Finnuala K. Tessier*
Finnuala K. Tessier

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

s/ Finnuala K. Tessier
Finnuala K. Tessier