**No. 25-7199**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PEDRO RIOS, JR., ET AL.,

*Plaintiffs-Appellees*,

v.

HRB DIGITAL, LLC, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court for the Northern District of California, Case No. 3:25-cv-03530-EMC
Hon. Edward M. Chen, United States District Judge

# REPLY BRIEF OF DEFENDANTS-APPELLANTS

Stacey Gilman
BERKOWITZ OLIVER LLP
2600 Grand Boulevard
Suite 1200
Kansas City, MO 64108
Telephone: (816) 561-7007
sgilman@berkowitzoliver.com

Archis A. Parasharami
Daniel E. Jones
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7160
archis.parasharami@skadden.com
daniel.jones@skadden.com

*Counsel for Defendants-Appellants HRB Digital, LLC and HRB Tax Group, Inc.*

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. Plaintiffs Failed To Meet Their Burden Of Demonstrating That The Arbitration Agreement Is Unconscionable. ........ 3

A. Plaintiffs did not demonstrate procedural unconscionability ........ 3

1. *Mohamed* is dispositive and requires rejection of Plaintiffs' procedural unconscionability arguments. ........ 4

2. The opt-out right here easily satisfies *Mohamed*. ........ 9

3. *Mohamed* remains good law. ........ 13

4. Plaintiffs' assertions of surprise or oppression are meritless. ........ 15

a. Plaintiffs fail to show surprise ........ 15

b. Plaintiffs fail to show oppression ........ 17

B. Plaintiffs' substantive unconscionability arguments fail. ........ 19

1. The tolling provision in the OSA is enforceable and tolls Plaintiffs' claims. ........ 20

2. Plaintiffs' other challenges to the staging procedures are meritless. ........ 22

a. Plaintiffs' focus on filing rather than resolution confirms their challenges are aimed at imposing fee-based pressure. .............22

b. Plaintiffs cannot meaningfully distinguish how courts resolve individual claims in MDLs. .............24

c. Plaintiffs cannot downplay the fee-based abuses the staging procedures address. .............27

d. Arbitration providers' rules do not make the staging procedures substantively unfair. .............30

e. Decisions upholding similar staging provisions are persuasive. .............31

II. Plaintiffs Cannot Avoid The FAA And Its Preemptive Effect. .....33

A. *Heckman* doesn't apply. .............34

B. The FAA preempts the district court's substantive unconscionability holdings. .............36

CONCLUSION .............38

STATEMENT OF RELATED CASES .............39

CERTIFICATE OF COMPLIANCE .............40

CERTIFICATE OF SERVICE .............41

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AGK Sierra De Montserrat, L.P. v. Comerica Bank*,
109 F.4th 1132 (9th Cir. 2024) .................................................... 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................ 22, 25, 37

*Baltazar v. Forever 21, Inc.*,
367 P.3d 6 (Cal. 2016) ........................................................... 4, 20

*Booker v. Charter Communications, LLC*,
2025 WL 1910954 (Cal. Ct. App. July 11, 2025) .................... 14, 15

*Brooks v. WarnerMedia Direct, LLC*,
2024 WL 3330305 (S.D.N.Y. July 8, 2024) .................................. 32

*Browden v. CJ Berry Well Services Management, LLC*,
2026 WL 381010 (E.D. Cal. Feb. 11, 2026) ...................................... 9

*Bruni v. Didion*,
160 Cal.App.4th 1272 (2008) ............................................................ 7

*Caimano v. H&R Block*,
2024 WL 3295589 (E.D. Pa. July 3, 2024) ............................. 13, 21

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ...................................................... 5, 6

*Circuit City Stores, Inc. v. Mantor*,
335 F.3d 1101 (9th Cir. 2003) ........................................................... 6

*Cluck v. GEO Secure Services, LLC*,
122 Cal.App.5th 249 (2026) ............................................................... 8

*Cordero v. Coinbase, Inc.*,
2025 WL 2223495 (N.D. Cal. Aug. 5, 2025) .................................. 36

*Diaz v. T-Mobile USA, Inc.*,
2026 WL 495233 (E.D. Cal. Feb. 20, 2026) .................................... 31

*Edwards v. Chartwell Staffing Services, Inc.*,
2017 WL 10574360 (C.D. Cal. May 30, 2017) .................................. 9

*Epic Systems Corp. v. Lewis*,
584 U.S. 497 (2018) .............................................................. 25

*Gentry v. Superior Court*,
165 P.3d 556 (Cal. 2007) .......................................................... 9

*Gustin v. Club Demonstration Services, Inc.*,
2026 WL 1948873 (E.D. Cal. July 6, 2026) .................................... 33

*Harper v. Ultimo*,
113 Cal.App.4th 1402 (2003) ...................................................... 7

*Haydon v. Elegance at Dublin*,
97 Cal.App.5th 1280 (2023) ................................................... 7, 17

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ........................................... 33, 34, 35

*Hoffman v. Citibank (South Dakota), N.A.*,
546 F.3d 1078 (9th Cir. 2008) .................................................... 7

*Hunt v. Meta Platforms, Inc.*,
729 F. Supp. 3d 964 (N.D. Cal. 2024) ........................................... 12

*Jones v. Starz Entertainment, LLC*,
129 F.4th 1176 (9th Cir. 2025) .......................................... 23, 35, 36

*Jones-Mixon v. Bloomingdale's, Inc.*,
2014 WL 2736020 (N.D. Cal. June 11, 2014) .................................. 9

*Marquez v. Adobe, Inc.*,
2026 WL 2603998 (N.D. Cal. Sept. 2, 2026) ............................... 9, 12

*Mohamed v. Uber Technologies, Inc.*,
848 F.3d 1201 (9th Cir. 2016) ............................................. *passim*

*Murphy v. HRB Green Resources, LLC*,
2016 WL 11527027 (N.D. Cal. Oct. 14, 2016) .......... 12

*O'Dell v. Aya Healthcare Services, Inc.*,
171 F.4th 1173 (9th Cir. 2026) .......... 35

*O'Malley v. Williams-Sonoma, Inc.*,
2026 WL 2640697 (N.D. Cal. Sept. 8, 2026) .......... 33

*OTO, L.L.C. v. Kho*,
447 P.3d 680 (Cal. 2019) .......... 18

*Pabon v. HRB Digital LLC*,
2025 WL 2254008 (E.D.N.Y. Aug. 7, 2025) .......... 13

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. Aug. 27, 2025) .......... 16, 33

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) .......... 32

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 6, 30

*Rivera v. Uniqlo California, LLC*,
2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) .......... 8

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) .......... 16

*Ruiz v. CarMax Auto Superstores, Inc.*,
2024 WL 1136332 (C.D. Cal. Jan. 18, 2024) .......... 31

*Sanchez v. Valencia Holding Co.*,
353 P.3d 741 (Cal. 2015) .......... 19

*Singh v. Uber Technologies, Inc.*,
67 F.4th 550 (3d Cir. 2023) .......... 12

*Swain v. LaserAway Medical Group, Inc.*,
57 Cal.App.5th 59 (2020) .......... 7

## RULES

Fed. R. Civ. P. 16.1(b)(3) .......................................................................... 26

## OTHER AUTHORITIES

https://www.jamsadr.com/mass-arbitration-procedures ........................ 30

# INTRODUCTION

Plaintiffs' brief confirms that the district court erred in refusing to compel arbitration.

To begin with, Plaintiffs' arbitration agreements aren't procedurally unconscionable under this Court's longstanding precedent, including *Mohamed v. Uber Technologies*, *Inc.*, 848 F.3d 1201 (9th Cir. 2016). Plaintiffs had a meaningful right to opt out—presented more conspicuously and exercised more easily than the one upheld in *Mohamed*. Plaintiffs argue that *Mohamed* should be limited or abandoned, but it remains binding and requires rejection of Plaintiffs' procedural unconscionability arguments. That's reason enough to reverse.

But Plaintiffs also failed to prove substantive unconscionability. They say the orderly staging process for hearing mass claims takes too long. Yet they concede that, when plaintiffs' counsel bring thousands of arbitrations, sequencing is inevitable—with or without staging procedures. That's because (just like courts) arbitration providers cannot resolve thousands of individual cases simultaneously. Ans. Br. 26. So Plaintiffs' real objection is that arbitration must proceed individually

rather than class-wide. But the Federal Arbitration Act and controlling Supreme Court precedent preempt that basis for asserting unconscionability.

Plaintiffs pivot to say their problem is not that thousands of the claims can't all be heard at once; instead, it's that their counsel can't "*fil[e]* their cases" all at once. *Id.* Plaintiffs say getting arbitrations on file is needed to toll the statute of limitations. But the plain language of the contract provides for tolling prior to filing, and all of the claims brought by Plaintiffs' counsel are already being tolled.

The real reason why Plaintiffs' counsel want the ability to *file* all the claims immediately is that filing triggers much larger upfront fees assessed by the arbitration forum. The greater the fees, the greater counsel's settlement leverage. Opening Br. 50, 58-61; Chamber Br. 11-13. And the desire to maximize leverage frequently leads mass-arbitration lawyers to assert frivolous or dubious claims—exactly what happened here. Tellingly, Plaintiffs don't seriously dispute that their own counsel failed to investigate their claimants adequately—nor do they plausibly deny that nearly 40 percent of those claims rest on false allegations.

Addressing this reality, staging procedures create an orderly process to facilitate the resolution of mass claims, as the results of arbitrations in initial stages lead to informed settlements of the remaining cases. There is nothing unconscionable about a process that allows cases to be resolved based on their merits rather than hydraulic pressure to settle based on arbitral fees.

## ARGUMENT

### I. Plaintiffs Failed To Meet Their Burden Of Demonstrating That The Arbitration Agreement Is Unconscionable.

#### A. Plaintiffs did not demonstrate procedural unconscionability.

It's undisputed that each year Plaintiffs signed up for online tax filing services, they had 30 days to opt out of arbitration or of revisions to prior arbitration agreements. 2-ER-207. Neither Plaintiff did so. Under *Mohamed*, that opt-out right forecloses their procedural unconscionability challenge. 848 F.3d at 1210-11.

Plaintiffs resist *Mohamed*, arguing (1) it applies only to the adhesion prong of procedural unconscionability; (2) it's no longer good law; and (3) surprise and oppression make the agreement unconscionable despite *Mohamed*. They're wrong on all three counts.

### 1. *Mohamed* is dispositive and requires rejection of Plaintiffs' procedural unconscionability arguments.

**a.** Under *Mohamed* and the cases it reaffirmed, a meaningful opt-out right precludes procedural unconscionability. Opening Br. 25-37. That's because there's no "absence of meaningful choice"—the touchstone of procedural unconscionability (*Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016))—when a consumer can keep the service but freely reject the challenged term. Opening Br. 25-26; Chamber Br. 6-7.

Like the district court, Plaintiffs insist *Mohamed*'s holding is limited to whether a contract is adhesive. Ans. Br. 50-59. That's incorrect: *Mohamed* held that Uber's opt-out provisions defeated procedural unconscionability *altogether*. The Court discussed all aspects of procedural unconscionability, including "oppression and surprise," and then concluded that the relevant opt-out rights were "meaningful," rejecting arguments that the opt-out rights were too "burdensome" or "buried in the agreement." *Mohamed*, 848 F.3d at 1211-12. For that reason alone, the "agreements were not procedurally unconscionable." *Id.*; *see also* Opening Br. 28-29 & n.5 (collecting cases following *Mohamed* in treating a meaningful opt-out right as dispositive).

Plaintiffs say H&R Block concedes that declaring a contract adhesive is merely "the easiest way to establish procedural unconscionability." Ans. Br. 51. Not so. H&R Block's point in stating that, under *Mohamed*, "a contract term is generally not procedurally unconscionable" when it's not adhesive (Opening Br. 25), just reflects that the opt-out right must be meaningful, so a party has a real choice to reject the contract term (like the choice prospective Uber drivers had in *Mohamed* and Plaintiffs had here).[1]

**b.** Other decisions confirm a meaningful opt-out right is dispositive. Plaintiffs say *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), "recognized that a non-adhesive contract can be procedurally unconscionable." Ans. Br. 52. But *Ahmed*'s observation that the arbitration agreement there "also lacked any other indicia of procedural unconscionability" was made in support of its holding that the plaintiff "was given a meaningful opportunity to opt out of the arbitration

---

[1] Plaintiffs' selective quotation of the hearing transcript (Ans. Br. 51-52) is unfortunate; notably, it omits counsel's explanation that the "something additional" that could support procedural unconscionability would be circumstances undermining the opt-out right itself, like "ticking time pressure to opt out" or an "illusor[y]" opt-out right. 2-ER-51-52.

program." 283 F.3d at 1199-1200. Plaintiffs have no answer to *Ahmed*'s bottom-line holding that the opt-out opportunity resolved "the procedural unconscionability prong." *Id.* at 1200.

*Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101 (9th Cir. 2003) (cited at Ans. Br. 52) also supports H&R Block's position. There, the Court explained that *Ahmed* didn't apply only because Circuit City's management "impliedly and expressly pressured Mantor not to opt-out, and even resorted to threatening his job outright should Mantor exercise his putative 'right' to opt-out." *Id.* at 1106. The plaintiff thus did not have "a *meaningful* opportunity to opt-out." *Id.* Here, as in *Mohamed* and *Ahmed*, Plaintiffs have never claimed, much less demonstrated, that they faced pressure to refrain from opting out.

Like the district court, Plaintiffs say *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), permits courts to conclude that a non-adhesive arbitration agreement is procedurally unconscionable. Ans. Br. 58. But they ignore that in *Poublon* there was *no opt-out right at all* (Opening Br. 35-36)—and thus the Court didn't address whether a meaningful opt-out right negates procedural unconscionability.

Finally, Plaintiffs cite *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078 (9th Cir. 2008). Ans. Br. 52-53. But *Hoffman* similarly recognized that a "meaningful opportunity to opt out" is dispositive of procedural unconscionability under California law. *Id.* at 1085. The Court remanded for application of that standard because the district court had instead applied South Dakota law. *Id.* at 1082-83.

In sum, this Court has uniformly held that a meaningful opt-out right is dispositive.

**c.** The other decisions Plaintiffs cite don't support their reading of *Mohamed*. *Harper v. Ultimo*, 113 Cal.App.4th 1402, 1409 (2003) and *Bruni v. Didion*, 160 Cal.App.4th 1272, 1289 (2008) (cited at Ans. Br. 51) both pre-date *Mohamed*, and neither involved an opt-out provision, so they are irrelevant here.

Plaintiffs argue H&R Block's reading of *Mohamed* cannot be squared with *Haydon v. Elegance at Dublin*, 97 Cal.App.5th 1280 (2023), and *Swain v. LaserAway Medical Group, Inc.*, 57 Cal.App.5th 59 (2020). Ans. Br. 53-54. But both cases involved circumstances undermining the viability of the opt-out right itself. Opening Br. 33-35. Plaintiffs try to brush aside these critical distinctions as mere "factual differences" (Ans.

Br. 62), but they bear directly on application of the governing legal standard—which is whether there is a meaningful "opportunity to opt out." *Mohamed*, 848 F.3d at 1211.

Next, Plaintiffs accuse H&R Block of ignoring *Cluck v. GEO Secure Services, LLC*, 122 Cal.App.5th 249 (2026). Ans. Br. 53, 60-61. The accusation is baffling: *Cluck* hadn't been decided when H&R Block filed its opening brief. It's also inapposite. Citing *Swain*, the court concluded the opt-out right was too "cumbersome" in the context of "acute economic pressure," including because the plaintiff needed an employee ID number to opt out but didn't have one when he signed the agreement, and so he had to "wait to receive" the ID number, "draft an opt out 'statement,'" and then mail or fax it. 122 Cal.App.5th at 256-57. Plaintiffs faced no such hurdles here; they could immediately send an online opt-out form based on information already in their possession. 2-ER-199; Opening Br. 7-8.

**d.** Plaintiffs insist district courts "have found procedural unconscionability where there was an opt out process." Ans. Br. 57. But those decisions likewise involved defective opt-out processes.

- In *Rivera v. Uniqlo California, LLC*, 2017 WL 6539016, at *8 (C.D. Cal. Sept. 8, 2017), the plaintiff was *never given* a copy of the arbitration agreement, so had no meaningful opportunity to later exercise the opt-out right.

- The agreement in *Edwards v. Chartwell Staffing Services, Inc.*, 2017 WL 10574360, at *4 (C.D. Cal. May 30, 2017), didn't explain the purported opt-out right at all or how to opt out.

- The court in *Browden v. CJ Berry Well Services Management, LLC*, 2026 WL 381010 (E.D. Cal. Feb. 11, 2026), observed in dictum that a clause "was procedurally unconscionable only to a minimal degree, *if at all*," in light of the opt-out right. *Id.* at *5 (emphasis added). The court didn't decide the issue because the court held that the clause wasn't substantively unconscionable.

- *Marquez v. Adobe, Inc.*, 2026 WL 2603998, at *9 (N.D. Cal. Sept. 2, 2026), recognized *Mohamed* is good law but held that the opt-out provision was ambiguous. Here, it's undisputed that there's no ambiguity in H&R Block's opt-out provision.[2]

### 2. The opt-out right here easily satisfies *Mohamed*.

*Mohamed* makes clear that an opt-out right is meaningful—and therefore dispositive of procedural unconscionability—*even when*, *unlike here*, the opt-out provision is "buried in the agreement" or "hidden in a prolix printed form." 848 F.3d at 1210-11. Plaintiffs can't quarrel with H&R Block's clear presentation of the opt-out provision. It is flagged on the first page of the OSA in bold capital letters; bolded and enclosed in a separate box titled "Arbitration Opt Out"; and provides clear instructions

---

[2] *Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at *8 (N.D. Cal. June 11, 2014), was decided before *Mohamed* and instead treated *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007), as permitting a determination of procedural unconscionability even when there is a meaningful opt-out right. But that's the same error that led to reversal in *Mohamed*.

on how to opt out by online form or by mail. Opening Br. 7-8 (screenshot); 2-ER-199.

**a.** Plaintiffs instead argue they lacked a meaningful opportunity to opt out because, they say, the agreement failed "to explain candidly" how the staging procedures work. Ans. Br. 47-48. But *Mohamed* already rejected a materially similar argument. The district court in *Mohamed* held a delegation provision was procedurally unconscionable, despite the opt out, because the provision did not adequately explain that "'drivers may be required to pay considerable forum fees to arbitrate arbitrability.'" 848 F.3d at 1210. But this Court reversed, rejecting that manufactured requirement for additional explanation of the contract term.

Plaintiffs' argument also fails on its own terms. The staging procedures

- are set off in a separate section with the descriptive heading "**Arbitration of similar claims**";
- state upfront that they apply when the "same or coordinated counsel" submit 25 or more notices of dispute raising similar claims;
- describe clearly how the arbitrations will be resolved in stages; and

- expressly disclose to consumers that the staging process "may delay the arbitration of your claim."

2-ER-201-202. So, like the district court, Plaintiffs are impermissibly attacking the *substance* of those procedures as a hook for procedural unconscionability. Opening Br. 44. Plaintiffs also say that stating that "arbitrators are encouraged" to resolve staged arbitrations "within 120 days of appointment" (2-ER-201) misleads consumers about the speed of the process. But that provision does not guarantee resolution within that time frame. And to the extent the staged arbitrations that Plaintiffs reference matter, H&R Block in fact encouraged the arbitrators to decide those arbitrations quickly, and any extensions were to accommodate settlement discussions or the schedules of *claimants*' counsel. Opening Br. 43, 56-57.

**b.** Plaintiffs are presented with and agree to a new OSA each year they sign up to obtain tax filing services, but they nonetheless object that avoiding arbitration would require opting out each year. Ans. Br. 61-62. In fact, just like the Uber agreement in *Mohamed*, the OSA requires H&R Block to honor timely opt outs, which makes the opt-out right not illusory. Opening Br. 36-37; *Mohamed*, 848 F.3d at 1211. Nor, remarkably, do Plaintiffs acknowledge the Third Circuit's rejection of their argument in

a decision that relied on *Mohamed*. Opening Br. 37 (discussing *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 564-65 (3d Cir. 2023)). Another court applying *Mohamed* had little difficulty concluding—in a case against a different H&R Block entity—that any "burden imposed by the requirement that an employee opt out every single year does not render the provision illusory." *Murphy v. HRB Green Resources, LLC*, 2016 WL 11527027, at *5 (N.D. Cal. Oct. 14, 2016).[3]

Plaintiffs also assert that, to avoid the staging procedures, "Plaintiffs would have had to opt out every year since 2017." Ans. Br. 50, 66. That's false. Those procedures were first introduced in 2021; Plaintiffs could have opted out of them beginning in 2021. 2-ER-89; Opening Br. 36 n.7.

**c.** Plaintiffs have no persuasive response to the decisions holding that the opt-out right in the OSA defeats procedural unconscionability—decisions the district court ignored. Opening Br. 29-30 (citing *Hunt v.*

---

[3] Plaintiffs again cite *Marquez*, which relied on the district court's opinion here in holding that a requirement to opt out of revisions to the arbitration agreement makes the opt-out right ineffective. 2026 WL 2603998, at *9. But, like the district court here, the court neither mentioned the Third Circuit's *Singh* decision nor explained how its holding is consistent with *Mohamed*.

*Meta Platforms, Inc.*, 729 F. Supp. 3d 964, 970 (N.D. Cal. 2024); *Pabon v. HRB Digital LLC*, 2025 WL 2254008, at *4 (E.D.N.Y. Aug. 7, 2025); *Caimano v. H&R Block*, 2024 WL 3295589, at *13 (E.D. Pa. July 3, 2024)).

Plaintiffs say *Hunt* is distinguishable because the plaintiff only argued adhesion. Ans. Br. 56. But the *Hunt* court followed *Mohamed* in holding that the OSA's meaningful opt-out right negates procedural unconscionability altogether.

Plaintiffs brush aside *Pabon* and *Caimano* because they involved New York and Pennsylvania law. Ans. Br. 56 n.4. But procedural unconscionability under those states' law (just like California law) focuses on whether a party faced an "absence of meaningful choice" in the contract formation process. *Pabon*, 2025 WL 2254008, at *4; *accord Caimano*, 2024 WL 3295589, at *11. A viable right to reject a contract term (or revisions to that term) is meaningful choice in all three states.

#### 3. *Mohamed* remains good law.

Unable to convincingly distinguish *Mohamed*, Plaintiffs contend it's abrogated. Ans. Br. 59-63. Plaintiffs rely on *Gentry*, but that 2007 decision isn't a "*subsequent* indication from the California courts" that

*Mohamed* misinterpreted California law in 2016. *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136-37 (9th Cir. 2024) (emphasis added); Opening Br. 31-32. Plaintiffs' contention that *Gentry* entitles courts to disregard meaningful opt-out rights is especially troubling because it reflects the precise error that led this Court to reverse the (same) district judge in *Mohamed*.

Nor do *Cluck*, *Swain*, or *Haydon* supply convincing evidence *Mohamed* is incorrect; as explained above (at 7-8; Opening Br. 33-35), those decisions all involved settings in which the opt-out right was not meaningful, and thus *Mohamed* was readily distinguishable.

Plaintiffs also cite *Booker v. Charter Communications, LLC*, 2025 WL 1910954 (Cal. Ct. App. July 11, 2025), and other unpublished decisions disagreeing with *Mohamed*. Ans. Br. 54. But unpublished decisions that can't even be cited in California courts aren't the clear change in California law necessary for this Court to set aside its own binding precedent. Opening Br. 33 & n.6. *Booker* is also distinguishable. The court noted the increased economic pressure of the employment setting, employment materials that "focused largely on the benefits of arbitration," and an opt-out mechanism that "was not made readily

available." 2025 WL 1910954, at *7. This case presents none of those circumstances.

#### 4. Plaintiffs' assertions of surprise or oppression are meritless.

The Court should not sidestep *Mohamed* and look past the meaningful opt-out right—but if it does, Plaintiffs still failed to show procedural unconscionability because, contrary to the district court's ruling, they cannot show surprise or oppression. Opening Br. 38-46.

##### *a. Plaintiffs fail to show surprise.*

Plaintiffs say the arbitration agreement was surprising because it created a "false sense of security to consumers regarding both delay and tolling." Ans. Br. 48-49, 63. But there was nothing "false" about the OSA's tolling guarantee: the statutes of limitations for the claims in the notices that Plaintiffs' counsel submitted *are* tolled. *See* pages 20-21, *infra*. And the OSA clearly discloses the staging process and the potential for delay. *See* pages 10-11, *supra*.

Plaintiffs' insistence that only a "mass-arbitration specialist" would understand the staging procedures (Ans. Br. 63) is just another way of saying that virtually all modern consumer arbitration provisions are procedurally unconscionable. Almost all such clauses either include

provisions to address the now-widespread mass-arbitration phenomenon or incorporate the rules for mass arbitrations issued by arbitration providers like the AAA or JAMS. Opening Br. 40-42.

Attempting to avoid that untenable conclusion, Plaintiffs repeat the district court's unsupported assertion that the staging procedures in the OSA are "complicated and unusual." Ans. Br. 65 (quoting 1-ER-12). They're not; mass arbitration procedures are now commonplace in consumer contracts. And the contractual staging procedures are more straightforward, for example, than the intricacies of MDL practice in court—the closest judicial analogue to mass arbitration. Plaintiffs' agreements are clearer than ones that don't expressly say how mass arbitrations will be resolved and therefore require consumers to separately review the incorporated arbitration providers' rules for dealing with the claims.[4]

---

[4] Plaintiffs cite (Ans. Br. 65) *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025), but the basis for surprise in *Pandolfi* was the interaction between delegation and the staging procedures that resulted in staging twice over—staging of enforceability questions on top of staging of the merits. Here, enforceability issues remain for a court to decide.

Plaintiffs also point to *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1091-92 (9th Cir. 2024) (Ans. Br. 65), but *Ronderos* involved a fee-shifting

*(cont'd)*

Next, Plaintiffs don't seriously defend the district court's conclusion of surprise—notwithstanding the court's acknowledgment that "the arbitration clause is well flagged" (1-ER-11)—based on the location of the arbitration provision. Instead, Plaintiffs try to downplay the district court's remark as merely one factor that "contributed to the surprise" (Ans. Br. 64), but there was *no* surprise in the way H&R Block disclosed the arbitration provision, including by flagging it on the OSA's first page. Plaintiffs' reliance on *Haydon* (*id.*) underscores the weakness of their position. There, the arbitration clause was buried among over 20 miscellaneous provisions, 97 Cal.App.5th at 1288-89; Opening Br. 34, and wasn't disclosed on the first page.

*b. Plaintiffs fail to show oppression.*

Plaintiffs' assertions of oppression fare no better.

Plaintiffs take issue (Ans. Br. 66) with H&R Block's *post-formation* objections to the failure by Plaintiffs' counsel to comply with the OSA's requirement that each claimant's notice of dispute be sent by "mail" (2-

---

provision combined with an ambiguous choice-of-law clause that made it unclear—even to a lawyer—which state's law on fee-shifting would apply. There is no ambiguity here in how the staging procedures operate.

ER-199).[5] Their characterization of those objections as improper "procedural hurdles" (Ans. Br. 66) is baseless: the OSA's language is clear, and in all events H&R Block agreed to accept service of the electronic notices. Opening Br. 12; 2-ER-70. More fundamentally, the back-and-forth over the notices doesn't bear on what the contract says or the circumstances of "the contract's formation"—the relevant inquiry for *procedural* unconscionability. *OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019).

Finally, the record contradicts Plaintiffs' contention that they "were pressured into signing" the OSA based "on looming tax filing deadlines." Ans. Br. 46. Assertions by counsel aren't evidence of pressure. In fact, Plaintiffs agreed to multiple OSAs since 2017 (2-ER-174-176)—so the notion that contract terms applied to tax filing services wasn't new to them. And, as Plaintiffs elsewhere concede (Ans. Br. 66), they agreed to the operative OSA in *January* 2024—months before the April 15 tax filing deadline. Given that undisputed fact, Plaintiffs resort to the

---

[5] Plaintiffs' assertion that the mailing requirement is "not stated in the OSA" (Ans. Br. 23) is simply not true. The OSA states: "A party who intends to seek arbitration must first *mail* a written Notice of Dispute ('Notice') to the other party." 2-ER-199 (emphasis added).

evidence-free assertion (*id.*) that *any* agreement presented during the months-long "tax season" is categorically oppressive. That proposition would effectively declare all contracts for tax filing services per se oppressive—something no court has ever held. And Plaintiffs ignore an even bigger problem with their position: the 30-day opt-out period *decouples* the arbitration decision from any tax filing deadline. Consumers can use H&R Block's services to file their taxes and still take the full 30 days to decide whether to opt out. Opening Br. 45.

### B. Plaintiffs' substantive unconscionability arguments fail.

Plaintiffs rely heavily on what they characterize as uncertainty over tolling in asserting that the staging procedures in the OSA are substantively unconscionable. But the OSA makes clear that the claims *are* tolled, and once Plaintiffs' misplaced statute-of-limitations concerns are set aside, Plaintiffs can't demonstrate that it is "overly harsh" or "unduly oppressive" (*Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 748-49 (Cal. 2015)) to agree to an MDL-like process that promotes orderly, merits-based resolution of large numbers of arbitrations.

### 1. The tolling provision in the OSA is enforceable and tolls Plaintiffs' claims.

The text of the OSA forecloses the district court's conclusion that tolling is "ambiguous, subjective, and asymmetrical." 1-ER-22; Opening Br. 64-67. Section 11.2 of the OSA sets forth the four criteria for a "fully complete" notice that triggers tolling. 2-ER-200. The contract expressly calls for a court to resolve disputes over whether a claimant has met those objective criteria (and therefore whether a notice is complete). 2-ER-200. And the tolling provision applies equally to both parties. 2-ER-200.

The OSA's text thus refutes Plaintiffs' assertions (Ans. Br. 24-25) that only H&R Block "can assert limitations defenses," "challenge[] tolling," or go to court to resolve compliance with the OSA's notice of dispute requirement. Plaintiffs say (*id.* at 23, 29) only H&R Block would seek to enjoin arbitrations. But H&R Block is entitled to pursue arbitrations under the agreement as well, and a consumer might seek to enjoin an individual arbitration H&R Block might file—making the right mutual even assuming "one side is, as a practical matter, more likely to make use of it." *Baltazar*, 367 P.3d at 13-14 & n.4 (upholding clause allowing both parties to seek provisional relief in court).

In all events, there was no need for Plaintiffs to go to court here to determine whether they are entitled to tolling. Their assertion (Ans. Br. 23, 28) that H&R Block has "refused to acknowledge the Notices" submitted by their counsel as "fully complete" and subject to tolling is groundless. H&R Block agreed to accept service of the notices and considers the claims in those notices tolled. 2-ER-70; Opening Br. 12, 50. And the standard reservation of rights language used by *both sides*—which said nothing about tolling in particular—did not affect whether tolling is available under the OSA's objective criteria or the reasonableness of the contract term at the time the contract was formed. Opening Br. 66. For the avoidance of any conceivable doubt, H&R Block is not challenging the availability of tolling for the Zimmerman Reed notices it accepted.

More fundamentally, though, the objective criteria laid out in the agreement are easy to satisfy, so "no consumer is at risk of losing any claims as a result of this [tolling] provision." *Caimano*, 2024 WL 3295589, at *12. The same is true of the claimants here.

### 2. Plaintiffs' other challenges to the staging procedures are meritless.

Plaintiffs also fail to meet their burden to show the staging procedures are unfair or are an unreasonable response to real-world abuses of the arbitration process—including those exemplified by this very case.

#### *a. Plaintiffs' focus on filing rather than resolution confirms their challenges are aimed at imposing fee-based pressure.*

**i.** Plaintiffs insist the staging procedures unfairly "[d]elay[] the ability to vindicate a legal claim." Ans. Br. 22. Yet they concede there would be sequencing with or without the staging procedures. They complain that H&R Block is "insist[ing] upon individual arbitration" over "[c]lass actions" (*id.* at 38), but *AT&T Mobility LLC v. Concepcion* holds that a court cannot use a preference for class actions to invalidate an arbitration agreement as unconscionable. 563 U.S. 333, 351 (2011); Opening Br. 74-75.

At any rate, the staging procedures do not result in unfair delay compared to any real-world alternative for resolving large numbers of individual cases. Thousands of separate individual arbitrations are never arbitrated on the merits all at once. Plaintiffs haven't provided a single

example of a mass arbitration in which thousands of cases were individually arbitrated to final award, much less simultaneously. That accords with common sense, which is why this Court previously noted that no arbitration provider or court "would tolerate having to try 7,300" similar cases at once. *Jones v. Starz Entertainment, LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025). Plaintiffs assert "[t]here was no evidence below that AAA is 'inherently constrained' in how many arbitrations it can manage" (Ans. Br. 33 (quoting 1-ER-20)), but it was their burden to prove unconscionability, and (unsurprisingly) Plaintiffs never demonstrated how the arbitrations could realistically proceed all at once absent the staging procedures.

Nor could they have: Plaintiffs ignore data from the AAA showing that less than 1% of filed consumer mass arbitrations—and thus an even smaller percentage of threatened arbitrations—are resolved by a final award on the merits. Opening Br. 55-56; Chamber Br. 16. MDLs are no different: virtually all of the thousands of cases in MDLs end without a remand for trial, because the parties usually reach an informed settlement based on the results of test cases. Opening Br. 48-49; Chamber Br. 20.

**ii.** Plaintiffs reveal what their argument is really about when they acknowledge arbitration providers like AAA have "capacity constraints" and "cannot *resolve* thousands of cases simultaneously." Ans. Br. 26. The heart of Plaintiffs' challenge boils down to their insistence—repeated over a dozen times throughout their brief—that the staging procedures reflect an unconscionable departure from MDL practice, or arbitration under AAA rules, by preventing en masse *filing* of arbitration demands that would inevitably be sequenced for *adjudication* anyway. *Id.*

Apart from their misplaced concerns about tolling, Plaintiffs offer no practical difference between an orderly queue for *filing* demands and one for *adjudicating* filed demands. That is because discussing the only such difference—the timing of arbitration *fees*—would reveal their counsel's goal of obtaining fee-based settlement leverage untethered to the merits. Opening Br. 58-61; Chamber Br. 11-13.

*b. Plaintiffs cannot meaningfully distinguish how courts resolve individual claims in MDLs.*

Plaintiffs' other efforts to distinguish between the staging procedures and MDL practice fail. They note (Ans. Br. 33) that MDLs "do not prohibit class actions," but an application of unconscionability doctrine that penalizes a company for choosing individual arbitration

over class actions is squarely foreclosed by *Concepcion*, 563 U.S. at 351. After all, the FAA "seems to protect pretty absolutely" agreements to arbitrate on an individual basis. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018).

Plaintiffs protest (Ans. Br. 34) that the staging procedures promote "merits-based *settlement*" rather than "merits-based *adjudication*" of every similar claim among thousands. But MDLs are no different: the cases don't all go to trial, because they can't. Instead, MDL courts have developed the concept of staged bellwether trials to promote merits-based settlements. Opening Br. 47-48; Chamber Br. 14.

Plaintiffs further fault H&R Block for not contractually requiring a mediation after each round of staged proceedings. Ans. Br. 34. But mediation or other settlement discussions naturally occur after a reasonable number of test cases, because an informed merits-based resolution is far more efficient than trying similar claims hundreds or thousands of times over.[6] Indeed, the recently-adopted rule applicable to

---

[6] Mediations commonly occur in mass arbitrations—including with Plaintiffs' counsel here and other law firms bringing mass arbitrations against H&R Block. 2-ER-72-73; 2-ER-78.

MDLs doesn't *mandate* a global mediation after test cases either. *Cf.* Fed. R. Civ. P. 16.1(b)(3) (requiring parties only to report their views on "whether the court should consider any measures to facilitate resolving some or all actions before the court").

Finally, Plaintiffs say MDLs don't "interfere with hiring counsel" or "prohibit counsel from coordinating." Ans. Br. 33. But neither do the staging procedures. A claimant can retain any counsel he or she wishes. What Plaintiffs mean is that their lawyers' mass-arbitration model doesn't allow those lawyers to avoid the staging procedures, because the procedures are triggered when the claimants are represented by the "same or coordinated counsel." 1-ER-19. That's the same trigger the AAA uses for its mass arbitration rules. Opening Br. 62. And Plaintiffs concede (Ans. Br. 33-37) both that it's not unconscionable to arbitrate under the AAA's default rules and that MDL courts appoint lead counsel to achieve similar efficiencies. Plaintiffs also ignore that the same district court as here faulted a company for *not* limiting a staging process to claims brought by coordinated counsel. Chamber Br. 21-22 (citation omitted). Put simply, Plaintiffs' true concern is with staging itself, not with claimants' choice of counsel.

c. *Plaintiffs cannot downplay the fee-based abuses the staging procedures address.*

California law requires courts to consider the practical realities and commercial justification for including a contract term. Opening Br. 58. Yet the district court said not one word about the benefit of staging procedures in making it practical to resolve mass arbitrations based on the merits.

Plaintiffs lack any meaningful response to H&R Block's and *amici*'s showing that the mass-arbitration model depends on plaintiffs' counsel shirking their obligations to undertake a reasonable investigation of claims. The incentive to maximize settlement leverage based on per-case arbitration fees frequently leads, as it did here, to troubling shortcuts in recruiting claimants and asserting claims. Opening Br. 58-61; Chamber Br. 11-13.

Notably, Plaintiffs don't seriously dispute the glaring deficiencies in the claimant pool their counsel assembled. Their counsel expresses "regret[]" for "overlooking" the clearest example of their failures. Ans. Br. 43-44. But that wasn't a one-off mistake among thousands of claims; it was the inevitable result of their flawed process for recruiting claimants and asserting claims without undertaking an investigation consistent

with professional standards. That's why Plaintiffs' counsel also ended up submitting over a *thousand* improper notices on behalf of claimants who

- were never H&R Block clients;
- never used H&R Block's online tax filing services;
- never did so during the relevant time frame for the alleged online privacy violations; or
- purport to be represented by other lawyers (a group that includes both Plaintiffs).

Opening Br. 11-13.

Instead, Plaintiffs blame H&R Block for not helping their counsel avoid asserting frivolous claims. That position flips the parties' burdens and professional responsibilities on their head. And it only confirms why it was commercially reasonable for H&R Block to take appropriate steps to address the fee-based abuses that have run rampant in mass arbitrations. In an impressive feat of gymnastics, Plaintiffs accuse H&R Block of not using the "informal settlement period" under the OSA to educate their counsel about their own vetting failures. Ans. Br. 43. But they conceal that it was *their counsel* who refused H&R Block's request

for informal settlement conferences at which those claimant-specific issues could have been raised. 2-ER-70-73.

Finally, Plaintiffs' assertion that H&R Block has not yet faced "fee-based abuses" of the arbitration process because their counsel so far have filed only "20 arbitration demands" (Ans. Br. 44, 72) makes no sense. The broader commercial realities H&R Block faced at the time of contract formation is the standard for assessing the fairness of the contract's terms. Opening Br. 58.

In any event, the record reflects that Plaintiffs' counsel have threatened to bring over 2,600 arbitrations—around 40 percent of which rest on false allegations. Opening Br. 12-14. The millions of dollars of fee pressure from those *threatened* arbitrations—and similar arbitrations threatened by other firms (also with many invalid claims)—is what's relevant.

For that reason, Plaintiffs' assertion that staging procedures "artificially depress[]" the settlement value of a mass arbitration (Ans. Br. 34) only makes sense if Plaintiffs' counsel are entitled to impose fee pressure based on large numbers of threatened claims (many of which

are indisputably frivolous). Unconscionability doctrine does not protect fee-based coercion.

*d. Arbitration providers' rules do not make the staging procedures substantively unfair.*

Plaintiffs argue the AAA and JAMS rules and fee schedules for mass arbitrations make the staging procedures not only unnecessary, but unconscionably harsh. Ans. Br. 34-38. That's wrong for at least two reasons.[7]

*First*, no case holds that the providers' rules are a ceiling on what can be done to manage mass arbitrations and address their abuses. The question is whether the procedures are so "overly harsh" as to be substantively unconscionable. *Poublon*, 846 F.3d at 1261 (citation omitted). Supplementing arbitration providers' rules with additional protections falls far short of that standard.

*Second*, even under the AAA's mass-arbitration fee schedule, a campaign of thousands of arbitrations imposes millions of dollars in

[7] JAMS didn't introduce its mass arbitration procedures until May 2024, months *after* the contracts in this case were formed. *See* https://www.jamsadr.com/mass-arbitration-procedures. So those procedures couldn't retroactively make the OSA's staging procedures unconscionable. Regardless, no court has held that it is unconscionable to choose AAA over JAMS.

upfront, non-refundable fees. Chamber Br. 11-12. Plaintiffs say arbitrator compensation shouldn't count (Ans. Br. 38)—admitting they will never actually pursue thousands of arbitrations on the merits—but per-case and arbitrator appointment fees alone total over $7 million for a (not-atypical) campaign of 10,000 claimants (Chamber Br. 11). And deposits for arbitrator compensation also have to be made all at once near the outset rather than as each case goes forward.

*e. Decisions upholding similar staging provisions are persuasive.*

**i.** Other courts have upheld similar staging procedures as a reasonable process for resolving large numbers of individual claims. Opening Br. 51-54.

Plaintiffs recognize (Ans. Br. 40) the parties in *Tubi, Inc. v. Keller Postman LLC* agreed to "bellwethers to inform settlement." That's because Judge Reyes *sua sponte* urged the parties to agree to staging—precisely because the court recognized that bellwethers are effective (as they ultimately were in *Tubi*) in moving large numbers of arbitrations towards resolution. Opening Br. 51.

Plaintiffs' primary response (Ans. Br. 40) to *Ruiz v. CarMax Auto Superstores, Inc.*, 2024 WL 1136332 (C.D. Cal. Jan. 18, 2024), and *Diaz*

*v. T-Mobile USA, Inc.*, 2026 WL 495233 (E.D. Cal. Feb. 20, 2026), is that they didn't involve statute-of-limitations issues. Neither does this case. Plaintiffs further say the staging provision in *Diaz* didn't stop claimants from filing demands. But when there is tolling—as here and in *Diaz*—that distinction affects only the timing of arbitration fees.

Plaintiffs argue (Ans. Br. 40-41) that the agreements at issue in *Brooks v. WarnerMedia Direct, LLC*, 2024 WL 3330305 (S.D.N.Y. July 8, 2024) and *Pilon v. Discovery Communications, LLC*, 769 F. Supp. 3d 273 (S.D.N.Y. 2025), allowed claimants to opt out of arbitration after a few rounds of cases. True, but a critical part of those courts' reasoning was that the agreements "toll[ed] the applicable statute of limitations as soon as a consumer files a [notice of dispute]" and thus did not extinguish the claims. *Brooks*, 2024 WL 3330305, at *17-18; *accord Pilon*, 769 F. Supp. 3d at 297.

**ii.** The cases Plaintiffs cite do not support their defense of the district court's substantive unconscionability ruling. Although this Court's unpublished *Pandolfi* decision was principally concerned about delegation, which presented unique concerns for staging not present here, Plaintiffs rely (Ans. Br. 39) on a portion of a single sentence in the

decision stating, without further elaboration, that the staging provision "on its own is substantively unconscionable." 2025 WL 2463742, at *2. Six words taken out of context in a non-binding memorandum disposition cannot bear the weight Plaintiffs place on them.

Plaintiffs cite (Ans. Br. 40) two recent district court decisions that follow the district court's reasoning here. *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697, at *7-8 (N.D. Cal. Sept. 8, 2026), *appeal filed*, No. 26-6148 (9th Cir. Sept. 22, 2026); *Gustin v. Club Demonstration Servs., Inc.*, 2026 WL 1948873, at *9-11 (E.D. Cal. July 6, 2026), *appeal filed*, No. 26-5036 (9th Cir. Aug. 6, 2026). Those decisions are wrong for the same reasons. And, as here, neither the courts nor the plaintiffs in those cases made any effort to compare staging to real-world alternatives for resolving large numbers of claims.

## II. Plaintiffs Cannot Avoid The FAA And Its Preemptive Effect.

If the district court correctly applied California law (it didn't), the FAA would preempt that law. Opening Br. 71-75.

Plaintiffs respond, relying on *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), that the FAA doesn't apply here, and so the arbitration provision is unenforceable under

California's otherwise-preempted *Discover Bank* rule. Ans. Br. 67-76. Plaintiffs also attempt to salvage the district court's ruling as an even-handed application of unconscionability doctrine. *Id.* They're wrong on both counts.

### A. *Heckman* doesn't apply.

*Heckman* has no bearing on H&R Block's arbitration agreement. Most notably, the agreement prohibits giving staged arbitrations preclusive effect on other arbitrations—rejecting the critical feature of the unusual New Era procedures that brought them outside the FAA's protection of individual arbitration. *Heckman*, 120 F.4th at 684; Opening Br. 68-69.

**1.** Plaintiffs concede H&R Block's arbitration agreement "differs from the New Era rules in *Heckman*." Ans. Br. 74. But Plaintiffs nonetheless assert that *Heckman*'s alternative holding did not turn on "the preclusive effect of the New Era bellwether proceedings" because preclusion was "not even mentioned in the majority analysis or the concurrence." *Id.*

Plaintiffs badly misread *Heckman*. The Court detailed the New Era procedures' use of *preclusive* bellwether proceedings—featuring that

characteristic in its substantive unconscionability ruling. 120 F.4th at 678-79, 684-85. The Court's alternative holding that the FAA doesn't apply then referred back to "this method of dispute resolution contemplated by New Era's Rules" and arbitrations that have broader "class-wide" or "aggregate" effect. *Id.* at 690. H&R Block's agreement rejects precisely any preclusive effect on non-parties.

**2.** This Court's opinions confirm the point. Plaintiffs ignore this Court's recent explanation that giving preclusive effect to arbitration awards is "anathema to the FAA" and "individualized, one-on-one proceedings." Opening Br. 69 (quoting *O'Dell v. Aya Healthcare Servs., Inc.*, 171 F.4th 1173, 1174 (9th Cir. 2026)).

Plaintiffs do address *Jones*, but they have no persuasive answer to its holding that *Heckman* turned on "the red flags associated with classwide arbitration"—especially the use of bellwether decisions "as precedents for all cases in the same batch." *Jones*, 129 F.4th at 1182. Plaintiffs instead say "*Jones* did not involve a *Discover Bank* argument." Ans. Br. 75. That's false. The plaintiff in *Jones* argued that a consolidated multi-party arbitration under the JAMS rules was inconsistent with the FAA, and that *Discover Bank* therefore applied. *See* Opening Br. 54-62,

*Jones v. Starz Entertainment, LLC*, No. 24-1645 (9th Cir. May 21, 2024); Reply Br. 32-34, *id.* (9th Cir. Sept. 11, 2024). The Court was unmoved, instead applying the FAA and explaining that consolidation under the JAMS rules did not "share[] even some of th[e] defects" of the New Era procedures. *Jones*, 129 F.4th at 1182-83.

**3.** Plaintiffs also cannot distinguish the numerous decisions limiting *Heckman* to its facts. Opening Br. 70-71. Plaintiffs argue those decisions didn't involve staging procedures. Ans. Br. 75-76. But that attempted factual distinction has nothing to do with those courts' *holdings* that *Heckman*'s FAA ruling applies only to "bellwether or representative proceedings that bind absent parties." *Cordero v. Coinbase, Inc.*, 2025 WL 2223495, at *4-5 (N.D. Cal. Aug. 5, 2025) (Breyer, J.).

### B. The FAA preempts the district court's substantive unconscionability holdings.

The district court's substantive unconscionability ruling is preempted by the FAA because it both targets arbitration agreements for invalidation and obstructs the FAA's purposes. Opening Br. 71-75.

Plaintiffs say the district court's ruling permissibly treats arbitral staging procedures differently from judicial MDL procedures because the

staging procedures don't allow all claims to be *filed* at once. Ans. Br. 71. But a rule that requires the unfettered ability to *file* unlimited arbitrations at once singles out arbitration agreements precisely because they require individual arbitration while guarding against documented fee-based abuses. *See* pages 27-30, *supra*. And Plaintiffs' concern about claims expiring without tolling (Ans. Br. 71) is misplaced for the reasons discussed above (at 20-21).

Finally, Plaintiffs cannot defend the district court's conclusion that the staging procedures are unconscionably one-sided under generally applicable law because they are likely to be triggered only by claims brought by consumers. Mass arbitrations, like class actions, are inherently one-sided, yet the FAA preempts a rule mandating the availability of class actions. *Concepcion*, 563 U.S. 333. And generally applicable California law does not preclude adopting reasonable procedures to address commercial realities faced by only one party. Opening Br. 58-63. The FAA prohibited the district court from departing from those principles to invalidate arbitration agreements.

## CONCLUSION

The Court should reverse the district court's order denying the motion to compel arbitration and remand with instructions to grant the motion.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Archis A. Parasharami*
Archis A. Parasharami
Daniel E. Jones
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-7160
archis.parasharami@skadden.com
daniel.jones@skadden.com

Stacey Gilman
BERKOWITZ OLIVER LLP
2600 Grand Boulevard
Suite 1200
Kansas City, MO 64108
Telephone: 816-561-7007
sgilman@berkowitzoliver.com

*Counsel for Defendants-Appellants HRB Digital, LLC and HRB Tax Group, Inc.*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned counsel states that there are no related cases pending before this Court.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Archis A. Parasharami*
Archis A. Parasharami

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-1(a) because this brief contains 6,990 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Century Schoolbook 14-point font.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Archis A. Parasharami*
Archis A. Parasharami

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Archis A. Parasharami*
Archis A. Parasharami